1   MARCELLUS A. MCRAE, SBN 140308
        mmcrae@gibsondunn.com
2   ERIC D. VANDEVELDE, SBN 240699
        evandevelde@gibsondunn.com
3   MICHAEL M. LEE, SBN 246363
        mlee@gibsondunn.com
4   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
5   Los Angeles, CA  90071-3197
    Telephone:   213.229.7000
6   Facsimile:   213.229.7520

7   Attorneys for Defendant
    AT&T Mobility LLC

8

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12   MICHAEL TERPIN,                    Case No. 2:18-cv-06975-ODW-KS

13              Plaintiff,              **DEFENDANT AT&T MOBILITY
                                        LLC'S NOTICE OF MOTION AND
14        v.                            MOTION TO DISMISS THE
                                        COMPLAINT; MEMORANDUM OF
15   AT&T MOBILITY LLC; and DOES 1-     POINTS AND AUTHORITIES IN
     25,                                SUPPORT THEREOF**
16                                      [F.R.C.P. 12(b)(6)]
              Defendants.
17                                      [*[Proposed] Order lodged concurrently
                                        herewith*]
18
                                        Action Filed: August 15, 2018
19
                                        **Hearing:**
20                                      Date:    November 19, 2018
                                        Time:    1:30 p.m.
21                                      Place:   350 West 1st Street, 5th Floor
                                                 Courtroom 5D
22                                               Los Angeles, CA 90012
                                        Judge:   Hon. Otis D. Wright II
23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on Monday, November 19, 2018, before the Honorable Otis D. Wright II, United States District Court Judge, in Courtroom 5D, at 350 West 1st Street, 5th Floor, Los Angeles, California 90012, Defendant AT&T Mobility LLC ("AT&T" or "Defendant") will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff Michael Terpin's ("Terpin") Complaint.

AT&T moves to dismiss all claims on the basis that Terpin has failed to plausibly allege proximate cause.  AT&T also moves to dismiss Claim 1 (Declaratory Relief) because it is not ripe, and to dismiss Claim 1's request for invalidation of the parties' agreement as unsupported by the allegations of the Complaint.  AT&T moves to dismiss Claim 2 (Unauthorized Disclosure of Customer Confidential Proprietary Information and Proprietary Network Information ("CPNI"), Federal Communications Act, 47 U.S.C. §§ 206, 222), on the basis that Terpin has failed to allege any disclosure of CPNI or any other statutorily defined confidential information.  AT&T moves to dismiss Claim 3 (Assisting Unlawful Access to Computer, California Penal Code § 502 *et seq.*) on the basis that AT&T did not knowingly provide access to any computer.  AT&T moves to dismiss Claims 4-6 (California Unfair Competition Law) because those claims only permit restitution to be recovered, and Terpin has not pled that AT&T has experienced a benefit that could be recovered through restitution.  In addition, Claims 3-6, as well as Claim 7 (California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*) and Claim 16 (California Customer Records Act, Cal. Civ. Code § 1798.81.5), should be dismissed because the statutes underlying those claims do not have extraterritorial application to a non-California resident.

AT&T moves to dismiss Claim 7 because Terpin failed to give the required notice and opportunity to cure as required by the statute, and because Terpin has not pled facts that support a violation of the cited subsections.  AT&T moves to dismiss Claim 8

(Deceit by Concealment) because Terpin has not alleged a duty to speak and because he has not plausibly alleged that he would have acted differently if AT&T had disclosed the limits of its security.  AT&T moves to dismiss Claim 9 (Misrepresentation) because Terpin has not alleged that he even read the documents he claims are misrepresentations. In addition, Claims 8-12 (negligence and fraud claims) should be dismissed under the economic loss doctrine.  AT&T seeks to dismiss Claim 14 (Breach of Implied Contracts) and Claim 15 (Breach of the Implied Covenant of Good Faith and Fair Dealing) because both do no more than relabel Terpin's contract claim and do not allege conduct that would give rise to the claims pled.  Finally, Claim 16 should be dismissed because Terpin has not alleged that AT&T failed to protect the type of information protected by the Customer Records Act.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities that follows, all pleading and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on October 11, 2018.

Dated: October 22, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Marcellus A. McRae*
  Marcellus A. McRae

Attorney for Defendant
AT&T MOBILITY LLC

# <u>TABLE OF CONTENTS</u>

Page

I.   Introduction ................................................................................................. 1

II.  Facts ............................................................................................................. 2

III. Standard of Review ...................................................................................... 3

IV.  Argument ...................................................................................................... 4

    A.   Terpin Has Not Sufficiently Alleged Proximate Causation for Any of His Claims .............................................................................................. 4

    B.   Claim 1 (Declaratory Relief) Should Be Dismissed for Failure to Allege a Ripe Case or Controversy ......................................................... 6

    C.   Claim 2 (Unauthorized Disclosure of Customer Confidential Proprietary Information and Proprietary Network Information) Should Be Dismissed for Failure to Adequately Plead That Any Such Information Was Disclosed ............................................................. 8

    D.   Claim 3 (Assisting Unlawful Access to Computer [Cal. Penal Code § 502]) Should Be Dismissed .................................................................. 10

        1.   Terpin Has Not Adequately Pled That Anyone Acquired Access to His Computers, Computer Systems, or Computer Networks ...................................................................................... 10

        2.   Terpin Has Not Pled AT&T "Knowingly" Assisted Hackers ....... 10

    E.   Terpin's California Statutory Claims (Claims 3-7 and 16) Should Be Dismissed Because He Is Not a California Resident and Challenges Conduct That Occurred Outside California ........................ 11

    F.   Claims 4-6 (Violation of California UCL) Should Be Dismissed Because Terpin Has Not Pled Entitlement to Equitable Relief .............. 12

    G.   Claim 7 (Violation of CLRA) Should Be Dismissed .............................. 13

        1.   Claim 7 Should Be Dismissed for Failure to Give Required Notice and Opportunity to Cure ...................................................... 13

        2.   Claim 7 Should Be Dismissed for Failure to Plead a Violation of the Cited Subsections of the CLRA ......................... 14

    H.   Claim 8 (Deceit by Concealment) Should Be Dismissed ...................... 15

        1.   Claim 8 Should Be Dismissed for Failure to Allege a Duty to Speak ........................................................................................... 15

        2.   Terpin Has Not Pled That He Would Have Acted Differently Had He Been Aware of the Allegedly Concealed Facts ................ 17

Gibson, Dunn & Crutcher LLP

I.      Claim 9 (Misrepresentation) Should Be Dismissed Because Terpin Has Not Pled That He Read the Documents on Which He Supposedly Relied. .................................................................. 18

J.      Terpin's Fraud and Negligence Claims (Claims 8-12) Are Barred by the Economic Loss Doctrine. .............................................. 19

K.      Claim 14 (Breach of Implied Contracts) Should Be Dismissed Because Terpin Has Not Stated a Claim for Breach of Implied Contract. ........................................................................... 20

L.      Claim 15 Should Be Dismissed Because Terpin Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. ............................................................................ 21

M.      Claim 16 Should Be Dismissed Because Terpin Has Not Alleged AT&T Failed to Protect the Type of Information Shielded by the Customer Records Act. ................................................................... 22

N.      Terpin's Request for Punitive Damages Should Be Stricken. ................. 22

        1.      Terpin Has Not Adequately Pled That He Is Entitled to Punitive Damages. ............................................................. 22

        2.      Punitive Damages Are Unavailable for Claims 10-12, 15-16 as a Matter of Law. ........................................................... 24

V.      Conclusion ....................................................................... 25

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937)..................................................................................... 7

*Antman v. Uber Techs., Inc.*,
   2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ......................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................. 3, 5

*ASIS Internet Servs. v. Active Response Grp.*,
   2008 WL 2129417 (N.D. Cal. May 20, 2008)........................................... 10

*Audigier Brand Mgmt. v. Perez*,
   2012 WL 5470888 (C.D. Cal. Nov. 5, 2012) ........................................... 20

*Avidity Partners, LLC v. State of Cal.*,
   221 Cal. App. 4th 1180 (2013) ................................................................. 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................. 3, 11

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
   241 F. Supp. 3d 1084 (C.D. Cal. 2017) ................................................... 20

*Brousseau v. Jarrett*,
   73 Cal. App. 3d 864 (1977) ...................................................................... 24

*Call One, Inc. v. Anzine*,
   2018 WL 2735089 (N.D. Ill. June 7, 2018)............................................. 10

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990) .................................................................. 22

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   301 F. Supp. 3d 963 (C.D. Cal. 2017)...................................................... 19

*City of Colton v. Am. Promotional Events, Inc.-W.*,
   614 F.3d 998 (9th Cir. 2010) ...................................................................... 7

Gibson, Dunn &
Crutcher LLP

*Clayton v. Landsing Pac. Fund, Inc.*,
    2002 WL 1058247 (N.D. Cal. May 9, 2002)..........................................................17

*In re Coleman*,
    560 F.3d 1000 (9th Cir. 2009) .......................................................................................7

*Cotter v. Lyft, Inc.*,
    60 F. Supp. 3d 1059 (N.D. Cal. 2014)..........................................................................11

*Cruz v. HomeBase*,
    83 Cal. App. 4th 160 (2000) ................................................................................23, 24

*Czuchaj v. Conair Corp.*,
    2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ............................................................17

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) .........................................................................................8

*Div. of Labor Law Enforcement v. Transpacific Transp. Co.*,
    69 Cal. App. 3d 268 (1977) .........................................................................................21

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014)..........................................................................15

*Fairbanks v. Super. Ct.*,
    46 Cal. 4th 56 (2009) ...................................................................................................15

*Farrar v. Direct Commerce, Inc.*,
    9 Cal. App. 5th 1257 (2017) ..........................................................................................8

*Ferrington v. McAfee, Inc.*,
    2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ...............................................................15

*Foster Poultry Farms v. Aklar-Rapidpak-MP Equip., Inc.*,
    868 F. Supp. 2d 983 (E.D. Cal. 2012) .........................................................................21

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
    771 F.3d 1119 (9th Cir. 2014) .....................................................................................13

*Gilstrap v. United Airlines, Inc.*,
    2014 WL 12734331 (C.D. Cal. Jan. 17, 2014)............................................................25

*Gorlach v. The Sports Club Co.*,
    209 Cal. App. 4th 1497 (2013) ....................................................................................21

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:18-CV-06975-ODW-KS

*Grisham v. Philip Morris, Inc.*,
   670 F. Supp. 2d 1014 (C.D. Cal. 2009) .................................................................. 16

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2007) ........................................................................................ 21, 22

*Hammond Enters. Inc. v. ZPS Am. LLC*,
   2013 WL 5814505 (N.D. Cal. Oct. 29, 2013) ......................................................... 20

*Hoffman v. 162 N. Wolfe LLC*,
   228 Cal. App. 4th 1178 (2014) ................................................................................. 16

*Jesse v. Malcmacher*,
   2016 WL 9450683 (C.D. Cal. Apr. 5, 2016) ............................................................. 6

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
   880 F. Supp. 2d 1029 (N.D. Cal. 2012) .................................................................. 19

*Johnson v. Lucent Techs. Inc.*,
   653 F.3d 1000 (9th Cir. 2011) ................................................................................. 18

*Johnson v. Nw. Airlines, Inc.*,
   2010 WL 5564629 (N.D. Cal. May 5, 2010) .............................................................. 4

*Kates v. Crocker Nat'l Bank*,
   776 F.2d 1396 (9th Cir. 1985) ................................................................................. 13

*Kelley v. Corr. Corp. of Am.*,
   750 F. Supp. 2d 1132 (E.D. Cal. 2010) .............................................................. 23, 24

*Kenneth Martin Gardner v. Health Net, Inc.*,
   2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ....................................................... 13

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
   941 F.2d 970 (9th Cir. 1991) ................................................................................... 13

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ................................................................... 14

*Lavine v. Jessup*,
   161 Cal. App. 2d 59 (1958) ..................................................................................... 24

*Martinez v. Pac. Bell*,
   225 Cal. App. 3d 1557 (1990) ............................................................................ 1, 4, 6

*McKinnon v. Dollar Thrifty Automotive Grp., Inc.*,
   2013 WL 791457 (N.D. Cal. Mar. 4, 2013) .......................................... 12

*Molina v. J.C. Penney Co.*,
   2015 WL 183899 (N.D. Cal. Jan. 14, 2015) .......................................... 25

*In re Napster, Inc. Copyright Litig.*,
   354 F. Supp. 2d 1113 (N.D. Cal. 2005) .......................................... 13, 14

*O'Connor v. Uber Techs., Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) .......................................... 11

*O'Keefe v. Inca Floats, Inc.*,
   1997 WL 703784 (N.D. Cal. Oct. 31, 1997) .......................................... 6

*Oman v. Delta Air Lines, Inc.*,
   889 F.3d 1075 (9th Cir. 2018) .......................................... 12

*Oracle USA, Inc. v. XL Glob. Servs., Inc.*,
   2009 WL 2084154 (N.D. Cal. July 13, 2009) .......................................... 19

*Outboard Marine Corp. v. Super. Ct.*,
   52 Cal. App. 3d 30 (1975) .......................................... 14

*Patera v. Citibank, N.A.*,
   79 F. Supp. 3d 1074 (N.D. Cal. 2015) .......................................... 18

*People v. Hawkins*,
   98 Cal. App. 4th 1428 (2002) .......................................... 11

*Perez v. Auto Tech. Co.*,
   2014 WL 12588644 (C.D. Cal. July 14, 2014) .......................................... 24

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) .......................................... 19, 20

*Sacramento Cty. Retired Employees Ass'n v. Cty. of Sacramento*,
   975 F. Supp. 2d 1150 (E.D. Cal. 2013) .......................................... 21

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) .......................................... 17

*Simmons v. S. Pac. Transp. Co.*,
   62 Cal. App. 3d 341 (1976) .......................................... 25

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:18-CV-06975-ODW-KS

*SkinMedica, Inc. v. Histogen Inc.*,
　869 F. Supp. 2d 1176 (S.D. Cal. 2012) ................................................. 13

*Sloan v. Gen. Motors LLC*,
　287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................. 19

*Spy Dialer, Inc. v. Reya LLC*,
　2018 WL 3689554 (C.D. Cal. July 26, 2018) ........................................ 11

*State Dep't of State Hosps. v. Super. Ct.*,
　61 Cal. 4th 339 (2015) ............................................................................ 6

*State of Cal. v. Super. Ct.*,
　150 Cal. App. 3d 848 (1984) ........................................................... 4, 5, 6

*Stearns v. Select Comfort Retail Corp.*,
　2009 WL 1635931 (N.D. Cal. June 5, 2009) ......................................... 14

*Sullivan v. Oracle Corp.*,
　51 Cal. 4th 1191 (2011) ........................................................................ 12

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
　2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) ...................................... 20

*Tomaselli v. Transamerica Ins. Co.*,
　25 Cal. App. 4th 1269 (1994) ............................................................... 23

*Torralbo v. Davol, Inc.*,
　2017 WL 5664993 (C.D. Cal. Oct. 19, 2017) ....................................... 24

*U.S. W., Inc. v. F.C.C.*,
　182 F.3d 1224 (10th Cir. 1999) .............................................................. 9

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
　117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................. 3

*United Food & Commercial Workers Local Union No. 137 v. Food*
　*Employers Council, Inc.*,
　827 F.2d 519 (9th Cir. 1987) .................................................................. 8

*Verizon Nw., Inc. v. Showalter*,
　282 F. Supp. 2d 1187 (W.D. Wash. 2003) ............................................ 10

*Vess v. CIBA-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003) .............................................................. 18

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:18-CV-06975-ODW-KS

*Von Grabe v. Sprint PCS,*
    312 F. Supp. 2d 1285 (S.D. Cal. 2003) ................................................................. 14

*Vu v. Cal. Comm. Club, Inc.,*
    58 Cal. App. 4th 229 (1997) ................................................................................... 4

*Warner v. Tinder Inc.,*
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ............................................................... 12

*WeBoost Media S.R.L. v. LookSmart Ltd.,*
    2014 WL 2621465 (N.D. Cal. June 12, 2014) ...................................................... 20

*Weeks v. Baker & McKenzie,*
    63 Cal. App. 4th 1128 (1998) ............................................................................... 23

*Welk v. Beam Suntory Imp. Co.,*
    124 F. Supp. 3d 1039 (S.D. Cal. 2015) ............................................................... 18

*Westlands Water Dist. Distribution Dist. v. Natural Resources Defense*
    *Council, Inc.,*
    276 F. Supp. 2d 1046 (E.D. Cal. 2003) ................................................................. 7

*White v. Ultramar, Inc.,*
    21 Cal. 4th 563 (1999) ................................................................................... 23, 24

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................ 12, 19

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
    313 F. Supp. 3d 2018 (N.D. Cal. 2018) .......................................................... 22, 25

*Yari v. Producers Guild of Am., Inc.,*
    161 Cal. App. 4th 172 (2008) ............................................................................... 21

**Statutes**

28 U.S.C. § 2201(a) ..................................................................................................... 7

47 U.S.C. § 222 ....................................................................................................... 8, 9

Cal. Bus. & Prof. Code § 17203 ............................................................................... 13

Cal. Civ. Code § 1621 ............................................................................................... 21

Cal. Civ. Code § 1710(3) .......................................................................................... 16

Cal. Civ. Code § 1761(a)-(b) ............................................................... 14

Cal. Civ. Code § 1770(a) ............................................................... 14, 15

Cal. Civ. Code § 1782 ............................................................... 14

Cal. Civ. Code § 1798.81.5 ............................................................... 13, 22

Cal. Civ. Code § 3294 ............................................................... 23, 24

Cal. Evid. Code, § 210 ............................................................... 21

Cal. Penal Code § 7 ............................................................... 11

Cal. Penal Code § 502(c)(1)-(14) ............................................................... 11

## I.     Introduction

The Complaint by Plaintiff Michael Terpin ("Terpin") against AT&T Mobility LLC[1] ("AT&T") is an attempt to improperly blame AT&T for an alleged cryptocurrency theft by unknown criminals.  Even assuming Terpin suffered this alleged theft and has claims against the criminal actors, his Complaint falls far short of stating a claim against AT&T under any of the sixteen theories he crafts.

Terpin alleges that on June 11, 2017, unknown "hackers" obtained access to his telephone number via a fraudulent SIM swap,[2] hijacked his Skype account, defrauded one of Terpin's clients, and caused that client to transfer cryptocurrency to the hackers (instead of to Terpin).  Compl. ¶¶ 64-65.  But Terpin fails to allege any facts suggesting that AT&T knowingly assisted the hackers, that the SIM swap led or contributed to the "hijack[ing]" of his Skype account, or that the subsequent Skype fraud and theft of cryptocurrency was a logical or foreseeable consequence of any action by AT&T.  As to a second alleged theft on January 7 and 8, 2018, which Terpin claims was the result of another fraudulent SIM swap, Terpin alleges nothing to explain how AT&T's policies allowed hackers to steal the alleged $24 million.  He merely asserts in conclusory fashion that after the SIM swap occurred, hackers "obtain[ed] information about Mr. Terpin's cryptocurrency holdings" and were able to "spirit off funds to their own accounts."  Compl. ¶ 73.

These allegations are insufficient.  Liability in both tort and contract "extends to damage which is proximately or legally caused by the defendant's conduct, *not to damage suffered as a proximate result of the independent intervening acts of others*."  *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990) (emphasis added).  Here, Terpin concedes that the harm he allegedly suffered resulted from the

---

[1] Terpin's Complaint also names AT&T Inc. as a defendant.  Terpin voluntarily dismissed AT&T Inc. pursuant to Fed. R. Civ. P. 41(a) on August 23, 2018.  Dkt. 9.

[2] Terpin defines "SIM swapping" as "'tricking a provider . . . into transferring the target's phone number to a SIM card controlled by the criminal.'"  Compl. ¶ 53.

Gibson, Dunn &
Crutcher LLP

"independent intervening acts" of others (*i.e.*, the hackers).  Compl. ¶ 73.  Yet he trivializes multiple indispensable steps in the alleged theft by ignoring them—as if not pleading how the hackers turned access to a phone number into a $24 million theft will allow the Court to presume that the missing steps were foreseeable to, and attributable to, AT&T.  Because Terpin fails to plausibly allege how the alleged theft occurred, he necessarily fails to allege that AT&T proximately caused the theft.

In addition, fifteen of Terpin's sixteen claims have additional flaws that require dismissal.  For each claim, Terpin has failed to plead a required element.  Also, several claims improperly seek extraterritorial effect of California law.  Accordingly, Terpin's Complaint should be dismissed in its entirety.

## II.    Facts[3]

Terpin entered into a wireless contract with AT&T in 2011.  Compl. ¶ 81.  On or about June 11, 2017, Terpin learned that his AT&T cell phone number had been hacked when his phone suddenly became inoperable.  *Id.* ¶ 64.  He later learned that his AT&T password had been changed remotely by hackers after 11 failed attempts made from AT&T's retail stores.  *Id.*  Terpin alleges that the hackers accessed Terpin's telephone and Skype accounts to access his cryptocurrency accounts.  *Id.* ¶ 65.  By impersonating Terpin, the hackers convinced one of Terpin's clients to send them cryptocurrency owed to Terpin.  *Id.*

Two days later, on June 13, 2017, Terpin met with AT&T representatives in Puerto Rico to discuss the hack.  *Id.* ¶ 66.  AT&T purportedly told him that it would place his account on a "higher security level" with "special protection," requiring a six-digit passcode in order to access or change his account.  *Id.* ¶ 67.  Terpin alleges that he "relied upon AT&T's promises that his account would be much more secure against hacking, including SIM swap fraud, after it implemented the increased security measures" and therefore retained his account with AT&T.  *Id.* ¶ 69.

---

[3] For this motion only, AT&T assumes the truth of the allegations of Terpin's Complaint.

Thereafter, on January 7, 2018, Terpin alleges that an employee in an AT&T store in Norwich, Connecticut, sent Terpin's wireless number to an imposter committing SIM swap fraud in violation of AT&T's security procedures.  *Id.* ¶¶ 72, 75.[4]  Terpin alleges imposters "gained control over [his] accounts and stole nearly $24 million worth of cryptocurrency from him on January 7 and 8, 2018."  *Id.* ¶ 72.

On August 15, 2018, Terpin brought a complaint against AT&T arising from these two thefts, alleging sixteen common law and statutory claims.  Dkt. 1.

### III.   Standard of Review

Under federal pleading standards, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Conversely, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks and citations omitted).  If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Moreover, claims for deceit and misrepresentation sound in fraud and thus "must meet the heightened pleading requirements of Rule 9(b)."  *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015).

---

[4] In fact, the individual Terpin references was never an AT&T employee.  He worked for Spring Communications Holding, Inc., which is an independent contractor of AT&T.

Gibson, Dunn &
Crutcher LLP

# IV.   Argument

## A.   Terpin Has Not Sufficiently Alleged Proximate Causation for Any of His Claims.

Under California law, "causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain." *Vu v. Cal. Comm. Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997).   Proximate cause "'is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury [or damage complained of] and without which such result would not have occurred.'" *State of Cal. v. Super. Ct.*, 150 Cal. App. 3d 848, 857 (1984); *Johnson v. Nw. Airlines, Inc.*, 2010 WL 5564629, at *8 (N.D. Cal. May 5, 2010).   A defendant's liability does not extend "to damage suffered as a proximate result of the independent intervening acts of others."   *Martinez*, 225 Cal. App. 3d at 1565.

Terpin has not adequately pled proximate cause for any of his claims because he has not pled a sequence of events by which AT&T's conduct led to his injury—and he cannot do so, because any such sequence would necessarily involve the independent, intervening criminal acts of others, thus destroying proximate cause.

Terpin's allegations that inadequate security measures led to the theft of his cryptocurrency are bare conclusions, devoid of any explanation of the sequence of events leading to his loss.   *Iqbal*, 556 U.S. at 662.   With respect to the alleged June 11, 2017 hack, for example, Terpin alleges hackers "took charge of Mr. Terpin's telephone number" and "accessed Mr. Terpin's telephone to divert texts and telephone calls to gain access to Mr. Terpin's cryptocurrency accounts."   Compl. ¶ 65.   The hackers allegedly then "used the phone to hijack Mr. Terpin's Skype account to impersonate him," defrauding a client into sending the hackers cryptocurrency belonging to Terpin.   *Id.*

This sequence leaves open far more questions than it answers.   For example, how did the hackers execute the SIM swap?   Did they already have Terpin's identifying information or access to his email to permit them to manipulate AT&T's processes?

How did obtaining control of Terpin's telephone number permit hackers to access his cryptocurrency accounts?  How and why was there a purported connection between the SIM swap and hijacking Terpin's Skype account?  What other information did hackers need (or have) to hijack the Skype account?  How did the hackers impersonate Terpin?  How did hackers persuade a Terpin client to send cryptocurrency to the wrong recipient?

Terpin's allegations about the January 7, 2018 hack are even more conclusory.  Terpin simply asserts that "[t]hrough the January 7, 2018 hack, thieves gained control over Mr. Terpin's accounts and stole nearly $24 million worth of cryptocurrency from him on January 7 and 8, 2018."  Compl. ¶ 72.  These assertions beget more questions than answers, including what role did access to a phone with Terpin's number play in gaining control over Terpin's cryptocurrency accounts?  Was Skype involved again?  Was there fraud on a client, or independent hacking into other accounts?

These multiple holes in Terpin's conclusory chain of causation defeat proximate cause as a matter of law.  In *State of California v. Superior Court*, for example, the plaintiffs alleged that the Real Estate Commissioner had failed to investigate a claim for negligent supervision of a real estate agent.  *State of Cal.*, 150 Cal. App. 3d at 852-53.  That agent later stole funds belonging to the plaintiffs, and plaintiffs alleged that the failure to investigate was the proximate cause of their injuries.  *Id*.  The court rejected this argument, finding that the "causal link" between the alleged negligence and the damages was "tenuous at best," and that "several procedural steps" lay between the alleged negligence and the harm.  *Id*. at 858-59.  Even if the commissioner had used reasonable care and discovered the agent's wrongdoing, "there is no reasonable assurance that sanctions would have been imposed that would have prevented plaintiffs' subsequent losses."  *Id*. at 857; *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 355 (2015) (reaffirming *State of Cal.*).

The same is true here.  The "tenuous" link Terpin pleads between the alleged flaws in AT&T's security and a major cryptocurrency theft does not plead proximate cause.  Due to the inadequacy of Terpin's pleading, it is unclear how the hackers are alleged to

have obtained the funds allegedly stolen in January 2018 (the vast majority of the allegedly stolen funds).  *See* Compl. ¶ 72.  This failure to plausibly allege how the theft occurred prevents any "reasonable assurance" that AT&T could have stopped sophisticated hackers even if it had employed the extra security that Terpin references. Compl. ¶ 67; *State of Cal.*, 150 Cal. App. 3d at 857.

Terpin's theory also fails because his harm depends on multiple "independent illegal acts of third parties."  *O'Keefe v. Inca Floats, Inc.*, 1997 WL 703784, at *4 (N.D. Cal. Oct. 31, 1997).  Such actions "are deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of injury." *Id.*; *Jesse v. Malcmacher*, 2016 WL 9450683, at *10 (C.D. Cal. Apr. 5, 2016) ("The illegal acts of third parties are unforeseeable as a matter of law.").  As the court observed in *Martinez*, defendants "lack the legal or practical ability to control such criminal actions of third parties."  *Martinez*, 225 Cal. App. 3d at 1569.

Like the defendant in *Martinez*, AT&T lacks the "legal or practical ability" to control criminal acts by sophisticated hackers.  *Id.*  Even if AT&T's security measures and its hiring, supervision, and training of its employees were inadequate, no theft would have occurred without, at a minimum, (i) an illegal SIM swap; (ii) illegal hacking of other cryptocurrency accounts; (iii) access to other identifying information about Terpin in order to impersonate him, execute the SIM swap, and hack the cryptocurrency accounts; and (iv) in the case of the June 11, 2017 hack, an illegal hijacking of a Skype account and defrauding of a client.  Terpin has not alleged all of the independent, illegal acts that occurred, much less pled facts suggesting AT&T is responsible for those acts. Accordingly, Terpin's Complaint should be dismissed in its entirety for failure to adequately allege proximate cause.

**B.    Claim 1 (Declaratory Relief) Should Be Dismissed for Failure to Allege a Ripe Case or Controversy.**

Terpin's first claim seeks a declaration that Section 2.2 and three aspects of Section 4.1 of the AT&T Wireless Customer Agreement ("Agreement") are

unconscionable and contrary to public policy.   Compl. ¶¶ 80-101.   A declaratory judgment action is only constitutionally ripe "in a case of actual controversy." 28 U.S.C. § 2201(a).   Ripeness requires that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1005 (9th Cir. 2010).   "The issues presented must be definite and concrete, not hypothetical or abstract." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009).

Terpin claims that the controversy over the Agreement is actionable because "Mr. Terpin contends that the Agreement . . . is unenforceable in its entirety," while "AT&T undoubtedly disagrees." Compl. ¶ 99.   But that allegation of disagreement is the epitome of a dispute of a "hypothetical or abstract character."   *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); *Westlands Water Dist. Distribution Dist. v. Natural Resources Defense Council, Inc.*, 276 F. Supp. 2d 1046, 1050-52 (E.D. Cal. 2003).   Terpin does not allege that he fears AT&T will enforce the challenged provisions (sections 2.2 and 4.1) against him or that AT&T has threatened to do so.   *United Food & Commercial Workers Local Union No. 137 v. Food Employers Council, Inc.*, 827 F.2d 519, 525 (9th Cir. 1987) (declaratory judgment action proper where "the threat of a coercive suit based on breach of contract is real").   The mere fact that the provisions exist and Terpin suspects that the parties disagree over their meaning does not create a ripe controversy.

Even if Terpin's claim were ripe, he does not plausibly state a claim to invalidate the entire Agreement.   The only provisions of the Agreement that Terpin directly challenges are (i) three aspects of Section 4.1, which provide limitations on liability (Compl. ¶¶ 87-95); and (ii) the arbitration provision of Section 2.2 (*id.* ¶ 97).   The Agreement, which is referenced in and attached to the Complaint and therefore may be considered on a motion under Rule 12(b)(6), *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010), provides that "[i]f any provision of this Agreement is found to

Gibson, Dunn &
Crutcher LLP

1  be unenforceable by a court or agency of competent jurisdiction, the remaining

2  provisions will remain in full force and effect." Compl., Ex. D at 147 (§ 10.2).

3      Where, as here, the alleged "illegality is collateral to the main purpose of the

4  contract, and the illegal provision can be extirpated from the contract by means of

5  severance or restriction, then such severance and restriction are appropriate." *Farrar v.*

6  *Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1274 (2017). The only basis that Terpin

7  pleads for invalidating the entire Agreement based on the handful of allegedly

8  unenforceable provisions is his conclusory statement that the "entire Agreement is

9  unenforceable because the central purpose of the Agreement is tainted with illegality[.]"

10  Compl. ¶ 96. That unexplained conclusion does not suffice to state a claim.

11      Moreover, as Terpin alleges, the Agreement's terms explicitly limit the

12  Agreement's reach to that allowed by law. *Id.* ¶¶ 90, 94. As a result, to the extent that

13  any terms are unenforceable, the Agreement as a whole must be read to stay within the

14  law, further preventing any plausible claim that the Agreement as a whole could be

15  invalidated. Accordingly, Count 1 should be dismissed.

16  **C.   Claim 2 (Unauthorized Disclosure of Customer Confidential Proprietary**
   **Information and Proprietary Network Information) Should Be Dismissed**
17  **for Failure to Adequately Plead That Any Such Information Was Disclosed.**

18      Terpin's second claim is that AT&T violated section 222 of the Federal

19  Communications Act ("FCA") by failing to maintain the confidentiality of protected

20  information. In particular, Terpin alleges that AT&T did not adequately protect his

21  customer proprietary network information ("CPNI"). Compl. ¶ 106. Terpin also alleges

22  that AT&T did not protect his "CPI," a term he creates to reference all information

23  falling within section 222(a). Compl. ¶ 105. Section 222(a), entitled "In general,"

24  provides that "[e]very telecommunications carrier has a duty to protect the

25  confidentiality of proprietary information of, and relating to . . . customers . . . ." 47

26  U.S.C. § 222(a). The Complaint does not allege what specific information is contained

27  in Terpin's self-created CPI category, and section 222 does not define CPI (or any term

28  that could plausibly be abbreviated "CPI"). *See* 47 U.S.C. § 222(h) (Definitions).

Regardless, Terpin has not plausibly or adequately alleged that AT&T provided any third party with access to confidential information, whether CPNI or Terpin's self-made and undefined category "CPI." Terpin pleads only that the hackers were able to manipulate AT&T to obtain control over Terpin's phone number through a fraudulent SIM swap. Compl. ¶¶ 64, 72. Without a plausible allegation of information that the hackers obtained from AT&T, Terpin has not stated a claim for violation of section 222.

Moreover, CPNI is statutorily defined as "information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier and that is made available to the carrier solely by virtue of the carrier-customer relationship." 47 U.S.C. § 222(h)(1)(A). It includes specific, individually identifiable information, "such as to whom, where, and when a customer places a call, as well as the types of service offering to which the customer subscribes." *U.S. W., Inc. v. F.C.C.*, 182 F.3d 1224, 1235 (10th Cir. 1999); *Verizon Nw., Inc. v. Showalter*, 282 F. Supp. 2d 1187, 1189 (W.D. Wash. 2003) ("CPNI includes information about calls made and received such as whether they were local or long distance, time of day of the call, the originating and destination phone numbers, and whether the call was answered or the line was busy."). Terpin, however, alleges that his "wireless telephone number, account information, and his private communications" constitute CPNI under the statute. Compl. ¶ 108.

He is wrong. These general allegations do not allege *any* information that qualifies as CPNI under the statute, even if, contrary to Terpin's allegations, information was obtained through the alleged SIM swap. *See, e.g.*, *Call One, Inc. v. Anzine*, 2018 WL 2735089, at *9 n.9 (N.D. Ill. June 7, 2018) (rejecting "conclusory assertion" that telephone numbers are CPNI because "the statutory definition of CPNI makes no mention of account telephone numbers"); *ASIS Internet Servs. v. Active Response Grp.*, 2008 WL 2129417, at *3 (N.D. Cal. May 20, 2008) ("email addresses alone do not fall within the definition of [CPNI]"). Terpin's attempt to remedy this defect by creating an

undefined term ("CPI") and arguing that the introductory provision of section 222 creates an independent cause of action for inadequate protection of that undefined category of information finds no support in the statute and lacks plausible supporting allegations.

## D.   Claim 3 (Assisting Unlawful Access to Computer [Cal. Penal Code § 502]) Should Be Dismissed.

### 1.   Terpin Has Not Adequately Pled That Anyone Acquired Access to His Computers, Computer Systems, or Computer Networks.

Terpin's Section 502 claim fails because he does not plausibly allege that the hackers "accessed" his computer, computer system, or computer networks. To be sure, Terpin summarily alleges that "AT&T provided the hackers with means to access Mr. Terpin's computers, computer systems, and computer networks." Compl. ¶ 118. But Terpin alleges that the ultimate result of AT&T's actions is that Terpin's number was "port[ed] over . . . to telephones controlled by hackers," thereby permitting access to Mr. Terpin's personal information. Compl. ¶ 115. That conclusory allegation does not identify any computer to which any hacker obtained access.

### 2.   Terpin Has Not Pled AT&T "Knowingly" Assisted Hackers.

In addition, each of the acts that constitute a public offense under Section 502(c) must be done "knowingly." Cal. Penal Code § 502(c)(1)-(14); *Spy Dialer, Inc. v. Reya LLC*, 2018 WL 3689554, at *1 (C.D. Cal. July 26, 2018). To be "knowing," AT&T must have "an awareness of the facts which bring the proscribed act within the terms of the statute." *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438 (2002) (quoting Cal. Penal Code § 7). Even if the hackers accessed one or more of Terpin's computer systems (none of which is specifically identified in Claim 3), Terpin does not plead that AT&T *knew* that it was giving hackers a means to unauthorized access. Instead, Terpin pleads that AT&T "knew . . . that Mr. Terpin was a high-profile target and that hackers had accessed Mr. Terpin's computers, computer systems, and computer networks"; and that AT&T "further knew that the hackers to whom it ported Mr. Terpin's telephone number on January 7, 2018 were not authorized to access Mr. Terpin's Personal Information

Gibson, Dunn & Crutcher LLP

because the hackers did not have identification" that was required.  Compl. ¶¶ 116-17.

Neither of these allegations is sufficient to suggest that AT&T "knew" that it was "provid[ing] or assist[ing] in providing a means of access" to hackers on January 7, 2018.  Even if hackers did not have identification, it is just as plausible that the hackers tricked AT&T into accepting an excuse for that deficiency as it is that AT&T knew the hackers lacked authorization.  *Twombly*, 550 U.S. at 567.  Absent facts that tend to exclude this "obvious alternative explanation," Terpin cannot state a claim.  *Id*.

### E.   Terpin's California Statutory Claims (Claims 3-7 and 16) Should Be Dismissed Because He Is Not a California Resident and Challenges Conduct That Occurred Outside California.

Several of Terpin's claims seek extraterritorial application of California statutory law.  Even assuming California law governs this case, "a contractual choice of law provision that incorporates California law presumably incorporates *all* of California law—including California's presumption against extraterritorial application of its law." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. 2014); *see also Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1065 (N.D. Cal. 2014) ("Even if the choice of law provision were intended to confer upon out-of-state drivers a cause of action for violation of California's wage and hour laws, it could not do so.  An employee cannot create by contract a cause of action that California law does not provide."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *35 (N.D. Cal. Aug. 30, 2017) ("*In re Yahoo! I*").  Accordingly, Terpin must plead that AT&T's alleged conduct falls within the scope of the statutes he invokes.

If "liability-creating conduct occurs outside of California, California law generally should not govern that conduct." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018).  "[T]he presumption against extraterritoriality applies to the UCL in full force." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *see also Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015) (same); *McKinnon v. Dollar Thrifty Automotive Grp., Inc.*, 2013 WL 791457, at *4 (N.D. Cal. Mar. 4, 2013) ("With regard to the UCL and CLRA, non-California residents' claims are not supported

1   'where none of the alleged misconduct or injuries occurred in California.'"). Even as to

2   California residents, UCL and CLRA claims must be dismissed if the injury arose

3   outside of California. *McKinnon*, 2013 WL 791457, at *5.

4        Here, Terpin pleads that he "is domiciled in Puerto Rico," though he owns a

5   residence in California; and that AT&T Mobility has its principal place of business in

6   Georgia. Compl. ¶ 1. He does not plead that he was in California when any of the events

7   alleged in the Complaint occurred, or that any of those events occurred in California.

8   Instead, Terpin alleges that the June 11, 2017 SIM swap occurred "remotely," and that

9   he then met with AT&T in Puerto Rico. *Id.* ¶¶ 65-66. Terpin alleges that the January 7,

10  2018 SIM swap occurred in Connecticut. *Id.* ¶ 72.

11       Because Terpin is a non-California resident challenging conduct that occurred

12  outside California, he has not stated a claim under the California statutes he claims were

13  violated. Even where a non-resident plaintiff attacks a decision made in California, the

14  UCL does not apply where the implementation of that decision and the plaintiff's harm

15  occurred outside of California. *Sullivan*, 51 Cal. 4th at 1208; *McKinnon*, 2013 WL

16  791457, at *4 (dismissing UCL and CLRA claims where California resident brought

17  claim that arose in Oklahoma). The California statutory claims should be dismissed.

18       In addition, Claim 16 (the Customer Records Act) must be dismissed because the

19  statute only protects California residents. § 1798.81.5(a)(1); *Antman v. Uber Techs.,*

20  *Inc.*, 2015 WL 6123054, at *12 (N.D. Cal. Oct. 19, 2015). Because Terpin is a resident

21  of Puerto Rico, this claim must be dismissed. *See Kenneth Martin Gardner v. Health*

22  *Net, Inc.*, 2010 WL 11597979, at *8-9 (C.D. Cal. Aug. 12, 2010) (dismissing CRA claim

23  because Plaintiffs "were not California residents at the time of any of the events

24  alleged").

25  **F.   Claims 4-6 (Violation of California UCL) Should Be Dismissed Because**
        **Terpin Has Not Pled Entitlement to Equitable Relief.**
26

27       Claims 4-6 should be dismissed for another, separate reason: Terpin has not

28  plausibly alleged an entitlement to any remedy under the UCL. As Terpin's allegations

Gibson, Dunn &
Crutcher LLP

implicitly acknowledge, "California law does not recognize the recovery of damages by individuals for unfair business practices." *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1398 (9th Cir. 1985). The only available statutory remedies are restitution and injunctive relief. Cal. Bus. & Prof. Code § 17203; *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1184 (S.D. Cal. 2012). Restitutionary relief is limited to "money or property lost by the plaintiff and acquired by the defendant." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014).

Terpin has not alleged facts plausibly suggesting entitlement to restitution.[5] He claims that he lost $24 million in cryptocurrency and "the benefit of his bargain" with AT&T, but alleges no facts suggesting that AT&T acquired these funds or could have benefited from the supposed criminal scheme of unknown hackers. Compl. ¶¶ 130, 142, 153. Because "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest," Terpin's failure to identify any funds ending up in the hands of AT&T is fatal to his claim for restitution. *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1126-27 (N.D. Cal. 2005) (internal quotation marks omitted); Compl. ¶ 131.

## G. Claim 7 (Violation of CLRA) Should Be Dismissed.

### 1. Claim 7 Should Be Dismissed for Failure to Give Required Notice and Opportunity to Cure.

Similarly, Claim 7 should be dismissed for an additional reason. To state a claim under the CLRA, the plaintiff must, thirty days prior to commencing its action, send the defendant, by certified or registered mail, a notice and demand letter identifying the § 1770 violations the plaintiff alleges and demanding that the defendant correct those

---

[5] Terpin is also not entitled to disgorgement of wrongfully obtained profits. Nonrestitutionary disgorgement is not available under section 17203. *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d at 1126-27. And Terpin's generic allegation that he is entitled to injunctive relief without identifying harm he seeks to enjoin is insufficient. *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (injunctive relief "must be tailored to remedy the specific harm alleged").

violations.  Cal. Civ. Code § 1782.  Courts routinely dismiss CLRA claims with prejudice if the plaintiff fails to allege compliance with these statutory requirements.[6]

Here, the Complaint is devoid of any allegations that Terpin provided AT&T proper notice under the CLRA.  Terpin's CLRA claim must be dismissed with prejudice.

### 2. Claim 7 Should Be Dismissed for Failure to Plead a Violation of the Cited Subsections of the CLRA.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a). "Goods" are statutorily defined as "tangible chattels," and "services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  *Id.* § 1761(a)-(b).

Terpin alleges "AT&T represented to Mr. Terpin that his Personal Information was secure and would remain private" and "engaged in deceptive acts and business practices" by making statements that "users' Personal Information was secure and that it adhered to its legal obligations to protect Personal Information[.]"  Compl. ¶ 160. Terpin alleges that this conduct violated the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(14), and (a)(16).  *Id*. ¶ 159.  Both Sections 1770(a)(5) and 1770(a)(7) require that a plaintiff allege that a defendant made false representations about "goods or services." Cal. Civ. Code §§ 1770(a)(5), (a)(7).  Terpin's personal information is neither a good nor a service.  *See Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 61 (2009) (life insurance policies are not services because "[a]n insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel"); *see Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) (CLRA does not apply to software plaintiff downloaded from the

---

[6] *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *15 (N.D. Cal. June 5, 2009); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007); *Outboard Marine Corp. v. Super. Ct.,* 52 Cal. App. 3d 30, 40-41 (1975) (notice provisions apply "literal[ly]").

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:18-CV-06975-ODW-KS

internet because it was neither a "good" nor a "service" under the statute).

Terpin also fails to state a claim under Section 1770(a)(14) and Section 1770(a)(16).   Section 1770(a)(14) prohibits any person from "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."  Terpin does not identify the transaction about which he alleges AT&T made false representations, much less what "rights, remedies, or obligations" AT&T represented that the transaction conferred.  Compl. ¶ 159.  A representation about the security of Terpin's information is not a representation about Terpin's "rights" or "remedies."   Likewise, Section 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  It "target[s] not the initial representation in a transaction, but a subsequent representation which is deceptive." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1139 (N.D. Cal. 2014) (dismissing a Section 1770(a)(16) claim because the plaintiff did not allege that the defendant made a second misrepresentation about a prior representation).  Terpin alleges that AT&T represented that his information was secure (Compl. ¶ 160), and later represented it would increase his protection (*id.* ¶ 162), but does not allege that the latter allegation references the prior one (because it does not), as required by Section 1770(a)(16) and *Ehret*.

Accordingly, Claim 7 should be dismissed.

## H.   Claim 8 (Deceit by Concealment) Should Be Dismissed.

### 1.   Claim 8 Should Be Dismissed for Failure to Allege a Duty to Speak.

Deceit by concealment is suppression of a fact by one who is "bound to disclose it."  Cal. Civ. Code § 1710(3).  A defendant is only liable for fraudulent concealment if he or she had a "legal duty" to disclose a "material fact." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014), *as modified on denial of reh'g* (Aug. 13, 2014).  A duty to disclose arises in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a

material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1043 (C.D. Cal. 2009) (internal quotation marks omitted).

Terpin alleges AT&T "had a duty to disclose" that its security measures were not impenetrable (Compl. ¶ 170), but does not plead facts to support a legal basis for this duty.   Terpin does not and cannot allege that he and AT&T were fiduciaries, as "[c]ommercial, arms-length relationships" are not fiduciary. *Grisham*, 670 F. Supp. 2d at 1043.   Terpin also does not allege a "partial representation[]" that created a duty to disclose other facts. *Id.*   Instead, Terpin alleges that "AT&T had exclusive knowledge" of material facts, and that AT&T "actively conceal[ed]" a material fact from Terpin. Compl. ¶¶ 158, 170.   He has not pled facts to support these conclusory allegations.

The "exclusive knowledge" that Terpin alleges—though not in his deceit claim— is that AT&T's "protection of Personal Information was defective." Compl. ¶ 158.   But Terpin's Complaint describes public articles about SIM swaps, including that such crimes involve mobile store employees (including from AT&T), target cryptocurrency investors, and befall AT&T customers.   Compl. ¶¶ 53-60.   Terpin has affirmatively alleged that these risks were widely known (including, presumably, known by him). Accordingly, Terpin has not—and cannot—allege that AT&T possessed *exclusive* knowledge of this potential security risk giving it a duty to disclose that fact. *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (rejecting allegation that "Apple was in a superior position of knowledge with regard to its own technology" as it "lacked specific substantiating facts" required by Rule 9(b) to plead "exclusive knowledge").

Terpin also does not allege any facts that AT&T *actively concealed* information from him.   He alleges that AT&T "conceal[ed] the true facts concerning its data security" (Compl. ¶ 170), but pleads no facts establishing "concealment," as opposed to simple non-disclosure.   Active concealment requires the party to take "affirmative acts . . . in hiding, concealing, or covering up the matters complained of." *Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *6 (S.D. Cal. Apr. 18, 2014) (internal quotation marks omitted).

Gibson, Dunn &
Crutcher LLP

Even if Terpin had pled a basis for a duty to disclose, the Agreement confirms that AT&T disclosed the limits of its security, precisely what Terpin says AT&T did not disclose. Compl. ¶ 158. AT&T stated unambiguously in the Agreement—in all caps— that "AT&T DOES NOT GUARANTEE SECURITY." Compl., Ex. D at 126 (§ 4.3). AT&T also disclosed that "no security measures are perfect" and AT&T "cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." Compl., Ex. B at 96; *see Clayton v. Landsing Pac. Fund, Inc.*, 2002 WL 1058247, at *6 (N.D. Cal. May 9, 2002), *aff'd*, 56 F. App'x 379 (9th Cir. 2003) (no claim for fraudulent concealment where defendants "*actually disclosed the information . . . plaintiff [alleged] was kept secret from her*") (emphasis in original). Because Terpin has not pled a basis for a duty to disclose, and because the parties' Agreement explicitly discloses precisely what Terpin asserts was concealed, Claim 8 should be dismissed.

### 2.     Terpin Has Not Pled That He Would Have Acted Differently Had He Been Aware of the Allegedly Concealed Facts.

A claim for deceit also requires a plaintiff to plausibly plead that he was unaware of a concealed material fact and would have acted differently had he known about it. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011-12 (9th Cir. 2011). Because this claim sounds in fraud, it must be plead with particularity. *Vess v. CIBA-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003); *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1085 (N.D. Cal. 2015).

Terpin does not satisfy this element. He alleges only that AT&T had a duty to disclose certain facts and that he would have acted differently if AT&T had done so, missing the crucial factual link that he was unaware of these facts. Specifically, Terpin alleges that AT&T did not disclose the alleged inadequacy of its data security measures; that its employees could bypass those measures and/or cooperate with thieves; that AT&T could not protect Terpin's Personal Information; that SIM swap fraud was

common in the cryptocurrency community; that his Personal Information was readily obtained by hackers; and that AT&T inadequately supervised and trained its employees. Compl. ¶¶ 166-71.  But Terpin does **not** claim that **he was unaware** of these alleged facts.  No such claim would be credible.  Terpin describes himself as a "prominent member of the blockchain and cryptocurrency community," and it is implausible that such an individual would not be aware of public articles regarding risks to cryptocurrency investors.  Compl. ¶ 13.  And the "prior incidents" that he alleges inform AT&T's awareness of purported deficiencies in its data security procedures necessarily include the alleged June 11, 2017 SIM swap that Terpin himself alleges.  Compl. ¶¶ 64-65.  After that point, Terpin cannot plausibly claim that he was unaware that his mobile phone could potentially be hacked.

## I.   Claim 9 (Misrepresentation) Should Be Dismissed Because Terpin Has Not Pled That He Read the Documents on Which He Supposedly Relied.

"To state a claim for intentional misrepresentation under California law, a plaintiff must plead, among other things, that 'the defendant intended that the plaintiff rely on the representation' and 'the plaintiff reasonably relied on the representation.'"  *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) (internal citations omitted).  Pleading the element of reliance necessarily dictates that a plaintiff allege that he was somehow exposed to the alleged misrepresentation.  *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 874 (N.D. Cal. 2018), *order clarified*, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) ("In an affirmative misrepresentation case, a plaintiff obviously must plead that they in fact viewed or were exposed to the misleading misrepresentation; otherwise, they could not have relied on it.").

Here, Terpin summarily alleges that he relied on numerous purported misrepresentations in AT&T's Code of Business Conduct ("COBC") and Privacy Policy Compl. ¶¶ 178-79.  But Terpin does not allege that he read these documents at all, much less allege facts to describe when he supposedly became aware of the claimed misrepresentations.  The COBC articulates the core set of values for AT&T employees,

Gibson, Dunn &
Crutcher LLP

and Terpin has not pled any basis to think he, as a customer, read that document until this litigation. Absent this crucial factual allegation, his misrepresentation claim must be dismissed. *In re Yahoo! I*, 2017 WL 3727318, at *27-28 (dismissing plaintiffs' affirmative misrepresentation claim because plaintiffs did not allege that they "*actually read*" defendant's Privacy Policy) (emphasis in original).

## J.   Terpin's Fraud and Negligence Claims (Claims 8-12) Are Barred by the Economic Loss Doctrine.

Terpin's fraud and negligence claims—which recast his contract claims in tort—are additionally barred by the economic loss doctrine. *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012). The "fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *Oracle USA, Inc. v. XL Glob. Servs., Inc.*, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009). The economic loss rule "'requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'" *ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 969 (C.D. Cal. 2017) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)).

Terpin's fraud and negligence claims relate to his allegation that AT&T's security measures were inferior to what AT&T promised. Compl. ¶¶ 166, 178-80, 185, 196, 207. Terpin alleges breach of express and implied contract on the same facts. *Id.* ¶¶ 216-27. Terpin's claims are thus "purported tort claims related to the performance of a contract," and "are viable only where 'the duty that gives rise to tort liability is either *completely independent* of the contract or arises from conduct which is both intentional and intended to harm.'" *Audigier Brand Mgmt. v. Perez*, 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012) (quoting *Robinson*, 34 Cal. 4th at 988) (emphasis in original). Terpin has not pled any duty to secure his information other than that allegedly imposed by the Privacy Policy and the COBC, and has not pled that AT&T acted intentionally to harm him.

Gibson, Dunn & Crutcher LLP

19

In similar circumstances, courts in the Ninth Circuit dismiss fraud and negligence claims under the economic loss rule.  *See, e.g.*, *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091-94 (C.D. Cal. 2017) (dismissing plaintiff's negligence claim without leave to amend because it was barred by the economic loss rule); *Hammond Enters. Inc. v. ZPS Am. LLC*, 2013 WL 5814505, at *7-8 (N.D. Cal. Oct. 29, 2013) (dismissing negligence, negligent misrepresentation, and fraudulent concealment claims with prejudice under economic loss rule); *see also WeBoost Media S.R.L. v. LookSmart Ltd.*, 2014 WL 2621465, at *6 (N.D. Cal. June 12, 2014); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at *9 (N.D. Cal. Aug. 26, 2013) (gathering cases where tort claims were dismissed on the basis of the economic loss rule).  Terpin's fraud and negligence claims (Claims 8-12) are all barred by the economic loss rule and should be dismissed.

### K.  Claim 14 (Breach of Implied Contracts) Should Be Dismissed Because Terpin Has Not Stated a Claim for Breach of Implied Contract.

Terpin alleges AT&T breached "implied contracts" entered when Terpin opened an AT&T wireless account.  Compl. ¶¶ 224-27.  "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) (citation omitted).  Both the existence and the terms of an implied contract are manifested by conduct.  Cal. Civ. Code § 1621.  The plaintiff must show that both parties *agreed* to the contract, and that both parties *intended* to make a promise. *Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977); *Sacramento Cty. Retired Employees Ass'n v. Cty. of Sacramento*, 975 F. Supp. 2d 1150, 1166 (E.D. Cal. 2013) ("It is true that a course of conduct may show an implied promise, but 'the very heart of this kind of agreement is an *intent* to promise.'" (citing *Gorlach v. The Sports Club Co.*, 209 Cal. App. 4th 1497, 1507 (2013)) (emphasis in original)); *see also Foster Poultry Farms v. Aklar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 983, 995

(E.D. Cal. 2012). The issue is whether "evidence of the parties' conduct has a 'tendency in reason' (Cal. Evid. Code, § 210) to demonstrate the existence of an actual mutual understanding on *particular* terms and conditions of employment." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 337 (2007).

Terpin does not plausibly allege that AT&T's conduct evidences agreement to particular terms and conditions. If the Privacy Policy or COBC established a contract, it would be an express one; allowing Terpin to open an account would not imply agreement to any particular terms whatsoever. Because an "actual mutual understanding on *particular* terms and conditions," *Guz*, 24 Cal. 4th at 337, is required and cannot be inferred from any conduct alleged, Terpin does not plead an implied contract.

**L.     Claim 15 Should Be Dismissed Because Terpin Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Terpin next asserts that AT&T breached the implied covenant of good faith and fair dealing with respect to AT&T's Privacy Policy and COBC by acting with "bad faith" towards Terpin's confidential information. The implied covenant of good faith and fair dealing is narrow, existing "merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz*, 24 Cal. 4th at 349 (emphasis in original). The "implied covenant of good faith and fair dealing does not impose substantive terms and conditions beyond those to which the parties actually agreed." *Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204 (2013); *see also Guz*, 24 Cal. 4th at 349. The covenant thus remedies situations where the defendant did not actually breach the parties' contract, but where its actions effectively made the contract without value to the plaintiff.

Terpin's breach of the implied covenant claim offends this principle. If AT&T's security measures fulfilled its contracts, then Terpin's breach of the implied covenant claim depends on imposing security-related obligations on AT&T that are not in the contract, which is not permissible. *Guz*, 24 Cal. 4th at 352. Alternatively, if AT&T did not comply with its contracts, Terpin's claim is superfluous, because the breach of

Gibson, Dunn &
Crutcher LLP

contract claim (Claim 13) will enforce those contracts.  *Id.*; *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("allegations [that] do not go beyond the statement of a mere contract breach and . . . simply seek the same damages or other relief already claimed in a companion contract cause of action . . . may be disregarded as superfluous as no additional claim is actually stated").

**M.  Claim 16 Should Be Dismissed Because Terpin Has Not Alleged AT&T Failed to Protect the Type of Information Shielded by the Customer Records Act.**

Terpin alleges that AT&T violated Section 1798.81.5(b) of the California Civil Code, the Customer Records Act ("CRA") because it did not "implement and maintain reasonable security procedures and practices" regarding personal information, "as evidenced by the January 7, 2018 SIM swap fraud."  Compl. ¶ 238.  The CRA regulates AT&T's actions with respect to personal information that it "owns, licenses, or maintains."  Cal. Civ. Code § 1798.81.5.  But Terpin does not identify any personal information that AT&T owned, licensed, or maintained, but did not protect.  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1145-46 (N.D. Cal. 2018) ("*In re Yahoo! II*") (dismissing California CRA claim where Plaintiffs failed to allege facts regarding the claimed violation).  On the sparse facts alleged by Terpin regarding how the SIM swap led to a theft, he contends that the swap somehow facilitated the hackers obtaining access to Terpin's other accounts.  Compl. ¶¶ 65, 72.  But that does not mean that AT&T ever owned, licensed, or maintained the account numbers and passwords associated with those accounts, much less that AT&T provided them to the hackers.  Tellingly, Terpin makes no such allegation.  Accordingly, Claim 16 fails to state a claim.

**N.  Terpin's Request for Punitive Damages Should Be Stricken.**

**1.  Terpin Has Not Adequately Pled That He Is Entitled to Punitive Damages.**

Terpin requests punitive damages for Claims 3, 8-12, and 15-16.  Punitive damages are "disfavored by the law," *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d

1132, 1147 (E.D. Cal. 2010), and available only upon clear and convincing evidence that the conduct giving rise to the award is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people" or "[having] the character of outrage frequently associated with crime." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994).

California law holds that punitive damages may only be awarded against an entity defendant based on the entity's "*own* wrongful conduct." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1154 (1998) (emphasis in original). An entity may not be held liable for punitive damages based upon the acts of an employee unless the plaintiff proves, by clear and convincing evidence, that an "officer, director or managing agent" of the entity either: (1) had advance knowledge of the unfitness of the fraudulent, malicious or oppressive employee and employed him or her with a knowing disregard of the rights or safety of others; or (2) committed, ratified, or authorized the fraudulent, malicious or oppressive conduct. Cal. Civ. Code § 3294(b). Managing agents are employees who "exercise[] substantial discretionary authority over decisions that ultimately determine *corporate policy*." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000) (alteration and emphasis in original) (quoting *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 569 (1999)). By confining liability to "officer[s], director[s], and managing agent[s]," California law "avoids punishing the corporation for malice of low-level employees which does not reflect the corporate 'state of mind' or the intentions of corporate leaders." *Cruz*, 83 Cal. App. 4th at 167; *see also White*, 21 Cal. 4th at 569.

Here, Terpin has failed to allege that any "officer, director or managing agent" of AT&T knew about or ratified any of the actions about which Terpin complains. Instead, the *only* alleged AT&T employee Terpin mentions by name is Jahmil Smith, who Terpin alleges worked at an "AT&T store" and had a criminal record and should never have been hired by AT&T. Compl. ¶ 212. Terpin does not—and cannot in good faith—allege that AT&T had any advance knowledge about any alleged unfitness of Mr. Smith. Terpin therefore has no legitimate claim for punitive damages against AT&T.

Terpin also fails to adequately plead the required mental state to support a claim for punitive damages. In California, a "conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud or malice.'" *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977) (quoting Cal. Civ. Code § 3294(a)); *Lavine v. Jessup*, 161 Cal. App. 2d 59, 69 (1958) ("mere use" of terms like fraud "is not enough"; "facts constituting bad faith or fraud must be specifically alleged"); *Torralbo v. Davol, Inc.*, 2017 WL 5664993, at *7 (C.D. Cal. Oct. 19, 2017).

Here, Terpin's allegations concerning malice, fraud, and oppression are based on nothing more than conclusory allegations and unreasonable inferences. *See, e.g.*, Compl. ¶¶ 191, 203, 215, 234. For some claims, Terpin simply states, without factual support, that AT&T acted with malice, fraud, and oppression. *See id.* ¶¶ 121, 176, 182, 241. These bald assertions are "devoid of factual support" and insufficient to support a prayer for punitive damages. *Perez v. Auto Tech. Co.*, 2014 WL 12588644, at *7 (C.D. Cal. July 14, 2014) (conclusory statements to support punitive damages "are not entitled to the presumption of truth under *Iqbal* and *Twombly*"). Because Terpin "invites the court to read . . . an evil motive" into "facts that describe nothing more than the basic elements" of the claims he asserts, his request for punitive damages should be dismissed. *Kelley*, 750 F. Supp. 2d at 1148. Indeed, even Terpin pleads only that the "employees at the AT&T store who unlawfully handed over Mr. Terpin's telephone number to thieves were *either blind or complicit*." Compl. ¶ 74 (emphasis added). This acknowledgment that those employees may not have been complicit further supports rejecting Terpin's request for punitive damages.

### 2. Punitive Damages Are Unavailable for Claims 10-12, 15-16 as a Matter of Law.

Finally, punitive damages are unavailable as a matter of law for Claims 10-12 and 15-16. First, Terpin's claim for breach of the implied covenant of good faith and fair dealing (Claim 15) does not provide a basis for punitive damages. *In re Yahoo! II*, 313

F. Supp. 3d at 1149 (granting motion to dismiss plaintiffs' claim for breach of implied covenant of good faith and fair dealing "to the extent that claim seeks punitive damages").  Similarly, punitive damages are not available for Claim 16 because the Customer Records Act "does not allow for such penalties based on violations of the statutes at issue here or expressly allow for punitive damages." *Id.* at 1149-50.

Likewise, it is well established in California that "[m]ere . . . negligence, [e]ven gross negligence is not sufficient to justify an award of punitive damages." *Simmons v. S. Pac. Transp. Co.*, 62 Cal. App. 3d 341, 369 (1976); *Molina v. J.C. Penney Co.*, 2015 WL 183899 (N.D. Cal. Jan. 14, 2015) ("The standard for punitive damages requires behavior more offensive than the standard for gross negligence.").  Thus, Terpin's requests for punitive damages for his claims of negligence, negligent supervision and training, and negligent hiring (Claims 10-12) are unavailing.  Compl. ¶¶ 191, 203, 215. The allegations of negligence on those claims, even supplemented with conclusory assertions of malice, fraud, and oppression, are insufficient to support a request for punitive damages. *See Gilstrap v. United Airlines, Inc.*, 2014 WL 12734331, at *6 (C.D. Cal. Jan. 17, 2014).

## V.    Conclusion

For the reasons set forth above, the Complaint should be dismissed in its entirety for failure to plead proximate cause.  Moreover, Claims 1-12 and 14-16 should be dismissed for the additional reasons addressed herein.

Dated: October 22, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Marcellus A. McRae*
      Marcellus A. McRae


Attorney for Defendant
AT&T MOBILITY LLC