MARCELLUS A. MCRAE, SBN 140308
  mmcrae@gibsondunn.com
ERIC D. VANDEVELDE, SBN 240699
  evandevelde@gibsondunn.com
MICHAEL M. LEE, SBN 246363
  mlee@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendant
AT&T Mobility LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TERPIN,<br><br>       Plaintiff,<br><br>  v.<br><br>AT&T MOBILITY LLC; and DOES 1-25,<br><br>       Defendants. | Case No. 2:18-cv-06975-ODW-KS<br><br>**DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br>[F.R.C.P. 12(f)]<br><br>[*[Proposed] Order lodged concurrently herewith*]<br><br>Action Filed: August 15, 2018<br><br>**Hearing:**<br>Date:    November 19, 2018<br>Time:   1:30 p.m.<br>Place:   350 West 1st Street, 5th Floor<br>          Courtroom 5D<br>          Los Angeles, CA 90012<br>Judge:  Hon. Otis D. Wright II |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on Monday, November 19, 2018, before the Honorable Otis D. Wright II, United States District Court Judge, in Courtroom 5D, at 350 West 1st Street, 5th Floor, Los Angeles, California 90012, Defendant AT&T Mobility LLC ("AT&T" or "Defendant") will and hereby does move, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike the portions of Plaintiff Michael Terpin's Complaint referencing or discussing the April 8, 2015 consent decree issued by the FCC to AT&T Services, Inc. (the "Consent Decree"), i.e., the allegations of the Consent Decree found in paragraphs 4, 20, 32-44, 51, 75, 77, 88, 95, 108, 110, 114, 115, 125, 126, 128, 129, 136, 137, 138, 139, 141, 147, 149, 151, 160, 161, 169, 178, 184, 186, 187, 196, 197, 198, 200, 206, 207, 209, 211, and 220 of the Complaint as well as Exhibit A to the Complaint, on the grounds that they are immaterial and impertinent.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities that follows, all pleading and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on October 11, 2018.

Dated: October 22, 2018                Respectfully submitted,

                                       GIBSON, DUNN & CRUTCHER LLP


                                       By: */s/ Marcellus A. McRae*
                                              Marcellus A. McRae

                                       Attorney for Defendant
                                       AT&T MOBILITY LLC

# TABLE OF CONTENTS

Page

I. Introduction ............................................................................................................ 1

II. Factual Background ............................................................................................... 2

    A. Terpin's Claims ............................................................................................. 2

    B. Allegations Related to the FCC Consent Decree ......................................... 2

III. Legal Standard ....................................................................................................... 4

IV. Argument ............................................................................................................... 5

    A. Allegations Pertaining to the FCC's Consent Decree Should Be Stricken ........................................................................................................... 5

        1. Allegations of the FCC's Consent Decree Are "Impertinent" and "Immaterial" to Terpin's Complaint ............................................. 5

        2. AT&T Will Be Significantly Prejudiced If the Allegations Regarding the FCC Consent Decree Remain .................................... 7

V. Conclusion ............................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.M.J. v. Cty. of L.A.*,
  2015 WL 13711269 (C.D. Cal. Sept. 23, 2015) ........................................................ 5

*Bolick v. Pasionek*,
  2011 WL 742237 (D. Nev. Feb. 24, 2011) ............................................................... 8

*Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*,
  2018 WL 828099 (S.D. Cal. Feb. 12, 2018) ............................................................. 5

*In re Clearly Canadian Sec. Litig.*,
  875 F. Supp. 1410 (N.D. Cal. 1995) ........................................................................ 4

*Drop Stop LLC v. Jian Qing Zhu*,
  2017 WL 3452990 (C.D. Cal. June 20, 2017) ......................................................... 6

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ................................................................................................................ 4, 5, 8

*Green v. Canidae Corp.*,
  2009 WL 9421226 (C.D. Cal. June 9, 2009) ........................................................... 6

*Jones v. Metro. Life Ins. Co.*,
  2010 WL 4055928 (N.D. Cal. Oct. 15, 2010) ......................................................... 7

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976) .................................................................................... 7

*Merritt v. Countrywide Fin. Corp.*,
  2015 WL 5542992 (N.D. Cal. Sept. 17, 2015) ..................................................... 6, 7

*Ogundele v. Girl Scouts-Ariz. Cactus Pine Council, Inc.*,
  2011 WL 1770784 (D. Ariz. May 10, 2011) ........................................................... 7

*Rees v. PNC Bank, N.A.*,
  308 F.R.D. 266 (N.D. Cal. 2015) ......................................................................... 4, 5

*Robert H. Peterson Co. v. Tinsley*,
  2010 WL 11601229 (C.D. Cal. Nov. 12, 2010) ...................................................... 7

*Rosen v. Masterpiece Mktg. Grp., LLC*,
  222 F. Supp. 3d 793 (C.D. Cal. 2016) ..................................................................... 4

*SST Sterling Swiss Trust 1987 AG v. New Line Cinema Corp.*,
  2005 WL 6141290 (C.D. Cal. Oct. 31, 2005) ......................................................... 6

*Survivor Prods. LLC v. Fox Broad. Co.*,
  2001 WL 35829270 (C.D. Cal. June 12, 2001) ....................................................... 8

*U.S. W., Inc. v. F.C.C.*,
 182 F.3d 1224 (10th Cir. 1999) ........................................................................................ 5

*Whittlestone, Inc. v. Handi-Craft Co.*,
 618 F.3d 970 (9th Cir. 2010) ............................................................................................ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Introduction

Relying on threadbare, conclusory assertions, the Complaint of Plaintiff Michael Terpin ("Plaintiff" or "Terpin") alleges that AT&T is liable for two thefts of his cryptocurrency by independent third parties. Rather than plead sufficient facts to plausibly allege that any acts or omissions by AT&T proximately caused those thefts, Terpin spends much of his Complaint detailing an FCC Consent Decree issued to an affiliate, AT&T Services, Inc., in April 2015 that has no bearing on this case. The Consent Decree addresses a circumstance in which certain AT&T call center employees purportedly provided unauthorized access to personal information regarding customers, all of which occurred several years before the events alleged in the Complaint. Here, in contrast, Terpin's allegation is that a supposed AT&T employee assisted hackers in a "SIM swap" whereby Terpin's AT&T wireless phone number was transferred to a phone in the possession of criminals. The information Terpin alleges was taken in connection with this SIM swap is not covered by the protections of the Consent Decree, and therefore the Consent Decree is irrelevant to this case. There is no connection between the alleged SIM swap fraud that Terpin alleges and the circumstances that led to the FCC's Consent Decree to AT&T.

The inclusion of these allegations in the Complaint is improper and will unduly prejudice AT&T. The ostensible purpose of falsely equating the Consent Decree with Terpin's theft is to portray AT&T as an unrepentant, prior bad actor. Using the Consent Decree allegations to draw this false equivalence will needlessly confuse and complicate the pertinent issues, prompt the trier of fact to draw unwarranted and highly prejudicial inferences, and unnecessarily expand the scope of discovery with overbroad requests and testimony. This will result in increased costs for all parties and burden for the Court, which will most likely be required to resolve discovery and evidentiary disputes related to these extraneous matters. Accordingly, the Court should grant AT&T's motion to strike these allegations from the Complaint.

## II. Factual Background[1]

### A. Terpin's Claims

Terpin's Complaint, filed on August 15, 2018, alleges sixteen statutory and common law claims relating to two alleged thefts of Terpin's cryptocurrency. Both alleged thefts occurred as part of what Terpin labels a "SIM swap fraud," in which a criminal "trick[s] a provider like AT&T or T-Mobile into transferring the target's phone number to a SIM card controlled by the criminal." Compl. ¶¶ 52-53. Terpin alleges that hackers first "took charge of Mr. Terpin's telephone number" on or about June 11, 2017. *Id.* ¶ 65. Through a partially explained series of events including the hacking of Terpin's Skype account and an apparent fraud by a criminal hacker, funds due to Terpin were allegedly paid to the hackers instead. *Id.* Terpin alleges that a second fraudulent SIM swap occurred on January 7, 2018. *Id.* ¶ 72. Through an unexplained series of events, Terpin alleges that "thieves gained control over Mr. Terpin's accounts and stole nearly $24 million worth of cryptocurrency from him on January 7 and 8, 2018." *Id.*

### B. Allegations Related to the FCC Consent Decree

In paragraphs 32-44 of the Complaint, Terpin alleges facts concerning an April 8, 2015 Consent Decree entered into by AT&T Services, Inc. and the FCC. The Consent Decree resolved an FCC investigation into whether call centers operated by AT&T Mobility LLC or its contractors failed to properly protect the confidentiality of approximately 280,000 customers' proprietary information, including personal information such as customers' names and the last four digits of their Social Security numbers, as well as account-related data known as customer proprietary network information ("CPNI"), in connection with data breaches at AT&T call centers in Mexico, Colombia, and the Philippines. Compl., Ex. A at 71. As a result of the Consent Decree,

---

[1] For purposes of this motion only, AT&T assumes the truth of the allegations of Terpin's Complaint. The facts pled by Terpin are laid out in more detail in Defendant AT&T's concurrently filed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and incorporated herein by reference. To avoid duplication, AT&T addresses here only those facts relevant to the motion to strike.

the United States levied a $25 million civil penalty and required AT&T Services, Inc. and its affiliates to institute a compliance plan. *Id.*, Ex. A at 76, 80.

Terpin does not allege that the Consent Decree pertained to SIM swaps, which is what Terpin alleges occurred in this case. Instead, the Consent Decree applied to two specific types of customer information: customer proprietary network information ("CPNI") and "Personal Information." Ex. A at 77. The Consent Decree expressly states that the terms "Customer Proprietary Network Information" and "CPNI" "shall have the same meaning set forth at Section 222(h)(1)" of the Federal Communications Act ("FCA"). Compl., Ex. A at 73. In turn, Section 222(h)(1) of the FCA defines CPNI as meaning only:

> (A) information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to or by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and
> (B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier; except that such term does not include subscriber list information.

In addition, the Consent Decree defines "Personal Information" covered under the Consent Decree as meaning either:

> (1) an individual's first name or first initial and last name used *in combination with* any one or more of the following data elements, when either the name or the data elements are not encrypted: (A) Social Security number; (B) driver's license number or other government-issued identification card number; or (C) account number, credit or debit

>card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; or
>
>(2) a user name or email address, in combination with a password or security question and answer that would permit access to an online account.

Compl., Ex. A at 73 (emphasis added).

Terpin does not allege that any "CPNI" or "Personal Information," as defined by the Consent Decree, was wrongfully accessed in connection with the alleged incidents about which he complains. *See* Compl. ¶¶ 64–67, 72–74. To the contrary, the criminals apparently already had much of Terpin's Personal Information and used it to impersonate Terpin in their contacts with AT&T. Accordingly, the Consent Decree has no application to the facts of this case.

### III.   Legal Standard

Under Rule 12(f) of the Federal Rules of Civil Procedure, courts may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks and citation omitted) (alteration in original); *Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 797 (C.D. Cal. 2016).

"A matter is immaterial if it 'has no essential or important relationship to the claim for relief or the defenses being pleaded.'" *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)); *see also In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420-21 (N.D. Cal. 1995) (*sua sponte* striking, pursuant to Rule 12(f), various immaterial and/or redundant allegations). A matter is impertinent

"if it consists of statements that do not pertain to and are not necessary to the issues in question." *Rees*, 308 F.R.D. at 271; *Fantasy, Inc.*, 984 F.2d at 1527. Courts "generally require a showing of prejudice in weighing whether to favorably exercise their discretion to strike allegations." *Citizens for Quality Educ. San Diego v. San Diego Unified Sch. Dist.*, 2018 WL 828099, at *3 (S.D. Cal. Feb. 12, 2018). The "possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that will support the granting of a motion to strike." *A.M.J. v. Cty. of L.A.*, 2015 WL 13711269, at *2 (C.D. Cal. Sept. 23, 2015) (citation omitted).

## IV.   Argument

### A.   Allegations Pertaining to the FCC's Consent Decree Should Be Stricken

#### 1.   Allegations of the FCC's Consent Decree Are "Impertinent" and "Immaterial" to Terpin's Complaint

The Consent Decree addresses the FCC's investigation into data breaches at call centers in Mexico, Colombia, and the Philippines, through which unauthorized third parties obtained customers' names and portions of customers' Social Security numbers. Compl. Ex. A at 71. This investigation resulted in a Consent Decree that covered the protection against the unauthorized disclosure of both Personal Information and CPNI, which were expressly defined terms, as noted above. *Id.*, Ex. A at 73. But Terpin's Complaint does not allege that Terpin's name and social security number were obtained due to AT&T security flaws. Nor does the Complaint allege that AT&T disclosed any of Terpin's CPNI without authorization. *See* Motion to Dismiss at Section IV.C; *U.S. W., Inc. v. F.C.C.*, 182 F.3d 1224, 1229 n.1 (10th Cir. 1999) (CPNI is specific, individually identifiable information, "such as when, where, and to whom a customer places calls"). Moreover, the Complaint does not reference call centers as a source of Terpin's harm. Instead, the bulk of Terpin's alleged harm resulted from an alleged fraud at a retail store. Compl. ¶ 72. Retail stores were not subject to the Consent Decree. Compl. Ex. A.

While the Consent Decree involves the disclosure of names, social security numbers, and CPNI, Terpin's causes of action involve only the transfer of his phone number to a new SIM card. Accordingly, the Consent Decree is irrelevant and immaterial. It does not apply to SIM swaps, Skype impersonations, and cryptocurrency account hacks that are the centerpieces of Terpin's alleged thefts. And Terpin's causes of action do not arise from conduct that was subject to the Consent Decree. *See Green v. Canidae Corp.*, 2009 WL 9421226, at *5 (C.D. Cal. June 9, 2009) (granting motion to strike portions of complaint discussing defendant's $3.1 million settlement in unrelated pet food contamination case because it was "irrelevant to this failure to inform case and . . . prejudicial"); *see also Merritt v. Countrywide Fin. Corp.*, 2015 WL 5542992, at *13 (N.D. Cal. Sept. 17, 2015) (striking paragraphs in pleading as immaterial and impertinent because they discussed other lawsuits and investigations involving defendants "that have no apparent pertinence to the claims in this case, other than to cast them in a bad light"); *SST Sterling Swiss Trust 1987 AG v. New Line Cinema Corp.*, 2005 WL 6141290, at *5 (C.D. Cal. Oct. 31, 2005) (striking allegations of racially discriminatory motive, because allegations had "no essential or important relationship to the claim for relief" and were likely to "cast a cruelly derogatory light" on defendants). Moreover, the events leading up to the Consent Decree occurred from 2013 to 2015, years before any of the events Terpin alleges. Compl., Ex. A at 74-75.

Further, the Consent Decree constitutes a final settlement agreement between AT&T and the FCC, which expressly states that it shall not be used as evidence in actions that do not enforce the Consent Decree, such as the instant litigation. Compl., Ex. A at 76 ("It is the intent of the Parties that this Consent Decree shall not be used as evidence or precedent in any action or proceeding, except in an action to enforce the Consent Decree.") Moreover, courts use Rule 12(f) to strike allegations that detail settlement negotiations as falling within the ambit of Federal Rule of Evidence 408. *See, e.g.*, *Drop Stop LLC v. Jian Qing Zhu*, 2017 WL 3452990, at *4 (C.D. Cal. June 20, 2017) (granting motion to strike portions of pleading based on confidential settlement negotiations);

*Robert H. Peterson Co. v. Tinsley*, 2010 WL 11601229, at *2 (C.D. Cal. Nov. 12, 2010) (striking references to settlement discussions in pleading); *Ogundele v. Girl Scouts-Ariz. Cactus Pine Council, Inc.*, 2011 WL 1770784, at *8-9 (D. Ariz. May 10, 2011) (striking settlement documents containing settlement communications or negotiations as exhibits to complaint under Rule 12(f) because they were immaterial); *see also Jones v. Metro. Life Ins. Co.*, 2010 WL 4055928, at *14 (N.D. Cal. Oct. 15, 2010) (analogizing to Rule 12(f) in striking portions of case management document because "contents of settlement discussions would otherwise be inadmissible under Federal Rule of Evidence 408 and are therefore immaterial and potentially prejudicial").  In addition, settlement agreements can be stricken under Federal Rule of Civil Procedure 12(f).  *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . can not [sic] be used as evidence in subsequent litigation between that corporation and another party").  Similarly here, Terpin should not be permitted to add extraneous allegations of a settlement agreement between AT&T and the federal government that has no relevance to him or his claims.

  **2. AT&T Will Be Significantly Prejudiced If the Allegations Regarding the FCC Consent Decree Remain**

Given their lack of relevance to the claims at issue, Terpin's allegations regarding the Consent Decree are prejudicial to AT&T in this action.

If the allegations related to the Consent Decree remain in the Complaint, they will needlessly confuse and complicate the issues and create unnecessary burden for AT&T in defending against Plaintiffs' sixteen existing claims.  For example, by bootstrapping his claims to the issues presented in the Consent Decree, Plaintiff has attempted to suggest that they are related and presumably part of a pattern of supposed bad conduct on the part of AT&T.  This is Terpin's transparent attempt to paint AT&T in a negative light based on unrelated allegations.  *See Merritt*, 2015 WL 5542992, at *13 (striking unrelated allegations because only purpose was "to cast [defendants] in a bad light").

In addition, bootstrapping the Consent Decree allegations to Terpin's claims will likely require the parties and the Court to needlessly expend resources on these irrelevant issues. It is likely that Terpin will attempt to propound overbroad and burdensome discovery requests related to the Consent Decree, which could span several years and include numerous witnesses and locations outside of this country, given that the FCC investigation leading to the Consent Decree focused on activity in call centers in Mexico, Colombia, and the Philippines over a period of several years before the events alleged in Terpin's Complaint. If Terpin were to propound such improper discovery, AT&T would object, which would likely result in unnecessary motion practice focused on litigating the relevance of the Consent Decree. This will lead to increased costs in time and resources not only for the parties, but also for the Court. *See Bolick v. Pasionek*, 2011 WL 742237, at *3 (D. Nev. Feb. 24, 2011) (granting motion to strike allegations that were "too remote from the substance of the underlying litigation to outweigh the prejudice" in part because court was "cautious of transparent attempts to prolong litigation" and "open up spurious discovery issues").

And if this case goes to trial with these superfluous allegations, the jury will likely draw unwarranted inferences that will unfairly prejudice AT&T. This compounding prejudice from such an extraneous subject compels an order striking the allegations. *See Fantasy, Inc.*, 984 F.2d at 1528 (upholding the striking of immaterial allegations unrelated to copyright claim that "would have unnecessarily complicated the trial of the copyright claim by requiring the introduction of extensive evidence of the tax plan agreements and a mass of related documents, potentially adding weeks to the trial"); *see also Survivor Prods. LLC v. Fox Broad. Co.*, 2001 WL 35829270, at *6 (C.D. Cal. June 12, 2001) (granting motion to strike allegations in pleading that had "no possible bearing on the issues before the Court" because "permitting such allegations to be developed at trial [would] simply distract from the core issue of copyright infringement" and "needlessly complicate the proceedings").

## V. Conclusion

The Complaint's allegations regarding the Consent Decree have no relevance to any issue in this case and therefore are impertinent and immaterial allegations under Rule 12(f). Accordingly, AT&T respectfully requests that the Court strike all of the foregoing allegations from the Complaint.

Dated: October 22, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Marcellus A. McRae*
Marcellus A. McRae

Attorney for Defendant
AT&T MOBILITY LLC