1   PIERCE O'DONNELL (SBN 081298)
    PODonnell@GreenbergGlusker.com
2   TIMOTHY J. TOOHEY (SBN 140117)
    TToohey@GreenbergGlusker.com
3   PAUL BLECHNER (SBN159514)
    PBlechner@GreenbergGlusker.com
4   GREENBERG GLUSKER FIELDS CLAMAN &
    MACHTINGER LLP
5   1900 Avenue of the Stars, 21st Floor
    Los Angeles, California 90067-4590
6   Telephone:  310.553.3610
    Fax:  310.553.0687
7
    Attorneys for Plaintiff
8   MICHAEL TERPIN

9
                    UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11
                         WESTERN DIVISION
12

13
    MICHAEL TERPIN,                 Case No.  2:18-cv-06975-ODW-KS
14
                  Plaintiff,        **PLAINTIFF'S OPPOSITION TO**
15                                  **THE MOTION TO STRIKE**
    v.                              **PORTIONS OF THE COMPLAINT**
16                                  **OF DEFENDANT AT&T**
    AT&T MOBILITY, LLC; and DOES    **MOBILITY, LLC.**
17  1-25,
                                    [Fed. R. Civ. Proc. 12(b)(6)
18                Defendants.
                                    Assigned To:
19                                  Honorable Otis D. Wright II

20                                  Hearing:  December 3, 2018
                                    Time:  1:30 p.m.
21                                  Dept./Place:  350 West 1st Street, 5th
                                              Floor, Courtroom 5D, Los
22                                            Angeles, CA 90012

23

24

25

26

27

28

*(left margin vertical text)* GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP  1900 Avenue of the Stars, 21st Floor  Los Angeles, California 90067-4590

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................. 1

II.    ARGUMENT ................................................................................... 1

     A.      Motions to Strike Are Disfavored and Must Be Denied If There Is Any Doubt that the Challenged Allegations Might Be Relevant ........................................................................................... 1

     B.      The Consent Decree Is Highly Relevant to this Action ....................... 2

         1.      The Consent Decree applies directly, and, in any event, it would be premature to resolve this issue on the pleadings without discovery ........................................................................ 2

         2.      Even if the Consent Decree does not apply directly to SIM swaps, it is still relevant ............................................. 6

     C.      Defendant's Remaining Arguments Are Without Merit. ................... 10

III.   CONCLUSION ............................................................................... 13

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO STRIKE

83764-00002/3096142.5

# TABLE OF AUTHORITIES

**Page**

CASES

*Colaprico v. Sun Microsystems, Inc.*,
    758 F.Supp. 1335 (N.D. Cal.1991) ...................................................................1

*In re 2TheMart.com, Inc. Sec. Lit.*,
    114 F.Supp.2d 955 (C.D.Cal.2000) ..........................................................1, 6, 10

*In re Long Distance Telecommunications Litig.*,
    831 F.2d 627 (6th Cir. 1987)............................................................................3

*North County Communications Corp. v. California Catalog & Technology*,
    594 F.3d 1149 (9th Cir. 2010)..........................................................................3

*Oracle America, Inc. v. Micron Technology, Inc.*,
    817 F.Supp.2d 1128 (N.D. Cal. 2011) ...............................................................1

*Riley v. California*,
    134 S.Ct. 2473 (2014) ......................................................................................5

*United States v. Gilbert*,
    668 F.2d 94 (2d Cir. 1981) ..............................................................................11

STATUTES

Federal Communications Act Section 222.............................................3, 4, 6, 7, 8

OTHER AUTHORITIES

*In the Matter of Cox Communications, Inc.,* 30 FCC Rcd. 12302 (2015) ................3, 4

Federal Rules of Evidence, Rule 108.................................................................11

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

ii                    OPPOSITION TO MOTION TO STRIKE

# I.    INTRODUCTION

Defendant AT&T Mobility, LLC ("Defendant" or "AT&T") has moved to strike all references to the Federal Communications Commission's April 8, 2015 Consent Decree with AT&T ("Consent Decree") (Exhibit A to the Complaint). This highly disfavored motion borders on frivolous for numerous reasons discussed below.  Suffice it to say, with its origins in violations of the very statutory provisions that protect the security of the same personal information that is at issue in this lawsuit, the Consent Decree forms a highly relevant basis for Plaintiff's claims against Defendant for facilitating and enabling the unlawful disclosure of his personal and private information to hackers who then used it to steal $24 million of his cryptocurrency.  AT&T was given guidelines, and agreed to them, and publicly promoted that it had done so to promote safety.  That is the essence of the Consent Decree.  Under such circumstances, there is no doubt that the Consent Decree should and will loom large in this case notwithstanding any legal technicalities that AT&T now wants to raise to avoid responsibility for its lax procedures.

# II.    ARGUMENT

## A.    Motions to Strike Are Disfavored and Must Be Denied If There Is Any Doubt that the Challenged Allegations Might Be Relevant

"Motions to strike are not favored…." *Oracle America, Inc. v. Micron Technology, Inc.*, 817 F.Supp.2d 1128, 1131 (N.D. Cal. 2011).  They "should not be granted unless it is clear that the matter to be stricken could have *no possible bearing* on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal.1991) (emphasis added).

When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec. Lit.*, 114 F.Supp.2d 955, 965 (C.D.Cal.2000).  A court must deny the motion to strike "[i]f there is *any doubt* whether the allegations might be an issue in the action." *Id.*

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   (emphasis in original) (denying motion after concluding that "an element of doubt

2   exists as to whether the allegations in question may be at issue as the action

3   progresses").

4          As discussed in more detail below, Defendant's misguided attempt to strike

5   references in the Complaint to the Consent Decree does not come remotely close to

6   meeting the extremely high standard required to strike this portion of the

7   Complaint.  Indeed, the circumstances under which Defendant entered into the

8   Consent Decree, the Consent Decree's numerous mandates, AT&T's failure to

9   comply in several particulars, and the similar circumstances here put the Consent

10  Decree at the core of this case.

11

12          **B.      The Consent Decree Is Highly Relevant to this Action**

13                1.      **The Consent Decree applies directly, and, in any event, it**

14                        **would be premature to resolve this issue on the pleadings**

15                        **without discovery**.

16          Defendant erroneously asserts that the Consent Decree does not apply to the

17  information misappropriated by a SIM swap.  Not surprisingly, AT&T takes an

18  improperly narrow view of the potential relevance of the Consent Decree to this

19  proceeding.  In fact, the Consent Decree is manifestly pertinent here.

20          Preliminarily, Defendant improperly asks the Court to rule at this stage on

21  the pleadings and without any discovery to strike all references to the Consent

22  Decree on the ground that Defendant's actions or inactions here are purportedly not

23  covered by the Consent Decree.  Defendant's motion should be rejected because it

24  is predicated on an extremely narrow and hyper-technical view of the Consent

25  Decree's scope and applicability.  In essence, AT&T is looking at the Consent

26  Decree through the wrong end of the telescope.

27          The Court should reject Defendant's crabbed view of the Consent Decree,

28  which was imposed by AT&T's primary regulator—the Federal Communications

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Agency—because AT&T was found to have unlawfully turned over the personal information of its customers to third parties.  Not only does the Consent Decree rest on Section 222 of the Federal Communications Act ("FCA"), which forms the basis of Plaintiff's Second Claim for Relief, but it also focuses on the same categories of personal information at issue in this case.  This includes consumer proprietary information ("CPI"), consumer proprietary network information ("CPNI") and personal information, which are collectively defined in the Consent Decree and the Complaint to include information that was compromised in Mr. Terpin's SIM swap fraud.  *See* Complaint Exh. A, p. 73; Complaint ¶¶ 24-31, 46, 105; *see also In the Matter of Cox Communications, Inc. ("Cox Communications")*, 30 FCC Rcd. 12302 (2015).[1]

Importantly, as the agency primarily responsible for interpreting, implementing, and enforcing the FCA, judicial deference to the FCC's interpretation of the FCA is essential.  *See, e.g., North County Communications Corp. v. California Catalog & Technology*, 594 F.3d 1149, 1158 (9th Cir. 2010) ("[I]nterpretation of a finely-tuned regulatory scheme [should not be placed] squarely in the hands of . . . some 700 federal district judges, instead of in the hands of the [Federal Communications] Commission.") (*citing Greene v. Sprint Commc'ns Co.*, 340 F.3d 1047, 1053 (9th Cir.2003) (*quoting Conboy v. AT&T Corp.*, 241 F.3d 242, 253 (2d Cir.2001)); *see also In re Long Distance Telecommunications Litig.*, 831 F.2d 627, 631 (6th Cir. 1987).

"Congress created the FCC to enforce the Communications Act. The Supreme Court's opinions have repeatedly emphasized that the FCC's judgment regarding how the public interest is best served is entitled to substantial judicial deference.") (*quoting FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981)) (alteration and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

---

[1] For the convenience of the Court, a copy of *In re Cox Communications* is attached as an Exhibit to the concurrently filed opposition to the Motion to Dismiss.

1  internal quotation marks omitted).”

2  *North County Communications Corp*., 594 F.3d at 1155.

3       Given the discretion that must be afforded the FCC, it defies credulity that

4  AT&T now argues that the Consent Decree has no relevance to this proceeding.

5  Not only is it a roadmap of how the FCC interprets Section 222 in the specific

6  context of AT&T and a clear statement of minimum guidelines for AT&T to follow

7  moving forward, but AT&T specifically agreed to the provisions in the Consent

8  Decree for protecting its customer's personal and proprietary information.

9       Further, to the extent Defendant continues to advance the erroneous

10  argument that a SIM swap does not involve CPI, CPNI, or other personal

11  information, the FCC has said otherwise in a separate Consent Decree, this one

12  addressing "pretexting."  *See Cox Communications*, 30 FCC Rcd. 12307 (Consent

13  Decree at Section II ¶ 4) (FCC "has interpreted Section 222(a) as applying to

14  customer 'proprietary information' that does not fit within the statutory definition

15  of CPNI") (emphasis added).  Pretexting, which is also alleged and referenced in

16  the Complaint, involves hackers gaining access to customer's accounts and, thus,

17  access to personal information, CPI and CPNI.  *See* Opposition to Motion to

18  Dismiss at Section II.C.  In other words, Plaintiff is accusing AT&T of violating the

19  Consent Decree by allowing, assisting, and enabling the hackers here to engage in

20  pretexting.  See Complaint ¶¶ 29-31, 108, 114, 194.  As discussed in *Cox*

21  *Communications*, this direct line connection between pretexting and CPI, CPNI,

22  and personal information further demonstrates relevance of the Consent Decree to

23  this proceeding.  And, as above, it is essential that judicial deference be afforded to

24  the FCC's interpretation on these issues, in this instance as set forth in *Cox*

25  *Communications*.

26       Here, AT&T voluntarily accepted the Consent Decree in a proceeding where

27  AT&T employees had illegally granted access to customer's private information.

28  *See* Complaint ¶¶ 32-44; Complaint Exh. A, p. 71.  The agency responsible for

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

interpreting and enforcing the laws set out the law in the form of minimum guidelines with which AT&T would comply, and AT&T agreed to protect private information as set forth and defined in the Consent Decree.  Accordingly, it ill suits Defendant to challenge the Consent Decree's applicability to the very same type of Plaintiff's private information ordered to be protected in the Consent Decree whose relevance here is indisputable.

As a result, the Consent Decree and similar FCC orders are relevant (and entitled to substantial deference) because they evidence the FCC's interpretation of the obligations of AT&T and other telecommunications providers with respect to protecting their customers' personal and private information.  Such protection is all the more important in an era where mobile telephones act not just as communication devices but as computers that provide access to a wide range of sensitive personal and financial information, and Plaintiff can easily add allegations of such self-evident principles if necessary.  *See, e.g., Riley v. California*, 134 S.Ct. 2473, 2489 (2014) ("The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that happen to have the capacity to be used as a telephone.").  The Consent Decree's relevance is further demonstrated by the fact that the decree's definition of "Personal Information" cited by Defendant includes a password that would permit access to an individual's financial account.  Complaint, Exh. A, p. 73 (subsection (s)).

For AT&T to assert that the Consent Decree is irrelevant to this case because the means of the unauthorized access to personal information was different, *i.e.*, SIM swap as opposed to hacking of unlock codes, exalts form over substance and ignores the Consent Decree's mandate that AT&T protect Personal Information, CPI, and CPNI against unauthorized access.  For example, given the role that mobile phones play in two factor authentication of account access, is there any substantive difference in providing hackers direct access to "Personal Information," such as a password to an account, as opposed to giving hackers access to the same

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   information through SIM swap fraud?  By facilitating SIM swap fraud, AT&T

2   allows hackers to gain direct access to accounts by intercepting the text messages

3   that allow them to change the passwords on the account—passwords that AT&T

4   admits are "Personal Information" covered by the Consent Decree.

5        For these reasons, it would be improper at the pleading stage to preclude

6   reference to the Consent Decree because "an element of doubt" surely exists

7   regarding its relevance to this proceeding.  *In re 2TheMart.com, Inc. Sec. Lit.*, 114

8   F.Supp.2d at 965.  Discovery will reveal evidence that will enable the Court to

9   make an informed judgment about the Consent Decree's relevance here.  For now,

10  however, reference to it should not be purged from the Complaint.

12              2.    **Even if the Consent Decree does not apply directly to SIM**

13                    **swaps, it is still relevant**.

14       Even if the Consent Decree does not apply directly to SIM swaps, it would

15  still be relevant to this action because it provides notice that relates to

16  foreseeability, it establishes a roadmap of a minimum standard of care that should

17  and would apply here, and, as noted above, it evidences the FCC's interpretation of

18  the FCA.

19       As alleged in the Complaint, the FCC investigation found that Defendant's

20  employees had been paid by criminals to hand over customers' information,

21  Complaint ¶ 34, Defendant's employees had used their login credentials to access

22  confidential information, Complaint ¶ 35, and Defendant had not properly

23  supervised its employees' access to its customers' information.  *Id.* ¶ 36.  The

24  similarities to the instant situation are significant.  Here, an employee is alleged to

25  been complicit and to have cooperated with the hackers by delivering Plaintiff's

26  wireless number and was not properly screened during hiring or properly

27  supervised on the job.  *See, e.g., id.* ¶¶ 71,74, 75.  It is certainly a proper inference

28  if Defendant has *any* security that the employee(s) in question could not have done

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

any of this without using login credentials.  Certainly, the express and implicit facts and inferences drawn from the Consent Decree about prior incidents, Defendant's awareness of them, and Defendant's response to them may potentially relate to the issues of notice and foreseeability, particularly given the mandate in the Consent Decree that Defendant "identify and respond to emerging risks or threats, and to comply with the requirements of Section 222 of the [FCA], the CPNI Rules, and this Consent Decree."  Complaint ¶ 42.  Especially with Defendant making arguments that seek to claim that what happened was not foreseeable, *see* Motion to Dismiss at Section IV, A; Opposition to Motion to Dismiss at Section II.A., Defendant cannot legitimately seek to preclude reference to the Consent Decree at the pleading stage.

Similarly, the Consent Decree provides for (i) the designation of a Compliance Officer, who will be responsible for developing, implementing, and administering the Compliance Plan and ensuring compliance with it, Complaint ¶ 39, (ii) a Compliance Plan that includes a Risk Assessment, Information Security Program, Ongoing Monitoring and Improvement, and Compliance Review, *id.* ¶ 40, (iii) an Information Security Program that is "reasonably designed to protect CPNI and Personal Information from unauthorized access, use, or disclosure by Covered Employees…," *id.* ¶ 41, and (iv) Defendant's monitoring of "its Information Security Program on an ongoing basis to ensure that it is operating in a manner reasonably calculated to control the risks identified through the Risk Assessment, *to identify and respond to emerging risks or threats*, and to comply with the requires of Section 222 of the [FCA], the CPNI Rules, and this Consent Decree."  *Id.* ¶ 42 (emphasis added).

Is it Defendant's position that the Compliance Officer narrowly and carefully implemented a Compliance Plan, Risk Assessment, an Information Security Program, Ongoing Monitoring and Improvement, and Compliance Review in a manner that excluded Defendant's retail stores?  It would be extraordinary in its

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

own way to learn that Defendant only implemented such practices and policies for a portion of its business and not for other parts that carry similar if not identical risks. It would similarly be highly relevant to learn whether the practices and policies, once adopted for the Consent Decree, were or were not adopted across a broader internal spectrum, and, if not, how the practices and policies differed. Certainly one scenario is that the Consent Decree establishes a minimum standard of duty as to security, and it would seem highly relevant if Defendant elected to proceed below those minimum standards.

Indeed, as emphasized above, one of the obligations imposed on Defendant by the Consent Decree was "to identify and respond to emerging risks or threats." Significantly, this obligation clarifies that the obligations extend beyond those specifically identified in the Consent Decree and reaches other emerging threats. As such, the Consent Decree imposed an ongoing burden on AT&T to consider new risks and threats. It will be highly relevant to hear what steps Defendant has undertaken as a result of this obligation, and how such steps informed Defendant about the risks relating to two-factor authentication that may have played a role in the events relating to Plaintiff's situation. As above, is it Defendant's position that it can keep blinders on its Compliance Officer so as to not consider such information as it relates to the practices and procedures of its retail stores?

Next, the Consent Decree clarified that it applied to "Covered Employees," defined as employees and agents with access to, use, or disclosure of personal information at Call Centers operated by Defendant or its contractors, Complaint ¶ 38, "Vendors", i.e., a third-party operating or managing a call center on behalf of Defendant, and "Covered Vendor Employees", *i.e.*, the employees and agents of a Vendor. *See* Complaint at Exh. A, p. 73 (subsections (k) and (u)). The Consent Decree further required Defendant to "establish and implement a Compliance Training Program [for employees] on compliance with Section 222, the CPNI Rules, and the Operating Procedures" and to train all "Covered Employees" within

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

six months of hire and periodically thereafter.  Complaint ¶ 42.  The Consent

Decree further imposed numerous requirements on Defendant to improve its

supervision of employees and to adhere to its legal obligations to protect the

privacy of Defendant's customers.  Complaint ¶ 38.

As to the training and supervision of employees, is it really Defendant's

position that technical compliance with the Consent Decree is the applicable

standard?  Does Defendant truly contend that it need only train employees

specifically covered by the Consent Decree while it allows other employees access

to identical information with no or different training?   If so, surely it is highly

relevant to consider the training being offered to some but not all of Defendant's

employees.  Similarly, Defendant apparently agreed for purposes of the Consent

Decree that it needed to address Vendors and Covered Vendor Employees as well

as its own employees.  Such a result seems obvious when Defendant is allowing

such Vendors and its employees access to Defendant's records.  Yet, in footnote 4

of the Motion to Dismiss, Defendant volunteers the alleged factual assertion that the

employee in the AT&T store in Norwich, Connecticut who sent Plaintiff's wireless

number to an imposter was never an employee of Defendant but instead was an

employee of Spring Communications Holding, Inc., an independent contractor of

Defendant.  Motion to Dismiss at p.3, fn.4.  If Defendant wants to argue that it is

not responsible for the actions of employees of independent contractors in stores

identified only as an AT&T retail outlet while a similarly situated person would be

a "Covered Employee" under the Consent Decree, that determination is highly

relevant.

The list of such examples is lengthy, if not endless.  Even if the Consent

Decree does not technically apply, the Consent Decree establishes a list of practices

and procedures that were supposed to have been adopted, and Defendant may fairly

be required to explain why it adopted lower standards for the retail stores, if such is

the case.  What steps were taken to address the risk of employees accepting a bribe

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

to the detriment of a customer?  What steps were taken during the hiring process to identify employees with criminal background histories or other potentially disqualifying facts?  What steps were taken to supervise lower level employees who may be more susceptible to such bribes?  What steps were taken to preclude an individual employee from acting on his or her own in such situations without a supervisor's approval?  What steps were taken if and when, as suggested in footnote 4 of Defendant's Motion to Dismiss, independent contractors are being given the unfettered ability to conduct a SIM swap without any subsequent involvement or approval by Defendant?  And so on.

Even if the Consent Decree does not directly apply, the jury has the right to hear about the differences in Defendant's policies and practices and to hear Defendant's reasons, justifiable or not, for this lowered standard of care.

For all of these reasons, the Consent Decree is highly relevant and it would be highly premature to address these issues at the pleading stage.  As such, Defendant cannot satisfy the extremely highly standard that applies to this disfavored procedure of showing, after taking the pleading in a light most favorable to Plaintiff, that the Court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action.  *In re 2TheMart.com, Inc. Sec. Lit.*, 114 F.Supp.2d at 965 (denying motion to strike portions of complaint that made reference to past activities of defendants and circumstances of their separation from auditors).  Each of the cases cited by Defendant concluded that the information subject to the motion to strike were irrelevant, immaterial, and/or impertinent.  No such finding can possibly be made here.

## C.    Defendant's Remaining Arguments Are Without Merit.

Defendant argues that reference to the Consent Decree must be struck on the grounds that it is a settlement agreement and thus not relevant.  As shown above,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

however, the Consent Decree is relevant in numerous respects. It is a decree issued by the FCC, publicly available for all to see. As such, it is not the typical settlement agreement by any stretch of the imagination. Further, and in any event, the rule limiting references to settlement negotiations is limited to efforts to use such statement to prove the underlying claim. See Federal Rules of Evidence, Rule 108. There are numerous proper and recognized uses of settlement communications such that there is no absolute bar precluding reference to a settlement agreement or a consent decree. Here, for example, even if the Consent Decree is treated as a settlement agreement, it is both proper and appropriate to reference the Consent Decree for accepted purposes of notice, foreseeability, and for the establishment of certain minimum standards of care in connection with future security for customers. *See, e.g., United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) (holding that the district court correctly "admitted into evidence an earlier SEC civil consent decree" because it showed that the defendant "knew of the SEC reporting requirements involved in the decree").

Moreover, and unlike the typical settlement agreement that may be confidential, Defendant's public statements effectively applauded the Consent Decree's entry as Defendant announced that it had changed its policies and strengthened its operations. For example, following entry of the Consent Decree, a spokesperson for Defendant was quoted as follows:

> "Protecting customer privacy is critical to us. We hold ourselves and our vendors to a high standard. Unfortunately, a few of our vendors did not meet that standard and we are terminating vendor sites as appropriate. We've changed our policies and strengthened our operations. And we have, or are, reaching out to affected customers to provide additional information."

*See* https://arstechnica.com/tech-policy/2015/04/att-fined-25-million-after-call-center-employees-stole-customers-data/.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Defendant not only agreed to the Consent Decree but publicly applauded it.

2  When Defendant is speaking publicly about the situation as part of its public

3  relations "spin" and making assurances and promises in the marketplace about the

4  changes that it is making to its policies to strengthen its operations, the Consent

5  Decree surely loses any special protections to which it might be entitled as a

6  "settlement agreement."  Put simply, Plaintiff is entitled to hold Defendant to the

7  commitments that it agreed to undertake in the Consent Decree, and to show if and

8  where Defendant failed to meet those agreed standards.

9    The balance of the concerns raised by Defendant are similarly premised on

10  the erroneous assertion that the Consent Decree has no relevance.  As such, they

11  must be summarily rejected.  Moreover, Defendant's claims of prejudice as to the

12  potential uses of the Consent Decree are speculative and not appropriately dealt

13  with at this time.

14    As shown above, Plaintiff has presented numerous legitimate bases pursuant

15  to which the Consent Decree may be properly considered in this action.  This is

16  clearly not the situation claimed by Defendant where the only purpose of its use is

17  to the paint Defendant in a "bad light."  Quite simply, that is not the purpose for

18  which Plaintiff will use the Consent Decree.

19    Similarly, should Plaintiff engage in discovery that Defendant contends is

20  overbroad or burdensome, Defendant would not be without remedy at that time.

21  Defendant would no doubt raise those issues at that time, and, if unresolved by the

22  parties, bring them to the Court for resolution.  In any event, and particularly where

23  Defendant would have a remedy, there is no basis for assuming that discovery will

24  be overbroad.

25    Likewise, any concerns that Defendant may raise about unwarranted

26  inferences at trial are properly dealt with then, at the time of trial.  There is no

27  reason to speculate at this point as to what those issues might be, whether or not

28  they are appropriate, and how to address them.  Such concerns are, simply,

1    prematurely raised at this point.

2          Plaintiff has shown multiple ways in which the Consent Decree may be

3    relevant to this proceeding.  Under such circumstances, it would be error to strike

4    the allegations at this time.

5

6    **III.    CONCLUSION**

7          For the foregoing reasons, Defendant's Motion to Strike should be denied.

8

9

10   DATED:  November 5, 2018              GREENBERG GLUSKER FIELDS
                                           CLAMAN & MACHTINGER LLP

11

12                                          By: /s/ Pierce O'Donnell
                                               _____
13                                             PIERCE O'DONNELL (SBN 081298)
                                               Attorneys for Plaintiff MICHAEL
14                                             TERPIN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590