1   PIERCE O'DONNELL (SBN 081298)
     PODonnell@GreenbergGlusker.com
2   TIMOTHY J. TOOHEY (SBN 140117)
     TToohey@GreenbergGlusker.com
3   PAUL BLECHNER (SBN159514)
     PBlechner@GreenbergGlusker.com
4   GREENBERG GLUSKER FIELDS CLAMAN &
     MACHTINGER LLP
5   1900 Avenue of the Stars, 21st Floor
     Los Angeles, California 90067-4590
6   Telephone: 310.553.3610
     Fax: 310.553.0687
7
8   Attorneys for Plaintiff
     MICHAEL TERPIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL TERPIN,<br><br>       Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC; and DOES 1-25,<br><br>       Defendants. | Case No. 2:18-cv-06975-ODW-KS<br><br>**PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT OF DEFENDANT AT&T MOBILITY, LLC.**<br><br>[Fed. R. Civ. Proc. 12(b)(6)]<br><br>Assigned To:<br>Honorable Otis D. Wright II<br><br>Hearing: December 3, 2018<br>Time: 1:30 p.m.<br>Dept./Place: 350 West 1st Street, 5th Floor, Courtroom 5D, Los Angeles, CA 90012 |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................ 1

    A.   Terpin Has Appropriately Alleged Causation for His Claims .............. 1

    B.   Claim 1 Properly Alleges Declaratory Relief ...................................... 4

    C.   Claim 2 Properly Alleges Theft of Customer Proprietary Information and Customer Proprietary Network Information............. 8

    D.   Claim 3 (Cal. Penal Code § 502) is Properly Plead........................... 11

    E.   Claims 3-7 and 16 are Properly Plead Because Mr. Terpin Is Resident in California and AT&T's Actions Affected Him Here...... 12

    F.   In Claims 4, 5 and 6, Plaintiff Has Plead Entitlement to Relief under the California UCL. .................................................................. 14

    G.   The CLRA Claim Has Been Properly Plead......................................... 15

        1.   Plaintiff complied with the CLRA Notice and Demand Requirements. ...................................................................... 15

        2.   Plaintiff Has Complied with Other CLRA Requirements........ 15

    H.   Plaintiff Has Properly Plead Deceit By Concealment. .......................... 17

        1.   AT&T had a duty to speak. ..................................................... 17

        2.   Plaintiff Has Properly Plead Reliance. .................................... 18

    I.   Plaintiff Has Adequately Plead A Claim For Misrepresentation. ....... 19

    J.   Plaintiff's Fraud and Negligence Claims Are Not Barred by the Economic Loss Doctrine............................................................. 19

    K.   Plaintiff Has Adequately Plead Breach of Implied Contract............. 21

    L.   Plaintiff has Adequately Alleged a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. .......................... 21

    M.   The Customer Records Act Claim Is Properly Alleged..................... 22

    N.   The Punitive Damages Claim Should Not Be Stricken. ..................... 23

        1.   Plaintiff has adequately plead he is entitled to punitive damages. .............................................................................. 23

        2.   Punitive Damages are Proper for Claims 10-12, and 15-16. ............................................................................................ 25

III.  CONCLUSION ....................................................................................... 25

OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

*Aetna v. Haworth*,
   300 U.S. 227 (1937) ...................................................................... 5

*Ash v. N. Am. Title Co.*,
   223 Cal. App. 4th 1258 (2014) ..................................................... 1

*AT&T Mobility v. Concepcion*,
   463 U.S. 333 (2011) ................................................................ 5, 12

*Campodonico v. State Auto Parks, Inc.*,
   10 Cal. App. 3d 803 (1970) ........................................................... 2

*Chanda v. Federal Home Loans Corp.*,
   215 Cal. App. 4th 746 (2013) ....................................................... 2

*City of Colton v. Am. Promotional Events, Inc.-W.*,
   614 F.3d 998 (9th Cir. 2010) ....................................................... 5

*ExxonMobil Oil Corporation v. Southern California Edison Co.*,
   2013 WL 12166214 (C.D.Cal. 2013) ........................................ 24

*Fairbanks v. Super. Ct.*,
   46 Cal. 4th 56 (2009) .................................................................. 16

*Farrar v. Direct Commerce, Inc.*,
   9 Cal. App. 5th 1257, 1274 (2017) .............................................. 6

*Ferrington v. McAfee, Inc.*,
   2010 WL 3910169 (N.D.Cal. Oct 5, 2010) ............................... 16

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
   771 F.2d 1119 (9th Cir. 2014) ................................................... 14

*Greene v. Sprint Communications Co.*,
   340 F.2d 1047 (9th Cir. 2003) ..................................................... 9

*Grigsby v. Universal Foods Corp.*,
   999 F.2d 543 (9th Cir. 1993) ..................................................... 21

*Hernandez v. Hilltop Fin. Mortg., Inc.*,
   622 F.Supp.2d 842 (N.D.Cal. 2007) ......................................... 15

*In re Adobe Systems, Inc. Privacy Litigation*,
   66 F.Supp.3d 1197 (N.D.Cal. 2017) ......................................... 17

*In re Coleman*,
   560 F.3d 1000 (9th Cir. 2009) ..................................................... 5

*In re iPhone 4S Consumer Litigation*,
   2013 WL 3829653 (N.D.Cal. 2013) .......................................... 13

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISMISS

*In Re Tobacco II Cases*,
  46 Cal. 4th 298 (2009)......................................................................................... 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  313 F. Supp. 3d 1113 (N.D.Cal. 2018)..........................................................passim

*In re Yahoo! Inc. Customer Data Security Breach Litigation*,
  2017 WL 3727318 (N.D.Cal. 2017)..................................................................... 19

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003)............................................................................... 6

*Isaacs v. Huntington Memorial Hospital*,
  38 Cal. 3d 112 (1985)...................................................................................... 2, 3

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979)......................................................................................... 20

*Jesse v. Malcmacher*,
  2016 WL 9450683 (C.D.Cal. 2016) ...................................................................... 3

*Khan v. 7-Eleven, Inc.*,
  2015 WL 12743691 (C.D.Cal. 2015)................................................................... 24

*Luck v. Southern Pac. Transp.*,
  218 Cal. App. 3d 1 (1990)................................................................................... 21

*Martinez v. Pac. Bell*,
  225 Cal. App. 3d 1557 (2003).............................................................................. 4

*McKinnon v. Dollar Thrifty Automotive Group*,
  2013 WL 791457 (C.D.Cal. 2013)...................................................................... 15

*North American Chemical Co. v. Superior Court*,
  59 Cal. App. 4th 764 (1997)............................................................................... 20

*NuCal Foods, Inc. v. Quality Egg LLC*,
  918 F.Supp. 2d 1023 (E.D.Cal. 2013) ................................................................ 19

*O'Keefe v. Inca Floats, Inc.*,
  1997 WL 703784 (N.D.Cal. 1997)........................................................................ 3

*Palmiotto v. America's Servicing Co.*,
  2012 WL 12868482 (S.D. 2012).......................................................................... 16

*Pareto v. F.D.I.C.*,
  139 F.3d 696 (9th Cir. 1998)................................................................................ 6

*Paterson v. California Dept. of General Services*,
  2008 WL 4737118 (E.D.Cal. 2008) ............................................................... 16, 23

*People v. Schmies*,
  44 Cal. App. 4th 38 (1996)................................................................................... 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

iii

OPPOSITION TO MOTION TO DISMISS

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) ....................................................................... 7

*Progressive Semiconductor Solutions LLC v. Marvell Semiconductor, Inc.*,
   2014 WL 12581783 (C.D.Cal. 2014) ....................................................... 10

*Raulinatis v. Ventura County Sheriff's Department*,
   2014 WL 12685924 (C.D.Cal. 2014) ....................................................... 13

*Riley v. California*,
   134 S.Ct. 2473 (2014) ............................................................................... 11

*Rios v. City of Bakersfield*,
   2011 WL 5554506 (E.D.Cal. 2011) ......................................................... 23

*Rosh v. Cave Imaging Systems, Inc.*,
   26 Cal. App. 4th 1225 (1994) ..................................................................... 2

*Seattle Audubon Soc. v. Moseley*,
   80 F.3d 1401 (9th Cir. 1996) ....................................................................... 4

*Siva v. General Tire & Rubber Co.*,
   146 Cal App. 3d 152 (1983) ..................................................................... 23

*Smith v. Smith*,
   45 Cal. 2d 235 (1955) ............................................................................... 13

*Soule v. General Motors Corp.*,
   8 Cal. 4th 548 (1994) ................................................................................... 2

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ....................................................................... 7

*U.S. ex rel. Innovative Const. Solutions-Norcal v. CH2M Hill Constructors, Inc.*,
   2014 WL 6610999 (E.D.Cal. 2014) ......................................................... 21

*Westlands Water Dist. v. Natural Resources Defense Council, Inc.*,
   276 F. Supp. 2d 1046 (E.D.Cal. 2003) ....................................................... 5

**STATUTES**

47 U.S.C. § 222 ................................................................................... *passim*

Cal. Bus. & Prof. Code § 17203 ................................................................ 14

Cal. Civ. Code §1770 ................................................................................ 15

Cal. Civ. Code § 1798.81.5(b) ................................................................... 22

Cal. Civ. Code § 2338 ............................................................................... 12

Cal. Penal Code § 502 ............................................................................... 11

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

    OPPOSITION TO MOTION TO DISMISS

Cal. Penal Code § 502(b)(2), (4), and (5) ................................................................ 11

**OTHER AUTHORITIES**

*In the Matter of Cox Communications, Inc.*

30 FCC Rcd. 12302 (2015) ..................................................................... 9, 10, 11

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISMISS

## I.    INTRODUCTION

Like its promised cell phone security, the motion to dismiss ("Motion") of Defendant AT&T Mobility, LLC ("Defendant" or "AT&T") is hollow.  Defendant violates a host of fundamental rules governing an attack on the adequacy of a complaint: not accepting as true the well-pled factual allegations of Plaintiff Michael Terpin ("Plaintiff" or "Mr. Terpin"); offering evidence à la a summary judgment motion; ignoring material factual assertions; and resorting to conjecture and bald factual assertions, among others.  And along the way, AT&T ignores governing federal and state law and bowdlerizes inapposite case law.  The motion to dismiss should be denied.

## II.    ARGUMENT

### A.    Terpin Has Appropriately Alleged Causation for His Claims

Defendant incorrectly argues that all of Plaintiff's claims for relief must fail because Plaintiff has not properly alleged causation because the harm was caused by the "'independent intervening acts of others.'"[1]  Motion at 4, quoting *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (2003).  This challenge must fail because AT&T improperly states California law, which clearly holds that foreseeable intervening events do *not* absolve a defendant of tort liability.

As the California Supreme Court has definitively stated, "the defense of 'superseding cause[]' . . . absolves [the original] tortfeasor, even though his conduct *was* a substantial contributing factor, when an independent event [subsequently] intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems in

---

[1] The defense of intervening and superseding cause applies *only* to tort claims and cannot be used as a basis for dismissal of any claims other than Claims 8-12.  *Ash v. N. Am. Title Co.*, 223 Cal. App. 4th 1258, 1274-75 (2014) ("[t]he defense of intervening and superseding cause applies in tort cases.  In contract cases, the defense does not absolve the defendant of liability, although closely related is the principle that if the special damages are not foreseeable and proximately caused by the breach of contract they are not recoverable.")

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

unfair to hold him responsible." *Soule v. General Motors Corp.*, 8 Cal. 4th 548, 573, n. 9 (1994) (emphasis added).  "To determine whether an independent intervening act was reasonably foreseeable, [courts] look to the act and the nature of the harm suffered.  To qualify as a superseding cause to relieve the defendant from liability for the plaintiff's injuries, *both the intervening act and the results of that act must not be foreseeable.  Significantly, 'what is required to be foreseeable is the general character of the event of harm . . . not its precise nature or manner of occurrence.*"  *Chanda v. Federal Home Loans Corp.*, 215 Cal. App. 4th 746, 701 (2013), quoting *Bigbee v. Pacific Tel. & Tel. Co.*, 34 Cal. 3d 49, 57-58 (1983) (emphasis added; additional internal citations omitted).

The California Supreme Court has further held that "[i]t is of *no consequence that the injury to plaintiffs was brought about by the criminal acts of a third person.* 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for the harm caused thereby.'" *Isaacs v. Huntington Memorial Hospital*, 38 Cal. 3d 112, 131 (1985), *quoting* Rest.2d Torts § 449 (emphasis added).  Indeed, a defendant has a *legal duty* to protect against *foreseeable* criminal acts. *Campodonico v. State Auto Parks, Inc.*, 10 Cal. App. 3d 803, 807 (1970) ("Yet it is not the law that one has no duty to protect against foreseeable criminal acts.")

California law also clearly holds that "[w]hether an intervening force is superseding or not generally *presents a question of fact but becomes a matter of law where only one reasonable conclusion may be reached*."  *Chanda*, *supra* (emphasis added); *see also Rosh v. Cave Imaging Systems, Inc.*, 26 Cal. App. 4th 1225, 1236 (1994) (question of whether individual's numerous unauthorized entries onto premises demonstrated defendant's lax security and foreseeability of harm to plaintiff factual question for jury).  It is thus improper for Defendant to seek dismissal of Plaintiff's tort claims on this ground because the foreseeability of the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

conduct is a factual issue that cannot be determined on a motion to dismiss.  *See Isaacs*, 38 Cal. 3d at 135 (jury's determination of foreseeability can be based on "whether the occurrence of prior similar incidents placed the defendant on notice that its security measures were not adequate to prevent harm to persons who use the defendant's [services].")[2]

In this case, AT&T's security measures were put in place to guard against the highly foreseeable and likely act that hackers would actively seek to obtain the personal information of AT&T customers.  The prevalence of hacking is not only highly publicized (and thus generally foreseeable) but was specifically an issue in this case because AT&T is statutorily required to guard against hackers to protect customers' personal information.

Moreover, AT&T was specifically put on notice that Mr. Terpin's account was vulnerable to attack.  The January 7, 2018 SIM swap fraud occurred after Mr. Terpin had been the victim on June 11, 2017 of a prior fraud of precisely that type. Complaint ¶¶ 64-65.  After that fraud had occurred, Mr. Terpin had asked for, and received assurances of, protection from AT&T to guard against future hacks of that type.  *Id.* ¶¶ 66-67.  Plaintiff did not switch to another carrier because AT&T expressly promised Mr. Terpin additional protections, which it assured him would prevent future attacks.  *Id.* ¶¶ 66-69.  Given these facts, it is risible for AT&T to

---

[2] Defendant ignores the significance of the word "independent" in citing to dicta in *O'Keefe v. Inca Floats, Inc.*, 1997 WL 703784, at *4 (N.D.Cal. Oct. 31, 1997), that "*independent* illegal acts of third parties" are "deemed unforeseeable and therefore, the sole proximate cause of the injury which excludes negligence of another as a cause of the injury."  (emphasis added).  An "independent" act is a term of art under California law meaning an act "*so disconnected and unforeseeable* as to be a superseding cause, *i.e.*, in such a case the defendant's act will be a remote and not the proximate cause." *People v. Schmies*, 44 Cal. App. 4th 38, 49 (1996) (emphasis added), *quoting* 1 Witkin & Epstein, Cal. Criminal Law § 130, p. 148.  Plaintiffs' citation in *Jesse v. Malcmacher*, 2016 WL 9450683 (C.D.Cal. 2016), to dicta in *O'Keefe, supra*, that "illegal acts of third parties are unforeseeable as a matter of law" unfortunately omits the key word "independent" signifying that the intervening act itself must be unforeseeable.  This qualifying interpretation of the word "independent" is the only reasoned way to reconcile *O'Keefe* with the settled law cited in these papers.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISMISS

1   claim that there was no direct causal link with its lack of security and that the hacks

2   were so remote and unforeseeable that they broke the chain of causation,

3   particularly because these are classic highly factual issues improperly raised in a

4   motion to dismiss.[3]

5         **B.**    **Claim 1 Properly Alleges Declaratory Relief**

6        Defendant's attack on Claim 1 for Declaratory Relief should be summarily

7   rejected.  Plaintiff has plead that he contends that the Agreement is unenforceable

8   in its entirety, or in the alternative, specific provisions are unenforceable, and that

9   Defendant "undoubtedly disagrees."  Complaint ¶ 97.  Defendant apparently seeks

10  to dismiss this intensely factual claim at the pleading stage without actually stating

11  whether it agrees or disagrees with Plaintiff's contentions.  Plaintiff's calculated

12  equivocation – akin to having your cake and eat it too -- is no basis for dismissal of

13  the claim at the pleading stage.  *See* Motion at 7:21-8:15.

14       Either Defendant agrees or disagrees with Plaintiff's request that the

15  Agreement and several provisions should be found unconscionable—there can be

16  no benign neutrality here.  If it agrees, the Agreement is unenforceable.  On the

17  other hand, if AT&T disagrees, a declaratory relief claim is well taken.

18       Defendant's further contention that the issue is not yet ripe or premature is

19  mystifying.  Again, accepting Plaintiff's allegations as true as required for a motion

20  to dismiss, no basis exists for arguing as a matter of law that the claim is not ripe.

21  There is nothing hypothetical or abstract about the dispute.  *See Seattle Audubon*

22  *Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (declaratory relief action

23

---

24  [3] AT&T's primary authority *Martinez* is not to the contrary because the court found
25  in that premises liability case that defendant Pacific Bell had no liability for an
    assault which occurred on an adjoining parking lot *that it did not own or control*.
26  225 Cal. App. 3d at 1564.  Moreover, the court stated that "[w]hile the [tortious]
    conduct of third persons might have been foreseeable, *defendant's clear lack of*
27  *control made it impossible to have instituted preventative measures*."  (Emphasis
    added.)  *Martinez* is inapposite because AT&T, unlike Pacific Bell, owned or
28  controlled its own (albeit illusory) security systems.  Complaint ¶¶ 48-50, 67.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISMISS

justiciable when there is a substantial controversy between parties with adverse legal interests "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). As alleged in the Complaint, Plaintiff has been harmed in numerous ways by Defendant's actions, is currently asserting claims against AT&T based on such harm, is asserting that the Agreement is unenforceable in its entirety, and alleges that Defendant disagrees with that contention.[4] *See, e.g.*, Complaint ¶¶ 96, 99, 108-109. This is more than sufficient to survive a motion to dismiss.

The cases cited by Defendant on the issue of ripeness in fact *support* Plaintiff because they all recognized that the plaintiff had plead proper declaratory relief claims. *See City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1005 (9th Cir. 2010) (declaratory relief claim ripe even though party may not yet have incurred "recoverable" response costs); *In re Coleman*, 560 F.3d 1000, 1008-09, 1012 (9th Cir. 2009) (undue hardship determination re student loan obligations can be ripe in advance of plan completion in bankruptcy action); *Aetna v. Haworth*, 300 U.S. 227, 242, 244 (1937) (dispute between parties in adverse proceeding relating to obligations under insurance agreement is judiciable controversy; that "the dispute turns upon questions of fact does not withdraw it … from judicial cognizance").[5]

Citing *Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1274 (2017), Defendant improperly seeks to address the merits of the declaratory relief claim at

---

[4] It is a matter of record that AT&T has zealously sought to enforce its highly restrictive consumer agreement, even going so far as to obtain a landmark Supreme Court case overturning California law invalidating class action arbitration waivers. *See AT&T Mobility v. Concepcion*, 463 U.S. 333 (2011).

[5] Defendant's citation to *Westlands Water Dist. v. Natural Resources Defense Council, Inc.*, 276 F. Supp. 2d 1046, 1050-52 (E.D.Cal. 2003), is inapposite because it involved a premature challenge to a proposed administrative action. The matter was not ripe because "the contract over which Westlands sues has not even been executed," the actual terms of the contract are both "contingent future events that may not occur as anticipated, or indeed may not occur at all," and the plaintiff "concedes that the contract terms at issue are "tentative." *Id.* at 1051, 1052. In contrast, the AT&T consumer agreement here is executed, no future contingency must occur, and Plaintiff has an active, contested dispute over the enforceability of the agreement.

OPPOSITION TO MOTION TO DISMISS

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

this pleading stage by claiming (without any factual support) that (1) Plaintiff has failed to allege unconscionability sufficient to invalidate the entire agreement and (2) the unconscionable provision or provisions are severable.[6]  *Farrar* provides utterly no basis for dismissing Plaintiff's declaratory relief claim on a motion to dismiss, particularly because the Complaint's plentiful, detailed allegations are to be accepted as true and all reasonable inferences drawn in favor of Plaintiff.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

Moreover, Defendant raises the issues of unenforceability here in a very different context.  In *Farrar*, *on a motion to compel arbitration*, the parties presented the court with factual evidence regarding numerous matters relating to the unenforceability of the provision, including whether the plaintiff had an opportunity to negotiate the arbitration provision as well as other matters relating to the "commercial setting, purpose and effect" of the contract or contract provision.  *Farrar*, 9 Cal. App. 5th at 1267-1270, *quoting* Cal. Civ. Code §1670.5, Legis. Comm. Comments, n.2.  Based on the evidence presented, the court affirmed the trial court's finding that the arbitration provision was substantively unconscionable because it included a carve-out of trade secret claims.  *Id*. at 1273.  However, the court found that the trial court abused its discretion because the offending portion of the arbitration clause was severable.  *Id*. at 1274-75.

In stark contrast to *Farrar*, Defendant's challenge to Claim 1 is presented on a motion to dismiss, where neither party has had any opportunity to discover or present any evidence, including evidence regarding the context of the contract and provisions at issue.  Moreover, the carve-out of any provisions from the contract

---

[6] Defendant's reliance on *Farrar* fails to acknowledge that, on the issue of severance, the existence of "more than one unlawful provision" is a factor that weighs against severance of unconscionable terms as a means of saving an agreement.  *Farrar*, 9 Cal. App. 5th at 1274. Here, Defendant specifically acknowledges that there are a "handful of allegedly unenforceable provisions" at issue.  Motion at 8:7-10; *see also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir. 2003) (declining to sever unconscionable terms).

here would be premature because Defendant has not advanced any argument or evidence regarding the provisions that it believes are severable.

In contrast to Defendant's strategic silence, which seems calculated to try to get two bites of the judicial apple, Plaintiff has substantiated Claim 1 with more than twenty paragraphs of supporting allegations over eight pages of the Complaint that demonstrate that procedural and substantive unconscionability permeate the core and defeat the entire purpose of the Agreement. *See* Complaint ¶¶ 80-101.[7]

Plaintiff's detailed allegations have raised abundant facts showing that a plethora of contractual terms are procedurally and substantively unconscionable. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.* (*"Yahoo II"*), 313 F. Supp. 3d 1113, 1136-1137 (N.D.Cal. 2018) (holding that plaintiffs had properly alleged sufficient facts regarding procedural and substantive unconscionability sufficient to withstand a motion to dismiss). Given the obligation to read the Complaint in the light most favorable to the nonmoving party, the Court should deny Defendant's attempt to dismiss Claim 1. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court should accept allegations as true and draw all reasonable inferences in favor of Plaintiff).

---

[7] In those allegations, Plaintiff (a) alleges AT&T's consumer contract was a classic adhesion contract presented on a take-it-or-leave-it basis with no ability of Plaintiff to negotiate its terms; (b) alleges that the Agreement contains provisions that would exempt Defendant from liability for its own gross negligence, fraud, and violations of law; (c) cites a provision purporting to exempt Defendant from violation of numerous statutory and other obligations, even, pursuant to its plain language, if Defendant's actions were willful; (d) challenges a provision putatively acting as a waiver of damages and a damages restriction that is plainly unconscionable and against public policy and (e) cites provisions that seek to impose an indemnification obligation on the customer (*i.e.*, Plaintiff) that would require him to indemnify Defendant for intentional acts directed at Plaintiff, as well as an unconscionable arbitration provision. See Complaint ¶¶ 82-83, 85, 87-98.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**C.**     **Claim 2 Properly Alleges Theft of Customer Proprietary Information and Customer Proprietary Network Information**.

In his second claim for relief under Section 222(a) of the Federal Communications Act, Plaintiff alleges that AT&T violated its obligation to protect the confidentiality of customers' proprietary information ("CPI") and customers' proprietary network information ("CPNI") by disclosing such information to hackers on January 7, 2018.  Such information included Mr. Terpin's wireless telephone number, account information and his private and proprietary information that allowed access to his online accounts.  Complaint ¶ 108.

AT&T argues that Claim 2 should be dismissed because the information disclosed was not CPNI under Section 222(a) since it allegedly did not include the "quantity, technical configuration, type, destination, location and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier and that is made available solely by virtue of the carrier-customer relationship."  47 U.S.C. § 222(h)(1).

In arguing that the SIM swap fraud perpetrated on Mr. Terpin did not involve CPNI, AT&T ignores the fact that when hackers obtained access to Mr. Terpin's telephone account, they gained complete and unfettered access to all his telephone calls, text messages, and other online information regarding his use of a telecommunication service.  In an era when a mobile telephone is no longer just a communications device, but a mobile computer,[8] it is hard to fathom a greater privacy violation than having a telephone commandeered by hackers who then not only access but control a customer's communications.[9]

Even more significantly, AT&T ignores the fact that Plaintiff has also alleged that AT&T violated the consumer protections of Section 222(a) of the FCA by

---

[8] *See* Section II(D), *infra*.

[9] Of course, the issues relating to what precise CPNI was accessed by the hackers are factual in nature and not properly raised on a motion to dismiss.

OPPOSITION TO MOTION TO DISMISS

participating in a fraud that allowed hackers to access not only Mr. Terpin's CPNI but also his personal information or customer proprietary information or "CPI." *See* Complaint ¶¶ 23, 29-31, 107-108.  Although Defendant claims that Plaintiff's use of the abbreviation "CPI" is novel, the FCC has frequently held that the scope of privacy protections afforded by Section 222(a) is broader than CPNI.  *See In the Matter of Cox Communications, Inc.* ("*Cox Communications*"), 30 FCC Rcd. 12302, 12307 (2015)[10] (Consent Decree at Section II ¶ 4) (FCC "has interpreted Section 222(a) as applying to customer 'proprietary information' *that does not fit within the statutory definition of CPNI*") (emphasis added).  The FCC's authoritative interpretation of the FCA is entitled to deference because "the FCC is the agency that is primarily responsible for the interpretation and implementation of the Telecommunications Act and its own regulations."  *Greene v. Sprint Communications Co.*, 340 F.2d 1047, 1052 (9th Cir. 2003).

The FCC has further held that "proprietary information [under Section 222(a)] broadly encompasses *all types of information that should not be exposed widely to the public*, whether that information is sensitive for economic or personal privacy reasons and that includes privileged information, trade secrets and personally identifiable information."  *Cox Communications*  as 12307 (emphasis added).  The FCC has broadly defined "personal information" that is protected under Section 222(a) as including "(1) an individual's first name or first initial and last name in combination with any one or more of . . . (C) *account number, credit or debit card number, in combination with any required security code, access code, PIN or password that would permit access to an individual's financial account; or (2) a user name or email address in combination with a password or security question and answer that would permit access to an online account*."  *Id*. at 12306-12307 (Section I ¶ 2(s) (defining "Personal Information")) (emphasis added).

---

[10] For the convenience of the Court, a copy of *Cox Communications* is concurrently submitted as Exhibit "A" to this opposition.

OPPOSITION TO MOTION TO DISMISS

Plaintiff thus uses the term "CPI" in the Complaint to include information that does not explicitly fall within the category of CPNI, including a broad range of nonetheless protected customer proprietary and "Personal Information."[11]

Defendant is further incorrect that Section 222(a) cannot encompass the type of unauthorized access to personal information through SIM swap fraud.  The FCC has frequently interpreted Section 222(a) broadly to protect consumers against compromise of any personal or proprietary information.  For example, the FCC has ruled that telecommunications providers violate Section 222(a) by allowing hackers through the common ploy of "pretexting" to access customers' sensitive information -- including personal information, phone numbers and online accounts. *See* Complaint ¶¶ 29-20 (citing and quoting FCC Pretexting Order); *see also Cox Communications* at 12302-04.

Under the FCC's authoritative precedents, the Complaint alleges that Section 222(a) is applicable to SIM Swap fraud for the reasons provided by the FCC in pretexting cases, including the 2015 Order in *Cox Communications*.  As the FCC stated in that order,

> [i]nadequate security of subscribers' personal information can result in real world consequences for those customers, who are put at risk of financial and digital identity theft.  In the wrong hands, a customer's sensitive personal information could be used to take control of a customer's real accounts, to change the passwords on those accounts, to expose the customer's personal information on the webs, and to harass or embarrass the customer through social media.

*Id.* at 12302.

At this stage of these proceedings, Plaintiff's allegations must be accepted as

---

[11] To the extent that the allegations relating to CPI are not sufficiently explicit, Plaintiff seeks leave to amend the Complaint to further clarify its definition to conform to the usage of such terms by the FCC.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISMISS

true, subject to the development of further facts through discovery. *Progressive Semiconductor Solutions LLC v. Marvell Semiconductor, Inc.*, 2014 WL 12581783 at \*1 (C.D.Cal. 2014) (accepting plaintiff's allegations as true at pleading stage without benefit of discovery) (Wright, J.).

Under FCC precedent, Plaintiff has properly alleged that the information accessed by the hackers through the SIM swap fraud was personal and proprietary information, including CPI and CPNI, under Section 222(a). As the FCC stated in *Cox Communications*, the hackers in Mr. Terpin's case used such information to inflict very substantial "real world" damages on Plaintiff, including financial and digital identity theft" that led to the loss of almost $24 million worth of cryptocurrency. *Cox Communications* at 12302.

### D.    Claim 3 (Cal. Penal Code § 502) is Properly Plead.

In the Complaint, Plaintiff alleges that hackers were able to gain complete control of his mobile telephone to use it to intercept calls and messages and to access files that allowed them to steal his crypto currency. Complaint ¶¶ 71-79, 112-119. Under the applicable definitions[12] in Penal Code § 502, mobile telephones are self-evidently computers and part of a "computer system" or "computer network" because they communicate with one another and allow access to outside networks, such as the Internet, electronic mail, messaging and other services. *See also Riley v. California*, 134 S.Ct. 2473, 2489 (2014) ("The term

---

[12] Cal. Penal Code § 502 defines "computer system" as "a device or collection of devices, including support devices and excluding calculators that are not programmable and *capable of being used in conjunction with external files*, one or more of which contain computer programs, electronic instructions, input data, and output data, *that performs functions*, including but not limited to logic, arithmetic, data storage and *retrieval, communication and control*." "Computer services" are defined as including, but not limited to "computer time, data processing, or storage functions, *Internet functions, electronic mail services, electronic message services, or other uses of a computer, computer system or computer network*." A "computer network" is defined as "any system that provides communications between one or more computer systems and input/output devices, including, but not limited to display terminals, remote systems, *mobile devices*, and printers *connected by telecommunications facilities*." Cal. Penal Code § 502(b)(2), (4), and (5) (emphasis added).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

11                 OPPOSITION TO MOTION TO DISMISS

'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that happen to have the capacity to be used as a telephone.")

Plaintiff also properly alleges that Defendant "knowingly" assisted the hackers in the proscribed acts.  As alleged in the Complaint, Plaintiff informed AT&T that he had been a victim of SIM swap fraud in June 2017.  Complaint ¶¶ 66-70.  AT&T then placed a six-digit code on Mr. Terpin's account to provide additional protection against such an occurrence happening again.  *Id.*  Despite these alleged precautions, Mr. Terpin was again victimized by SIM swap fraud in January 2018.  *Id.*  ¶¶ 71-77.  Moreover, Mr. Terpin has alleged that AT&T employees knowingly participated in the fraud, including bypassing the requirement that anyone seeking access to Mr. Terpin's account have the six-digit code.  *Id.* ¶ 74-77.  Mr. Terpin's allegations that AT&T employees actively participated in the hack are further bolstered by later press and law enforcement statements that employees engaged in similar acts.  *Id.* ¶¶ 52-63.

Plaintiff's allegations regarding Defendant's knowing assistance of the hackers must be taken as true.  The full extent of AT&T's active cooperation with the hackers is a matter for discovery, as is its knowledge of other similar frauds.[13]

### E.   Claims 3-7 and 16 are Properly Plead Because Mr. Terpin Is Resident in California and AT&T's Actions Affected Him Here.

Plaintiff has properly alleged that he owns a residence in California and that his contract with AT&T is governed by California law.  Complaint ¶¶ 1-2. Although Mr. Terpin is indeed domiciled in Puerto Rico, it is clear under California

---

[13] AT&T's extraordinary claim that it may not be liable for the fraud because the employee in question "worked for Spring Communications Holding, Inc., which is an independent contractor of AT&T" lacks factual support and is entirely irrelevant to a motion to dismiss. Motion at 3 n. 4.  Needless to say, even if the unsupported assertion in the footnote is true, Plaintiff vigorously disputes the preposterous claim that AT&T is not liable for the tortious and criminal acts of its contractors (agents)—particularly where, as here, they are alleged to have acted in concert with hackers in that *AT&T* branded stores to avoid the protections *AT&T* placed on an account of an *AT&T* customer.  *See, e.g.*, Cal. Civ. Code § 2338 (principal responsible to third parties for negligent and wrongful acts of agent).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

law that he can claim the remedial benefits of the UCL and CLRA statutes as a California resident and an individual obtaining wireless services from AT&T in this state.

The UCL and CLRA do not specifically define "resident." As the California Supreme Court has concluded, "[r]esidence, as used in the law, is a most elusive and indefinite term." *Smith v. Smith*, 45 Cal. 2d 235, 240 (1955). In some instances, such as in *Smith* itself, "residence" means "domicile," *i.e.,* "the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning." *Id.* at 239. In other cases, "residence" may mean "any factual place of abode of some permanency, more than a mere temporary sojourn." *Id.*

Because the meaning of "residence" is not uniform, "its meaning in any particular statute must be determined by considering the purpose of the act." *Raulinatis v. Ventura County Sheriff's Department*, 2014 WL 12685924 at *12 (C.D.Cal. 2014), *citing Smith* at 240-43. In the case of the UCL and CLRA, which are meant to promote the "larger purpose of protecting the general public against unscrupulous business practices" and which have been held to protect even non-California residents, "residence" must be broadly construed. *In Re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).

Numerous federal courts have held that both California's Unfair Competition Law and Consumer Legal Remedies Act apply even to *non-residents* when the alleged fraudulent activity of the defendant emanated from California. *See In re iPhone 4S Consumer Litigation*, No. C12-1127 CW, 2013 WL 3829653 (N.D.Cal. July 23, 2013). In this case, Plaintiff has alleged a broad course of conduct involving AT&T –not just incidents taking place outside of the state. Plaintiff has further alleged that this conduct (the entire scope of which involved actions extending to California) was directed at Plaintiff, who has a residence in California

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   and who entered into a contract for services with Defendant in California.

2   Complaint at ¶¶ 1-2, 65, 71-76, 128-30, 138-42, 153.  At the pleading stage, these

3   allegations are sufficient to state a claim under the UCL and CLRA.

4   **F.**   **In Claims 4, 5 and 6, Plaintiff Has Plead Entitlement to Relief**

5   **under the California UCL.**

6   Plaintiff has adequately plead the elements of Claims 4-6 under the

7   California UCL.  As Defendant's own authorities demonstrate, Plaintiff may obtain

8   both restitution and injunctive relief under Cal. Bus. & Prof. Code § 17203,

9   including "money or property lost by the plaintiff and acquired by the defendant."

10   *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.2d 1119, 1135 (9th Cir.

11   2014).

12   In the Complaint, Plaintiff alleges that he "lost the benefit of his bargain for

13   his purchased services from AT&T that he would not have paid if he had known the

14   truth regarding AT&T's inadequate data security" and further seeks injunctive

15   relief.  *See* Complaint ¶¶130-131, 143, 154 (seeking "restitution, disgorgement of

16   wrongfully obtained profits, and injunctive relief").   Plaintiff's claims thus fully

17   conform to the UCL.

18   Defendant is also incorrect that Plaintiff's claims are implausible because

19   there are no allegations that AT&T acquired funds or "could have benefited from

20   the supposed criminal scheme of unknown hackers."  As Plaintiff clearly alleges, he

21   did not receive the benefit of his bargain for the mobile telephone services provided

22   to him as a subscriber for many years because AT&T's security was inadequate to

23   protect his personal information.  *See*, *e.g.*, Complaint ¶¶ 1, 69, 125-30.  Plaintiff

24   has thus properly identified the funds in AT&T's hands that are subject to

25   disgorgement and Defendant's attack on these claims fails.

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**G.     The CLRA Claim Has Been Properly Plead.**

> 1.     Plaintiff complied with the CLRA Notice and Demand
> Requirements.

Defendant's attack on Claim 7 (CLRA) must fail for the incontrovertible reason that Plaintiff provided Defendant with notice of this claim on March 19, 2018—almost five months before the Complaint was filed on August 15, 2018.  If AT&T insists on ignoring this notice (which was made to the General Counsel of AT&T, Inc.), Plaintiff will include an allegation in an amended complaint that it complied with the CLRA notice and demand requirements.  *See McKinnon v. Dollar Thrifty Automotive Group*, 2013 WL 791457 at *6 (C.D.Cal. 2013) (purpose of notice provision "to ensure that Defendants are aware of alleged wrongdoing and given an opportunity to correct it before they are sued").

> 2.     Plaintiff Has Complied with Other CLRA Requirements.

Defendant is also incorrect that Plaintiff has not properly plead that AT&T's false representations involve "goods" or "services."  The Complaint conspicuously alleges that Defendant made false representations regarding the security of his personal information in connection with the mobile telephone services that it provided to Mr. Terpin.  *See, e.g.*, Complaint ¶¶ 45-51, 66-70, 128, 136, 160-62.

Under the plain language of the CLRA, the provision of telecommunications facilities is indeed "services."  The CLRA authorizes a plaintiff to bring a claim under the CLRA when "any person" uses a statutorily prohibited trade practice "in a transaction . . . which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code §1770.  The CLRA defines "services" as "work, labor and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  *Id*. at § 1761(b).

Courts have adopted a broad view of what constitutes "services" under the CLRA in conformity with the CLRA's mandate that it "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protections." *Id*. at § 1760. For example, in *Hernandez v. Hilltop Fin. Mortg., Inc.*, the court found that the provision of mortgage loans was a "service." 622 F.Supp.2d 842, 849-50 (N.D.Cal. 2007). The services provided by AT&T are clearly different from the provision of life insurance by contract (*Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 61 (2009)) or software, which the court in *Ferrington v. McAfee, Inc.*, 2010 WL 3910169 at *19 (N.D.Cal. Oct 5, 2010) found is not a service. In contrast, AT&T provides what are undoubtedly described generally as telecommunications or wireless "services" (often provided in conjunction with the sale of a mobile telephone). *See* Exhibit B to the Complaint (AT&T Privacy Policy) "Our Privacy Policy applies to your use of all products, *services* and websites offered by AT&T . . . .") (emphasis added); Exhibit D to the Complaint (Wireless Customer Agreement) defining "*services* (including content and other AT&T *services* included with your *wireless service*)" as "*Services*" (emphasis added); *cf. Yahoo II*, 313 F.Supp. 3d at 1142 (finding that Plaintiffs have adequately alleged that Yahoo provided a "service" to Plaintiffs by providing e-mail service through accounts on a web-based platform).

Plaintiff's allegations regarding the CLRA violations set forth in Paragraph 159 of the Complaint also need to be read in conjunction with the allegations in the Complaint as a whole. *Palmiotto v. America's Servicing Co.*, 2012 WL 12868482 (S.D.Cal. 2012) (allegations of complaint should be viewed as a whole in light most favorable to plaintiff in motion to dismiss). Read in context, Plaintiff's CLRA claim under Civil Code §1770(a)(16) may be properly construed to refer to AT&T's representations that it would increase the protection afforded his account and its earlier representations (including in its privacy policy) that it would protect the privacy of his personal information.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**H.    Plaintiff Has Properly Plead Deceit By Concealment.**

1.    <u>AT&T had a duty to speak.</u>

Plaintiff has properly alleged deceit by concealment because AT&T had exclusive knowledge of the fact that its security practices fell short of proper standards, including those mandated by the FCA, the FCC, and AT&T's numerous written promises.  *See* Complaint ¶¶ 22-51, 55-58, 70, 75-78.

AT&T attempts to dismiss the deceit claim by claiming that it did not have exclusive knowledge because of publicity regarding SIM swaps which it claims indicates that such risks were broadly recognized.[14]  That  claim has no merit because it involves a disputed issue of fact that cannot be resolved on a motion to dismiss.  *See In re Adobe Systems, Inc. Privacy Litigation*, 66 F.Supp.3d 1197, 1230 (N.D.Cal. 2017) (court refused to dismiss Adobe's claim that it did not have exclusive knowledge because its poor security practices were widely known because "the exact nature of what was in the public domain regarding Adobe's security practices is a question of fact not properly resolved on a motion to dismiss").  AT&T's deceit also included concealment of the fact that it did not (and could not) provide adequate protection for Mr. Terpin's personal information.  *See* Complaint ¶¶ 166, 169 (AT&T failed to disclose "it was incapable of living up to its commitments to consumers" and that its employees "could readily bypass its procedures").

Plaintiff has properly alleged facts supporting such concealment at this stage by alleging that AT&T actively concealed the lack of efficacy of its security, including that provided by its so-called "higher security level."  Complaint ¶¶ 169-

---

[14] The "public articles" cited in the Complaint are irrelevant to the question of AT&T's "exclusive knowledge" because they are all dated *after* the January 2018 SIM swap.  *See* Complaint ¶¶ 53-60 (citing articles from July 30, 2018, August 3, 2018 and August 18, 2018).  Moreover, AT&T's conjecture that Terpin may have known of these risks (which it does not tie to any allegation in the Complaint) does not mean that he possessed AT&T's knowledge—particularly since AT&T claimed that it was providing additional protection after the first SIM swap.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

172.  Moreover, Plaintiff's concealment claim is not defeated by statements by AT&T in its consumer agreements that it "does not guarantee security" and that "no security measures are perfect."[15]  Plaintiff properly alleges that AT&T actively concealed the inadequacy of its protection of his personal information (including after the initial SIM swap fraud) by stating that the additional security would prevent such fraud in the future and by concealing the fact that its employees could override or ignore such additional security.  Complaint ¶¶ 166, 169-70.

### 2.   Plaintiff Has Properly Plead Reliance.

Plaintiff has properly plead reliance by alleging that he continued to use AT&Ts services after the initial SIM swap fraud because AT&T actively concealed the fact that the additional security that it promised would prevent future SIM fraud was in fact ineffective, in part because these protections could be overridden or ignored by its employees.  Complaint ¶¶ 166-170.  These allegations are more than sufficiently detailed to withstand a challenge under Fed. R. Civ. Proc. 9(b).

Contrary to AT&T's assertion, there is no "missing link" in these allegations.  Profoundly shaken by the initial SIM swap fraud in June 2017, Mr. Terpin went to AT&T specifically to ask what protections could be placed on his account to prevent future fraud.  *Id.* ¶ 66.  AT&T representatives told Mr. Terpin that the additional security measures (including the six-digit code) would provide such protection.  *Id.*  ¶ 67.  Mr. Terpin relied on these representations and continued to maintain his account with AT&T.  *Id.* ¶¶ 68-69.  If AT&T had not made such representations, he would have taken his business elsewhere.  *Id.* ¶ 69.

The fact that Mr. Terpin was aware of security risks (having been hacked

---

[15] AT&T's general exculpatory statements are irrelevant to AT&T's exclusive knowledge regarding its security procedures and protections.  *See Yahoo II*, 313 F. Supp. at 1140 (Yahoo's statement that "no data transmission over the Internet or information storage technology can be guaranteed to be 100% secure" "does not undercut Plaintiffs' contention that Yahoo had 'exclusive knowledge of material facts not known or reasonably exclusive to' Plaintiffs").

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>1900 Avenue of the Stars, 21st Floor<br>Los Angeles, California 90067-4590

once) and was generally aware that his mobile phone could be hacked, does not mean that he did not rely on AT&T's statements regarding additional security measures that it was putting on his account.  Indeed, he had no knowledge that the additional measures were ineffective and could be easily evaded and would have terminated his AT&T account if he had had such knowledge.  *Id.* ¶¶ 69-70.

### I.     Plaintiff Has Adequately Plead A Claim For Misrepresentation.

In his Ninth Claim for Misrepresentation, Mr. Terpin alleges that he relied upon "numerous representations" in AT&T's "Privacy Policies and COBC as well as in its advertising" regarding the protection of its customers' personal information.  Mr. Terpin further alleges that he also relied on statements by an authorized AT&T employee after the initial SIM swap fraud when he "persuaded Mr. Terpin not to cancel his service after the June 11, 2017 hack."  Complaint ¶¶ 178-180.  As alleged in the Complaint, those representations included those concerning the additional security (including the six-digit code) that AT&T was placing on Mr. Terpin's account to prevent future SIM swap fraud.  *Id.* ¶¶ 66-69.

AT&T seeks to dismiss this claim because Plaintiff supposedly has not alleged reliance because he "does not allege that he read these documents at all, much less allege facts to describe when he supposedly became aware of the claimed misrepresentations."  Not only does this argument ignore the fact that Mr. Terpin alleges reliance based on specific statements made to him in person by AT&T representatives after the June 11, 2017 hack, but it sidesteps the fact that this alleged inadequacy is easily addressed in an amended pleading.  *See In re Yahoo! Inc. Customer Data Security Breach Litigation,* 2017 WL 3727318 at *28 (N.D.Cal. 2017) (*"Yahoo I"*) (allowing plaintiffs leave to amend claim to allege that read privacy policy and thus relied on representations).

### J.     Plaintiff's Fraud and Negligence Claims Are Not Barred by the Economic Loss Doctrine.

The economic loss doctrine, which Defendant raises as a defense to

OPPOSITION TO MOTION TO DISMISS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Plaintiff's fraud and negligence claims (Claims 8-12) bars recovery of "purely economic losses . . . in tort." *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F.Supp. 2d 1023, 1028 (E.D.Cal. 2013). However, Plaintiff's fraud and negligence claims are not barred by the economic loss rule because there is a "special relationship" between Plaintiff and Defendant. *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979) ("*J'Aire*").

The *J'Aire* exception applies to contracts for services (as opposed to goods). *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 781-84 (1997). In this case, there is no doubt that the contract at issue involved "services." *See* Section II(G)(2), *supra*. Moreover, the *J'Aire* exception applies here because the six factors establishing a "special relationship" are all found in this case.[16]

The court in *Yahoo II* concluded that the *J'Aire* exception applied to the Yahoo data breach. *Yahoo II*, 313 F. Supp. 3d at 1132. Based on the similar facts of this case, the Court should reach the same conclusion. First, as in *Yahoo II*, the contract between the parties for mobile phone services inevitably exposed Plaintiff's personal information (including CPI and CPNI) in return for Defendant's promise to adequately protect such information. Complaint ¶¶ 107-108. Second, "it was plainly foreseeable that Plaintiff[] would suffer injury if Defendant[] did not adequately protect the [personal information]." *Yahoo II* at 1132; Complaint at ¶¶ 26-44, 55-58, 66-68. Third, the Complaint in this case asserts that hackers gained access to Plaintiff's personal information, thereby causing injury to Plaintiff. *Id*. ¶¶ 72-77. Fourth, "the injury was allegedly suffered because Defendant[] provided inadequate security and knew that [its] system was insufficient." *Yahoo II* at 1132; Complaint at ¶¶ 56-57, 75-77. Fifth, Defendant "knew [its] data security was

---

[16] The factors are "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *J'Aire*, 24 Cal. 3d at 804.

OPPOSITION TO MOTION TO DISMISS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

inadequate. . .” *Yahoo II* at 1132; Complaint ¶ 70.  Sixth, Defendant's "concealment of [its] knowledge and failure to adequately protect Plaintiff['s] [personal information] implicates the consumer data protection concerns expressed in California statutes, such as the CRA and CLRA."  *Yahoo II* at 1132; Complaint ¶¶ 77, 125-26, 128-29, 137-38, 149, 158, 161-62.

### K.    Plaintiff Has Adequately Plead Breach of Implied Contract.

In the alternative to its express breach of contract claim, Plaintiff has alleged breach of an implied contract.  Although Defendant attempts to dismiss such claim on plausibility grounds, it advances no argument as to why such an agreement may not be alleged in the alternative to an express contact.

It is well established that "[w]hether the implied contract exists is a question of fact for the jury, and California courts have been exceedingly unwilling to take the question of whether such an agreement exists from the jury."  *See Grigsby v. Universal Foods Corp.*, 999 F.2d 543 (9th Cir. 1993); *see also Luck v. Southern Pac. Transp.*, 218 Cal. App. 3d 1 (1990).  Under such binding precedent, Plaintiff has adequately alleged an implied breach of contract claim for the purposes of a motion to dismiss.

### L.    Plaintiff has Adequately Alleged a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Defendant alleges that Plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed because it is superfluous since it does not allege any actions beyond the breach of the parties' contract.  This argument raises factual issues that cannot be determined on a motion to dismiss.  *See U.S. ex rel. Innovative Const. Solutions-Norcal v. CH2M Hill Constructors, Inc.*, 2014 WL 6610999 at *5 (E.D.Cal. Nov. 19, 2014) ("whether or not a breach of the implied covenant is duplicative of a contract is more appropriately addressed at summary judgment as opposed to the more liberal standard applicable to the present motion to dismiss").

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Plaintiff's Thirteenth Claim for Relief (which is not challenged in the Motion

2    to Dismiss) is founded entirely on the breach of AT&T's Privacy Policy.

3    Complaint ¶¶ 217-223.  Citing numerous particular provisions of the Privacy Policy

4    and privacy policies in the COBC, Plaintiff alleges in that claim that Defendant

5    breached those provisions and harmed Mr. Terpin by not having proper safeguards

6    in place to protect Mr. Terpin's personal information, including CPI and CPNI.  *Id*.

7    ¶ 220.

8    Plaintiff's Fifteenth Claim for Relief raises claims beyond the breach of

9    contract claim by alleging that Defendant breached the covenant of good faith and

10   fair dealing by "(a) not implementing security measures adequate to protect his

11   Personal Information; (b) improperly hiring, training and supervising its employees;

12   (c) not adhering to its own security standards, including the 'high security'

13   standards for 'high profile' or 'celebrity' account holders; and (d) failing to invest

14   in adequate security protections."  Complaint ¶ 231.  These additional allegations

15   are sufficient to distinguish the breach of implied covenant claim from the breach of

16   contract claim.

17   **M.    The Customer Records Act Claim Is Properly Alleged**.

18   Plaintiff has properly alleged a claim under Cal. Civ. Code § 1798.81.5(b)

19   (the California Customer Records Act ("CRA")) because it alleges that AT&T

20   allowed hackers to access the Personal Information of Mr. Terpin.  The CRA's

21   definition of "Personal Information" § 1798.81.5(d)(1)(A) includes an individual's

22   first name or first initial and his or her last name in combination with other data

23   elements including "[a]ccount number, credit or debit card number, in combination

24   with any required security code, access code, or password that would permit access

25   to an individual's financial account."  Subsection B of this same provision also

26   includes "[a] username or email address in combination with a password or security

27   question and answer that would permit access to an online account."

28   As alleged in the Complaint, the SIM swap fraud involves "Personal

Information" under the CRA.  Complaint ¶¶ 76-77, 107, 237.  The Complaint alleges that the hackers were able to port Mr. Terpin's number to a phone under their control to gain access to security and access codes or passwords and/or usernames or e-mail addresses in combination with passwords or security information to gain access to online accounts.  *Id* ¶¶ 73, 76, 107-108.   Under Section 222(a) of the Federal Communications Act, AT&T had an explicit statutory obligation to protect such information, which falls within the FCC's definition of "Personal Information" and "customer proprietary information."  *See* Section II(C), above.  This is sufficient for the purposes of the CRA.[17]

**N.      The Punitive Damages Claim Should Not Be Stricken**.

1.      <u>Plaintiff has adequately plead he is entitled to punitive damages</u>.

Defendant claims that Plaintiff's punitive damages claim should be stricken because Plaintiff has not alleged that the employee conduct referenced in the Complaint was directed or ratified by AT&T's officers, directors or managing agents.  Because issues relating to ratification of employee conduct are quintessentially factual, they cannot be resolved on a motion to dismiss.  *See Siva v. General Tire & Rubber Co.*, 146 Cal App. 3d 152, 159 (1983) ("[r]atification is a fact question and may be proved by circumstantial evidence.").  In addition, the question of whether an individual is a managing agent or has been authorized by an employer is a "fact-intensive inquiry."  *Paterson v. California Dept. of General Services*, 2008 WL 4737118 at *4 (E.D.Cal. 2008).  Given the factual nature of the inquiry, punitive damages may only be barred at the motion to dismiss stage where they are unavailable as a matter of law.  *See, e.g., Rios v. City of Bakersfield*, 2011 WL 5554506 at *6 (E.D.Cal. 2011) (dismissing punitive damages claim against municipality because such damages are precluded as a matter of law).  That is not

---

[17] This result is not contradicted by *Yahoo II*, 313 F.Supp.3d at 1144-45 which dealt with the pre-2016 definition in the CRA of "personal information" which did not reference users' passwords and security questions.

the case here.

Plaintiff has properly alleged a basis for punitive damages.  In great detail, he has alleged the history of the initial SIM swap fraud, including informing AT&T that he had been a victim of hacking to his mobile account and the promises made by AT&T employees to provide him with additional protection to prevent such fraud in the future.  Complaint ¶¶ 65-69.  AT&T was under both a statutory obligation and a duty imposed by the FCC in the Consent Decree to protect the personal information of its customers against fraud.  *Id*. ¶¶ 22-44.  AT&T was aware that its employees could bypass protections and in certain instances acted with hackers to turn over its customers' personal information.  *Id*. ¶¶ 55-57, 70.  Moreover, AT&T's top executives pledged in the COBC to protect customers' personal information.  *Id*. ¶¶ 48-50.  AT&T consciously disregarded those obligations in either failing to supervise its employees or setting up a system where employees could readily bypass account protections.  *Id*. ¶¶ 57, 70,192-198.

Plaintiff's allegations sufficiently allege a basis for punitive damages beyond the allegedly "conclusory" allegations of the claims themselves.  *See ExxonMobil Oil Corporation v. Southern California Edison Co.*, 2013 WL 12166214 at *3 (C.D.Cal. 2013) (holding that complaint that "extensively alleges the history of past outages and litigations" sufficiently and plausibly alleged punitive damages); *Khan v. 7-Eleven, Inc.*, 2015 WL 12743691 (C.D.Cal. 2015) (finding that allegations of conduct of 7-Eleven employee taken in the light most favorable to plaintiff sufficiently alleged punitive damages under *Iqbal*).

Considering the allegations of the Complaint *as a whole*, Plaintiff's allegations also support Plaintiff's contention that AT&T had the requisite mental state and acted with malice, fraud and oppression.  Construing the allegations of the Complaint in the light most favorable to Plaintiff (which the Court is required to do), the allegations show that AT&T acted with fraud, malice and oppression in violating its statutory duties under Section 222(a) of the FCA and in its actions

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

OPPOSITION TO MOTION TO DISMISS

specifically to Mr. Terpin.[18]

2.   Punitive Damages are Proper for Claims 10-12, and 15-16.

Under *Yahoo II* (which Defendant also cites), the Court should *not dismiss* Plaintiff's punitive damage requests for its claims for negligence (Claim 10), negligent supervision and hiring (Claim 11), and negligent hiring (Claim 12).[19]  As the Court in *Yahoo II* properly observed, "'even where the claim formally sounds in negligence, if the plaintiff can make a showing that defendant's conduct goes beyond gross negligence and demonstrates a knowing and reckless disregard, punitive damages *may* be available.'"  *Yahoo II* at 1149, *quoting Simplicity Int'l v. Genlabs Corp.*, 2010 WL 11515296, at *2 (C.D.Cal. Apr. 21, 2010).

Like *Yahoo II*, Plaintiff in this litigation has "alleged numerous fraudulent, malicious, and oppressive acts on the part of Defendant[]," including those cited in Complaint ¶¶ 125, 134, 146, 166-168, 178, 197-198.  The Court should therefore not dismiss the punitive damages requests for Claims 10-12.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss or, in the alternative, provide Plaintiff with leave to amend.

DATED:  November 5, 2018          GREENBERG GLUSKER FIELDS
                                  CLAMAN & MACHTINGER LLP


                                  By:/s/ Pierce O'Donnell
                                  PIERCE O'DONNELL (SBN 081298)
                                  Attorneys for Plaintiff MICHAEL
                                  TERPIN

---

[18] In the event that the Court finds that additional facts are necessary to allege punitive damages, Plaintiff respectfully requests leave to amend the Complaint.

[19] Plaintiff will not seek punitive damages for its claim for the breach of the covenant of good faith and fair dealing (Claim 15) and its claim for violation of the California Customer Records Act (Claim 16).  *See Yahoo II* at 1149-50.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590