MARCELLUS A. MCRAE, SBN 140308
  mmcrae@gibsondunn.com
ERIC D. VANDEVELDE, SBN 240699
  evandevelde@gibsondunn.com
MICHAEL M. LEE, SBN 246363
  mlee@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

ASHLEY E. JOHNSON, admitted *pro hac vice*
  ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX  75201
Telephone:  214.698.3100
Facsimile: 214.571.2949

Attorneys for Defendant
AT&T Mobility LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TERPIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AT&T MOBILITY LLC; and DOES 1-25,<br><br>　　　　　Defendants. | Case No. 2:18-cv-06975-ODW-KS<br><br>**DEFENDANT AT&T MOBILITY LLC'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**<br><br>Action Filed:  August 15, 2018<br><br>**Hearing**:<br>Date:　　January 28, 2018<br>Time:　　1:30 p.m.<br>Place:　　350 West 1st Street, 5th Floor<br>　　　　　Courtroom 5D<br>　　　　　Los Angeles, CA 90012<br>Judge:　　Hon. Otis D. Wright II |

1  Pursuant to Rule 201 of the Federal Rules of Evidence and in further support of Defendant AT&T Mobility LLC's ("AT&T") Motion to Dismiss the Complaint (the "Motion to Dismiss"), AT&T respectfully requests that the Court take judicial notice of a recent complaint filed by Plaintiff Michael Terpin in a separate action captioned *Michael Terpin v. Nicholas Truglia,* Case No. 18STCV09875, Los Angeles Superior Court (the "Truglia Complaint"). The Truglia Complaint is attached hereto as **Exhibit 1**.

Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of any fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts routinely take judicial notice of documents, including pleadings, filed in other courts. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts."); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (similar); *HPG Corp. v. Countrywide Home Loans*, 2010 WL 11549552, at *2 (C.D. Cal. Nov. 8, 2010) (similar).

Here, AT&T requests judicial notice of the Truglia Complaint, which was filed in state court by Mr. Terpin on December 28, 2018, over one month after briefing on AT&T's Motion to Dismiss was complete. As the Court is aware, Mr. Terpin's claim against AT&T relates to two "SIM swaps" that he alleges caused him to lose $24 million in cryptocurrency. The Truglia Complaint alleges that Nicholas Truglia was responsible for the second of those SIM swaps, which Mr. Terpin alleges caused the vast majority of his alleged harm.

In the Truglia Complaint, Mr. Terpin alleges, among other things, that Mr. Truglia and an unidentified group of individuals participated in an enterprise for purposes of Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The Truglia Complaint alleges that the purpose of the RICO enterprise was

to execute a scheme to defraud cryptocurrency investors like Mr. Terpin by acquiring control of their cryptocurrency and other accounts and illegally keeping those assets for their own benefit and interest. Ex. 1, ¶¶ 35-38. Mr. Terpin also alleges in the Truglia Complaint that this enterprise "obtained information about victims' mobile phone accounts, including information about security codes and other personal information" and "then used such information, in combination with false identifications and information obtained through phishing or the Dark Web, to port over a victim's telephone number to a phone under its control." *Id.* ¶ 39. Mr. Terpin further alleges that Mr. Truglia and the enterprise stole $24,000,000 from Mr. Terpin after gaining access to his accounts after an alleged SIM swap on January 7, 2018, the same alleged SIM swap discussed in Mr. Terpin's Complaint against AT&T in this action ("AT&T Complaint"). *See id.* ¶¶ 39, 43.

AT&T's Motion to Dismiss asserts that the AT&T Complaint fails to plausibly allege how AT&T's allegedly inadequate security led to stolen cryptocurrency. The Truglia Complaint contains Mr. Terpin's additional allegations about how the alleged theft occurred which: (i) are missing from his Complaint against AT&T and (ii) do not allege that AT&T is part of the criminal enterprise responsible for the theft. *See id.* ¶ 5. Indeed, the allegations of the Truglia Complaint further show that it was the bad actors (Mr. Truglia and company) that were the cause of Mr. Terpin's loss, not AT&T. This Court may take judicial notice of these additional allegations about how Mr. Terpin contends the alleged theft of his claimed cryptocurrency occurred to evaluate the plausibility of Mr. Terpin's pleading in this case. *See Varma v. Bank of Am., N.A.*, 713 Fed. Appx. 692, 692-93 (9th Cir. 2018) ("We are not required to accept as true allegations that contradict matter properly subject to judicial notice.") (alterations omitted); *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 2009 WL 10674453, at *2 (C.D. Cal. May 15, 2009) (relying on "matters subject to judicial notice" to "undermine any plausible inference" of proximate causation).

The Court may properly take judicial notice of the Truglia Complaint for these purposes. *See, e.g.*, *Lewis v. U.S. Bank Nat'l Ass'n*, 2017 WL 2903192, at *2 n.3 (N.D. Cal. Apr. 5, 2017) ("The Court can take judicial notice of the existence of court documents, and the nature of the allegations set forth in Plaintiff's prior complaints ...."); *In re Smith*, 2012 WL 1123049, at *2 (W.D. Tex. Apr. 3, 2012) (taking judicial notice of the fact that certain allegations were made against a party in separate litigation); *United States v. Cohen*, 2012 WL 505918, at *6 (C.D. Ill. Feb. 15, 2012) (court may take judicial notice of documents filed in other lawsuits to establish "the indisputable facts that those documents exist, they say what they say, and they have had legal consequences") (citation omitted); *In re FedEx Ground Package Sys., Inc. Employment Pracs. Litig.*, 2010 WL 1253891, at *4 (N.D. Ind. Mar. 29, 2010) ("Court documents from another case may be used to show that the document was filed, that party took a certain position, and that certain judicial findings, allegations or admissions were made.") (citation omitted); *cf. Warwick v. Bank of N.Y. Mellon*, 2016 WL 2997166, at *12 (C.D. Cal. May 23, 2016) (taking judicial notice of recorded documents' existence and the fact that they "state what they state").

Accordingly, AT&T respectfully requests that the Court take judicial notice of the Truglia Complaint.

Dated: January 22, 2019

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Marcellus A. McRae*
     Marcellus A. McRae

Attorney for Defendant
AT&T MOBILITY LLC

# Exhibit 1

ORIGINAL

FILED
Superior Court of California
County of Los Angeles

DEC 28 2018

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Shaunya Bolden

PIERCE O'DONNELL (SBN 081298)
PODonnell@GreenbergGlusker.com
TIMOTHY J. TOOHEY (SBN 140117)
TToohey@GreenbergGlusker.com
PAUL BLECHNER (SBN159514)
PBlechner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiff
MICHAEL TERPIN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

CENTRAL DISTRICT

18STCV09875

| | |
|---|---|
| MICHAEL TERPIN,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS TRUGLIA; DOES ONE through TWENTY-FIVE inclusive<br><br>Defendants. | Case No. _____<br><br>COMPLAINT FOR:<br><br>1. CONVERSION;<br>2. MONEY HAD AND RECEIVED;<br>3. PENAL CODE § 502 (UNAUTHORIZED ACCESS OF COMPUTERS);<br>4. VIOLATION OF SECTION 1962(c) OF THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO); and<br>5. IMPOSITION OF A CONSTRUCTIVE TRUST |

Plaintiff Michael Terpin, by and through his counsel, complains and alleges as follows against Defendants Nicholas Truglia and Does One through Twenty-Five inclusive:

**THE PARTIES**

1. Plaintiff Michael Terpin has a residence in Los Angeles County, California. Mr. Terpin obtained wireless services from AT&T Mobility, Inc. ("AT&T") in Los Angeles County in or about the mid-1990's. Mr. Terpin continued at all times relevant to the allegations to

83764-00002/3116470.1

receive wireless services from AT&T for a telephone number with a Southern California area code.

2. Mr. Terpin is well known for his involvement with cryptocurrency. Cryptocurency (also known as "crypto") is digital or virtual currency designed as a medium of exchange in which encryption techniques generate units of currency that verify the transfer of funds through an encrypted and decentralized ledger called "blockchain." The blockchain records transactions and manages the issuances of new units of currency. Cryptocurrency is decentralized, operates independently of a central bank or other regulatory authority, and is often traded by parties through "exchanges." Once a transfer of cryptocurrency has occurred, it is impossible to trace or reverse the transaction without possession of certain private and complex key numbers held only by the transferor.

3. Defendant Nicholas Truglia ("Truglia") is an individual currently incarcerated in Santa Clara County, California, who has been criminally charged with impersonating numerous victims by the process of SIM swaps, as described below.

4. Plaintiff is ignorant of the true names or capacities of the defendants sued herein under the fictitious names DOES ONE through TWENTY-FIVE ("DOES 1-25") inclusive. Plaintiff further alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, proximately caused Plaintiff's damages, and was acting as agent for or in concert with the others.

5. DOES 1-25 include individuals who participated with Truglia in criminal SIM swaps, as further alleged herein, including the SIM swap suffered by Plaintiff Michael Terpin. DOES 1-25 include Truglia's accomplices, who facilitated the SIM swap and persons who assisted Truglia in intercepting messages from Mr. Terpin's phone, assisted or facilitated transfer of cryptocurrency to accounts under the control of Truglia or other defendants, or contacted third parties who control or have access to information about Mr. Terpin's cryptocurrency, e-mail, storage or other computer accounts. DOES 1-25 further included individuals who participated in and aided and abetted deception of cryptocurrency exchanges for the purpose of transferring Mr. Terpin's cryptocurrency to accounts under their control or converted Mr. Terpin's currency to

other forms of cryptocurrency, including Bitcoin. For the purposes of the RICO claims alleged below, Truglia and DOES 1-25 constitute a criminal enterprise ("Enterprise").

## FACTUAL ALLEGATIONS

6. This lawsuit is about the unauthorized and wrongful taking from Plaintiff of nearly $24 million in cryptocurrency. On information and belief, Truglia was at the center of this conversion.

## SIM SWAPS

7. This lawsuit involves the increasingly prevalent practice of unauthorized SIM swaps, which is a method by which a hacker takes over a victim's cellular phone account to steal funds (frequently cryptocurrency) and transfer such funds to the hacker or the hacker's accomplices.

8. A "SIM" or "Subscriber Identity Module" (also known as a "SIM card") is a small card inserted into a mobile device that enables the device to communicate with the service provider. A SIM contains data necessary to make a successful connection between the mobile phone and the telecommunication provider. SIM cards store files that are used to uniquely identify them.

9. A "SIM swap" is a practice whereby a hacker gains access to a victim's telephone account or number in order to intercept communications, including text messages, to the mobile telephone. A perpetrator of a SIM swap typically arranges through bribery of someone with access to customer information to change the SIM card assigned to a user to a telephone under the control of the hacker or the hacker's accomplices. Once the SIM transfer has occurred, the hacker uses the hacker's phone to impersonate the victim with service providers, such as e-mail providers, and uses the victim's phone number to request changes to account settings and to reset passwords to take control of the victim's accounts.

10. Perpetrators of SIM swap fraud, such as Truglia, frequently intercept 2-Factor Authentication" (or "2FA") messages sent to the victim's telephone. 2FA is frequently used as a security mechanism for authentication purposes. Perpetrators of SIM swaps, including Truglia and DOES 1-25, intercept the messages to gain access to the accounts owned by the

victim, including cryptocurrency accounts or other accounts that provide access to such accounts. Once the perpetrator gains access to the account, the perpetrator transfers the funds in such accounts to an account controlled by the perpetrator.

11. The perpetrators of SIM swap fraud specifically target victims owning cryptocurrency because of the nature of cryptocurrency transactions. The digital assets embodied by cryptocurrency are a medium of exchange that uses cryptography to secure the transaction. Typically, the holder of cryptocurrency has both a "public" and a "private" key or address that the holder uses to receive, transfer or use cryptocurrency. The private key, which is individual to the owner of the cryptocurrency, is used to write in the public ledger to transfer cryptocurrency but is not displayed publicly. The private key is a secret number, which is typically filed in a "wallet." Because the key can be used to "spend" cryptocurrency, owners of cryptocurrency typically keep such keys secure. Such keys are complex. For example, in Bitcoin a private key is a 256-bit number.

12. Once a transfer of cryptocurrency has occurred, it cannot be reversed. Although the transaction is displayed in a public ledger, it is not readily possible to identify the transferor or transferee without knowing the parties' private keys. Cryptocurrency thus makes an attractive target for perpetrators of SIM swap fraud, such as Truglia, because the perpetrators can transfer stolen digital assets to accounts that are not readily traced or reversed and that can be accessed anywhere in the world free from government regulation or inspection.

13. Truglia has been identified in his criminal case as the perpetrator of SIM swap fraud. In a hearing in Truglia's case, it was reported that investigations had shown Truglia had used telephone accounts obtained through SIM swap to register new cryptocurrency accounts, including accounts on Coinbase, Gemini and Binance. On information and belief, Truglia also engaged in money laundering efforts after his SIM swaps by moving his stolen cryptocurrency through multiple addresses, breaking up the stolen amounts into multiple segments of smaller amounts, structuring his transactions to avoid reporting requirements, and otherwise taking steps to avoid due diligence and inspection.

## TRUGLIA'S JANUARY 7, 2018 SIM SWAP OF MR. TERPIN

14. On January 7, 2018, Mr. Terpin's phone with his AT&T wireless number went dead. As Mr. Terpin's subsequent discussions with AT&T revealed, an AT&T employee on that date had ported over Mr. Terpin's wireless number to an imposter. Through the hack, the thief or thieves gained control over Mr. Terpin's accounts and stole nearly $24 million worth of cryptocurrency from him on January 7 and 8, 2018.

15. On information and belief, Truglia, acting in concert with DOES 1-25, was responsible for Mr. Terpin's SIM swap and stole almost $24 million worth of cryptocurrency from Terpin. On December 18, 2018, the Santa Clara County Superior Court held a bail hearing for Truglia in his criminal case. At this hearing, the Court cited evidence that on January 7, 2018, which the Court states was the same date that Mr. Terpin lost more than $20,000,000 through a SIM swap, Truglia told someone named Ryan O'Keefe that he had stolen a cryptocurrency wallet with 20 million in it. On the same date, Truglia texted another individual named Sina, that "I'm a millionaire. I'm not kidding. I have 100 Bitcoin." On January 7, 2018, the average price of one Bitcoin varied between $16,033 and $17,244. See https://www.livebitcoinnews.com/bitcoin-price-analysis-january-7th-2018-bears-control/. Truglia further boasted on the date of the Terpin SIM swap, that "today my life changed forever" and offered to hire "porn star escorts" and take his friends to the Super bowl.

16. On information and belief, Truglia has confessed to his friends that he hacked Mr. Terpin and that this hack was his largest heist. On information and belief, Truglia has stolen assets worth in excess of $80 million.

17. Due to the nature of cryptocurrency, Truglia's assets, which include the almost $24 million stolen from Mr. Terpin, could readily be dissipated and lost absent injunctive and other relief preventing any transfer thereof.

## FIRST CAUSE OF ACTION

**(By Terpin Against Truglia, and Does 1 through 25 for Conversion)**

18. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 17 of this complaint.

19. At all times herein mentioned, and in particular on or about January 7, 2018, Plaintiff Michael Terpin was, and still is, the owner and was, and still is, entitled to the possession of cryptocurrency worth at the time of the theft at least $24 million.

20. On or about January 7, 2018, Defendant Truglia and DOES 1-25 took the property described above from Plaintiff's possession as described above and converted the same to their own use.

21. As a proximate result of the wrongful conduct of Truglia and DOES 1-25 as herein alleged, Mr. Terpin has been damaged in the sum to be proven at trial, but of at least $24 million, with interest accruing from the date each component of said sum was converted by Defendant. As a further approximate result of the Defendant's acts herein alleged, Mr. Terpin has also expended substantial sums of time and money in pursuit of the sums converted by Defendant. Mr. Terpin is presently incurring such amounts in an attempt to recover his converted property. The full amount and extent of those damages are presently unknown. Mr. Terpin will seek leave to amend this complaint when the full extent and amount of said damages have been ascertained. As a result, Mr. Terpin is entitled to specific recovery of his wrongfully converted funds and property and any benefits derived therefrom or, in the alternative, damages in the sum of at least $24 million.

22. Mr. Terpin is informed and believes, and based thereon alleges, that Defendant Truglia and DOES 1-25 have engaged in despicable conduct as herein alleged with an intent to injure Mr. Terpin and to subject Mr. Terpin to cruel and unjust hardship in conscious disregard of Mr. Terpin's rights and that said actions were done fraudulently, maliciously and oppressively. Mr. Terpin is therefore entitled to punitive or exemplary damages against Defendant in an amount sufficient to punish and make a public example of each of the defendants.

## SECOND CAUSE OF ACTION

### (By Terpin Against Truglia, and Does 1 through 25 for Money Had and Received)

23. Plaintiff realleges and incorporates by references the allegations of Paragraphs 1 through 22 as if fully set forth herein.

24. From January 7, 2018, Defendant Truglia and DOES 1-25 became indebted to Michael Terpin in the amount of a sum to be proven at trial, but of at least $24 million, for money had and received by defendants for the use and benefit of Michael Terpin.

25. Neither the whole nor any part of this sum has been paid back to Plaintiff, and there is now due, owing, and unpaid the sum to be proven at trial, which is at least $24 million, with interest accruing from the date each component of said sum was converted by Defendants.

## THIRD CAUSE OF ACTION

### (By Terpin Against Truglia, and Does 1 through 25 for Unlawful Access to Computer, California Penal Code § 502 *et seq.*)

26. Plaintiff realleges and incorporates by references the allegations of Paragraphs 1 through 25 as if fully set forth herein.

27. California Penal Code § 502 manifests a clear policy to vigorously protect individuals and other from "tampering, interference, damage and unauthorized access to lawfully created computer data and computer systems." Penal Code § 502(a). California's strong policy in protecting consumers from unauthorized access to computer systems is further attested by Penal Code § 502.01 which provides for forfeiture by a defendant of property used by defendant in committing a violation of or conspiracy to commit a violation of Section 502.

28. Penal Code § 502 defines "access" to a computer system broadly as "gain[ing] entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." *Id.* § 502(b)(1).

29. A mobile telephone constitutes a "computer system" under Penal Code § 502, in that it constitutes or allows access to data process, storage functions, Internet services, electronic mail services, electronic message services, or other uses . . ." *Id.*

30. By perpetrating a SIM swap against Mr. Terpin as herein alleged, Truglia and Does 1-25 violated Penal Code § 502, *inter alia*, by (a) knowingly accessing and without permission altering, damaging, deleting, destroying or otherwise using data from a computer system to devise or execute a scheme or artifice to defraud, deceive or distort under Penal Code § 502(c)(1)(A); (b) knowingly accessing and without permission taking, copying, or making use of any data from a computer system under Penal Code § 502(c)(2); (c) knowingly and without permission using or causing to be used computer systems under Penal Code § 502(c)(3); (d) knowingly accessing and without permission adding, altering, damaging, deleting or destroying data which resides or exists internal or external to a computer system or computer network under Penal Code § 502(c)(4); (e) knowingly and without permission disrupting or causing the disruption of a computer system or causing the denial of computer services to an authorized user of a computer system under Penal Code § 502(c)(5); (f) knowingly and without permission providing or assisting in providing a means of accessing a computer system in violation of the section under Penal Code § 502(c)(6); and (g) knowingly and without permission accessing or causing to be accessed any computer system under Penal Code § 502(c)(7).

31. Because of the conduct alleged herein by Defendant Truglia and DOES 1-25, Mr. Terpin is entitled to compensatory damages and injunctive relief under Penal Code § 502(e)(1). Such compensatory damages include "any expenditure reasonably and necessarily incurred" by Mr. Terpin as owner "to verify that a computer system . . . was or was not altered, damages, or deleted by the access." *Id.*

32. Mr. Terpin is entitled to reasonable attorney fees against Truglia pursuant to Penal Code § 502(e)(2). Because the violations of Penal Code § 502(c) alleged herein were willful and conducted with oppression, fraud or malice, Mr. Terpin is also entitled to an award of punitive or exemplary damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

**(By Terpin Against Truglia, and Does 1 through 25 for Violations of Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c))**

33. Plaintiff realleges and incorporates by references the allegations of Paragraphs 1 through 32 as if fully set forth herein.

34. This cause of action arises under 18 U.S.C. § 1962(c) and is asserted against Defendant Truglia and DOES 1-25.

35. Each of the Defendants, for purposes of this particular cause of action, is or has been a "person" employed by or associated with an enterprise engaged in, or the activities of which affect, foreign or interstate commerce, and as such, has conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity as described herein.

36. For the purpose of this particular cause of action under Section 1962(c), the "Enterprise" consists of Defendant Truglia and DOES 1-25.

37. Since on or before 2017, Defendant Truglia, DOES 1-25 and other members of the Enterprise, knowingly, intentionally, and unlawfully, aided and abetted, and conspired with each other, to devise, or intend the scheme to defraud cryptocurrency investors and others, by which they were to illegally obtain, acquire control of victims' cryptocurrency and other accounts, to illegally keep those assets for their own benefit and interest.

38. In furtherance of their scheme to defraud, and in order to achieve its objectives, the Enterprise, knowingly, intentionally and unlawfully, aided and abetted to commit, attempted to commit, conspired to commit, did commit, and caused to be committed, the below enumerated overt and/or predicate acts of racketeering activity to illegally steal money from victims, including Plaintiff Michael Terpin, through SIM swaps and to subsequently retain such money.

39. From 2017 to the present, for the purpose of executing the Enterprise's scheme to defraud, Defendant Truglia and Does 1-25 obtained information about victims' mobile phone accounts, including information about security codes and other personal information. The

Enterprise then used such information, in combination with false identifications and information obtained through phishing or the Dark Web, to port over a victim's telephone number to a phone under its control. The Enterprise then used their phones to intercept messages to the victim, including 2FA messages, and accessed the victim's accounts to obtain information about cryptocurrency holdings, including private keys. Through this scheme the Enterprise gained control of victims' online accounts, including cryptocurrency wallets or other accounts, and exfiltrated victims' cryptocurrency to accounts under their own control. The scheme perpetrated by Defendant Truglia and DOES 1-25 on Mr. Terpin, as herein alleged, is typical of the approach of the Enterprise.

40. The scheme perpetrated by Defendant Truglia and DOES 1-25 took place in interstate commerce within the United States. Through the conduct described herein above, in furtherance of the scheme to defraud Mr. Terpin and other victims, the members of the Enterprise knowingly, intentionally and unlawfully, aided and abetted and conspired with each other to violate, and did violate California Penal Code § 502(c) (unauthorized access to computer) and other criminal statues, including Penal Code §§ 487(a) (grand theft) and 530.5 (identity theft).

41. Through the conduct described herein above, Defendant Truglia, Defendant DOES 1-25 and other members of the enterprise, knowingly, intentionally and unlawfully, aided and abetted, conspired to, and each of them in fact did, conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs, through a pattern of unlawful access to computers in violation of California Penal Code § 502(c) and Penal Code §§ 487(a) (grand theft) and 530.5 (identity theft).

42. As a proximate cause of the Defendants' violations, Plaintiff Michael Terpin was injured in his property, inasmuch he has been the object of theft of his property in violation of law.

43. The injuries suffered by Plaintiff Michael Terpin are reasonably estimated in the amount of $24,000,000.

44. Pursuant to 18 U.S.C. § 1964(c), Plaintiff Michael Terpin shall recover threefold the damages he sustained, i.e., $72,000,000.

45. Pursuant to 18 U.S.C. § 1964(c), Plaintiff Michael Terpin is entitled to reasonable attorneys' fees.

### FIFTH CAUSE OF ACTION

**(By Terpin Against Truglia, and Does 1 through 25 for Imposition of a Constructive Trust)**

46. Plaintiff realleges and incorporates by references the allegations of Paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff is informed and believes, and based thereon alleges, that Defendant Truglia and DOES 1-25 maintained funds, inter alia, in bank, brokerage, and cryptocurrency accounts in their names. Although Plaintiff is informed and believes that converted funds are maintained in such accounts and possibly under other names, Plaintiff has no information regarding such accounts at this time. Plaintiff will seek leave to amend when, and if, he ascertains further information regarding such accounts in which converted funds have been transferred.

48. Plaintiff is informed and believes, and based thereon alleges, that Defendant Truglia and DOES 1-25 purchased property with the converted funds rightfully belonging to Plaintiff.

49. By virtue of the wrongful acts alleged herein Defendant Truglia and DOES 1-25 held the property described and all profits and benefits derived therefrom above as a constructive trustee for Plaintiff's benefit.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

1. For the value of the property converted in the sum to be proven at trial, but of at least $24 million.

2. For interest thereon at the legal rate from the date of the conversion of each component of the foregoing sum.

3. For additional damages for time and money properly expended in pursuit of the converted property, according to proof.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

4. For a declaration that Defendant Truglia and other Defendants hold the converted property in trust for Plaintiff Michael Terpin.

5. For an order requiring Defendant Truglia and other Defendants jointly and severally to return to Plaintiff Michael Terpin all assets, funds and other property derived from such transactions, as well as any benefits or profits derived therefrom, and to pay Michael Terpin any consequential damages caused by said transactions.

6. For an order compelling Defendant Truglia to reconvey legal title and possession of the converted property to Plaintiff Michael Terpin.

7. For an order requiring Defendant Truglia and other defendants to be enjoined during the pendency of this action, as hereinafter set forth.

8. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant Truglia and the other defendants, and each of them, and their agents, servants and employees, and all persons acting in concert with, or for them from transferring, liquidating, or withdrawing any of the converted funds or property purchased with the converted funds;

9. For punitive damages in an amount sufficient to punish Defendant Truglia and DOES 1-25 and make a public example of them.

10. For treble damages pursuant to 18 U.S.C § 1964(c).

11. For attorney fees pursuant to 18 U.S.C. § 1964(c) and California Penal Code § 502(e)(2).

12. For costs of suit incurred herein; and,

13. For such other and further relief as this Court may deem just and proper.

DATED: December 27, 2018

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: /s/ Timothy J. Toohey
TIMOTHY J. TOOHEY
Attorneys for Plaintiff MICHAEL TERPIN