1    MARCELLUS MCRAE, SBN 140308
        mmcrae@gibsondunn.com
2    GIBSON, DUNN & CRUTCHER LLP
     333 South Grand Avenue
3    Los Angeles, CA  90071-3197
     Telephone:  213.229.7000
4    Facsimile:   213.229.7520

5    ASHLEY E. JOHNSON, admitted *pro hac vice*
        ajohnson@gibsondunn.com
6    GIBSON, DUNN & CRUTCHER LLP
     2001 Ross Avenue
7    Suite 2100
     Dallas, TX  75201-2911
8    Telephone:  214.698.3100
     Facsimile:   214.571.2900

9
     Attorneys for Defendant AT&T MOBILITY
10   LLC

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14   MICHAEL TERPIN,                    CASE NO. 2:18-CV-6975 (ODW)

15              Plaintiff,              **DEFENDANT AT&T MOBILITY
                                        LLC'S NOTICE OF MOTION AND
16        v.                            MOTION TO DISMISS PLAINTIFF
                                        MICHAEL TERPIN'S SECOND
17   AT&T MOBILITY LLC; and DOES 1-     AMENDED COMPLAINT;
     25,                                MEMORANDUM OF POINTS AND
18                                      AUTHORITIES IN SUPPORT
              Defendants.               THEREOF**
19                                      [F.R.C.P. 12(B)(6)]

20                                      *[Proposed] Order lodged concurrently
                                        herewith*
21
                                        Action Filed:  August 15, 2018
22
                                        **Hearing:**
23                                      Date:      May 4, 2020
                                        Time:      1:30 p.m.
24                                      Place:     350 West 1st Street, 5th Floor
                                                   Courtroom 5D
25                                                 Los Angeles, CA  90012
                                        Judge:     Hon. Otis D. Wright II
26

27

28

Gibson, Dunn &
Crutcher LLP

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on May 4, 2020, before the Honorable Otis D. Wright II, United States District Court Judge, in Courtroom 5D, at 350 West 1st Street, 5th Floor, Los Angeles, California 90012, Defendant AT&T Mobility LLC ("AT&T" or "Defendant") will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the following portions of Plaintiff Michael Terpin's Second Amended Complaint:

1. Claim 3 (Deceit by Concealment) because Mr. Terpin has not alleged a duty to speak and because he has not plausibly alleged that he was unaware of the limits of AT&T's security measures;

2. Claim 4 (Misrepresentation) because Mr. Terpin has not alleged that he even read the documents he claims contain misrepresentations and has not alleged that AT&T's alleged statements about its future intentions were false when made;

3. Mr. Terpin's claims against the Doe defendants because Mr. Terpin has alleged more than ten fictitious defendants and has not made individualized allegations about particular fictitious defendants;

4. Mr. Terpin's request for punitive damages because Mr. Terpin has not pled facts amounting to ratification of alleged wrongful conduct by AT&T; because Mr. Terpin has not pled the required mental state for punitive damages; because punitive damages are not available for Mr. Terpin's negligence-based claims; and because punitive damages are not available for issues of first impression, like those presented here.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities that follows, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on March 24, 2020.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: March 30, 2020

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Ashley E. Johnson*
Marcellus A. McRae
Ashley E. Johnson

Attorney for Defendant
AT&T MOBILITY LLC

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.   Introduction ................................................................................................. 1

II.  Factual and Procedural Background.............................................................. 2

III. Standard of Review ....................................................................................... 4

IV.  Argument ...................................................................................................... 5

    A.  Claim 3 (Deceit by Concealment) Should Be Dismissed with
        Prejudice......................................................................................... 5

        1.  Claim 3 Should Be Dismissed with Prejudice Because Mr.
            Terpin Did Not Allege a Duty to Speak. ................................. 6

        2.  Claim 3 Should Be Dismissed with Prejudice Because Mr.
            Terpin Has Not Pled That He Was Unaware of Any
            Allegedly Concealed Facts. ..................................................... 9

    B.  Claim 4 (Misrepresentation) Should Be Dismissed with Prejudice. ....... 10

        1.  The SAC Confirms that Mr. Terpin Cannot Plausibly Allege
            Reliance on the Privacy Policy or Code of Business Conduct
            Because He Did Not Read Them. ........................................... 10

        2.  Claim 4 Should Be Dismissed with Prejudice Because Mr.
            Terpin Does Not Allege that AT&T Employees Never Had
            An Intention of Performing. .................................................. 11

    C.  Mr. Terpin's Claims Against All Fictitious Defendants Should Be
        Dismissed with Prejudice. ........................................................... 13

    D.  Mr. Terpin's Request for Punitive Damages Should Be Dismissed
        with Prejudice................................................................................ 14

        1.  Mr. Terpin Did Not Plead Any Facts Plausibly Alleging
            Ratification of the Alleged Wrongful Conduct by AT&T. ........... 15

        2.  Mr. Terpin Did Not Plead the Required Mental State for
            Punitive Damages, Particularly on the Part of Any AT&T
            Executive................................................................................. 18

        3.  Punitive Damages Are Unavailable for Claims 5–7 as a
            Matter of Law. ........................................................................ 22

        4.  Punitive Damages Are Not Proper for Cases of First
            Impression. ............................................................................. 23

    E.  AT&T Preserves Previously Asserted Arguments. ................................ 23

V.   Conclusion .................................................................................................. 24

Gibson, Dunn &
Crutcher LLP

i

1

# TABLE OF AUTHORITIES

2

Page

3

4

**Cases**

5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................4

6

*Bartling v. Glendale Adventist Med. Ctr.*,
184 Cal. App. 3d 961 (1986) .....................................................22

7

8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................4, 17

9

10

*Blissard v. FCA US LLC*,
2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ...........................7

11

12

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
241 F. Supp. 3d 1084 (C.D. Cal. 2017) ..................................23

13

14

*Brousseau v. Jarrett*,
73 Cal. App. 3d 864 (1977) ......................................................18

15

16

*Bullard v. Wastequip, Inc.*,
2014 WL 10987394 (C.D. Cal. Sept. 11, 2014)...................11, 12

17

*Cardenas v. American Airlines, Inc.*,
2018 WL 1963787 (S.D. Cal. Apr. 26, 2018) .........................17

18

19

*Clayton v. Landsing Pac. Fund, Inc.*,
2002 WL 1058247 (N.D. Cal. May 9, 2002)............................8

20

*Coll. Hosp. Inc. v. Superior Ct.*,
8 Cal. 4th 704 (1994) ....................................................15, 17, 19

21

22

*Cruz v. HomeBase*,
83 Cal. App. 4th 160 (2000) ...............................................14, 15

23

24

*Czuchaj v. Conair Corp.*,
2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ........................6, 7

25

26

*Delquin Plastics USA, Inc. v. Larach*,
2017 WL 4786000 (C.D. Cal. July 25, 2017) .........................13

27

28

Gibson, Dunn &
Crutcher LLP

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Dep't of Water and Power of City of L.A. v. ABB Power T & D Co.*,
   902 F. Supp. 1178 (C.D. Cal. 1995) ............................................................. 23

*Diehl v. Starbucks Corp.*,
   2014 WL 5171799 (S.D. Cal. Oct. 14, 2014) ............................................ 17

*Edison v. Mgmt. & Training Corp.*,
   2018 WL 3491675 (E.D. Cal. July 19, 2018) ............................................ 21

*In re First All. Mortg. Co.*,
   2003 WL 21530096 (C.D. Cal. June 16, 2003) ......................................... 22

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   2016 WL 6916826 (C.D. Cal. Sept. 8, 2016) ............................................. 23

*Garcia v. M-F Athletic Co.*,
   2012 WL 531008 (E.D. Cal. Feb. 17, 2012) ........................................ 20, 21

*Gilstrap v. United Airlines, Inc.*,
   2014 WL 12734331 (C.D. Cal. Jan. 17, 2014) ......................................... 22

*Greenfield v. Spectrum Investment Corp.*,
   174 Cal. App. 3d 111 (1985) ..................................................................... 17

*Herron v. Best Buy Co. Inc.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................................... 7, 8

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ....................................................................... 5

*Hoffman v. 162 N. Wolfe LLC*,
   228 Cal. App. 4th 1178 (2014) .................................................................... 5

*Johnson & Johnson Talcum Powder Cases*,
   37 Cal. App. 5th 292 (2019) ................................................................. 19, 20

*Johnson v. Lucent Techs. Inc.*,
   653 F.3d 1000 (9th Cir. 2011) ..................................................................... 9

*Kelley v. Corr. Corp. of Am.*,
   750 F. Supp. 2d 1132 (E.D. Cal. 2010) ............................................... 14, 19

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page

*Khan v. 7-Eleven, Inc.*,
    2015 WL 12743691 (C.D. Cal. Sept. 15, 2015) .................................................. 15, 16

*Lackner v. North*,
    135 Cal. App. 4th 1188 (2006) ................................................................................ 18

*Lakin v. Watkins Associated Indus.*,
    6 Cal. 4th 644 (1993) ............................................................................................... 17

*Lavine v. Jessup*,
    161 Cal. App. 2d 59 (1958) ...................................................................................... 18

*Magpali v. Farmers Grp., Inc.*,
    48 Cal. App. 4th 471 (1996) ..................................................................................... 12

*Maples v. 3M Co.*,
    2017 WL 10592131 (C.D. Cal. May 15, 2017) ......................................................... 21

*MGA Entmt., Inc. v. Dynacraft BSC, Inc.*,
    2018 WL 2448123 (C.D. Cal. May 30, 2018) ........................................................... 13

*Molina v. J.C. Penney Co.*,
    2015 WL 183899 (N.D. Cal. Jan. 14, 2015) ............................................................. 22

*Morgan Guar. Trust Co. v. American Sav. & Loan Ass'n*,
    804 F.2d 1487 (9th Cir. 1986) ............................................................................. 22, 23

*Pac. Gas & Elec. Co. v. Superior Ct.*,
    24 Cal. App. 5th 1150 (2018) ................................................................................... 19

*Parker v. Hughes*,
    2017 WL 10574939 (C.D. Cal. May 31, 2017) ........................................................ 13

*Patera v. Citibank, N.A.*,
    79 F. Supp. 3d 1074 (N.D. Cal. 2015) ........................................................................ 9

*Perez v. Auto Tech. Co.*,
    2014 WL 12588644 (C.D. Cal. July 14, 2014) ............................................... 4, 18, 19

*Razo v. TIMEC Co., Inc.*,
    2017 WL 5079249 (N.D. Cal. Nov. 3, 2017) ........................................................... 15

Gibson, Dunn &
Crutcher LLP

iv

# TABLE OF AUTHORITIES
(continued)

Page

*Rhue v. Signet Domain LLC*,
    2015 WL 4111701 (C.D. Cal. Jul. 8, 2015) ............................................................. 14

*Riggins v. Ortho McNeil Pharm., Inc.*,
    51 F. Supp. 3d 708 (N.D. Ohio 2014) ................................................................. 8

*Rosa v. Taser Int'l, Inc.*,
    684 F.3d 941 (9th Cir. 2012) ............................................................. 19, 20

*Rubenstein v. The Gap, Inc.*,
    14 Cal. App. 5th 870 (2017) ............................................................. 7

*Simmons v. S. Pac. Transp. Co.*,
    62 Cal. App. 3d 341 (1976) ............................................................. 22

*Sloan v. General Motors LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ............................................................. 10

*Smith v. Allstate Ins. Co.*,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001) ............................................................. 12

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
    2 Cal. App. 4th 153 (1991) ............................................................. 11, 13

*Tenzer v. Superscope, Inc.*,
    39 Cal. 3d 18 (1985) ............................................................. 12

*Tomaselli v. Transamerica Ins. Co.*,
    25 Cal. App. 4th 1269 (1994) ............................................................. 14

*Torralbo v. Davol, Inc.*,
    2017 WL 5664993 (C.D. Cal. Oct. 19, 2017) ............................................................. 18

*Tsai v. Wang*,
    2017 WL 2587929 (N.D. Cal. June 14, 2017) ............................................................. 6

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................. 4, 11

*Vess v. CIBA-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................. 9

Gibson, Dunn &
Crutcher LLP

v

# TABLE OF AUTHORITIES
(continued)

Page

*Weeks v. Baker & McKenzie,*
    63 Cal. App. 4th 1128 (1998) ...................................................................... 14

*Welk v. Beam Suntory Imp. Co.,*
    124 F. Supp. 3d 1039 (S.D. Cal. 2015) ..................................................... 10

*White v. Ultramar, Inc.,*
    21 Cal. 4th 563 (1999) ....................................................................... 14, 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ......................................... 11

**Statutes**

Cal. Civ. Code § 1710(3) .................................................................................. 5

Cal. Civ. Code § 3294 ............................................................................... 14, 18

Gibson, Dunn & Crutcher LLP

## I.    Introduction

Mr. Terpin's Second Amended Complaint ("SAC") still fails to address fatal flaws in his deceit by concealment and misrepresentation claims, as well as his request for punitive damages.   At bottom, he alleges that AT&T knew that he faced a risk of a SIM swap but either failed to disclose, or misrepresented the facts regarding, this risk to him.  But Mr. Terpin ignores the undisputed fact, acknowledged in the SAC, that AT&T disclosed to him that it could not guarantee that third parties would not take unauthorized actions that would disclose his personal information.   Mr. Terpin's deceit and misrepresentation claims seek to punish AT&T not for concealing or misrepresenting material facts, but simply for failing to provide further specifics on how Mr. Terpin's information could be stolen.  Neither tort provides a cause of action for such allegations.

Mr. Terpin's claims fail for additional reasons.  Deceit by concealment requires that the defendant have a duty to speak, and Mr. Terpin has done nothing to undermine this Court's previous conclusion that Mr. Terpin had failed to allege any basis for such a duty in his previous complaint.  Moreover, Mr. Terpin all but admits that he cannot base a misrepresentation claim on written documents by AT&T, which he does not allege that he even saw or read, much less relied upon. And his allegation that AT&T misrepresented facts by making a promise that, he claims, it ultimately failed to perform falls far short of the required promise with no intention to perform required by the law.

Finally, Mr. Terpin has not remedied the failings in his request for punitive damages.  The only change the SAC makes that pertains to punitive damages is the identification of two AT&T executives and the assertion that both were aware, by virtue of their titles, that SIM swaps could occur.  This does not plausibly allege a state of mind or level of involvement by officers, directors, or managing agents that reflects anything close to the malice, fraud, or oppression that is required under California law to plead punitive damages.

In sum, Mr. Terpin's new allegations do not solve the core problems identified by the Court.  His deceit by concealment and misrepresentation claims should be dismissed

1   with prejudice, and his request for punitive damages should be dismissed with prejudice.

2   ## II. Factual and Procedural Background[1]

3   According to the allegations of the Second Amended Complaint ("SAC"), Mr.
4   Terpin entered into a wireless contract with AT&T in 2011.  Dkt. 42, SAC ¶ 112.  On or
5   about June 11, 2017, Mr. Terpin learned that his AT&T cell phone number had been
6   hacked when his phone suddenly became inoperable.  SAC ¶ 86.  He later learned that
7   his AT&T password had been changed remotely by hackers after 11 failed attempts to
8   change his password were made from AT&T's retail stores.  SAC ¶ 86.  Mr. Terpin
9   alleges that the hackers accessed Mr. Terpin's telephone and Skype accounts.  SAC ¶ 87.
10  By impersonating Mr. Terpin, the hackers convinced one of Mr. Terpin's clients to send
11  them cryptocurrency owed to Mr. Terpin.  SAC ¶ 87.

12  Two days later, on June 13, 2017, Mr. Terpin met with AT&T representatives in
13  Puerto Rico to discuss the hack.  SAC ¶ 88.  AT&T purportedly told him that it would
14  place his account on a "higher security level" with "special protection," requiring a six-
15  digit passcode in order to access or change his account.  SAC ¶ 89.  Mr. Terpin alleges
16  that he "relied upon AT&T's promises that his account would be much more secure
17  against hacking, including SIM swap fraud, after it implemented the increased security
18  measures" and therefore retained his account with AT&T.  SAC ¶ 92.

19  Thereafter, on January 7, 2018, Mr. Terpin alleges that an employee in an AT&T
20  store in Norwich, Connecticut, permitted a SIM swap of Mr. Terpin's wireless number
21  in violation of AT&T's security procedures.   SAC ¶¶ 95, 99.[2]  Mr. Terpin alleges
22  imposters "gained control over [his] accounts and stole nearly $24 million worth of
23  cryptocurrency from him on January 7 and 8, 2018."  SAC ¶ 95.

24  On August 15, 2018, Mr. Terpin filed a complaint against AT&T arising from

25  _____

26  [1]  For this motion only, AT&T assumes the truth of the well-pled allegations of Mr.
27  Terpin's Second Amended Complaint.

28  [2]  In fact, the individual Mr. Terpin references was never an AT&T employee.  He
worked for Spring Communications Holding, Inc., which was an independent company
that sold AT&T service.

these two alleged thefts, alleging sixteen common-law and statutory claims.  Dkt. 1.  On July 19, 2019, the Court dismissed the majority of Mr. Terpin's claims with leave to amend.  Dkt. 29.  Mr. Terpin filed his Amended Complaint on August 9, 2019, this time alleging nine claims, and AT&T again moved to dismiss.  Dkt. 32.

The Court granted AT&T's motion to dismiss in part and denied it in part.  Dkt. 37 ("*Terpin II*").  The Court dismissed Mr. Terpin's claim for deceit by concealment. *Terpin II* at 11.  Although Mr. Terpin alleged that AT&T failed to disclose the limits of its security systems, the Court held that he had not adequately alleged that AT&T had "a duty to disclose." *Terpin II* at 10.  Not only did AT&T actually disclose the limits of its security systems, Mr. Terpin did not identify any "affirmative acts" by AT&T to conceal the limits of its security systems. *Terpin II* at 10.

The Court also dismissed Mr. Terpin's misrepresentation claim. *Terpin II* at 12. Mr. Terpin's misrepresentation claim was based on two alleged theories: that AT&T made misrepresentations in its Privacy Policy and Code of Business Conduct, and that statements by alleged AT&T representatives that they would place a six-digit passcode on his account were false. *Terpin II* at 11–12.  As to the first theory, Mr. Terpin never alleged that he read or saw AT&T's Privacy Policy or Code of Business Conduct. *Terpin II* at 11.  As to the second theory, Mr. Terpin failed to allege that AT&T representatives never intended to place a six-digit code on his account.  *Terpin II* at 11–12.  These omissions doomed Mr. Terpin's misrepresentation claim. *Terpin II* at 12.

Finally, the Court struck Mr. Terpin's request for punitive damages. *Terpin II* at 14.  Mr. Terpin failed to "plead that an officer, director, or managing agent of AT&T committed or ratified an act of oppression, fraud, or malice." *Terpin II* at 14.  He also alleged "no facts showing that an officer, director, or managing agent of AT&T knew about or ratified the alleged wrongful conduct of which he complains." *Terpin II* at 14. Due to these failures, the Court did not rule on whether Mr. Terpin could recover punitive damages for his negligence claims. *Terpin II* at 14.

With respect to punitive damages, the SAC adds two new sets of allegations.

First, Mr. Terpin added the names of two AT&T executives, Bill O'Hern and David Huntley, to his prior allegations. *See, e.g.,* SAC ¶ 75. Mr. Terpin alleges that Mr. O'Hern and Mr. Huntley knew about SIM swaps generally, but does not allege that either man even knew of Mr. Smith, who Mr. Terpin alleges may have cooperated with criminal hackers, much less that either man knew of or ratified Mr. Smith's alleged criminal conduct. Second, Mr. Terpin added allegations that AT&T employees made specific promises to him about AT&T's security measures, but he fails to allege that the employees made these promises with no intention of performing them. SAC ¶¶ 159–61.

### III. Standard of Review

Under federal pleading standards, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conversely, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citations omitted). If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Moreover, claims for deceit and misrepresentation sound in fraud and thus "must meet the heightened pleading requirements of Rule 9(b)." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015). Similarly, to the extent a claim for punitive damages rests on an allegation that the defendant acted fraudulently, the circumstances allegedly amounting to fraud must be pled with particularity. *Perez v. Auto Tech. Co.*, 2014 WL 12588644, at *6 & n.33 (C.D. Cal. July 14, 2014).

## IV. Argument

### A.    Claim 3 (Deceit by Concealment) Should Be Dismissed with Prejudice.

Deceit by concealment is the "suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."  Cal. Civ. Code § 1710(3).  A defendant can only be liable for fraudulent concealment if it has a "legal duty to disclose" a "material fact." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014), *as modified on denial of reh'g* (Aug. 13, 2014).  Such a duty only exists in four limited circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (internal citation omitted).

In dismissing Mr. Terpin's deceit by concealment claim, this Court previously held that Mr. Terpin did not "sufficiently allege a duty to disclose" under any of these four circumstances. *Terpin II* at 10.  The heart of Mr. Terpin's "concealment claim [was] that AT&T hid the fallibility of its data security system from him." *Terpin II* at 10.  But AT&T "did in fact disclose the limits of its security to Mr. Terpin" in its Privacy Policy, which stated that AT&T "cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with [AT&T's] Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." *Terpin II* at 10. AT&T further disclosed that "AT&T DOES NOT GUARANTEE SECURITY" and "no security measures are perfect."  SAC, Ex. B at 27; Ex. D at 57 (§ 4.3).  Mr. Terpin did not adequately allege that AT&T had "exclusive knowledge of the vulnerability of its security practices," because, in addition to these disclosures by AT&T, "many of Mr. Terpin's own allegations regarding the prevalence of SIM swap fraud in the cryptocurrency community suggest the exact opposite" of exclusive knowledge by AT&T. *Terpin II* at 10.  The FAC was also "devoid of specific allegations of

1   'affirmative acts' AT&T took 'in hiding, concealing, or covering up' its imperfect

2   security." *Terpin II* at 10 (quoting *Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *6

3   (S.D. Cal. Apr. 18, 2014)).  The Court cautioned that Mr. Terpin "should not replead

4   this claim if he cannot cure these deficiencies." *Terpin II* at 11.

5        Mr. Terpin's newest allegations do not address these flaws.  Accordingly, his

6   deceit by concealment claim should be dismissed with prejudice.

### 1.    Claim 3 Should Be Dismissed with Prejudice Because Mr. Terpin Did Not Allege a Duty to Speak.

        Although a key element of a deceit by concealment claim is the imposition of a

legal duty to speak, Mr. Terpin does not allege any basis for such a duty here.  As an

initial matter, Mr. Terpin certainly has not alleged and cannot allege that he and AT&T

were fiduciaries, because a "fiduciary relationship generally does not arise out of

ordinary arms-length business dealings." *Tsai v. Wang*, 2017 WL 2587929, at *4 (N.D.

Cal. June 14, 2017) (internal citation omitted).  Because Mr. Terpin does not identify

the basis for his claim, AT&T will address each of the three other circumstances in which

a duty to disclose *could* (but does not) exist, none of which are pled here.

        First, Mr. Terpin fails to allege that AT&T had "exclusive knowledge" of a

material fact not known to him.  In his prior Opposition, Mr. Terpin asserted, despite not

alleging this basis in his First Amended Complaint, that "AT&T had exclusive

knowledge of the vulnerability of its security practices." Dkt. 34, at 16 (*quoted in Terpin*

*II* at 10.  But as the Court noted in its Opinion, "many of Mr. Terpin's own allegations

regarding the prevalence of SIM swap fraud in the cryptocurrency community suggest

the exact opposite." *Terpin II* at 10.  Nothing in the SAC undercuts the Court's prior

conclusion, or changes the fact that Mr. Terpin's own allegations about the media

coverage of SIM swaps and thefts conclusively demonstrate that AT&T lacked

"exclusive knowledge" of the alleged vulnerabilities.  SAC ¶¶ 60–85.  Accordingly, Mr.

Terpin goes beyond simply failing to plead that the second circumstance is the basis for

his claim that AT&T has a duty to disclose; indeed, he pleads facts that affirmatively

demonstrate the second circumstance does *not* apply here.

Second, Mr. Terpin's SAC does not provide any facts showing "affirmative acts" AT&T took "in hiding, concealing, or covering up the matters complained of." *Czuchaj*, 2014 WL 1664235, at *6 (internal citation omitted).  As the Court previously pointed out, "[t]he gravamen of Mr. Terpin's concealment claim is that AT&T hid the fallibility of its data security system from him." *Terpin II* at 10.  But Mr. Terpin did not allege any "'affirmative acts' AT&T took 'in hiding, concealing, or covering up' its imperfect security." *Terpin II* at 10 (quoting *Czuchaj*, 2014 WL 1664235, at *6).  And "[m]ere nondisclosure does not constitute active concealment." *Czuchaj*, 2014 WL 1664235, at *6; *see also Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 878 (2017) ("Active concealment occurs when a defendant prevents the discovery of material facts.").  If it were permissible to "infer affirmative acts from mere knowledge and inaction, then active concealment would be reduced to a weakened form of exclusive knowledge." *Czuchaj*, 2014 WL 1664235, at *6.  Like the prior complaint, the SAC does not list a single affirmative act AT&T took to conceal information from Mr. Terpin.  As a result, Mr. Terpin did not allege a duty to disclose based on active concealment.  *Blissard v. FCA US LLC*, 2018 WL 6177295, at *14 (C.D. Cal. Nov. 9, 2018) (dismissing claim based on an active concealment theory in the absence of "a well-supported allegation of intentional acts to conceal" knowledge from the plaintiff).

Finally, Mr. Terpin does not adequately allege that AT&T made a partial disclosure of a material fact.  This exception applies when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (internal citations omitted).  Although Mr. Terpin does not explicitly identify a "partial representation" that he asserts provides the basis for his deceit by concealment claim, he seems to suggest in new allegations that AT&T disclosed fewer than all relevant facts. *See* SAC ¶¶ 58, 143–44.  Specifically, Mr. Terpin alleges that, although AT&T disclosed that its security measures were not perfect and

could be evaded, AT&T did not disclose that one of the ways that security measures could be evaded was by the bribery or cooperation of AT&T "employees."[3]  SAC ¶ 144. But this new level of specificity regarding *what* was supposedly not disclosed adds nothing to the question of whether AT&T had a *duty* to disclose.

As to the new alleged facts Mr. Terpin claims were not disclosed—specifically, that AT&T's "level of protection" was "poro[u]s" or "inadequa[te]" and could be circumvented, SAC ¶¶ 58, 143—these allegations do not "materially qualify" AT&T's disclosures that "AT&T DOES NOT GUARANTEE SECURITY" and "no security measures are perfect."  SAC, Ex. B at 27; Ex. D at 57 (§ 4.3).  Instead, they *reinforce* AT&T's disclosures.  Mr. Terpin's argument is nothing more than an allegation that AT&T had a legal duty to disclose *more details* about the ways in which a breach of security might happen, which simply is not the circumstance of a partial representation. Moreover, where, as here, the allegedly disclosed information is substantially disclosed, no cause of action for concealment is available.  *See Riggins v. Ortho McNeil Pharm., Inc.*, 51 F. Supp. 3d 708, 712 (N.D. Ohio 2014) ("In the warning document which accompanied the patch, the Defendants disclosed the dangers associated with the use of the patch.  Therefore, no false representation has been established."); *Clayton v. Landsing Pac. Fund, Inc.*, 2002 WL 1058247, at *6 (N.D. Cal. May 9, 2002), *aff'd*, 56 F. App'x 379 (9th Cir. 2003) (dismissing claim based on fraudulent concealment where defendants "*actually disclosed the information . . . plaintiff says was kept secret from her*") (emphasis in original).  Mr. Terpin did not, therefore, allege a duty to disclose based on partial representation.

Accordingly, Mr. Terpin's SAC does not address the Court's previous conclusion that he has not pled a duty to disclose.  As a result, Claim 3 should be dismissed with prejudice.

---

[3]  As previously noted, Mr. Smith, the focus of Mr. Terpin's allegations, was not an AT&T employee, but worked for a vendor.

1
2

### 2.   Claim 3 Should Be Dismissed with Prejudice Because Mr. Terpin Has Not Pled That He Was Unaware of Any Allegedly Concealed Facts.

3

A claim for deceit also requires a plaintiff to plausibly plead that he was unaware

4

of a concealed material fact and would have acted differently had he known about it.

5

*Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011–12 (9th Cir. 2011).  Because this

6

claim sounds in fraud, it must be pled with particularity.  *See Vess v. CIBA-Geigy Corp.*

7

*USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *Patera v. Citibank, N.A.*, 79 F. Supp. 3d

8

1074, 1085 (N.D. Cal. 2015).

9

Mr. Terpin does not satisfy this element because he does not allege that he was

10

unaware of the facts he claims AT&T should have disclosed.  The Court was not required

11

to reach this failing in Mr. Terpin's deceit by concealment claim because of its decision

12

on Mr. Terpin's failure to plead a duty to disclose.  But it is equally fatal to Mr. Terpin's

13

claim.   Specifically, Mr. Terpin alleges that AT&T did not disclose the alleged

14

inadequacy and ineffectiveness of its data security measures; that its employees could

15

bypass those measures and/or cooperate with thieves; that AT&T did not provide a SIM

16

lockdown with its higher level of security; that AT&T could not protect Mr. Terpin's

17

Personal Information; that SIM swap fraud was common in the cryptocurrency

18

community; that his Personal Information was readily obtained by hackers; and that

19

AT&T inadequately supervised and trained its employees.  SAC ¶¶ 142–52.  But Mr.

20

Terpin does not claim that he was *unaware* of these alleged facts, nor would such claim

21

be plausible.  Mr. Terpin describes himself as a "prominent member of the blockchain

22

and cryptocurrency community," and it is implausible that such an individual would not

23

be aware of what Mr. Terpin alleges is a rampant practice of cryptocurrency thefts via

24

SIM swaps.  SAC ¶ 19.  Moreover, the "prior incidents" that he alleges inform AT&T's

25

awareness of purported deficiencies in its data security procedures necessarily include

26

the June 11, 2017 SIM swap that Mr. Terpin alleges he experienced.  SAC ¶¶ 86–87.

27

After that point, Mr. Terpin cannot plausibly claim that he was unaware of the risk of a

28

SIM swap.  As a result, he cannot plausibly allege that he would have acted differently

if AT&T had made further, more specific disclosures about the limits of its security.

**B.     Claim 4 (Misrepresentation) Should Be Dismissed with Prejudice.**

In the FAC, Mr. Terpin alleged that AT&T misrepresented its security practices in two ways.  First, he alleged that AT&T's Privacy Policy and Code of Business Conduct ("COBC") contain misrepresentations about AT&T's security practices.  SAC ¶¶ 159, 160.  Second, he alleged that an AT&T employee promised him that a six-digit code would be added to his account after his SIM card was swapped to provide him additional protection.  SAC ¶¶ 159, 160.

This Court dismissed this claim in its entirety because Mr. Terpin "fails to allege knowledge of falsity and justifiable reliance." *Terpin II* at 12.  The Court allowed Mr. Terpin to replead to the extent he "can plead that he actually relied upon the statements in AT&T's Privacy Policy and COBC or that AT&T never intended to adhere to its heightened security protocols." *Terpin II* at 12.  The SAC does not plausibly plead either of these things.  Accordingly, the misrepresentation claim should be dismissed, this time with prejudice.

**1.     The SAC Confirms that Mr. Terpin Cannot Plausibly Allege Reliance on the Privacy Policy or Code of Business Conduct Because He Did Not Read Them.**

"To state a claim for intentional misrepresentation under California law, a plaintiff must plead, among other things, that 'the defendant intended that the plaintiff rely on the representation' and 'the plaintiff reasonably relied on the representation.'" *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) (internal citations omitted).  To adequately plead reliance, the plaintiff must allege that he was somehow exposed to the alleged misrepresentation. *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 874 (N.D. Cal. 2018), *order clarified*, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) ("In an affirmative misrepresentation case, a plaintiff obviously must plead that they in fact viewed or were exposed to the misleading misrepresentation; otherwise, they could not have relied on it.").

Here, Mr. Terpin does nothing to cure his inadequate reliance allegations as to the written statements in the Privacy Policy and the COBC.  As the Court noted in its recent

opinion, Mr. Terpin did not "allege that he actually read AT&T's Privacy Policy or COBC, which makes Mr. Terpin's allegation that he reasonably relied on the statements contained therein implausible." *Terpin II* at 11. Mr. Terpin makes no changes on this issue in the SAC; he still does not allege that ever read, saw, or heard AT&T's Privacy Policy or COBC. Absent this crucial factual allegation, his misrepresentation claim must be dismissed with prejudice. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *27–28 (N.D. Cal. Aug. 30, 2017) (dismissing plaintiffs' affirmative misrepresentation claim because plaintiffs did not allege that they "*actually read*" defendant's Privacy Policy) (emphasis in original)). Because Mr. Terpin does not make any amendment to his SAC that bears on this point, he has all but conceded that his misrepresentation claim should be dismissed with prejudice to the extent it is based on a theory of reliance on statements in the Privacy Policy or COBC.

> **2.    Claim 4 Should Be Dismissed with Prejudice Because Mr. Terpin Does Not Allege that AT&T Employees Never Had An Intention of Performing.**

In the SAC, Mr. Terpin instead focuses on his alternative theory—specifically, that AT&T made verbal false promises to him. However, he is unable to allege, as the Court required, that "AT&T intended to ignore its heightened security protocol when it represented to Mr. Terpin that it would require a six-digit passcode before allowing changes to his account." *Terpin II* at 11–12. Such an allegation is necessary, especially where particularity is required by Rule 9(b). *Bullard v. Wastequip, Inc.*, 2014 WL 10987394, at *3–4 (C.D. Cal. Sept. 11, 2014).

To adequately plead misrepresentation based on a false promise, the plaintiff must plead "facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made." *UMG Recordings*, 117 F. Supp. 3d at 1108; *see also Tarmann*, 2 Cal. App. 4th at 158–59 ("To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing.").

Because a false promise claim alleges a "subspecies of fraud," such claims must meet the "heightened pleading requirements of Rule 9(b)." *Bullard*, 2014 WL 10987394, at *3–4.

A plaintiff cannot meet this standard by merely pleading non-performance. *See id.* at *5 ("[M]ere nonperformance does not suffice to explain the falsity of the promise."); *Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 481 (1996) ("[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise . . . if plaintiff produces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." (internal citation omitted)). Instead, the plaintiff must "plead facts explaining why the statement was false when it was made," such as "inconsistent contemporaneous statements or information which was made by or available to the defendant." *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153–54 (S.D. Cal. 2001); *see also Tenzer v. Superscope, Inc.,* 39 Cal. 3d 18, 30–31 (1985) (holding that "fraudulent intent can be inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform.").

As this Court previously held, Mr. Terpin does not satisfy these requirements because he "does not allege that AT&T intended to ignore its heightened security protocol when it represented to Mr. Terpin that it would require a six-digit passcode before allowing changes to his account." *Terpin II* at 11-12. Moreover, Mr. Terpin is unable to plausibly make such an allegation as he has failed to satisfy the requirement of Rule 9(b) that he "allege the names of the employees or agents who purportedly made the fraudulent representations or omissions" or, at the very least, identify the speakers "by their titles and/or job responsibilities." *Bullard*, 2014 WL 10987394, at *6. Mr. Terpin fails to allege even this minimal information about the employees he spoke with in Puerto Rico. SAC ¶¶ 88, 144.

In the absence of such allegations, Mr. Terpin alleges only that "AT&T did not intend to perform . . . its promises . . . because it knew that its security protections, including the six-digit security code, were ineffectual and could easily be evaded or bypassed by its employees." SAC ¶ 160.  As a threshold matter, the suggestion that AT&T did not disclose the limits of security is false; in AT&T's express disclosure about possible security breaches, AT&T made clear that it could not promise that breaches would never occur.  *See* SAC, Ex. B at 27; Ex. D at 57 (§ 4.3).  Further,  an allegation that AT&T knew that it may be unable to prevent a security breach is not the same as plausibly alleging that AT&T did not place the heightened security protection on Mr. Terpin's account or did not intend it to limit the ability to swap Mr. Terpin's SIM card. *See Magpali*, 48 Cal. App. 4th at 481 ("[The defendant] may have been overly optimistic in believing that an inexperienced agent could generate sufficient sales to justify the continued operation of the agency, but an erroneous belief, no matter how misguided, does not justify a finding of fraud."); *see also Tarmann*, 2 Cal. App. 4th at 159 (sustaining the defendant's demurrer because "making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise.").

Because Mr. Terpin does not and cannot plausibly allege that "AT&T intended to ignore its heightened security protocol when it represented to Mr. Terpin that it would require a six-digit passcode before allowing changes to his account," *Terpin II* at 11–12, this aspect of his misrepresentation claim should also be dismissed with prejudice.

## C.    Mr. Terpin's Claims Against All Fictitious Defendants Should Be Dismissed with Prejudice.

Just as he did in the FAC, Mr. Terpin names as defendants in this litigation Does 1-25.  Despite the Court's dismissal of these defendants previously, Mr. Terpin adds no additional allegations about those Defendants.  Accordingly, the Does should be dismissed from the litigation, this time with prejudice.

Gibson, Dunn &
Crutcher LLP

13

First, Central District of California Local Rule 19-1 provides that "No complaint or petition shall be filed that includes more than ten (10) Doe or fictitiously named parties." Courts in this district have routinely dismissed any fictitious defendants beyond the ten-party limit of Local Rule 19-1. *See, e.g., Parker v. Hughes*, 2017 WL 10574939, at *2 (C.D. Cal. May 31, 2017); *Delquin Plastics USA, Inc. v. Larach*, 2017 WL 4786000, at *1 (C.D. Cal. July 25, 2017). Accordingly, Does 11-25 should be dismissed with prejudice.

Second, in this District "[u]nidentifiable Doe defendants may be dismissed from the complaint." *MGA Entmt., Inc. v. Dynacraft BSC, Inc.*, 2018 WL 2448123, at *8 (C.D. Cal. May 30, 2018) (Wright, J.). This Court has explained that "'[w]hile a plaintiff may sue up to ten unidentified Doe defendants (*see* Local Rule 19-1), it is required to make individualized allegations about each such Doe defendant[] and may not merely name an indistinguishable group of Doe defendants.'" *Id.* (quoting *Rhue v. Signet Domain LLC*, 2015 WL 4111701, at *5 (C.D. Cal. Jul. 8, 2015)). Because Mr. Terpin has failed to "identify 'each unidentified defendant by a separate fictitious name . . . *and* allege facts that demonstrate a causal link between' each unidentified defendant and the alleged offense," his claims against the Doe defendants should be dismissed with prejudice. *Id.* (emphasis in original).

## D. Mr. Terpin's Request for Punitive Damages Should Be Dismissed with Prejudice.

Mr. Terpin requests punitive damages for Claims 3–7. Punitive damages are "disfavored by the law." *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010) (internal citation omitted). These damages are only available upon clear and convincing evidence that the conduct giving rise to the award is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people" or "[having] the character of outrage frequently associated with crime." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994) (internal citation omitted).

Gibson, Dunn &
Crutcher LLP

14

California law holds that punitive damages may only be awarded against an entity defendant based on the entity's "*own* wrongful conduct." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1154 (1998) (emphasis in original). An entity may not be held liable for punitive damages based upon the acts of an employee unless the plaintiff proves, by clear and convincing evidence, that an "officer, director or managing agent" of the entity either "had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the [punitive] damages are awarded or was personally guilty of oppression, malice, or fraud." Cal. Civ. Code § 3294(b). Managing agents are employees who "'exercise[] substantial discretionary authority over decisions that ultimately determine *corporate policy*.'" *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000) (alteration and emphasis in original) (quoting *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573 (1999)). By confining liability to "officer[s], director[s], and managing agent[s]," California law "avoids punishing the corporation for malice of low-level employees which does not reflect the corporate 'state of mind' or the intentions of corporate leaders." *Cruz*, 83 Cal. App. 4th at 167; *see also White*, 21 Cal. 4th at 569.

Recognizing these principles, the Court previously dismissed Mr. Terpin's request for punitive damages. *Terpin II* at 14. Mr. Terpin not only alleged no facts showing that any "officer, director, or managing agent of AT&T knew about or ratified the alleged wrongful conduct," he did not name any AT&T employee who would qualify as an officer, director, or managing agent. *Terpin II* at 14. Mr. Terpin's SAC fails to cure the flaws in his request for punitive damages and dismissal with prejudice is appropriate here.

### 1. Mr. Terpin Did Not Plead Any Facts Plausibly Alleging Ratification of the Alleged Wrongful Conduct by AT&T.

Under California law, "ratification generally occurs where, under the particular circumstances, the employer demonstrates an intent to adopt or approve oppressive,

fraudulent, or malicious behavior by an employee in the performance of his job duties." *Coll. Hosp. Inc. v. Superior Ct.*, 8 Cal. 4th 704, 726 (1994). In short, the employer has to ratify that which is oppressive, fraudulent, or malicious to satisfy the punitive damages pleading threshold, not just ratify any conduct alleged in the complaint. For example, an employer may be found to have ratified the relevant conduct where it fails to "stop known on-the-job sexual harassment of [an] employee by coworkers" or "directs, reviews, and approves malicious claims settlement practices." *Id.* (internal citations omitted). On the other hand, in *Razo v. TIMEC Co., Inc.*, the court dismissed the plaintiff's request for punitive damages, in part, because the plaintiff did not allege that any of the defendant's executives "had actual knowledge of any wrongdoing by [the unfit employee]." 2017 WL 5079249, at *19 (N.D. Cal. Nov. 3, 2017). Tracking this distinction, in *Khan v. 7-Eleven, Inc.*, the Court held that the plaintiff adequately alleged the mental state for punitive damages on an anti-stalking claim where a managing agent "ratified the allegedly malicious conduct of [the] employees by knowingly allowing them to continue to follow" the plaintiff. 2015 WL 12743691, at *3 (C.D. Cal. Sept. 15, 2015). But it dismissed plaintiff's request for punitive damages as to an assault and battery claim involving one of the same employees, because the complaint lacked any allegations that the employer's "managing agent authorized or ratified" the assault. *Id.*

The Court previously held that Mr. Terpin has "allege[d] no facts showing that an officer, director, or managing agent of AT&T knew about or ratified the alleged wrongful conduct of which he complains." *Terpin II* at 14. In a failed attempt to address this defect, Mr. Terpin simply throws in the names of two AT&T executives, Mr. Huntley and Mr. O'Hern as window dressing. SAC ¶ 75. However, Mr. Terpin's SAC does not change the core of his theory: specifically, that a supposed "employee" (who actually worked for a vendor) intentionally aided hackers in swapping Mr. Terpin's SIM card, somehow leading to Mr. Terpin's alleged loss. Neither Mr. Huntley nor Mr. O'Hern is, or could plausibly be, alleged to have known about or ratified the alleged intentional misconduct by the relevant vendor's employee/contractor. Instead, Mr.

Terpin alleges only that (i) based on their positions, they knew or should have known about "structural security flaws and lapses" at AT&T; and (ii) as a result, "they committed or ratified the acts of oppression, fraud or malice alleged herein." SAC ¶¶ 75, 77–79, 83–84, 90–93, 143–49, 156, 165. These allegations are not enough to avoid the fatal problem the Court previously identified.

First of all, Mr. Terpin is seeking punitive damages in the name of Mr. Huntley and Mr. O'Hern by conflating their alleged actions (which are alleged to be negligent at most) with the allegedly intentional misconduct of Mr. Smith and third party criminals. Specifically, Mr. Terpin equivocates on whether Mr. Huntley and Mr. O'Hern "knew" or "should have known" about the potential for SIM swaps, SAC ¶¶ 77, 79, 93, 145, and then suggests that the two men were responsible for security and privacy measures that Mr. Terpin alleges were negligent, SAC ¶¶ 176, 190, 204. This "knew or should have known" allegation sounds in negligence, not the intentional action required for punitive damages. Moreover, even if Mr. Huntley and Mr. O'Hern were aware of a generalized risk that criminals might engage in SIM swaps, that falls far short of the required "intent to adopt or approve oppressive, fraudulent, or malicious behavior by an employee." *Coll. Hosp.*, 8 Cal. 4th at 726. That is, an alleged failure to exercise due care is not the same as: (i) personally committing any acts of misconduct; (ii) knowing anything about Mr. Smith; or (iii) knowing of or ratifying any oppressive, fraudulent, or malicious acts by Mr. Smith and approving those acts, including any acts that led to the harm here. By focusing on alleged conduct that was at best negligent, Mr. Terpin has failed to allege any conduct of Mr. Huntley or Mr. O'Hern that fits within the narrow scope for which employer liability for punitive damages is allowed by California Civil Code Section 3294.

By contrast, in *Cardenas v. American Airlines, Inc.*, the plaintiff alleged that the defendant's executives "knew that [the unfit employee] had difficulty in dealing with members of the opposite sex based on previous events." 2018 WL 1963787, at *5 (S.D. Cal. Apr. 26, 2018). And in *Greenfield v. Spectrum Investment Corp.*, the plaintiff

1   alleged that the defendant retained the unfit employee even though it knew about his

2   violent temper and assault on a customer at work.   174 Cal. App. 3d 111, 118–121

3   (1985), *overruled on other grounds by Lakin v. Watkins Associated Indus.*, 6 Cal. 4th

4   644, 664 (1993).   Each of these cases therefore focuses on what the defendant's

5   executives knew about the *particular* employee and the *particular* wrongdoing in which

6   he or she engaged, not on a general awareness that employees could exploit the

7   company's security limitations at a random time and location.   Mr. Terpin's allegations

8   are inadequate under this precedent.

9        Mr. Terpin's other new allegations—conclusory statements "devoid of factual

10   support" that particular individuals meet the legal test by virtue of their titles—are

11   precisely the type of "formulaic recitation of the elements of a cause of action" that the

12   Supreme Court instructed in *Twombly* was inadequate.   *Perez*, 2014 WL 12588644, at

13   *7; *Twombly*, 550 U.S. at 555; *see also Diehl v. Starbucks Corp.*, 2014 WL 5171799, at

14   *5 (S.D. Cal. Oct. 14, 2014) ("Although the names and titles of certain personnel are

15   sprinkled throughout the TAC, the TAC is still wanting in regard to factual allegations

16   supporting a punitive damages prayer.").   Because Mr. Terpin has not remedied his

17   failure to plausibly allege facts to support a conclusion that any "officer, director or

18   managing agent" of AT&T ratified the wrongful conduct, his request for punitive

19   damages should be dismissed with prejudice.

### 2.   Mr. Terpin Did Not Plead the Required Mental State for Punitive Damages, Particularly on the Part of Any AT&T Executive.

22        Mr. Terpin also fails to adequately plead the required mental state to support a

23   claim for punitive damages.   In California, punitive damages are only permitted "where

24   it is proven by clear and convincing evidence that the defendant has been guilty of

25   oppression, fraud, or malice."   Cal. Civ. Code § 3294(a).   As set forth above, where the

26   claim is against an employee, if an "officer, director, or managing agent of the

27   corporation" did not either have "advance knowledge of the unfitness of the employee"

28   or "authorize[] or ratif[y] the wrongful conduct for which the damages are awarded"—

neither of which has been pled here—the officer, director, or managing agent must have been the one to engage in conduct with oppression, fraud, or malice. *Id.* A "conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud or malice.'" *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977) (quoting Cal. Civ. Code § 3294); *Torralbo v. Davol, Inc.*, 2017 WL 5664993, at *7 (C.D. Cal. Oct. 19, 2017). Instead, the "facts constituting bad faith or fraud must be specifically alleged." *Lavine v. Jessup*, 161 Cal. App. 2d 59, 69 (1958) ("mere use" of terms like fraud "is not enough").

Malice requires "intentional injury or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Perez v. Auto Tech. Co.*, 2014 WL 12588644, at *4 (C.D. Cal. July 14, 2014) (internal citation omitted). When there is no plausible allegation of "intentional injury," the plaintiff must allege conduct that is both willful and despicable. *See Lackner v. North*, 135 Cal. App. 4th 1188, 1211, 1213 (2006). "Oppression" similarly requires pleading of "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Perez*, 2014 WL 12588644, at *4. Conduct only becomes despicable when it is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 332–33 (2019) (internal citation omitted). Courts often describe this conduct as "having the character of outrage frequently associated with crime." *Pac. Gas & Elec. Co. v. Superior Ct.*, 24 Cal. App. 5th 1150, 1159 (2018); *see also Coll. Hosp. Inc.*, 8 Cal. 4th at 725.

Mr. Terpin has pleaded no facts to support a theory of "malice, fraud, or oppression." Instead, just like in his FAC, Mr. Terpin's allegations concerning malice, fraud, and oppression are based on nothing more than conclusory allegations and unreasonable inferences. *See, e.g.*, SAC ¶¶ 156, 165, 176, 190, 204. These assertions are "devoid of factual support" and insufficient to support a prayer for punitive damages. *Perez*, 2014 WL 12588644, at *7 (conclusory statements to support punitive damages

are "not entitled to the presumption of truth under *Iqbal* and *Twombly*").  Because Mr. Terpin "invites the court to read . . . an evil motive" into "facts that describe nothing more than the basic elements" of the claims he asserts, his request for punitive damages should be dismissed with prejudice.  *Kelley*, 750 F. Supp. 2d at 1148.  Indeed, Mr. Terpin pleads only that the "employees at the AT&T store who unlawfully handed over Mr. Terpin's telephone number to thieves were *either blind or complicit*."  SAC ¶ 98 (emphasis added).  This acknowledgment that those employees may *not* have been complicit further supports the rejection of Mr. Terpin's request for punitive damages.

The facts that Mr. Terpin pleads do not rise to the level of conscious disregard. To plead conscious disregard, the plaintiff must show that the defendant was (1) "aware of the probable dangerous consequences of its conduct," but (2) "willfully and deliberately failed to avoid those consequences."  *Perez*, 2014 WL 12588644, at *4.  The plaintiff must allege "specific facts" showing both awareness of probably dangerous consequences and willful and deliberate avoidance.  Mr. Terpin did not plead either prong.

To adequately plead awareness, the plaintiff is required to allege facts showing that corporate executives were aware of a probable dangerous consequence *before* the plaintiff suffered his alleged harm.  For example, in *Rosa v. Taser International, Inc.*, the Ninth Circuit held that the defendant "[l]ogically . . . could not have disregarded a known risk that its products could cause [fatalities]" because the only report showing such a danger was published *after* the product was already on the market.  684 F.3d 941, 949 n.7 (9th Cir. 2012).  As a result, the plaintiff could not show conscious disregard because the "risk was not knowable."  *Id.*  Similarly, in *Johnson & Johnson Talcum Powder Cases*, the court rejected a claim for punitive damages because clear "[s]cientific evidence" about the potential dangers of talcum powder "developed post-injury."  37 Cal. App. 5th at 334.  As a result, the plaintiff "did not create a reasonable inference that [the defendant] was acting with malice, pre-injury, in failing to warn of probable dangerous consequences of the product."  *Id.*; *see also Garcia v. M-F Athletic Co.*, 2012

WL 531008, at *4 (E.D. Cal. Feb. 17, 2012) ("The fact that lawsuits were filed does not establish that injuries actually occurred. Plaintiffs have been known to file frivolous lawsuits and, without knowing any details regarding these lawsuits (not even the number filed), the court cannot infer conscious disregard on the part of defendants."). Mr. Terpin's allegations run afoul of this basic principle.

Mr. Terpin launches the conclusory allegation that Mr. O'Hern and Mr. Huntley knew AT&T employees swapped SIM cards in cooperation with criminals well before Mr. Terpin's attack. SAC ¶¶ 75, 77. He also alleges that Mr. O'Hern and Mr. Huntley should have known about SIM swapping because of "prior incidents and contacts with law enforcement." SAC ¶ 145. But he provides no factual support for this conclusion. Instead, his allegations focus on examples of SIM swapping that occurred *after* Mr. Terpin's alleged attack in June of 2017. *See supra* at 9; *see also* SAC ¶¶ 65–78. In fact, every instance of SIM swapping he references came *after* Mr. Terpin's alleged attack. Under *Rosa*, these instances are legally—not to mention logically—incapable of giving Mr. O'Hern and Mr. Huntley advanced knowledge of SIM swapping, particularly of SIM swapping by Mr. Smith. Without the ability to plead any advanced knowledge, Mr. Terpin cannot plead conscious disregard.

Moreover, Mr. Terpin must plead that AT&T was not only aware of the danger of SIM swaps, but that it willfully and deliberately avoided remedying that danger. In multiple cases that find willful and deliberate avoidance, plaintiffs alleged that the defendant refused to take remedial measures for lengthy periods of time despite clear evidence showing a danger. For example, in *Maples v. 3M Co.*, the defendant's top management received "early warnings about the hazards of asbestos" but "did not issue any warnings" about its products until "more than 20 years later." 2017 WL 10592131, at *10 (C.D. Cal. May 15, 2017). According to the court, the sheer "length of this period during which [the defendant] did nothing" was "evidence of its conscious disregard of the safety of others." *Id.*; *see also Garcia*, 2012 WL 531008, at *4 (dismissing a complaint for punitive damages because the complaint did not show how the defendant

1    "acted in a despicable manner such that they should be forced to pay punitive damages

2    above and beyond the damages normally assessed").

3            Mr. Terpin alleges no similar facts. The most that he alleges is that Mr. O'Hern

4    and Mr. Huntley knew that SIM swaps were possible.  SAC ¶¶ 92, 143, 145, 149, 156.

5    Yet, Mr. Terpin does not point to a single instance of SIM swapping prior to June 2017

6    that would show Mr. O'Hern or Mr. Huntley knew of the danger of SIM swaps prior to

7    the June 2017 swap, much less that they deliberately declined to address them or attempt

8    to prevent them in the face of such prior knowledge.  Mr. Terpin's allegations about

9    AT&T's financial incentives are also insufficient to justify punitive damages.  SAC ¶ 10.

10   This falls far short of the conscious disregard required by California law.  *Maples*, 2017

11   WL 10592131, at *10.  Moreover, speculation about financial motivations cannot, as a

12   legal matter, show conscious disregard.  *Edison v. Mgmt. & Training Corp.*, 2018 WL

13   3491675, at *10 (E.D. Cal. July 19, 2018) (rejecting the notion that conjecture about

14   "financial motivations" alone can support a finding of conscious disregard).  Without

15   pleading facts to suggest that Mr. O'Hern or Mr. Huntley had clear knowledge about the

16   danger of SIM swapping for a significant period of time but did nothing, Mr. Terpin's

17   request for punitive damages must be dismissed with prejudice.

18           In sum, Mr. Terpin fails to allege that Mr. O'Hern or Mr. Huntley acted with

19   conscious disregard.  As a result, his request for punitive damages must be dismissed

20   with prejudice.

21           **3.    Punitive Damages Are Unavailable for Claims 5–7 as a Matter of
                      Law.**

22           Punitive damages are unavailable as a matter of law for Claims 5–7.  It is well

23   established in California that "[m]ere . . . negligence, [e]ven gross negligence is not

24   sufficient to justify an award of punitive damages." *Simmons v. S. Pac. Transp. Co.*, 62

25   Cal. App. 3d 341, 368 (1976) (internal citation omitted); *Molina v. J.C. Penney Co.*,

26   2015 WL 183899, at *3 (N.D. Cal. Jan. 14, 2015) ("The standard for punitive damages

27   requires behavior more offensive than the standard for gross negligence.").  Thus, Mr.

28

Terpin's requests for punitive damages for his claims of negligence, negligent supervision and training, and negligent hiring (Claims 5–7) are unavailing. SAC ¶¶ 176, 190, 204. The "formulaic recitation of the elements" required for punitive damages, tacked on to the end of the negligence claims, is not adequate to plead the required basis for ratification by the corporation or to plead malice, fraud, or oppression, as required for punitive damages. *See Gilstrap v. United Airlines, Inc.*, 2014 WL 12734331, at \*6 (C.D. Cal. Jan. 17, 2014).

### 4. Punitive Damages Are Not Proper for Cases of First Impression.

Finally, "[i]t is generally recognized in California and the Ninth Circuit that punitive damages are not proper in cases of first impression." *In re First All. Mortg. Co.*, 2003 WL 21530096, at \*10 (C.D. Cal. June 16, 2003) (rejecting a request for punitive damages, in part, because the issue was one of first impression) (citing *Morgan Guar. Trust Co. v. American Sav. & Loan Ass'n*, 804 F.2d 1487, 1500 (9th Cir. 1986); *Bartling v. Glendale Adventist Med. Ctr.*, 184 Cal. App. 3d 961, 229 (1986)).

AT&T could not find one case involving an alleged SIM swap prior to this one, making it a novel case of first impression. In such a situation, where the legal issues and rights are not clearly established, the issues are unique, and the heightened standard for punitive damages claims applies, punitive damages are inappropriate. Mr. Terpin's request for punitive damages should be dismissed with prejudice. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2016 WL 6916826, at \*3 (C.D. Cal. Sept. 8, 2016) (rejecting a claim for punitive damages because "the issue presented in this case [had] never been directly addressed before"); *Morgan Guar. Trust Co.*, 804 F.2d at 1500 ("Although we reverse, we acknowledge that this is a close case and that the key issue is one of first impression. Punitive damages are inappropriate in this case.").

### E. AT&T Preserves Previously Asserted Arguments.

In briefing on its first two Motions, AT&T raised additional challenges to the sufficiency of the allegations of the original Complaint and FAC. *See* Dkts. 14, 22, 33, 35. In particular, AT&T argued that Mr. Terpin failed to adequately plead proximate

cause for any of his claims, Dkt. 14 at 5–6, 22 at 1–3, 33 at 5–10, 35 at 1–5, and raised challenges to Counts 1 and 2 of the FAC, which the Court rejected, as well as the argument that the *J'Aire* exception to the economic loss doctrine does not apply where the parties are in contractual privity, even with a contract for services.  *See* Dkt. 14 at 6–10; Dkt. 22 at 3–4, 9–10, Dkt. 33 at 10–13, Dkt. 35 at 5–7; *see also Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091–94 (C.D. Cal. 2017) (Wright, J.); *Dep't of Water and Power of City of L.A. v. ABB Power T & D Co.*, 902 F. Supp. 1178, 1189 (C.D. Cal. 1995).  AT&T also argued that the independent criminal acts of the hackers prevented a finding of proximate causation.  *See* Dkt. 14 at 6.

Although AT&T does not believe it is required to raise its legal arguments in this Motion to preserve them for later stages of this litigation, for avoidance of any risk of waiver, AT&T preserves each of the arguments raised in its prior briefing here with respect to the SAC.

## V. Conclusion

For the reasons set forth above, Claims 3 and 4 (Deceit by Concealment and Misrepresentation) should be dismissed with prejudice, and Mr. Terpin's request for punitive damages should be dismissed with prejudice.

Dated:  March 30, 2020

MARCELLUS MCRAE
ASHLEY E. JOHNSON
GIBSON, DUNN & CRUTCHER LLP


By: /s/   *Ashley E. Johnson*
               Marcellus McRae
               Ashley E. Johnson

Attorneys for Defendant AT&T MOBILITY LLC

Gibson, Dunn &
Crutcher LLP

24