1    MARCELLUS MCRAE, SBN 140308
        mmcrae@gibsondunn.com
2    GIBSON, DUNN & CRUTCHER LLP
     333 South Grand Avenue
3    Los Angeles, CA  90071-3197
     Telephone:  213.229.7000
4    Facsimile:   213.229.7520

5    ASHLEY E. JOHNSON, admitted *pro hac vice*
        ajohnson@gibsondunn.com
6    GIBSON, DUNN & CRUTCHER LLP
     2001 Ross Avenue
7    Suite 2100
     Dallas, TX 75201-2911
8    Telephone:  214.698.3100
     Facsimile:   214.571.2900

9
     Attorneys for Defendant AT&T MOBILITY
10   LLC

11                   UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13                        WESTERN DIVISION

14   MICHAEL TERPIN,                   CASE NO. 2:18-CV-6975-ODW-KS

15                    Plaintiff,       **DEFENDANT AT&T MOBILITY
                                       LLC'S REPLY IN SUPPORT OF ITS
16         v.                          MOTION TO DISMISS PLAINTIFF'S
                                       SECONDED AMENDED
17   AT&T MOBILITY LLC,                COMPLAINT**

18                    Defendant.       **Hearing:**
                                       Date:      May 4, 2020
19                                     Time:      1:30 p.m.
                                       Place:     350 West 1st Street, 5th Floor
20                                                Courtroom 5D
                                                  Los Angeles, CA  90012
21                                     Judge:     Hon. Otis D. Wright II

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................ 2

    A.    Claim 3 (Deceit by Concealment) Should Be Dismissed with
Prejudice. ........................................................................................... 2

        1.    Mr. Terpin Has Not Pled a Basis To Require AT&T To
Disclose the Allegedly Withheld Facts. ............................................ 2

            a.    AT&T Did Not Have Exclusive Knowledge of
Material Facts. .................................................................. 2

            b.    Mr. Terpin Does Not Allege Any Facts Showing
Active Concealment. ......................................................... 4

            c.    Mr. Terpin Did Not Adequately a Plead Partial
Representation. ................................................................. 4

        2.    Mr. Terpin Has Not Pled that He Was Unaware of Any
Allegedly Concealed Facts. ............................................................... 5

    B.    Claim 4 (Misrepresentation) Should Be Dismissed with Prejudice. ......... 6

    C.    Mr. Terpin's Request for Punitive Damages Should Be Dismissed
with Prejudice. ................................................................................... 8

        1.    Mr. Terpin Concedes He Has Not Pled Ratification. ..................... 8

        2.    Mr. Terpin Did Not Plead Any Facts Showing the Required
Mental State by AT&T Executives. .................................................. 8

        3.    Punitive Damages Are Unavailable for Claims 5–7 as a
Matter of Law. ................................................................................... 11

        4.    This Case is One of First Impression That Warrants
Dismissal of the Punitive Damages Request. ................................. 12

III. CONCLUSION ............................................................................................ 12

Gibson, Dunn &
Crutcher LLP

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*All. for Educ., Inc. v. Airborne Wireless Network Inc.*,
5
    2018 WL 7568581 (C.D. Cal. Dec. 17, 2018)........................................................11

6

*Bullard v. Wastequip, Inc.*,
7
    2014 WL 10987394 (C.D. Cal. Sept. 11, 2014)....................................................6, 8

8

*Czuchaj v. Conair Corp.*,
9
    2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ...........................................................4

10

*Ehrhardt v. Brunswick, Inc.*,
11
    186 Cal. App. 3d 734 (1986) ..................................................................................11

12

*In re First All. Mortg. Co.*,
    2003 WL 21530096 (C.D. Cal. June 16, 2003)......................................................12
13

14

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    2016 WL 6916826 (C.D. Cal. Sept. 8, 2016).........................................................12
15

16

*Gilstrap v. United Airlines, Inc.*,
    2014 WL 12734331 (C.D. Cal. Jan. 17, 2014)........................................................11
17

18

*Herron v. Best Buy Co. Inc.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................................................3, 5

19

*Hodsdon v. Mars, Inc.*,
20
    891 F.3d 857 (9th Cir. 2018) ....................................................................................2

21

*Johnson & Johnson Talcum Powder Cases*,
22
    37 Cal. App. 5th 292 (2019) ................................................................................9, 11

23

*Johnson v. Lucent Techs. Inc.*,
    653 F.3d 1000 (9th Cir. 2011) ..................................................................................6
24

25

*Magpali v. Farmers Grp., Inc.*,
    48 Cal. App. 4th 471 (1996) .....................................................................................7

26

27

*Maples v. 3M Co.*,
    2017 WL 10592131 (C.D. Cal. May 15, 2017)......................................................10

28

Gibson, Dunn &
Crutcher LLP

*Mesa Safe Co., Inc. v. Amazon.com Servs., Inc.*,
    2019 WL 6723422 (C.D. Cal. Oct. 4, 2019) ............................................................... 7

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ...................................................................... 3

*Pac. Gas & Elec. Co. v. Superior Ct.*,
    24 Cal. App. 5th 1150 (2018) ................................................................................ 10

*Perez v. Auto Tech. Co.*,
    2014 WL 12588644 (C.D. Cal. July 14, 2014) ........................................................ 9

*Rosa v. Taser Int'l, Inc.*,
    684 F.3d 941 (9th Cir. 2012) ................................................................................... 9

*Satcher v. Honda Motor Co.*,
    52 F.3d 1311 (5th Cir. 1995) ................................................................................ 11

*Sosenko v. LG Elecs. U.S.A., Inc.*,
    2019 WL 6118355 (C.D. Cal. Aug. 29, 2019) ......................................................... 3

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ............................................................................................. 10

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
    2 Cal. App. 4th 153 (1991) ..................................................................................... 7

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .............................................................. 6, 8

**Statutes**

Cal. Civ. Code § 3294(a) .............................................................................................. 8

# I. INTRODUCTION

Mr. Terpin's Opposition to AT&T's Motion to Dismiss does not explain how his Second Amended Complaint ("SAC") differs in any material way from the relevant portion of the First Amended Complaint that this Court previously dismissed. Mr. Terpin argues in his Opposition—*without having alleged in the SAC*—that three distinct circumstances give AT&T a duty to disclose the precise ways his personal information could be compromised. This Court already held that none of these three circumstances exists here, *Terpin II* at 10–11, and Mr. Terpin offers no basis for the Court to reconsider that conclusion. Moreover, he continues to ignore AT&T's clear disclosures about the limits of its security, which this Court acknowledged and which fatally undermine his claim. As to his misrepresentation claim, he implicitly concedes that he cannot base a misrepresentation claim on documents that he did not read. Further, notwithstanding this Court's prior ruling that Mr. Terpin failed to plead that AT&T had no intention to perform when AT&T representatives allegedly offered to impose heightened security on his account, Mr. Terpin does not explain why the SAC again fails to include this necessary allegation. Mr. Terpin cannot fix the failings in his deceit or misrepresentation claim, and the Court should now dismiss both claims with prejudice.

Mr. Terpin's punitive damages request likewise is beyond repair. Again, he cites no authority that would allow the claim to proceed based on the implausible and speculative allegations here. Instead, he alleges that AT&T acted with malice or fraud based on an earlier Consent Decree that had absolutely nothing to do with SIM swaps or cryptocurrency theft. Mr. Terpin also fails to plead that Mr. Huntley and Mr. O'Hern intended to harm him or had prior knowledge of the circumstances that purportedly gave rise to his alleged harm. Instead, he asks the Court to presume that Mr. Huntley and Mr. O'Hern had this knowledge based on their titles. When he does not rely on their titles, he bases his claim on the conclusory and insufficient assertion that Mr. Huntley and Mr. O'Hern, in essence, negligently presided over a failed security system. But these naked allegations are insufficient as a matter of law to support a punitive damages claim. This

Court should now dismiss his request with prejudice.

## II. ARGUMENT

### A.     Claim 3 (Deceit by Concealment) Should Be Dismissed with Prejudice.

In Mr. Terpin's deceit by concealment claim, he did not allege that AT&T had a duty to speak or that he was unaware of any allegedly concealed facts.  Mot. at 5–9.  Mr. Terpin now contends that AT&T had a duty because it supposedly (i) "had exclusive knowledge of material facts not known to the plaintiff," (ii) "actively conceal[ed] a material fact from" him, and (iii) made "partial representations but also suppresse[d] some material facts."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (internal citation omitted).  Mr. Terpin's Opposition ignores this Court's prior opinion and cites to no analogous case law.  His claim should be dismissed with prejudice.

### 1.     Mr. Terpin Has Not Pled a Basis To Require AT&T To Disclose the Allegedly Withheld Facts.

#### a.     AT&T Did Not Have Exclusive Knowledge of Material Facts.

In its Opinion, the Court rejected Mr. Terpin's allegation that AT&T had exclusive knowledge because "many of Mr. Terpin's own allegations regarding the prevalence of SIM swap fraud in the cryptocurrency community suggest the exact opposite."  *Terpin II* at 10.  Mr. Terpin ignores that holding.  Instead, he asserts that he "was only contacted by other victims of SIM swaps" after filing his Complaint.  Opp. at 6.  But whether Mr. Terpin had personal contact with other people who had experienced SIM swaps is irrelevant.  He alleges that he had experienced a SIM swap himself in June 2017, which necessarily informed him, before he experienced the January 2018 loss he alleges in the SAC, that SIM swaps were one of the "unauthorized acts by third parties that violate the law" about which AT&T had warned him.  *Terpin II* at 10.

Mr. Terpin's exclusive knowledge argument fails for an additional reason.  To allege "exclusive knowledge," he had to plausibly plead that AT&T "knew of th[e] defect while plaintiff did not, and, given the nature of the defect, it was difficult to discover."  *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The allegedly material facts known to AT&T but allegedly not to Mr. Terpin are those "relating to [AT&T's] security system." Opp. at 5. But AT&T disclosed the material fact—i.e., the risk that his personal information might be disclosed—by advising Mr. Terpin that "no security measures are perfect," that "AT&T DOES NOT GUARANTEE SECURITY," and that AT&T could not "guarantee that your Personal Information will never be disclosed in a manner inconsistent with [AT&T's] Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." *Terpin II* at 10; SAC, Ex. B at 27; Ex. D at 57. Mr. Terpin necessarily "knew of th[e] [alleged] defect," and AT&T lacked exclusive knowledge of it.[1] *Herron*, 924 F. Supp. 2d at 1175.

Finally, to the extent that exclusive knowledge could be based on knowledge of the precise means by which security could be circumvented, Mr. Terpin pleads no facts plausibly suggesting that AT&T had superior knowledge of the methods of third-party criminals, much less facts satisfying the particularity requirement of Rule 9(b). To plead exclusive knowledge, "a plaintiff must provide a plausible factual basis to infer that the [defendant] was actually aware of the [alleged] defect," such as from customer complaints or internal testing. *Sosenko v. LG Elecs. U.S.A., Inc.*, 2019 WL 6118355, at *4 (C.D. Cal. Aug. 29, 2019). A plaintiff cannot ground his exclusive knowledge claim on "mere assertions of such knowledge based on the [defendant's ***presumed superior knowledge*** of its own products." *Id.* Similarly, a conclusory allegation that a defendant plainly has "exclusive knowledge" of its own product could be made in every case and thus is insufficient. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008). Yet all Mr. Terpin offers is this type of generic allegation: that AT&T, as "one of the world's largest corporations," "may fairly be ***presumed*** to have profound and superior knowledge about its security system." Opp. at 6 (emphasis added). That

---

[1] AT&T similarly did not have exclusive knowledge about the Federal Communications Act or the public FCC Consent Decree. Opp. at 6. The contents of these public documents cannot provide AT&T with knowledge that was "superior" to Mr. Terpin's or "difficult to discover." *Herron*, 924 F. Supp. 2d at 1175. Further, given the apples to oranges nature of the comparison, any knowledge of the Consent Decree allegations would be inapposite to the allegations in this matter.

1    is inadequate under the law, and Mr. Terpin cites no cases that find otherwise.

2              **b.    Mr. Terpin Does Not Allege Any Facts Showing Active**
3                      **Concealment.**

4              Mr. Terpin also advances the weaker theory that AT&T actively concealed facts

5    merely by not disclosing them.  As this Court has held, and cases cited by AT&T

6    consistently echo, to properly plead a duty based on active concealment, the plaintiff

7    must allege "'affirmative acts' AT&T took 'in hiding, concealing, or covering up' its

8    imperfect security."  *Terpin II* at 10 (quoting *Czuchaj v. Conair Corp.*, 2014 WL

9    1664235, at *6 (S.D. Cal. Apr. 18, 2014)); Mot. at 7.  The only case that Mr. Terpin

10   cites, however, confirms that "[m]ere nondisclosure does not constitute active

11   concealment." *Czuchaj*, 2014 WL 1664235, at *6.  Yet that is all that Mr. Terpin argues:

12   AT&T "actively concealed" the details of how its security could be circumvented by

13   failing to disclose them.  Opp. at 6; *see also Czuchaj*, 2014 WL 1664235, at *6 ("A

14   conclusory allegation that a defendant 'actively concealed facts' is insufficient.").  Mr.

15   Terpin ignores the case law and argues for a pleading standard that makes every alleged

16   nondisclosure actionable deceit.[2]  *Czuchaj*, 2014 WL 1664235, at *6.  The Court should

17   once again reject Mr. Terpin's incorrect reading of the law.

18             **c.    Mr. Terpin Did Not Adequately a Plead Partial Representation.**

19             Finally, Mr. Terpin argues that AT&T had a duty to speak because it made a

20   partial representation when it allegedly "conceal[ed]" shortcomings of the security that

21   it allegedly stated it would provide Mr. Terpin.  But as this Court has already recognized,

22   and as outlined above, AT&T disclosed the risks that its security could be circumvented,

23   including by disclosing that "no security measures are perfect," a statement that

24   unambiguously includes heightened security.  *Terpin II* at 10; SAC, Ex. B at 27; Ex. D

25   at 57 (§ 4.3).  Even if Mr. Terpin is suggesting that he believed AT&T's security was

26

27   _____

28   [2]  Mr. Terpin also argues that "seeking to retain Mr. Terpin as a customer" qualified as
     active concealment.  Opp. at 7.  But that unremarkable allegation has nothing to do with
     whether AT&T took any affirmative acts to conceal information.

Gibson, Dunn &
Crutcher LLP

"perfect" because he allegedly was told heightened security would make him "much less likely to be subject to SIM swap fraud, AT&T's disclosures of the limits of its security plainly qualify those statements.  *See Terpin II* at 10.

Mr. Terpin contends that AT&T erred in quoting the Court's conclusion that the "'gravamen of Mr. Terpin's concealment claim is that AT&T hid the fallibility of its data security system from him.'"  Mot. at 7 (quoting *Terpin II* at 10).  But the Court's summary accurately recounts Mr. Terpin's pleading.  The problem for Mr. Terpin is that AT&T disclosed what Mr. Terpin alleges it withheld, warning customers like Mr. Terpin to take precautions to provide additional protection to information they considered vital.  *Terpin II* at 10; SAC, Ex. B at 27; Ex. D at 57 (§ 4.3).  Mr. Terpin now argues that AT&T's disclosure was too "general" to adequately disclose potential flaws in AT&T's security system.  Opp. at 8.  But Mr. Terpin offers no authority for his position that a further disclosure can be required on a "partial representation" theory when the undisclosed information merely consists of more specific detail regarding what was actually disclosed.[3]  To the contrary, the partial representation theory applies when the defendant fails to disclose facts that "materially qualify the facts disclosed, or which render his disclosure likely to mislead."  *Herron*, 924 F. Supp. 2d at 1177.  The allegedly undisclosed fact that cooperation of employees is one way that security could be circumvented is an *elaboration* on AT&T's disclosure, not a *qualification* of it.  Even if it were possible—and wise—for AT&T to disclose publicly every conceivable path that criminals could use to circumvent its security, the law does not require it.

Because the SAC does not plausibly allege facts that create a basis for a duty to disclose, his deceit by concealment claim should be dismissed with prejudice.

### 2. Mr. Terpin Has Not Pled that He Was Unaware of Any Allegedly Concealed Facts.

In its Motion, AT&T also argued that Mr. Terpin has not pled a viable claim for

---

[3] Similarly, Mr. Terpin offers no authority for his attempt to confine cases addressing adequate disclosures to their facts.  Opp. at 9.  The key issue is what was disclosed to the plaintiff before his claimed reliance, not the timing or format of the disclosure.

concealment because he has not pled that he was unaware of the facts he alleges AT&T should have disclosed—specifically, the risk its security could be circumvented.  Mot. at 15.  Mr. Terpin dismisses this as "risible" because he asserts he did not know that "AT&T's six-digit code could be overridden or evaded by AT&T employees."  Opp. at 9.  But, as set forth above, AT&T disclosed to him that it could not guarantee that its security would not be circumvented.  *Supra* at 3 and 5.  What Mr. Terpin asserts he did not know—various permutations of the ways security could be circumvented—is simply not material.  *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011-12 (9th Cir. 2011) (claims for concealment require pleading of materiality).

**B.   Claim 4 (Misrepresentation) Should Be Dismissed with Prejudice.**

In his Opposition, Mr. Terpin effectively concedes that he cannot base his misrepresentation claim on AT&T's Privacy Policy or Code of Business Conduct.  Opp. at 10.  He thus has not stated a claim for relief based on any alleged representations in any document.  Mot. at 10–11.  Instead, Mr. Terpin focuses exclusively on statements allegedly made by AT&T representatives in Puerto Rico.  Opp. at 11–13.  But he cannot state a claim arising out of those statements, either.

As an initial matter, Mr. Terpin does not even acknowledge, much less meaningfully contest, the Court's holding that he "does not allege that AT&T intended to ignore its heightened security protocol when it represented to Mr. Terpin that it would require a six-digit passcode before allowing changes to his account."  *Terpin II* at 11–12.  Moreover, Mr. Terpin concedes that a claim for promissory fraud requires pleading "facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made."  *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015); Opp. at 12.  He also concedes that pleading nonperformance is insufficient to allege that a promise was false when made, *Bullard v. Wastequip, Inc.*, 2014 WL 10987394, at *5 (C.D. Cal. Sept. 11, 2014), and that his claim must meet the "heightened pleading requirements of Rule 9(b)."  *Id.* at *3–4; Opp. at 11.

Mr. Terpin's conclusory allegations that this standard is satisfied are insufficient,

particularly under Rule 9(b).  Mr. Terpin alleges that "AT&T representatives in Puerto Rico" made misrepresentations when they undertook to place a "higher security level" on his account with a six-digit security code.  SAC ¶¶ 88–89.  Yet Mr. Terpin does not allege that AT&T failed to implement this heightened requirement on his account or that it did not intend to do so.  Instead, he alleges that the "reason why AT&T did not intend to perform its promises was because AT&T 'knew that i[t]s security protections, including the six-digit security code were ineffectual and could easily be evaded or bypassed by its employees.'"  Opp. at 12.  Mr. Terpin is attacking the quality of the heightened security, not whether AT&T representatives intended to apply the security or whether the security was in fact applied.

Mr. Terpin also alleges that AT&T representatives told him that these security measures "would prevent" a SIM swap, SAC ¶ 89, a statement that was necessarily qualified by AT&T's disclosures about the limits of any security.  But Mr. Terpin does not plausibly allege that the Puerto Rico AT&T representatives did not intend its security to be effective.  Even if the representatives were mistaken about its efficacy, an "overly optimistic" promise is not an intent to break that promise.  *Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 481 (1996); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991) ("[M]aking a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise.").  Mr. Terpin alleges, at most, that AT&T represented its security was strong when it should have known the security would be circumvented.  Even if true, that is an "honest but unreasonable intent to perform."  *Tarmann*, 2 Cal. App. 4th at 159.  And pleading that AT&T's security allegedly failed is insufficient as a matter of law to plead that AT&T intended not to perform.  *Mesa Safe Co., Inc. v. Amazon.com Servs., Inc*., 2019 WL 6723422, at *5 (C.D. Cal. Oct. 4, 2019) ("[A]lleged nonperformance of a contract is not sufficient alone to support an allegation of fraudulent intent.").

Finally, Mr. Terpin does not address AT&T's argument that Rule 9(b) required

him to "allege the names of the employees or agents who purportedly made the fraudulent representations or omissions" or, at the very least, identify them "by their titles and/or job responsibilities."  Mot. at 12; *Bullard*, 2014 WL 10987394, at *6. Because Mr. Terpin fails to allege even this minimal information about the employees involved, his claim fails.  SAC ¶¶ 88, 144; *UMG Recordings*, 117 F. Supp. 3d at 1108.[4]

## C.     Mr. Terpin's Request for Punitive Damages Should Be Dismissed with Prejudice.

### 1.     Mr. Terpin Concedes He Has Not Pled Ratification.

In its Motion, AT&T argued that Mr. Terpin had not plausibly pled that AT&T ratified wrongful conduct by Jahmil Smith.  In his Opposition, Mr. Terpin concedes that he is not seeking punitive damages on this theory.  Opp. at 1–2, 13, 17–19.  Accordingly, it is undisputed that ratification does not provide a basis for punitive damages here.

### 2.     Mr. Terpin Did Not Plead Any Facts Showing the Required Mental State by AT&T Executives.

Mr. Terpin contends that punitive damages are appropriate because AT&T's officers, particularly Mr. O'Hern and Mr. Huntley, oversaw a deficient security policy. Yet Mr. Terpin does not cite any authority permitting a punitive damages request to proceed on analogous facts.  The negligence-based allegations of the SAC are simply not the type of allegations that allow for punitive damages under California law.

As noted in AT&T's Motion, pleading punitive damages requires that the officer, director, or managing agent have acted with "oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  For the reasons set forth in Sections II.A and II.B, Mr. Terpin has not adequately pled any species of fraud.  Moreover, Mr. Terpin does not allege that Mr. O'Hern or Mr. Huntley engaged in the alleged misrepresentations or non-disclosure that underlay Claims 3 and 4, instead basing his request for punitive damages on a theory that Mr. O'Hern and Mr. Huntley oversaw inadequate security.  Opp. at 13, 15. Accordingly, fraud can provide no basis for punitive damages here.

---

[4]  Mr. Terpin does not dispute that Does 1-25 should be dismissed.  Accordingly, this Court should dismiss them for the reasons set forth in AT&T's motion. Mot. at 13–14.

Mr. Terpin instead relies on a theory of "malice" or "oppression," neither of which is availing. "Malice" requires "intentional injury or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others," while "oppression" requires pleading "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Perez v. Auto Tech. Co.*, 2014 WL 12588644, at *4 (C.D. Cal. July 14, 2014); Cal. Civ. Code § 3294(c). "Despicable" conduct is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Johnson & Johnson Talcum Powder Cases*, 37 Cal. App. 5th 292, 332–33 (2019).

Mr. Terpin does not allege that AT&T's officers or executives intentionally desired to harm him. Accordingly, Mr. Terpin must plead "despicable conduct" undertaken with "willful and conscious disregard" for Mr. Terpin. *Perez*, 2014 WL 12588644, at *4. This requires Mr. Terpin to plead that AT&T was "aware of the probable dangerous consequences of its conduct" and "willfully and deliberately failed to avoid those consequences." *Id.* Mr. Terpin did not plead specific facts supporting either prong, and nothing in his Opposition remedies this failure.

With respect to awareness, Mr. Terpin relies primarily on generalities, claiming that he has "substantiated his allegations" by reference to other SIM swaps involving other people. Opp. at 16. But Mr. Terpin admits that "all of the SIM swaps referenced in the SAC occurred *after Mr. Terpin's* SIM swap." Opp. at 6 n.2. These instances are legally and "logically" incapable of giving Mr. O'Hern, Mr. Huntley, or any AT&T executive prior awareness of SIM swapping. *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 949 n.7 (9th Cir. 2012) (defendant "[l]ogically . . . could not have disregarded a known risk that its products could cause [fatalities]" because the only evidence showing such a danger appeared *after* the product was on the market). Given the lack of any prior awareness, Mr. Terpin cannot plead any other facts plausibly suggesting that AT&T was aware that its heightened security system had any probable dangerous consequences relating to SIM swaps to Mr. Terpin or anyone else. *Perez*, 2014 WL 12588644, at *4.

With respect to willful and deliberate avoidance, Mr. Terpin's allegations are similarly lacking.  Deliberate avoidance exists where executives choose not to fix a known risk for a significant period of time. *See Maples v. 3M Co.*, 2017 WL 10592131, at *10 (C.D. Cal. May 15, 2017); Mot. at 21.  But Mr. Terpin himself pleads that SIM swapping is a new and widespread risk in the wireless industry, reaching across service providers, who have thus far been unable to fully prevent it.  SAC ¶¶ 5, 70.  He pleads no facts to suggest that Mr. O'Hern or Mr. Huntley identified a means of security that would have prevented the SIM swap he alleges, much less that they deliberately chose a form of security that would not achieve that end.

Rather than pleading that AT&T executives acted with "conscious disregard" of his rights, Mr. Terpin focuses on an FCC Consent Decree with a different AT&T entity than defendant here that has nothing to do with SIM swaps, six-digit codes, or anything else in the SAC.  That Consent Decree dealt with alleged data breaches at call centers in Mexico, Colombia, and the Philippines and discusses the disclosure of names, social security numbers, and customer proprietary network information of customers other than Mr. Terpin.  SAC Ex. A at 71.  Mr. Terpin suggests that by alleging that AT&T Services Inc. violated legal obligations involving personal information on a different occasion, in a different way, he adequately pleads a request for punitive damages here against AT&T Mobility LLC.  He cites no authority for this unprecedented expansion of punitive damages, which is contrary to the law. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); *Pac. Gas & Elec. Co. v. Superior Ct.*, 24 Cal. App. 5th 1150, 1175–76 (2018) (defendants' involvement in "another wildfire" "was too dissimilar to" allow punitive damages).

AT&T is aware of no authority for finding that a Consent Decree dealing with one issue somehow suffices to plead malice, fraud, or oppression by a defendant when the Consent Decree addresses different facts, different actors, different locations, and a different defendant.  Instead, the case law suggests that there must be a clear awareness

about a particular harm before awareness can be attributed to a defendant for purposes of punitive damages. *See Johnson & Johnson*, 37 Cal. App. 5th at 334 (rejecting a punitive damages claim where there was no "growing general scientific consensus" about the risk at issue); *see also Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1316–1317 (5th Cir. 1995) (holding that punitive damages were inappropriate where there were no definitive conclusions about a particular motorcycle safety mechanism). Instead, to adequately allege deliberate avoidance, the defendant must "have actual knowledge of the risk of harm it is creating and, in the face of that knowledge, fail to take steps it knows will reduce or eliminate the risk of harm." *Ehrhardt v. Brunswick, Inc.*, 186 Cal. App. 3d 734, 742 (1986). AT&T simply cannot have exposed itself to punitive damages for failing to adopt a "SIM lockdown" (Opp. at 16–17) based on the fact that it entered a Consent Decree that had *nothing to do* with SIM cards or a SIM lockdown.[5]

In sum, Mr. Terpin failed to allege that any AT&T executives consciously disregarded a known risk. This requires dismissal of his claim for punitive damages.

### 3. Punitive Damages Are Unavailable for Claims 5–7 as a Matter of Law.

In his Opposition, Mr. Terpin does not dispute the "unremarkable principle that punitive damages may not be based on mere negligence," (Opp. at 21; Mot. at 22–23), but asserts without support that this standard only applies "*at trial*." This is simply false. Courts routinely dismiss punitive damages requests on negligence claims at the pleading stage. *See, e.g.*, *Gilstrap v. United Airlines, Inc.*, 2014 WL 12734331, at *6 (C.D. Cal. Jan. 17, 2014) (dismissing a request for punitive damages on a negligence claim); *All. for Educ., Inc. v. Airborne Wireless Network Inc.*, 2018 WL 7568581, at *8 (C.D. Cal. Dec. 17, 2018) (same). While Mr. Terpin need not *prove* that AT&T acted with more than mere negligence to forestall a motion to dismiss, he certainly must *plead* that AT&T acted with malice, fraud, or oppression. As set forth in Section II.C.2, Mr. Terpin has

---

[5] Notably, Mr. Terpin does not allege that AT&T has ever violated the "Compliance Plan" that came along with the Consent Decree, further highlighting the disconnect between that decree and any harm alleged here. Opp. at 15.

not met that standard.  His attempt to postpone this inquiry to the trial stage emphasizes his inability to satisfy his pleading burden now.

### 4. This Case is One of First Impression That Warrants Dismissal of the Punitive Damages Request.

Finally, AT&T argued that punitive damages are inappropriate because this case is one of "first impression." *In re First All. Mortg. Co.*, 2003 WL 21530096, at *10 (C.D. Cal. June 16, 2003).  Mr. Terpin disagrees because he asserts that the statutory rights created under the Federal Communications Act are well-established.  Opp. at 22. His argument misunderstands the governing case law.

A case is one of first impression where it involves "a novel set of facts." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2016 WL 6916826, at *4 (C.D. Cal. Sept. 8, 2016). In *Flo & Eddie, Inc.*, the fact pattern presented a question of first impression, even though the relevant statutory right was clearly established, because the "facts that would prompt a court to rule on the issue have simply never been presented in a California court." *Id.* at *3.  Here, Mr. Terpin's case does not present "a variation on a common fact pattern." *Id.* at *4.  AT&T has not seen any court addressing whether SIM swapping by criminal third parties implicates any of the rights that Mr. Terpin argues are clearly established, whether it can lead to liability by a telecommunications provider, or what level of security such a provider is obligated to have.  Indeed, Mr. Terpin does not allege any another instance of SIM swapping before his own.  Opp. at 6 n.2.  Where "courts have not previously addressed the issue in the present case," the only "well established" rule is that "punitive damages are not proper." *Flo & Eddie*, 2016 WL 6916826, at *3.

Mr. Terpin's request for punitive damages should be dismissed with prejudice.

### III. CONCLUSION

For the reasons set forth above, Claims 3 and 4 (Deceit by Concealment and Misrepresentation) and Mr. Terpin's request for punitive damages should all be dismissed with prejudice.  Because Mr. Terpin has not been able to cure these fatal flaws despite multiple opportunities, he should not be granted leave to amend.

Gibson, Dunn & Crutcher LLP

1    Dated:  April 20, 2020

2                                              MARCELLUS MCRAE
                                               ASHLEY E. JOHNSON
3                                              GIBSON, DUNN & CRUTCHER LLP

4

5                                              By: /s/ Marcellus McRae
                                                    Marcellus McRae
6                                                   Ashley E. Johnson

7                                              Attorneys for Defendant AT&T MOBILITY
                                               LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28