PIERCE O'DONNELL (SBN 081298)
PODonnell@GreenbergGlusker.com
TIMOTHY J. TOOHEY (SBN 140117)
TToohey@GreenbergGlusker.com
PAUL BLECHNER (SBN159514)
PBlechner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for Plaintiff
MICHAEL TERPIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL TERPIN,<br><br>Plaintiff,<br><br>v.<br><br>AT&T Mobility, LLC; and DOES 1-25,<br><br>Defendants. | Case No.  2:18-cv-06975-ODW-KS<br><br>[*Assigned to The Hon. Otis D. Wright II*]<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF MICHAEL TERPIN RE ORDER RESOLVING DISCOVERY ISSUES IN DISPUTE**<br><br>[Central District Local Rule 37-2.3]<br><br>Hearing Date:  June 8, 2022<br>Hearing Time:  10:00 a.m.<br>Discovery Cutoff:  January 30, 2023<br>Pretrial Conference:  April 10, 2023<br>Trial:  May 2, 2023<br>Judge: Hon. Karen L. Stevenson |

SUPPLEMENTAL MEMORANDUM

83764-00002/4385541.2

Plaintiff Michael Terpin ("Plaintiff") hereby files his Supplemental Memorandum in support of his discovery motions pursuant to Local Rule 37-2.3.

## I. ISSUE NO. 1: AT&T SHOULD PRODUCE RELEVANT DOCUMENTS FROM JANUARY 1, 2015

AT&T's opposition to producing documents relating to unauthorized SIM Swaps from January 1, 2015 (rather than January 1, 2016) does not rest on any reasoned basis. Nor has AT&T submitted evidence that would establish its claim that such a production would be disproportionate, particularly since it involves only one additional year when AT&T noted internally that SIM swap fraud was a serious challenge and the company was specifically put on notice by the Federal Communications Commission (FCC) about the privacy risks posed by fraud and identity theft.

Plaintiff alleges that AT&T did not adequately put in place proper authentication and security procedures to guard against takeover of its customers' accounts and their personal and proprietary information through unauthorized SIM swaps. Plaintiff further alleges that AT&T's failure to put into place such procedures prior to Plaintiff's SIM swap in January 2018 led to his loss of $24 million in cryptocurrency, which constitutes not only grossly negligent conduct subjecting AT&T to punitive damages, but also is a violation of Section 222 of the Federal Communications Act ("FCA").

The fact that AT&T identified SIM swapping in 2015 as a "hot fraud issue" is significant even if the specific harm addressed by in 2015 may have allegedly been different than it was in 2017 or 2018. The key element of a SIM swap is the takeover of a customer's account, which means the takeover of the customer's identity leading to potential access to personal and proprietary information. Once a hacker is in control of a customer's phone, the hacker gains access to a customer's personal and private information, including cloud-based files and two-factor authentication messages. Most crucially, SIM swaps may allow a hacker to reset

passwords for cloud-based accounts, such as Microsoft or Google accounts.

AT&T's assessment of the risks of SIM swaps and of other methods of identity theft in 2015 and its failure to implement proper security and authentication procedures is directly relevant to the foreseeability of the harm in this case, regardless of the specific harm inflicted by SIM swap fraud. In 2015 AT&T knew that its customers' accounts and identities were being taken over by unauthorized individuals and that the security of its customers' private and proprietary information was at risk.  As Exhibit A makes clear, preventing takeovers of mobile phones through unauthorized SIM swaps implicated AT&T's fundamental duty as a "common carrier" under Section 222(a) of the FCA to protect its customers' personal and private information.  *See In the Matter of Terracom, Inc. et al.*, 29 FCC Rcd. 13325 (2014), 2014 WL 5439575, *4-*5 (Section 222(a) protects not only Customer Proprietary Network Information (CPNI), but a broad range of customers' personal information, including "all types of information that should not be exposed widely to the public, whether because that information is sensitive for economic reasons or for reasons of personal privacy").

In 2015 AT&T's regulator put it on notice of the dangers of identity fraud of its customers.  On April 8, 2015 the FCC fined AT&T a record $25 million for violating Section 222 of the FCA by allowing its employees to hand over to thieves the personal information of almost 280,000 customers.  *See In the Matter of AT&T Services, Inc.*, 30 FCC Rcd. 2808.  According to the April 8, 2015 Order, AT&T had violated the fundamental purpose of its obligations under Section 222, which is to "*ensure that consumers can trust that carriers have taken appropriate steps to ensure that unauthorized persons are not accessing, viewing or misusing their personal information.*" *Id*. (Emphasis added.)  The FCC ordered AT&T to take "every reasonable precaution to protect their customers' data." *Id*.

AT&T thus takes an unduly narrow view of the issues of this litigation, particularly regarding AT&T's violations of the FCA and its gross negligence in

failing to protect its customers. Plaintiff is entitled to discovery regarding AT&T's efforts in 2015 to protect its customers against fraud and identity theft, including unauthorized SIM swaps.

## II. ISSUE NO. 2: AT&T SHOULD EXCHANGE SEARCH TERMS FOR ESI TO ALLOW THE PARTIES TO MEET AND CONFER REGARDING THE PRODUCTION OF DOCUMENTS.

Before AT&T had produced a single document in this matter, Plaintiff requested that the parties cooperate to exchange search terms for electronically stored information ("ESI") so that they could meet and confer regarding the adequacy of such terms. Although the exchange of search terms is, of course, not obligatory in every single case, the exchange of search terms is particularly appropriate here because AT&T has narrowed the number of custodians and attempted to narrow the date range of the production and has shown that it takes an unduly narrow view of the issues of the case. Without producing the search terms, Plaintiff is inevitably in the dark as to the basis for AT&T's searches of ESI— which is precisely the reason why it is common that courts require exchange of search terms. *See, e.g., In re Seroquel Products Liability Litigation*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process. . . .") This exchange is an inherent component of the adversarial system yet, in this case, AT&T rejected engaging in even the initial steps of this "cooperative and informed process" before documents were produced, thus deliberately leaving Plaintiff ignorant and forcing Plaintiff to bring this motion.

Now that AT&T's document production is a *fait accompli*, AT&T maintains that Plaintiff must show that its document production is defective to receive AT&T's search terms. Not only would this reward AT&T for its failure to be transparent and cooperative, but it is not supported by case law. *See Apple, Inc. v.*

*Samsung Elecs. Co.*, 2013 WL 1942163, at *2 (N.D. Cal. May 9, 2013) (it is unnecessary for a party to demonstrate that the other party's "production is deficient" to compel a party to exchange search terms). Moreover, because AT&T has not produced its search terms, AT&T has deliberately made it impossible for Plaintiff to assess the adequacy of its production. Although AT&T states in the joint stipulation that it is "simply not true" that AT&T has refused to produce documents relating to unauthorized SIM swaps on the grounds that they did not involve theft of cryptocurrency, Plaintiff cannot assess the truth of this assertion. AT&T's approach to this case deprives Plaintiff of the opportunity to meet and confer, if necessary, to challenge the terms.

Cases cited by AT&T support the proposition that disclosure of search terms and the subsequent discussion of those terms often serves as a reasonable basis for resolving issues involving discovery of ESI. In *Jensen v. BMW of North Am., LLC*, 328 F.R.D. 557, 564 (S.D. Cal. 2019), the plaintiff had suggested search terms, the parties had discussed the appropriateness of the terms, and the court decided the parties' dispute over the terms. In contrast, AT&T here did not even engage in the fundamental step of disclosing its search terms so that the parties can discuss the terms (and, if necessary, have the Court adjudicate any dispute).[1] Moreover, AT&T's refusal to provide the search terms (or any explanation of the search terms used for such key terms as "unauthorized SIM Swap") is akin to the refusal of the defendant in *Micromet AG v. Cell Therapeutics, Inc.*, 2006 WL 8454650 *2 (W.D.Wash. 2006) (cited by AT&T) "to identify even a simple explanation about the search terms used pertaining to the search for [a] key term [in the litigation]. . . ."

---

[1] *Fish v. Air & Liquid Systems Corp.*, 2017 WL 697663 (D.Md. 2017) seems to be included by AT&T because it contains the phrase "discovery on discovery." In fact *Fish* was not an ESI case, but instead addressed the question of whether the methodology used to compile historic documents relating to asbestos was the proper subject of a Rule 30(b)(6) deposition.

AT&T makes the false claim that exchange of search terms for ESI is "discovery on discovery." In fact, search term exchanges are a well-accepted and standard practice for discovery of ESI because they promote transparency and allow the parties to assess the reasonableness of searches. Moreover, AT&T is only able to frame the issue as "discovery on discovery" because it refused to exchange terms and plowed ahead with producing documents, thus accomplishing the *fait accompli* referenced earlier. This is patently contrary to the "best practice" for discovery of ESI. As the court stated in *Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*, 2020 WL 2747117, *7 (S.D.Cal. 2020), "[w]hen an ESI search is required for document production, the best practice is for the parties to cooperate to reach an agreement regarding custodians and search terms to inform the document production." As the court further states, "[o]f course, agreement will not always be possible, and a party may use discovery to learn about its opponent's record search parameters, either before or after the search has been conducted." *Id.*, citing *Baranco v. Ford Motor Co.*, 2018 WL 9869540 *1 (N.D.Cal. 2018) (rejecting that discovery into search parameters infringes work product and attorney-client privilege and noting that "the purpose of meeting and conferring *before* documents are collected and produced is to minimize the risk of an inadequate search" and to avoid the risk of after-the-fact disputes").

Respectfully submitted,

DATED: May 25, 2022      GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP


By: */s/Timothy J. Toohey*
    PIERCE O'DONNELL (SBN 081298)
    TIMOTHY J. TOOHEY (SBN 140117)
    PAUL BLECHNER (SBN 159514)
    Attorneys for Plaintiff MICHAEL TERPIN

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

83764-00002/4385541.2