PIERCE O'DONNELL (SBN 081298)
PODonnell@GreenbergGlusker.com
TIMOTHY J. TOOHEY (SBN 140117)
TToohey@GreenbergGlusker.com
PAUL BLECHNER (SBN159514)
PBlechner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park E, Suite 2600
Los Angeles, California 90067
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for Plaintiff
MICHAEL TERPIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL TERPIN,<br><br>          Plaintiff,<br><br>v.<br><br>AT&T Mobility, LLC; and DOES 1-25,<br><br>          Defendants. | Case No.  2:18-cv-06975-ODW-KS<br><br>[Assigned to The Hon. Otis D. Wright II]<br><br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2 RE DISCOVERY ISSUES IN DISPUTE**<br><br>Hearing Date:  September 21, 2023<br>Time:  10:00 a.m.<br>Discovery Cutoff:  January 30, 2023<br>Pretrial Conference:  April 10, 2023<br>Trial:  May 2, 2023<br>Judge: Hon. Karen L. Stevenson |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

JOINT STIPULATION…

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTORY STATEMENTS .................................................. 1

   A.   Plaintiff's Statement................................................................ 1

   B.   AT&T's Statement ................................................................ 4

II.   AT&T'S PRIVILEGE LOG ....................................................... 7

   A.   Plaintiff's Position................................................................. 7

      1.   Discovery Regarding AT&T's Internal Investigations and Other 2018 Documents Regarding Plaintiff's Claims Is Relevant to this Litigation. .................................................. 7

         a.   The discovery at issue. .................................................. 8

         b.   AT&T's Responses to Plaintiff's discovery. .................. 9

         c.   The parties' efforts to resolve their dispute................... 16

      2.   AT&T Has the Burden of Substantiating Its Privilege Claims in a Document-by-Document Privilege Log. ............. 18

      3.   AT&T's Categorical Privilege Log violates Fed. R. Civ. Proc. 26(b)(5) by not allowing Plaintiff or the Court to assess AT&T's claims of privilege........................................ 20

         a.   Without a proper document-by-document privilege log, Plaintiff cannot assess whether AT&T created the withheld documents for a dual purpose, including "routine forensic analysis" of unauthorized SIM swaps or to comply with regulatory requirements.................................................. 20

         b.   The Categorical Privilege Log makes it impossible for Plaintiff to determine if AT&T has met its separate burdens of establishing the attorney-client and work product privileges.................................... 22

         c.   Plaintiff cannot assess whether in-house counsel acted in multiple capacities without a document-by-document privilege log................................................ 24

         d.   Plaintiff cannot assess what documents other than those relating to internal investigations are being withheld by AT&T without a complete document-by-document privilege log. ............................................ 25

      4.   AT&T's production of a document-by-document privilege log of documents from March 20, 2018 until August 15, 2018 is not unduly burdensome. .......................... 26

      5.   Information contained in a document-by-document privilege log is relevant to the issues of this litigation. ............ 26

      6.   The Court should establish an expedited procedure for evaluating Plaintiff's challenges to AT&T's privilege claims, including in camera review of documents that AT&T has withheld. ................................................... 28

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

7.  AT&T has waived its claimed privileges by failing to produce a timely and adequate privilege log. .......................... 29

B.  AT&T's Position ................................................................. 30

1.  AT&T Has Met Its Burden of Substantiating Its Privilege Claims. ................................................................. 30

2.  AT&T's Categorical Privilege Log is Sufficient ................... 33

3.  The Court Should Not Impose the Extraordinary, Punitive Sanction of Privilege Waiver Based on AT&T's Understanding of Its Logging Obligations. .............................. 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

-ii-

# JOINT STIPULATION

Plaintiff Michael Terpin ("Plaintiff") and Defendant AT&T Mobility LLC ("AT&T") submit this Joint Stipulation pursuant to Central District Local Rule 37-2.

## I.    INTRODUCTORY STATEMENTS

### A.    Plaintiff's Statement

Despite its clear obligation under the Federal Rules of Civil Procedure, AT&T refuses to produce a complete document-by-document log of documents for which it claims privilege, thereby preventing Plaintiff from evaluating whether AT&T has met its burden of establishing privilege.

On January 7, 2018, AT&T, through Jahmil Smith -- an employee of AT&T authorized retailer Spring Communications (now Prime) ("Spring") -- handed over the SIM card of Plaintiff's phone to hackers. *See* Declaration of Timothy J. Toohey ("Toohey Decl.") filed concurrently herewith, ¶ 3, Exhibit ("Exh") A[1], Second Amended Complaint ("SAC") ¶¶ 8, 11, 200-202.  This resulted in cryptocurrency worth $24 million dollars being stolen from Plaintiff.  SAC ¶¶ 94-103. Plaintiff (through his wife) immediately complained to AT&T that his account had been fraudulently taken over by hackers. *Id.*  ¶¶ 97, 102.  Plaintiff made further complaints to AT&T in January 2018.  Toohey Decl. ¶ 23, Exhibit O.  On March 20, 2018, AT&T received a demand letter and a draft complaint delineating Plaintiff's claims regarding the January 7, 2018 unauthorized SIM swap, including violations, *inter alia*, of Section 222 of the Federal Communications Act ("FCA") because of AT&T's disclosure of his personal and proprietary information to the hackers, as well as claims for negligence, negligent hiring and negligent supervision.  SAC ¶¶ 133-141, 166-204.

---

[1] All Exhibits referenced in Plaintiff's portion of the joint stipulation are attached to the Toohey Decl.

AT&T thus was put on notice from January 7, 2018 and on other dates that month (and again with the receipt of the draft complaint on March 20, 2018) that Mr. Terpin had suffered an unauthorized SIM swap on his account and that its security procedures had failed to protect his personal and private information.  SAC ¶¶ 94-103, 166-176.

Plaintiff in this litigation has sought all documents held by AT&T related to the unauthorized SIM swap of Plaintiff's account, AT&T's security procedures, and other unauthorized SIM swaps, including (but not limited to) documents concerning Jahmil Smith and AT&T's investigations of the January 7, 2018 unauthorized SIM swap.  *See* Section 3, *infra.*  To date, AT&T has not produced a privilege log for any documents from 2018.  AT&T has also produced virtually no documents relating to Plaintiff (other than account and usage notes) and no documents relating to any investigation of Plaintiff's SIM swap, including communications with Spring.  Toohey Decl. ¶ 5.  AT&T instead asserts that documents relating to its internal investigation are privileged because of the involvement of its in-house counsel, Niki Okcu.  However, the mere fact that an in-house attorney was involved in an internal investigation does not in itself make the documents privileged if they were created for a dual purpose, such as to improve the security procedures of AT&T, protect other customers or to satisfy regulatory obligations to the Federal Communications Commission ("FCC").  In fact, AT&T's claim that its internal investigation was privileged is contrary to its statements to the FCC on the agency's proposed security procedures to prevent unauthorized SIM swaps, that "AT&T <u>conducts routine forensic examinations of unauthorized SIM swaps</u> and port outs".  Toohey Decl. ¶ 6, Exh. B (Comments of AT&T submitted to the FCC on November 15, 2021, WC Docket No. 21-341, *In the Matter of Protecting Consumers from SIM Swap and Port Out Fraud*), p. 9 (emphasis added).

Although Plaintiff for over nine months has requested that AT&T substantiate its assertions of privilege for internal investigations and other as yet unknown

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

relevant documents from 2018 by providing a privilege log for such documents, AT&T has yet to submit a document-by-document privilege log for any documents from 2018. Instead of producing a proper privilege log, AT&T (over Plaintiff's objections) has provided a so-called one-lined "categorical privilege log" for certain requested documents dated between receipt of the demand letter on March 20, 2018[2] until the filing of the complaint on August 15, 2018 that relate to its internal investigation. *See* Toohey Decl. ¶ 7, Exh. C ("Categorical Privilege Log").

The Categorical Privilege Log does not satisfy AT&T's obligation under Fed. R. Civ. Proc. 26(b)(5) to provide information on a document-by-document basis, but instead lumps together an unknown number of documents with unknown recipients of unknown dates that it claims are all privileged under both the Attorney Work Product and Attorney-Client Communication Privilege. Indeed, all the log states is that an unspecified number of "communications from or prepared by or involving or at the direction of N. Okcu to facilitate the provision of legal advice and in anticipation or defense of litigation" are privileged. Exh. C. AT&T's log thus does not provide the information required by the Federal Rules.

By this motion, Plaintiff asks that the Court order that AT&T produce a proper document-by-document log for all documents for which it claims privilege that are dated before the filing of the complaint in this action on August 15, 2018 by "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. Proc. 26(b)(5). Plaintiff further asks that the Court establish an expedited procedure for Plaintiff's challenges of any privilege claims for the documents on the privilege log, including *in camera* review of the documents. In the alternative, Plaintiff asks that the Court order that AT&T's failure to timely produce a proper privilege log

---

[2] Although the demand letter was dated March 19, 2018, it was not received by AT&T until the following day. Toohey Decl. ¶ 4.

83764-00002/4495881.1

constitutes a sanctionable waiver of the privilege and that AT&T produce all documents that it has withheld.

### B.    AT&T's Statement

In this motion, Plaintiff seeks to hold AT&T to a standard that he acknowledges should not apply when his own documents are at issue.  On May 10, 2022, Plaintiff's counsel transmitted Plaintiff's privilege log to counsel for AT&T, explicitly stating: "This does not include communications between Mr. Terpin and his outside counsel relating to matters involving the unauthorized SIM swap."  *See* Johnson Decl., Ex. 1.  And this is true; review of the privilege log does not reflect *any* communications between Plaintiff and Greenberg Glusker, the firm that filed the Complaint and remains on the case to this day.  *See id.*, Ex. B.  Yet Plaintiff inexplicably contends that while *he* is not required to log documents with his litigation counsel either *before* or *after* sending of a demand letter, *AT&T* must log any communications involving its litigation counsel that are found in the files of AT&T's disclosed custodians—apparently because she is employed by AT&T rather than an outside law firm.

Plaintiff's proposal that the parties be subject to different standards is not defensible.  In-house litigation counsel, Niki Okcu, only became involved in this case in response to Plaintiff's explicit threat of litigation and sending of a draft complaint.  Indeed, Plaintiff *concedes* that documents reflecting her investigation of the allegations in the Complaint after it was formally filed need not be logged.  And this makes good sense; after all, such documents, like documents exchanged between Plaintiff and Greenberg Glusker, are *obviously* shielded by privilege and attorney work product.  Yet Plaintiff draws a line, without any justification, at the formal filing of the Complaint.  When Ms. Okcu investigated the allegations in the *draft* complaint, Plaintiff contends, documents related to *that* privileged work must be logged.

This position makes no sense.  It draws an arbitrary line both based on the party involved (because Plaintiff need not log any communications with litigation

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    counsel, while AT&T is required to) and the date of the communications (treating
2    the investigation of the *filed* complaint as obviously privileged, while the
3    investigation of the *draft* complaint is somehow suspect). The same commonplace
4    rule that Plaintiff applies to himself—communications with litigation counsel
5    relating to the litigation of the lawsuit need not be logged—should be applied to
6    AT&T.

7        Plaintiff's primary counterargument is that there could be a "routine" or "dual
8    purpose" factual investigation of his SIM swap. No such investigation exists, as
9    AT&T's counsel has repeatedly advised Plaintiff's counsel, informing it that, "to the
10   extent you are pushing for a log of a formal investigation that occurred apart from
11   the legal investigation necessitated by the demand letter, we have not located any
12   such investigation to log," and that "what you speculate happened did not happen."
13   *See* Toohey Decl., Ex. L (chronicling history of AT&T's repeated efforts over five
14   months to convey this position).

15       But this Court need not rely on that representation; any investigations that were
16   not by or at the behest of AT&T's litigation counsel in response to the draft complaint
17   would have been logged so Plaintiff could make whatever objections or challenges
18   he desired to make. Indeed, AT&T logged *all* documents withheld based on privilege
19   that were dated prior to the sending of the demand letter—and it will serve shortly a
20   log of documents from *after* the demand letter that were not documents involving
21   litigation counsel. As a result, Plaintiff's repeated assertion that it needs to review
22   documents in the immediate aftermath of the January 7, 2018 alleged SIM swap has
23   nothing to do with this motion. No such documents were logged because AT&T's
24   search of the custodians involved in this case did not yield responsive and privileged
25   documents. Privileged documents between January 7, 2018, and AT&T's receipt of
26   the demand letter on March 19, 2018, would have been logged, had they existed.

27       This critical fact highlights the extent to which Plaintiff's motion distorts the
28   scope of the dispute here. Indeed, Plaintiff suggests that a log will lead to extensive

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

5                                                    JOINT STIPULATION

privilege disputes.  But only a handful of documents meet the strict constraints of documents at issue in this motion: (i) dated between March 19, 2018 and August 15, 2018; (ii) related specifically to the *Terpin* draft complaint; (iii) prepared by or at the behest of litigation counsel; and (iv) located through a search of the files of the custodians searched by AT&T in this case.

Plaintiff's distortion of the dispute here, and of AT&T's position, is further highlighted by his observation that AT&T said in November 2021 that "AT&T conducts routine forensic examinations of unauthorized sim swaps and port outs." This observation not only is not probative of what investigations occurred in the beginning of 2018, but, more fundamentally, has nothing to do with this motion.  Any such "routine forensic examination" after a November 2017 or January 2018 SIM swap would have been logged, because it would not have been directed by litigation counsel in response to the draft complaint.

In short, to the extent Plaintiff seeks a log of some hypothetical routine or dual purpose investigation, there is nothing to log because such an investigation does not exist. If AT&T had, for example, a privileged January 2018 investigation, as Plaintiff speculates, that was performed by non-lawyers and discovered by a reasonable search, *it would have been logged*.  If AT&T had *any* privileged investigation performed before the filing of the Complaint in August 2018 for any reason other than addressing the draft complaint, or directed by anyone other than litigation counsel, *it would have been logged*.  In short, the privileged documents that Plaintiff purports to want—investigation documents that pre-date the demand letter—would have already been logged if they had been located.  What he seeks now is a log of the few privileged documents that were held by custodians and reflect communications with, or at the direction of, litigation counsel that were specifically undertaken in response to his explicit threat of immediate litigation.  That position is irreconcilable with the rule Plaintiff applies to his own documents and would include none of the type of documents that Plaintiff claims to need.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

JOINT STIPULATION

1   Accordingly, Plaintiff's motion should be denied.  To the extent the Court
2   ultimately disagrees with AT&T's stated positions, the Court should provide AT&T
3   the opportunity to log the documents at issue.

4   **II.     AT&T'S PRIVILEGE LOG**

5   **A.     Plaintiff's Position.**

6   **1.     Discovery Regarding AT&T's Internal Investigations and
7   Other 2018 Documents Regarding Plaintiff's Claims Is
8   Relevant to this Litigation.**

9   The discovery underlying this dispute is fundamental to Plaintiff's claims that
10  AT&T did not properly institute security procedures to prevent unauthorized SIM
11  swaps and engaged in gross negligence in regard to Plaintiff's unauthorized SIM
12  swap, including failing properly to investigate and address the circumstances of the
13  January 7, 2018 swap so as to correct its procedures to prevent harm to other
14  customers.   More specifically, documents from 2018 relating to AT&T's
15  investigation of Plaintiff's unauthorized SIM swap, including its security measures
16  and knowing employment of complicit and corrupt employees at its unauthorized
17  retailers, are highly relevant to Plaintiff's claims that AT&T violated its obligation
18  to protect his privacy under the FCA, and was grossly negligent in regard to its
19  security practices and its hiring and retention of employees.  Facts relating to what
20  AT&T did after being informed multiple times of the fraud on Plaintiff's account in
21  January 2018 are also highly relevant to Plaintiff's showing that AT&T engaged in
22  malicious conduct that would subject it to punitive damages.[3]   This discovery

23
24  [3] Although the Court dismissed Plaintiff's punitive damages claim in its September
25  8, 2020 order on AT&T's motion to dismiss his Second Amended Complaint
    (Docket No. 49), the Court stated that it "recognizes that critical facts may arise
26  during discovery that provide Mr. Terpin the ability to adequately plead punitive
    damages. Mr. Terpin may move to add a request for punitive damages at the
27  appropriate time, and no later than twenty-one days (21) after the discovery cutoff
28  deadline."

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

JOINT STIPULATION

83764-00002/4495881.1

includes what AT&T did to investigate the fraudulent action by hackers on the account reported multiple times in January 2018 by Plaintiff and his wife. *See* Exhibit O (account notes on Plaintiff's account and entries for January 7, 18, and 28, 2018).

### a.   The discovery at issue.

On February 5, 2021, Plaintiff served his First Set of Requests for Production on AT&T ("Plaintiff's RFP").   *See* Toohey Decl. ¶ 8, Exh. D.   Instruction No. 3 of Plaintiff's RFP stated: "If you contend that any responsive document constitutes confidential attorney-work product, is subject to the attorney-client privilege, or is protected from disclosure for any other reason, provide a privilege log substantiating said contention."   *Id.*   Plaintiff's RFP included several requests related to AT&T's investigation of the circumstances of the January 7, 2018 SIM swap.

For example, <u>REQUEST FOR PRODUCTION NO. 2</u> asked   AT&T to produce

> All DOCUMENTS and COMMUNICATIONS RELATING TO the JANUARY 7, 2018 SIM SWAP, including, but not limited to, <u>any report of any investigation YOU preformed regarding the JANUARY 7, 2018 SIM SWAP</u>, all DOCUMENTS and COMMUNICATIONS RELATING TO the identity and geographic location of the hackers who perpetrated the JANUARY 7, 2018 SIM SWAP, all DOCUMENTS and COMMUNICATIONS RELATING TO YOUR personnel or the personnel of an AUTHORIZED RETAILER who were aware of or involved in the JANUARY 7, 2018 SIM SWAP, and all DOCUMENTS and COMMUNICATIONS RELATING TO YOUR personnel who were contacted by PLAINTIFF RELATING TO THE JANUARY 7, 2018 SIM SWAP.

*Id.* (Emphasis added.)

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

JOINT STIPULATION

1    Other of Plaintiff's document requests called for documents from 2018
2  relevant to Mr. Terpin's claims. These requests included the following:

3  REQUEST FOR PRODUCTION NO. 8:

4    All DOCUMENTS RELATING TO Jahmil Smith, including any background
5  checks, information about criminal history, communications to Mr. Smith before or
6  after the JANUARY 7, 2018 SIM SWAP, and any documentation RELATING TO
7  Mr. Smith's involvement in any SIM SWAP.

8  REQUEST FOR PRODUCTION NO. 12:

9    All DOCUMENTS and COMMUNICATIONS RELATING TO any analysis
10 performed by YOU RELATING TO the reasons and the manner in which SIM
11 SWAPS occur, including any internal reports prepared by YOU.

12 REQUEST FOR PRODUCTION NO. 48:

13   All DOCUMENTS RELATING TO any COMMUNICATIONS with YOUR
14 AUTHORIZED RETAILERS RELATING TO prevention of SIM SWAPS.

15   There is no dispute that AT&T's investigation of the circumstances of
16 Plaintiff's unauthorized SIM swap is relevant to Plaintiff's claims, including
17 Plaintiff's claim that AT&T violated the FCA by turning over Plaintiff's private
18 communications, as well as his claims that AT&T was grossly negligent in its
19 authentication and security measures. *See* Exh. A, SAC ¶¶ 94-103, 166-176. The
20 other Requests for Production, including those outlined above, also call for relevant
21 documents related to the issues raised in the SAC, including requests relating to the
22 hiring and retention of Jahmil Smith, who perpetrated the SIM swap and was
23 employed by an AT&T authorized retailer (Spring) and communications with
24 AT&T's authorized retailers relating to SIM swaps, which relate to Plaintiff's
25 negligent hiring and retention claims, among others.

26        **b.    AT&T's Responses to Plaintiff's discovery.**

27   On June 1, 2021 AT&T served its Responses and Objections to Plaintiff's
28 RFP. Toohey Decl. ¶ 9, Exh. E.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

83764-00002/4495881.1

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    <u>AT&T's RESPONSE TO REQUEST NO. 2</u> states:

2        AT&T objects to this Request as overly broad, unduly burdensome,

3    and not proportional to the needs of this case because it is unlimited

4    as to time. AT&T's response and production of documents will

5    therefore be limited to information from January 1, 2017 to the

6    present. AT&T further objects to this Request on overbreadth

7    grounds in that it seeks "All" documents and communications from

8    unspecified persons and/or entities without limiting them to AT&T

9    or any particular persons within AT&T or to documents sufficient

10   to show a relevant fact. AT&T further objects to this Request to the

11   extent it asks AT&T to provide information not within its

12   possession, custody, or control, such as "COMMUNICATIONS

13   RELATING TO . . . the personnel of an AUTHORIZED

14   RETAILER." AT&T further objects to the Request to the extent it

15   seeks all communications "RELATING TO YOUR personnel who

16   were contacted by PLAINTIFF RELATING TO the JANUARY 7,

17   2018 SIM SWAP" as vague and ambiguous as to the scope of

18   communications requested and to the extent that it seeks

19   information outside AT&T's possession, custody, or control.

20   AT&T further objects to this Request to the extent it seeks materials

21   protected by attorney-client and/or attorney work product

22   privileges, and/or any other applicable privilege, protection, or

23   immunity from disclosure. AT&T further objects to the Request

24   that it seeks materials protected by the privacy rights of third

25   parties. AT&T objects to this Request to the extent it seeks

26   information provided by AT&T to any government or law

27   enforcement entity to the extent such Request is contrary to, or not

28   allowed by, any law or policy. AT&T objects to the term "YOU"

1  to the extent it purports to encompass any entity other than AT&T

2  Mobility LLC. Subject to and without waiving the foregoing

3  General and Specific Objections AT&T will produce responsive,

4  non-privileged documents in its possession, custody, or control to

5  the extent they exist and can be identified pursuant to a reasonable

6  search.

7  *Id.*

8  AT&T's responses to Requests Nos. 8, 12 and 48 were equally replete

9  with verbose boilerplate objections, including objections for privilege:

10  AT&T RESPONSE TO REQUEST NO. 8:

11  AT&T objects to this Request as overly broad, unduly burdensome, and

12  not proportional to the needs of this case because it is unlimited as to

13  time. AT&T's response and production of documents will therefore be

14  limited to information from January 1, 2017 to the present. AT&T

15  further objects to this Request to the extent it asks AT&T to provide

16  information not within its possession, custody, or control, such as the

17  knowledge, employment status, or disciplinary history of the

18  representative who implemented the SIM swap at issue, who was not an

19  employee of AT&T, but was affiliated with an authorized retailer.

20  AT&T further objects to this Request to the extent it incorporates a

21  concept of whether a SIM swap is "authorized," because AT&T lacks

22  sufficient knowledge to determine whether most or all SIM swaps that

23  are claimed to have occurred without authorization were in fact

24  authorized by the customer. AT&T further objects to this Request as

25  overly broad, unduly burdensome, and not proportional to the needs of

26  this case to the extent it seeks production of "ALL DOCUMENTS

27  RELATING TO" a broad topic, rather than documents sufficient to

28  show a relevant fact. AT&T further objects to this Request as overly

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

11

broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including data about activities involving Mr. Smith that are unrelated to Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T further objects to this Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents in its possession, custody, or control to the extent they exist and can be identified pursuant to a reasonable search.

AT&T RESPONSE TO REQUEST NO. 12:

AT&T objects to this Request as overly broad, unduly burdensome, and

83764-00002/4495881.1

1   not proportional to the needs of this case because it is unlimited as to

2   time. AT&T's response and production of documents will therefore be

3   limited to information from January 1, 2017 to the present. AT&T

4   further objects that the terms "analysis" and "internal reports" are vague

5   and ambiguous as to the scope of communications sought. AT&T

6   further objects to this Request on the ground that it seeks "All"

7   documents and communications from unspecified persons and/or

8   entities without limiting them to AT&T or any particular persons within

9   AT&T or sufficient to show a relevant fact. AT&T further

10  objects that the Request is overly broad, unduly burdensome, and vague

11  and ambiguous to the extent it broadly seeks all documents

12  "RELATING to any analysis" given the broad definition of RELATE

13  and the ambiguity of the term "analysis." AT&T further objects to SIM

14  swap is "unauthorized," because AT&T lacks sufficient knowledge

15  to determine whether most or all SIM swaps that are claimed to have

16  occurred without authorization were in fact authorized by the customer.

17  AT&T further objects to the Request to the extent it seeks discovery of

18  the "reasons" that third parties decide to engage in criminal acts,

19  knowledge of which is inherently outside of AT&T's possession,

20  custody, and control. AT&T objects to this Request to the extent it

21  incorporates an assumption about AT&T's policies or other matters

22  without any evidentiary support. AT&T further objects to the Request

23  that it seeks materials protected by the privacy rights of third parties.

24  AT&T objects to this Request to the extent it seeks information provided

25  by AT&T to any government or law enforcement entity to the extent

26  such Request is contrary to, or not allowed by, any law or policy. AT&T

27  further objects to the Request to the extent it seeks materials protected

28  by attorney-client and/or attorney work product privileges, and/or

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

13                                    JOINT STIPULATION

any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC. Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents discussing unauthorized SIM swaps, to the extent such documents exist in AT&T's possession, custody, or control and can be located pursuant to a reasonable search of appropriate custodians.

<u>AT&T RESPONSE TO REQUEST NO. 48</u>:

AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T objects that this request is overly broad, unduly burdensome, and seeks information not relevant to the incidents at issue, to the extent it requests all communications between AT&T and Spring Mobile or Prime Communications that talk about prevention of SIM swaps at all, even if they have nothing to do with Terpin. AT&T also objects to this Request to the extent it seeks communications relating to other AT&T customers, containing the protected CPNI of other AT&T customers, and concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects that such information of third parties is protected against disclosure by applicable federal and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1   state law and authorities, including by not limited to the Federal

2   Communications Act, 47 U.S.C. § 222, the Stored Communications Act,

3   18 U.S.C. § 2707, and the Electronic Communications Privacy Act of

4   1986, 18 U.S.C. §§ 2510 et seq. AT&T further objects that the request

5   seeks materials protected by the privacy right of third party customers.

6   AT&T further objects that the request seeks the production of

7   information or material that constitutes confidential, proprietary and/or

8   trade secret information. AT&T objects to the term "YOUR" to the

9   extent it purports to encompass any entity other than AT&T Mobility

10  LLC. AT&T further objects to the Request to the extent it seeks

11  materials protected by attorney-client and/or attorney work product

12  privileges, and/or any other applicable privilege, protection, or

13  immunity from disclosure. Subject to and without waiving the foregoing

14  General and Specific Objections, AT&T will produce responsive, non-

15  privileged documents reflecting communications between AT&T and

16  Spring Mobile and Prime Communications, subject to any obligations

17  of confidentiality or non-disclosure, to the extent such documents exist

18  within its possession, custody, or control and can be located by a

19  reasonable search.

20  Setting aside AT&T's boilerplate objections, including those for privilege, the

21  responses to these four requests notably did not object to producing documents "up

22  to the present," including 2018.  Moreover, AT&T's objections as to privilege were

23  boilerplate and AT&T did not claim that <u>all documents</u> responsive to the requests

24  were privileged.  Nor did AT&T object that it would not, as requested, prepare a

25  document-by-document privilege log for all documents up until "the present,"

26  including 2018.[4]

27  ────────────────

28  [4] The parties later agreed that the privilege log did not need to list any documents
    after the filing of the complaint on August 15, 2018, but that did not exclude

### c. The parties' efforts to resolve their dispute.

The parties engaged in numerous meet and confer conferences regarding AT&T's production of documents called for in Plaintiff's requests. For example, in a September 29, 2021 letter to AT&T counsel, Plaintiff highlighted the fact that AT&T had to date not produced anything "specific to Mr. Terpin's two unauthorized SIM swaps, including . . . any documents related to any internal investigation performed by AT&T's A[sset]P[rotection] department, which surely included looking at the specific SIM swaps that occurred as well as other SIM swaps by those involved, such as Jahmil Smith of Spring Communications (now Prime), who has been identified as performing the January 2018 SIM swap." Toohey Decl. ¶ 11, Exh. F.

On October 14, 2021, the parties engaged in a meet and confer conference regarding AT&T's discovery responses to Plaintiff's requests. Toohey Decl. ¶ 12. At this meet and confer, AT&T asserted—for the first time—that it was claiming a blanket privilege for certain documents related to Mr. Terpin's unauthorized SIM swap. *Id.* Plaintiff objected to such a designation in an e-mail to AT&T's counsel on October 25, 2021, *inter alia*, because the underlying facts relating to the unauthorized SIM swap, including AT&T's investigations, were not privileged. *Id.* ¶ 13, Exh. G. In this e-mail Plaintiff also cited authority for the proposition that internal investigations are not *per se* privileged because they may be performed for multiple purposes. *Id.* Plaintiff also requested that AT&T promptly prepare a privilege log for these documents so that Plaintiff could evaluate the grounds of the asserted privilege. *Id.*

On November 30, 2021, AT&T counsel responded by asserting that "[u]pon further review, AT&T's counsel conducted their own investigation here, which is straightforwardly shielded by attorney-client privilege and work product, and there

_____

production of relevant documents after that date. Indeed, Plaintiff produced numerous documents after August 15, 2018. Toohey Decl. ¶ 24.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

is no separate investigation directed by non-lawyers or resulting in an investigative report prepared by non-lawyers.  The issue you raised of wishing to examine AT&T's basis for claiming privilege and/or work product over such an investigation therefore is not present in this case."   Toohey Decl. ¶ 14, Exh. H.  Notably AT&T did not substantiate its assertions with any specific facts or other information, let alone state that it was somehow relieved from satisfying the requirements of Fed. R. Civ. Proc. 26(b)(5) to produce a document-by-document privilege log of such documents.

On December 8, 2021, Plaintiff wrote counsel for AT&T rejecting the contention that all internal investigations in which counsel were involved were privileged and citing authority to the contrary.  Toohey Decl. ¶ 15, Exh. I.  Plaintiff again insisted (as it had on October 25, 2021) that AT&T produce a privilege log so that he could evaluate AT&T's claims of privilege, noting that "it is clear that there is an internal compliance and investigation department at AT&T that, as a matter of course, conducts investigations into unauthorized SIM swaps that are brought to AT&T's attention.  We are also aware that when an employee of an authorized retailer (such as [Spring]) is involved in an unauthorized SIM swap and when a SIM swap is reported to the fraud department, investigations into the circumstances of the SIM swap are conducted.  In this case, these investigations undoubtedly occurred not least because Mr. Terpin's wife contacted the fraud department and the Terpins went into a store in Puerto Rico to find out about the SIM swap.  This was months before AT&T was contacted by counsel for Mr. Terpin."  *Id*.  *See also* Exhibit O (account notes for January 7, 15 and 28, 2018) (substantiating that Mr. and Ms. Terpin complained multiple times in January 2018 regarding fraud and hackers and losses on their financial accounts).

AT&T eventually produced an incomplete privilege log on May 9, 2022.  Toohey Decl.  ¶ 16, Exh. J.  AT&T's privilege log (which was arranged document-by-document) did not contain any document dated later than 2017 and did not contain any reference to any document related to Mr. Terpin's unauthorized SIM swap,

83764-00002/4495881.1

Jahmil Smith or any investigation of Mr. Terpin's 2017 or 2018 unauthorized SIM swaps. *Id*. Indeed, the privilege log did not contain a single document dated in 2018 (despite the fact that AT&T's responses frequently stated that it would produce documents "from January 1, 2017[5] to the present)."

On May 11, 2022, Plaintiff wrote counsel for AT&T regarding the "manifest inadequacy and incompleteness" of the privilege log that Plaintiff had been seeking for months. *Id*. ¶ 17, Exh. K. In this communication Plaintiff demanded that AT&T produce a complete privilege log that listed all documents for which it was claiming privilege up until the filing of the complaint on August 15, 2018, including (but not limited to) communications involving its in-house counsel (Ms. Okcu) and relating to the internal investigation of Mr. Terpin's unauthorized SIM swap. *Id*. On May 16, 2022, AT&T rejected Mr. Terpin's demand for a privilege log and again asserted (without any factual support) that there was no "dual purpose" investigation at AT&T. *Id*. ¶ 18, Exh. L. On May 20, 2022 AT&T produced the one-line Categorical Privilege Log previously described. *Id*., Exh. C. The parties met and conferred on June 6, 2022 and found that they were at an impasse regarding this issue. *Id*. ¶ 19. At an informal discovery conference on July 25, 2022, the Court requested that the parties file this joint stipulation. *Id*. ¶ 20. When Plaintiff asked AT&T to produce a proper document-by-document privilege log rather than engaging in expensive motion practice, counsel for AT&T refused to do so on the ground that the privilege for the documents was "obvious." *Id*. ¶ 20, Exh L.

### 2. AT&T Has the Burden of Substantiating Its Privilege Claims in a Document-by-Document Privilege Log.

Fed. R. Civ. Proc. 26(b)(5) does not contemplate that the burden of establishing a privilege can be met by a party's counsel's mere assertion that the privilege of the documents is "obvious." Our adversarial system requires more. Fed.

---

[5] AT&T later agreed to produce documents from January 1, 2016 to the present.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

R. Civ. Proc 26(b)(5) instead requires a privilege log, stating that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

AT&T undoubtedly has the burden of proof regarding its assertions of privilege. *See In re Grand Jury Investigation* 974 F.2d 1068, 1070 (9th Cir. 1992). To meet this burden AT&T must make a *prima facie* showing that the privilege protects the information that it intends to withhold. *Id.* at 1070-1071. A privilege log identifying documents for which privilege is claimed and providing basic information about the documents is a first and fundamental required step in this process. *Teradata Corp. v. SAP SE*, No. 18-cv-03670-WHO (EDL) (N.D.Cal. Sep. 9, 2019)) 2019 U.S. Dist. LEXIS 232053, at *75. The purpose of a privilege log is "to help courts and litigants determine the sufficiency of the claimed privilege." *Christensen v. Goodman Distrib., Inc.*, No. 2:18-cv-02776-MCE-KJN) 2020 U.S. Dist. LEXIS 126467 (E.D.Cal. July 17, 2020), at *9-10; *see also Waymo LLC v. Uber Techs., Inc.* 319 F.R.D. 284, 288 (N.D.Cal. 2017). ("The purpose of a privilege log in our federal system is to list the materials withheld under any claim of privilege and to specify certain time-honored particulars as to each item withheld. This is the first step in the process of adjudicating a claim of privilege") (emphasis added). The production of document-by-document privilege logs is a well-accepted, indeed, uncontroversial practice in litigation under the Federal Rules of Civil Procedure, particularly in a case involving complex issues of the privilege of internal investigations and the role of in-house counsel in communications with non-lawyers within the corporation.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

19                                    JOINT STIPULATION

83764-00002/4495881.1

**3.** **AT&T's Categorical Privilege Log violates Fed. R. Civ. Proc. 26(b)(5) by not allowing Plaintiff or the Court to assess AT&T's claims of privilege.**

The Categorical Privilege Log that AT&T has provided does not give Plaintiff the information he (or the Court) needs to analyze the basis of the privilege for each document—a privilege for which AT&T has the burden of proof.  Indeed, Plaintiff cannot tell from the Categorical Privilege Log whether AT&T is claiming privilege only as to its internal investigations or for other documents called for in Plaintiff's requests from 2018 before the filing of the complaint.  Nor do the assertions of counsel that the privilege of the documents is "obvious" suffice.  Instead, Fed. R. Civ. Proc. 26(b)(5) requires AT&T to produce a proper document-by-document privilege log.  AT&T's Categorical Privilege Log does not contain information essential to Plaintiff's and the Court's right to assess AT&T's claims for privilege, including the authors and recipients of communications (for example, if they were between non-lawyers or copied to third parties) and the timing of the communications.  The Categorical Privilege Log also does not allow Plaintiff or the Court to assess the purpose of the communications or the precise privileges that are being asserted for each document.  Nor does the Categorical Privilege Log allow an assessment whether the claimed privileges were waived (for example by sending a communication to AT&T's authorized retailer Spring or to law enforcement).

**a.** **Without a proper document-by-document privilege log, Plaintiff cannot assess whether AT&T created the withheld documents for a dual purpose, including "routine forensic analysis" of unauthorized SIM swaps or to comply with regulatory requirements.**

The Categorical Privilege Log makes it impossible for Plaintiff to explore whether documents relating to any internal investigation triggered either by Plaintiff's January 2018 notices to AT&T or the March 20, 2018 demand letter from

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Plaintiff's counsel were created for multiple purposes.  Although AT&T has asserted (without any proof whatsoever) that there were no such "dual purpose" documents and that Ms. Okcu, who is an in-house counsel at AT&T, acted solely as a litigator and that all investigations were done solely in anticipation of litigation, Plaintiff has no way of assessing that claim (for which AT&T has the burden of proof).  For example, the absence of a document-by-document privilege log prevents assessing whether Ms. Okcu directed every step of the investigation or whether others took the lead on certain matters, including members of AT&T's asset protection and fraud units.

        As previously noted, AT&T has both an internal "asset protection" division, as well as a fraud department.  These departments are staffed primarily by non-lawyers and perform business functions, including assessing the causes of fraud, the adequacy of existing security and authentication procedures, and threats to AT&T's assets by outsiders and employees.  *See* Exhs. F, I, and O.  Moreover, in a filing with the FCC regarding its proposed rulemaking regarding security measures to prevent unauthorized SIM swaps, AT&T confirmed that it specifically conducts internal investigations of unauthorized SIM swaps for business purposes, including improving its security.  In the submission, AT&T states that it "conducts routine forensic analysis of unauthorized SIM swaps and port-outs to assess the root cause and evaluate whether new or different countermeasures are appropriate to enhance security. This assessment has resulted in process changes, implementation of new security procedures, and more to guard against threats."    *See* Exh. B (emphasis added).    Given the existence of AT&T's "routine" internal investigations of unauthorized SIM Swaps (and AT&T's admission that those investigations are used for the business purpose of improving its security measures regarding SIM swaps), it is likely that the communications relating to Mr. Terpin's unauthorized SIM Swaps (if they occurred at all) had multiple non-privileged business purposes, including improving AT&T's security and authentication procedures, and were not exclusively

21                                                                                  JOINT STIPULATION

related to anticipated litigation.   This is particularly the case regarding any investigation prompted by Mr. and Ms. Terpin's multiple contacts with AT&T regarding fraudulent activity by hackers on their accounts in January 2018. *See* Exhibit O (account note entries for January 7, January 18 and January 28, 2018). Notably, these multiple contacts by Plaintiff occurred well before the March 20, 2018 receipt of the demand letter and any investigation prompted by these calls would not relate to anticipated litigation.

Courts routinely review assertions of privilege for documents created by a corporation for multiple purposes, including internal investigations.   For example, in *United States v. Riche*y, 632 F.3d 559, 562 (9th Cir. 2011), the court found that in evaluating whether dual purpose documents were prepared "in anticipation of litigation," courts must look at whether the document "would not have been created *in substantially similar form* but for the prospect of litigation." *Id*. at 568 (emphasis added).  The same question arises in this case where AT&T has both an asset protection and fraud departments that investigate SIM swaps and perform "routine forensic analysis" in the ordinary course of business to protect assets and improve security. Plaintiff cannot explore whether the communications in question here were for such multiple purposes because the Categorical Privilege Log does not contain a document-by-document list of the information needed to evaluate AT&T's claims of privilege.

> **b.  The Categorical Privilege Log makes it impossible for Plaintiff to determine if AT&T has met its separate burdens of establishing the attorney-client and work product privileges.**

AT&T has further confused matters through its Categorical Privilege Log with its blanket claim in its one line descriptor that all documents were subject both to the attorney-client privilege and work product protection.  The failure to provide any more specific information about the documents (including whether certain

JOINT STIPULATION

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

documents were not authored by or sent to lawyers) makes it impossible for Plaintiff to assess AT&T's assertion of these privileges under the different standards that apply to attorney-client communications and work product privileges.

In the Ninth Circuit's recent decision *In re Grand Jury*, 23 F.4th 1088 (9th Cir. 2021) (as amended Jan. 27, 2022), the court outlined the different standards that apply to assertions of privilege for attorney-client communications and work product for documents involving in-house corporate counsel. The court found that the "primary purpose" test applies to dual purpose attorney-client communications and that the separate "because of" test applies to work product communications. *Id*, 22 F.4th 1092 *et seq.* For example, if AT&T were to claim work product protection for a document authored by a member of its fraud or assert protection departments (even if such document was only copied or forwarded to an attorney) the court would not "'consider whether litigation was a primary or secondary motive behind the creation of the document.'" *In re Grand Jury,* 22 F.4th at 1092-93, quoting *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt)*, 357 F.3d 900, 908 (9th Cir. 2004). Instead, the evaluator of the privilege would "'consider[] the totality of the circumstances'" and the protection of privilege would occur only "'when it can fairly be said that the document was created because of anticipated litigation.'" *Id.* (emphasis added) (cleaned up). As the Ninth Circuit has stated, this is "a broader test than the 'primary purpose' test because it looks only at causal connection, and not a 'primary' reason." *Id*.

By failing to provide any substantiation for the privilege on a document-by-document basis on the ground that the privilege of an unknown number of documents is "obvious," AT&T prevents both Plaintiff and the Court from making the careful and complex analysis required for testing assertions of privilege involving internal investigations and in-house counsel. How can Plaintiff begin to evaluate the "totality of the circumstances" or the "primary purpose" of a communication when he has not been given an iota of information about the communication? The Federal Rules do

not countenance such a slapdash approach to the important and complex issues of privilege.

### c. Plaintiff cannot assess whether in-house counsel acted in multiple capacities without a document-by-document privilege log.

In determining if privilege attaches to communications, courts often consider whether in-house counsel served in multiple roles for the corporation in regard to a communication. *See, e.g., Matter of Federated Dep't Stores, Inc.*, 170 B.R. 331, 354 (S.D. Ohio 1994) ("Communications between an attorney and a client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege."). Moreover, courts also consider whether in-house counsel have responsibilities as business advisors for the company in regard to regulatory matters and thus serve multiple functions. *In re Grand Jury*, 22 F.4th at 1090 ("[g]iven our increasingly complex regulatory landscape, attorneys often wear dual hats; serving as both a lawyer and a trusted business advisor").

AT&T is a prominent member of the highly regulated telecommunications industry and its in-house counsel (including Ms. Okcu) are presumably mindful of both the oversight of the FCC and the provisions of the FCA, particularly in regard to AT&T's obligations to protect the privacy of its customers' communications under Section 222 of the FCA. AT&T's exposure of Plaintiff's private communications through an unauthorized SIM swap specifically implicates Section 222 of the FCA, as acknowledged by AT&T in responding to the FCC's proposed rulemaking to amend the CPNI rules under that section of the FCA. *See* Exhibit B; *see also* SAC ¶¶ 133- 141 (Plaintiff's claim under Section 222 of FCA). Under these circumstances, Plaintiff must be able to explore whether communications regarding AT&T's internal investigation of Plaintiff's unauthorized SIM swap implicated AT&T's regulatory obligations, particularly in light of the fact that AT&T had previously been subject to two record fines for violating Section 222 of the FCA—

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

the very provision at issue in this litigation.[6]   Any communications regarding Plaintiff's complaints regarding fraud and hacking on his account, which occurred in January 2018 before the demand letter was sent, would presumptively not be privileged as they involve AT&T's disclosure of Plaintiff's private and proprietary information in violation of Section 222 of the FCA.  *See* Exhibit O (account notes).

> **d.      Plaintiff cannot assess what documents other than those relating to internal investigations are being withheld by AT&T without a complete document-by-document privilege log.**

The absence of a document-by-document privilege obfuscates determining whether there may be other claims of privilege related to other documents called for in Plaintiff's requests (other than those relating to an internal investigation involving Ms. Okcu), such as internal investigations prompted by Plaintiff's complaints to AT&T in January 2018, documents relating to Jahmil Smith, communications with the FCC relating to the compromise of Plaintiff's personal information, and communications with AT&T's authorized retailers related to Plaintiff or to unauthorized SIM swaps.   Plaintiff is entitled to a privilege log that lists <u>all</u> documents that are being withheld from production that are responsive to any of Plaintiff's requests for production according to a claim of privilege prior to August 15, 2018.[7]   The production of a complete privilege log is particularly necessary because AT&T has not produced any documents relating to any internal investigation

---

[6] AT&T's faulty privacy and security practices for customer accounts have drawn considerable attention by the FCC, including the imposition of record fines for violating Section 222 of the FCA in 2020 and 2015.  *See* *https://www.fcc.gov/document/fcc-proposes-572m-fine-against-att-location-information-case* (disclosure of customer location information and over $57 million penalty) (attached as Exh. M to Toohey Decl.);   *https://www.fcc.gov/document/att-pay-25m-settle-investigation-three-data-breaches-0* (disclosure of private customer information through "spoofing" and $25 million fine) (*Id.*, Exh. N).

[7] Plaintiff agrees that AT&T need not list any communications with outside counsel prior to August 15, 2018, including those related to the mediation that took place in June 2018.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

JOINT STIPULATION

of Mr. Terpin's accounts that stemmed from the multiple complaints made by Mr. Terpin and his wife in January 2018 regarding fraudulent activity by hackers on his account. *See* Toohey Decl. ¶ 5 and Exhibit O (account notes).

> **4.    AT&T's production of a document-by-document privilege log of documents from March 20, 2018 until August 15, 2018 is not unduly burdensome.**

AT&T has not demonstrated that producing a document-by-document privilege log would be unduly burdensome.    Indeed, AT&T has provided no indication as to how many documents would be contained on such a log.  Categorical privilege logs have been permitted in rare cases where it "would be unduly burdensome or when 'the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded.'" *First Horizon National Corp. et al. v. Houston Casualty Co. et al.*, 2016 WL 5867268 *5 (W.D. Tenn. 2016) ("*First Horizon*"), *quoting S.E.C. v. Thrasher*, 1996 WL 125661 at * 1 (S.D.N.Y. Mar. 20 1996).  This is often the case with documents that are created *after* the complaint has been filed "which are at best marginally probative." *First Horizon* at *6.  However in most instances, the party asserting privilege must normally establish the "undue burden with specificity . . . [and] articulate explicitly why production of an itemized and descriptive privilege log is unduly burdensome." *Bethea v. Merchants Commercial Bank,* 2012 WL 5359536 at *2 (D.V.I. Oct. 31, 2012) (cited in *First Horizon* at *6).  AT&T has not met this burden because it has provided no information about the number of documents at issue or claimed that listing the documents for a six-month period would constitute an "undue burden."

> **5.    Information contained in a document-by-document privilege log is relevant to the issues of this litigation.**

The required information to be listed in a document-by-document privilege log, namely the dates and times of communications and the persons involved (as well

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

as a general description of the subject matter), is itself not privileged, and is highly relevant to the issues of this litigation.  In this case, the issue of whether AT&T was diligent in protecting the public from the dangers of unauthorized SIM swaps by promptly investigating fraudulent activity on customers' accounts and implementing on a timely basis effective security and authentication procedures is highly relevant to Plaintiff's claims.  Indeed, Plaintiff alleges in his SAC that AT&T did not, as was its duty, implement proper security and authentication procedures or warn its customers regarding the dangers stemming from unauthorized SIM swaps.  *See, e.g.,* SAC ¶¶ 168-176.

AT&T's hiring and disciplining of its employees and the employees of its authorized retailers and its investigations as to whether those employees were being coopted by hackers are also relevant and directly relate to the allegations of the SAC. *See* SAC ¶¶ 178-194.  For example, if the facts were to show that AT&T, despite Plaintiff's multiple complaints in January 2018[8] that fraudulent activity had taken place on his account that had led to financial losses, did not in fact investigate Mr. Terpin's claims until after March 20, 2018, those facts would be relevant, *inter alia*, to whether AT&T's abject failure to protect Plaintiff and warn other customers regarding the danger of unauthorized SIM swaps subject AT&T to punitive damages.[9]  *See Protection Alpha Nav. Co., Ltd v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir. 1985) (punitive damages may be awarded for "conduct which manifests 'reckless or callous disregard' for the rights of others . . . or for conduct which shows 'gross negligence or actual malice or criminal indifference'", *quoting Smith v.* Wade, 461 U.S. 30, 51 (1983) and *In re Marine Sulphur* Queen, 460

---

[8] For example, the entry for January 28, 2018 16:38 indicates that Ms. Terpin came into an AT&T store and that "Customer states att account has been hacked as well as their bank account.  Cust blames hacker for hacking sim chip." Exhibit O.

[9] *See* Docket No. 49 (allowing Plaintiff to apply to the Court for reinstatement of its punitive damages claims).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

27

JOINT STIPULATION

F.2d 89, 105 (2d Cir. 1972). Clearly the underlying non-privileged facts relating to the timing of what AT&T did (or did not do) to investigate the January 7, 2018 incident to follow up on Plaintiff's complaints of fraud and hacking, the involvement Jahmil Smith and Spring, and the inadequacy of AT&T's authentication procedures, including identification of all persons involved, the timing of the investigations, the amount that of time invested in investigating, and the actions that AT&T took to remediate security flaws (and to warn other customers) are in themselves highly relevant.[10] AT&T is not prejudiced by production of a privilege log because under Rule 26(b)(5)(ii), AT&T is allowed to describe the documents in a manner that will not reveal privilege, but that will still provide the relevant information regarding the dates and the authors and recipients of the communications.

> **6.    The Court should establish an expedited procedure for evaluating Plaintiff's challenges to AT&T's privilege claims, including *in camera* review of documents that AT&T has withheld.**

In conjunction with ordering AT&T to produce a complete document-by-document privilege log the Court should also establish an expedited procedure for evaluating any challenges by Plaintiff to AT&T's privilege claim, including *in camera* review of documents withheld by AT&T. Given the amount of time that it has taken to resolve the *preliminary* requirement of AT&T producing a privilege log (and the lack of documents produced by AT&T relating to Plaintiff and the January 7, 2018 incident), Plaintiff is concerned that the eventual production of the privilege log may prove a pyrrhic victory if Plaintiff needs to go through a time-consuming

---

[10] To date, AT&T has produced almost no documents relating to Plaintiff's unauthorized SIM swap except for the account notes for Mr. Terpin's account and a single communication to Spring. Toohey Decl. ¶ 5. Nor has AT&T produced documents relating to any internal investigation prompted by Plaintiff's multiple complaints regarding fraud and hacking in January 2018. *Id.*, Exhibit O (account notes for January 7, 15 and 28, 2018) Plaintiff is entitled to know through a document-by-document privilege log whether any investigation occurred either as a result of these complaints or the March 20, 2018 demand letter.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

28                                        JOINT STIPULATION

process of challenging AT&T's privilege claims.  In the event that the Court orders production of a privilege log, Plaintiff respectfully requests that the Court order that an expedited procedure be put in place that would include the review by the Court *in camera* of any documents listed on the privilege log, the privilege of which are disputed by Plaintiff.  Such a procedure has frequently been followed in cases of disputed privilege.  *See Symettrica Entertainment Ltd. V. UMG Recordings, Inc.*, 2020 WL 13311682 *4 (C.D.Cal. July 17, 2020) (Stevenson, MJ), *citing Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372, 374 (9th Cir. 1990) (in camera review appropriate "where the review is necessary to determine whether the communications themselves are privileged").

### 7.    AT&T has waived its claimed privileges by failing to produce a timely and adequate privilege log.

In the alternative to ordering production of a privilege log, Plaintiff seeks an Order by the Court that AT&T has waived privilege for any relevant documents that it has not logged, including those relating to internal investigations and any other documents, and that all such documents should be produced forthwith.  Contrary to AT&T's likely assertion, the failure of AT&T to produce a timely privilege log is a sanctionable waiver of the privilege.  AT&T is subject to such a sanction even though it belatedly produced its woefully inadequate Categorical Privilege Log because Plaintiff had sought the log for nine months and has still not received a proper log.

The fact that AT&T has engaged in egregious and inexcusable delay in producing a privilege log as to its internal investigation is beyond dispute.  Plaintiff has been asking AT&T to substantiate its privilege claims (which it stated in boilerplate fashion in its Responses to Plaintiff's discovery) regarding an internal investigation with production of a privilege log from at least October 25, 2021.  *See* Toohey Decl. ¶¶ 13-18.  Plaintiff requested production of a log of communications regarding its internal investigation from the outset so that it could evaluate AT&T's implausible assertion that all aspects of its internal investigation(s) were undertaken

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

JOINT STIPULATION

in anticipation of litigation.  Instead of timely producing such a log for its internal investigations, AT&T has for nine months insisted that the privilege of the documents is so "obvious" that it was exempted from its requirement to do so under the Federal Rules of Civil Procedure.  When AT&T eventually produced a privilege log on May 9, 2022, it omitted all of the allegedly privileged communications involving its internal investigation.  Indeed, the log listed no documents from 2018.  When Plaintiff strongly objected to this log, AT&T produced its Categorical Privilege Log on May 20, 2022 which provides no basis on which to evaluate AT&T's privilege claims.  AT&T's providing the Categorical Privilege Log is the equivalent of producing no privilege log whatsoever.  By failing to produce a privilege log, AT&T has forfeited its right to claim privilege for any of the communications.

The Ninth Circuit has found that a party waives a claim of privilege by failing to produce a privilege log in a timely manner.  In *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist Court for the Dist. of Mont.*, 408 F.3d 1140, 1147 (9th Cir. 2005), the court found that withholding materials without timely satisfying Rule 26(b)(5) subjects a party to sanctions under Rule 37(b)(2) "'and may be viewed as a waiver of the privilege or protection.'" (quoting advisory committee comments to the amendments to Rule 26).  *See also Stagger v. Experian Information Solutions, Inc.*, 2021 WL 5299791, *5 (N.D. Ill. 2021) (boilerplate general privilege objections are the same as "no objection at all," are not the equivalent of a privilege log and may constitute a "waiver of the privilege as to the unlogged documents").

**B.    AT&T's Position**

**1.    AT&T Has Met Its Burden of Substantiating Its Privilege Claims.**

Courts have routinely held that parties need not log documents created after litigation is initiated, because it can generally "be assumed that all documents created after charges have been brought or a lawsuit has been filed and withheld on the grounds of privilege were created 'because of that pending litigation.'" *United States*

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

*v. Bouchard Transp.*, 2010 WL 1529248, at *2 (E.D.N.Y. 2010). *See also Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009) (holding that commencement of litigation marks the point where parties' communications shift from containing discoverable evidence to legal strategy and refusing to require logging of documents created after the date litigation commenced); *First Horizon Nat'l Corp. v. Houston Cas. Co.,* No. 2:15-CV-2235- SHL-DKV, 2016 WL 5867268, at *6 (W.D. Tenn. Oct. 5, 2016); *Lafate v. Vanguard Group, Inc.*, 2014 WL 5023406, *7 (E.D. Pa. 2014); *Pennsylvania State University v. Keystone Alternatives LLC*, 2021 WL 1737751, *3 (M.D. Pa. 2021); *Brown v. West Corp.*, 287 F.R.D. 494, 499 (D. Neb. 2012). Indeed, many courts have even enshrined such an exemption in their local rules. *See e.g., Guthartz v. Park Ctr. W. Corp.*, No. 07-80334-CIV, 2009 WL 10668759, at *2 (S.D. Fla. Jan. 30, 2009); *Tomlinson v. Combined Underwriters Life Insurance Co.*, Case No. 08-CV-259-TCK-FHM, 2008 U.S. Dist. LEXIS 65363 (N.D. Okla. Aug. 22, 2008). While Plaintiff ridicules AT&T for asserting that the privilege applicable to such documents is "obvious," courts throughout the country agree that the reasons Plaintiff cites for preparing privilege logs—to allow the Court and opposing party to evaluate the claim of privilege—is unnecessary for documents created in responding to pending litigation. In other words, it is sufficiently evident that such documents are shielded by privilege and work product that requiring the documents to be logged imposes a burden with no benefit, and requires a disclosure of the activities of litigation counsel that is unjustified by any legitimate need. And ***Plaintiff does not dispute this principle, or deny that such documents need not be logged.***

Here, although Plaintiff did not formally file the litigation until August 2018, the provision of the fully drafted complaint and threat of immediate litigation in March 2018 had the same effect; i.e. it is obvious that the documents created after that point as part of in-house litigation counsel's investigation of the draft complaint "were created 'because of that pending litigation.'" *Bouchard*, 2010 WL 1529248, at

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

*2.  Plaintiff appears to recognize the reasonableness of this logic, given that he has not logged *any* communications between himself and his counsel, regardless of date, unless spousal privilege is also being asserted over the same document.  *See* Johnson Decl., Exs. 1-2.   His position is simply that for *AT&T*, a different rule should apply.

Plaintiff attempts to parse two distinctions between his own, unlogged yet purportedly privileged, communications and AT&T's. Both are unavailing.

First, Plaintiff contends that there is a material difference between AT&T's in-house litigation counsel and "outside counsel" that justifies disparate treatment of the parties under the same legal principles.  Although Plaintiff has misleadingly referred to AT&T's in-house litigation counsel as a "client representative" (Toohey Decl., Ex. K at 2), Plaintiff is well aware that Ms. Okcu is AT&T's litigation attorney tasked with responding to Plaintiff's demands.  Indeed, in the period relevant to this motion—between March and August 2018—Plaintiff's counsel directly and exclusively engaged in dozens of written and oral communications with Ms. Okcu as counsel for AT&T regarding Plaintiff's claims alleged damages, and mediated this case *with Ms. Okcu*. Even after the filing of the Complaint and until Gibson Dunn made an appearance, Plaintiff's counsel was dealing with Ms. Okcu as AT&T's counsel on various issues including service of the Complaint and dismissal of AT&T Inc. from the case.  Johnson Decl. Ex. 3-5.  There is no principled reason that Plaintiff's communications with his litigation counsel about this litigation should be subject to one standard, and AT&T's communications with its litigation counsel about the same should be held to another, simply because AT&T is a corporation that initially responded to litigation through an in-house litigator rather than an outside litigator.

Second, Plaintiff insists that the supposed existence of a theoretical investigation preceding the demand letter, or otherwise occurring in tandem with Ms. Okcu's investigation for disparate reasons, justifies imposing the burden of logging categories of documents that Plaintiff himself has declined to undertake.  For

32                                    JOINT STIPULATION

example, he contends, "any communications regarding Plaintiff's complaints regarding fraud and hacking on his account, which occurred in January 2018 before the demand letter was sent, would presumptively not be privileged." *Supra*, § II(A)(3)(c).  Indeed, Plaintiff *repeatedly* invokes his desire to see a log covering any investigation done in January 2018, before the draft demand letter, as if such documents are at issue in this motion. *See supra* at pp. 9-10, 23-24, 27-30.

Whether privileged documents from January 2018 should be logged is not at issue in this motion.  To the contrary, AT&T has been crystal clear that what it objects to logging is documents that post-date the March 2018 demand letter.  As reflected on AT&T's categorical privilege log (Toohey Decl., Ex. C), AT&T *does not assert* privilege over any purported investigative documents before the demand letter was received on March 19, 2018.  The absence of these hypothetical privileged communications does not reflect a failure to log them by AT&T, but rather the fact that AT&T has not located any such documents, as AT&T has repeatedly explained to Plaintiff. *See* Toohey Decl., Ex. L.  The list of privileged documents pertaining to such a non-existent investigation is accordingly a null set, and there is no further logging of these imaginary communications for this Court to compel.  AT&T cannot invent privileged documents to log to give Plaintiff something to challenge.

## 2.    AT&T's Categorical Privilege Log is Sufficient

"Rule 26(b)(5) does not require a document-by-document privilege log." *Franco-Gonzalez v. Holder*, No. CV 10-2211-DMG DTBX, 2013 WL 8116823, at *6 (C.D. Cal. May 3, 2013).  Indeed, the rule "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection," and while details "concerning time, persons, general subject matter, etc., *may* be appropriate if only a few items are withheld," such details may be unduly burdensome, "particularly if the items can be described by categories." *Id.* (quoting Fed.R.Civ.P. 26 advisory committee's notes to 1993 Amendments).  Where, as here, describing these documents by category will

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

JOINT STIPULATION

83764-00002/4495881.1

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

"describe the documents with sufficient detail so that the other party and the court can assess the claim of privilege," *Nestle USA, Inc. v. Crest Foods, Inc.*, 2019 WL 2619634 (C.D. Cal. May 14, 2019), such a log fully satisfies Rule 26.

Although Plaintiff asserts a variety of woes that will supposedly befall him if a document-by-document privilege log is not compelled, it is not clear what material information he believes such a log would provide that is not already reflected on AT&T's categorical one, other than perhaps the total number of documents withheld (which again, is information AT&T similarly lacks about Plaintiff's communications with his litigation counsel, since he did not log communications with litigation counsel at *any* time).  Plaintiff contends that the categorical privilege log entry precludes his ability to ascertain whether, for example, a particular email from Ms. Okcu was sent in multiple capacities.  But it is not clear how a more specific entry for that document alone, which adds only the date and recipient to the currently available information, would facilitate such a determination.  Plaintiff also argues that a "proper document-by-document" privilege log might show that "despite Plaintiff's multiple complaints in January 2018 that fraudulent activity had taken place on his account that had led to financial losses, [AT&T] did not in fact investigate Mr. Terpin's claims until after March 20, 2018."  But Plaintiff can already see the scope of privileged communications withheld prior to the demand letter; so whatever point he wishes to make about AT&T's activities between January 2018 and March 20, 2018 cannot be changed by an additional log of documents dated March 20, 2018 or later.

Finally, Plaintiff argues that "the absence of a document-by-document privilege obfuscates determining whether there may be other claims of privilege related to other documents called for in Plaintiff's requests (other than those relating to an internal investigation involving Ms. Okcu)."  But AT&T will produce by August 26 a document-by-document privilege log for all documents "other than those relating to an internal investigation involving Ms. Okcu."  The mere fact Plaintiff

JOINT STIPULATION

1  does not like the number or subject matter of communications on that log does not

2  mean there is anything else out there to which he is entitled.

### 3. The Court Should Not Impose the Extraordinary, Punitive Sanction of Privilege Waiver Based on AT&T's Understanding of Its Logging Obligations.

6  AT&T's positions with respect to the logging of attorney-client privileged

7  documents post-dispute are consistent with relevant legal and customary principles.

8  In addition, AT&T performed *more* logging than Plaintiff, by logging documents

9  with litigation counsel up to the receipt of the demand letter.  However, if the Court

10  disagrees with AT&T's positions, AT&T asks the Court to hold that Plaintiff's

11  alternative request for a finding of privilege waiver is baseless.

12  Courts only impose the harsh penalty of finding a waiver of all privilege

13  protection when a party flagrantly violates discovery rules. *See e.g.*, *USF Ins. Co. v.*

14  *Smith's Food and Drug Center, Inc.*, 2011 WL 2457655, *3 (D. Nev. 2011)

15  ("[W]aiver of the attorney-client privilege is a harsh sanction reserved generally for

16  unjustified, inexcusable, or bad faith conduct, and a waiver may be unnecessary

17  where other remedies are available."); *United States v. British Am. Tobacco*

18  *(Investments) Ltd.*, 387 F.3d 884, 885 (D.C. Cir. 2004) ("Waiver of privilege is a

19  serious sanction that a court should impose only if a party behaves unreasonably or

20  worse.")

21  In practice, courts routinely opt for a less punitive approach. *See Kelley v.*

22  *Crate & Barrel, Inc.*, 2008 WL 2233568, *3–4 (E.D. Cal. 2008) (Even though

23  the privilege log failed to give the opponent sufficient information to determine the

24  validity of the privilege claims, the court gave the plaintiff another opportunity to

25  provide the necessary information, but noted that failure to comply with this order

26  would result in the waiver of all privilege claims and additional sanctions); *PostX*

27  *Corp. v. Secure Data Motion*, No. C 02-04483 SI, 2004 WL 2623234, at *2 (N.D.

28  Cal. June 9, 2004) (ordering production of document-by-document [as opposed to

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

35                                    JOINT STIPULATION

categorical] privilege log of all pre- and post-Complaint documents that were withheld, ***without*** any discussion of privilege waiver, where plaintiff had argued such logging would be unduly burdensome but defendant provided "a convincing explanation of the benefit it will gain" from a detailed log that is not limited to a specific time frame).

While Plaintiff relies on *Burlington Northern* for the proposition that privilege log deficiencies, under some circumstances, "***may*** be viewed as a waiver of the privilege," that case explicitly rejected a per se waiver rule and held that determining waiver because of an inadequate privilege log should reflect a "**holistic reasonableness analysis**, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." 408 F.3d 1142, 1149 (9th Cir. 2005). There, the Ninth Circuit's holding that the district court's order compelling production of purportedly privileged documents was not "clearly erroneous" depended on the fact that even after producing a privilege log that failed to adequately identify documents, Burlington continued adding and removing based on fluctuating views of responsiveness that evinced gamesmanship. *Id.* That did not occur here. Instead, AT&T has steadfastly adhered to its position that communications with litigation counsel need not be logged since at least October 14, 2021. (Toohey Decl., ¶ 12.) Even if the Court ultimately disagrees with this position, there is no evidence that AT&T espoused it in anything but good faith. To the contrary, AT&T attempted to meet Plaintiff halfway by providing a categorical privilege log, even though it did not believe this was required. (Toohey Decl., ¶¶ 17–18.)

Finally, although Plaintiff takes issue with AT&T's "boilerplate" objections, AT&T has explicitly and repeatedly clarified the basis and scope of those objections in writing through meet and confer efforts. If Plaintiff has an issue with other

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1   objections, it should raise it directly; no challenge to any objection other than

2   privilege is before the Court.

3

4

5                                       Respectfully submitted,

6   DATED:  September 6, 2022        GREENBERG GLUSKER FIELDS
7                                    CLAMAN & MACHTINGER LLP

8

9                                    By: /s/ Timothy J. Toohey
                                         PIERCE O'DONNELL (SBN 081298)
10                                       TIMOTHY J. TOOHEY (SBN 140117)
                                         PAUL BLECHNER (SBN 159514)
11                                       Attorneys for Plaintiff MICHAEL
                                         TERPIN

12

13  DATED:  September 6, 2022        GIBSON, DUNN & CRUTCHER LLP

14

15                                   By: /s/ Ashley E. Johnson
                                         MARCELLUS A. MCRAE (SBN 140308)
16                                       ASHLEY E. JOHNSON, admitted pro hac vice
                                         Attorneys for Defendant AT&T Mobility LLC

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

37                                      JOINT STIPULATION