# EXHIBIT E

MARCELLUS MCRAE, SBN 140308
 mmcrae@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile:    213.229.7520

ASHLEY E. JOHNSON, admitted *pro hac vice*
 ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2949
Attorneys for Defendant AT&T MOBILITY LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL TERPIN,<br><br>        Plaintiff,<br>    v.<br>AT&T MOBILITY LLC; and DOES 1-25,<br><br>        Defendants. | CASE NO. 2:18-CV-06975-ODW-KS<br><br>**DEFENDANT AT&T MOBILITY LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE** |

**PROPOUNDING PARTY:**   Plaintiff Michael Terpin

**RESPONDING PARTY:**   Defendant AT&T Mobility, LLC

**SET NO:**   One

**NUMBERS**:   1-53

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 34-2 of the Local Rules of the Central District of California, Defendant AT&T Mobility LLC ("AT&T"), acting by and through its undersigned counsel, hereby serves its Objections and Responses to Plaintiff Michael Terpin's ("Terpin") First Set of Requests for Production of Documents to Defendant (the "Discovery Requests" or "Requests").

## OBJECTIONS APPLICABLE TO ALL REQUESTS

AT&T reserves the right to supplement its objections and responses to this or future discovery requests. AT&T's investigation is continuing and AT&T responds to the Requests to the extent that information is known to AT&T as of the date of these objections and responses. The following General Objections are continuing in nature and shall apply to each Request and each and every Instruction and Definition and are hereby incorporated into each response. Each individual response is made subject to, and without waiver of, the following General Objections:

1.      AT&T objects to the Requests to the extent they seek a full production of documents within 30 days of Terpin's service of the Requests. AT&T's collection and review efforts are continuing and AT&T will produce responsive, non-privileged documents on a rolling basis.

2.      AT&T objects to the Requests to the extent they lack a reasonable date limitation. Except where otherwise specified, AT&T will limit its responses and production to the time period of January 1, 2017 to the present.

3.      AT&T objects to the Requests to the extent that they are overbroad, call for disclosure of material or information beyond the scope of permissible discovery, seek to impose obligations greater than those required by the Federal Rules of Civil Procedure, seek information that is not relevant to any party's claims or defenses, and/or are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

4.      AT&T objects to the Requests to the extent that they do not identify the documents sought with reasonable particularity as required by Rule 34(b) of the Federal Rules of Civil Procedure.

5.      AT&T objects to the Requests to the extent they lack a reasonable temporal limitation. AT&T's response and production of documents will be limited to information from January 1, 2017 to the present except where expressly noted.

6.      AT&T's responses herein, and its production of documents and information, do not in any way constitute an adoption or acceptance of Terpin's purported Definitions of words or phrases or purported Instructions in the Requests. AT&T objects to the Definitions and Instructions to the extent they are unclear, ambiguous, overbroad, unduly burdensome, and/or require AT&T to undertake additional duties beyond its discovery obligations under the Federal Rules of Civil Procedure.

7.      AT&T objects to the Requests to the extent that they seek information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege, immunity or protection. AT&T does not intend to produce any privileged or protected information or documents, and any such production is inadvertent and should not be deemed a waiver of any privilege or protection from production. To the extent that, in the course of reviewing documents produced by AT&T, it appears that AT&T may have produced one or more documents which on their face appear to be privileged, AT&T requests that (a) its counsel be immediately notified of the production of the specific document(s) so that they may determine whether the document(s) was produced inadvertently and whether to request that the document be "clawed back;" and (b) the reviewing party not disclose or discuss the contents of any such document(s) with any other persons until the communication and determinations covered by (a) have been made.

8.      AT&T objects to each Request that seeks the production of information or material that is protected by the right to privacy.

9.     AT&T objects to the Requests to the extent that they are vague, ambiguous, overbroad, unreasonably burdensome, oppressive, or seek documents that are not relevant to the subject matter of this action, not material and necessary to the prosecution or defense of this action, not proportional to the needs of the case, and/or not reasonably calculated to lead to discovery of relevant evidence.

10.    AT&T objects to the Requests to the extent that they are vague, overly broad, and unduly burdensome in their temporal scope.

11.    AT&T objects to the Requests to the extent that they are repetitive or overlap with one another. Where a document is reasonably responsive to more than one Request, AT&T will produce the document only once.

12.    AT&T objects to each Request to the extent that it seeks the disclosure of confidential or proprietary information or documents. AT&T's responses herein shall not be deemed to be a waiver of AT&T's rights with respect to such information or documents. AT&T will produce documents only subject to the Protective Order entered in this case. Furthermore, to the extent that any documents are subject to a protective order in other litigation and/or confidentiality agreements with other parties, AT&T will produce those documents only subject to and in accordance with the terms of the protective order and confidentiality agreements and the rights of the parties thereunder.

13.    AT&T objects to each request to the extent it seeks the production of information or material regarding the accounts, claims, circumstances, identity, or any other characteristic of any AT&T customer other than Mr. Terpin.

14.    AT&T's responses are made without waiving, in any way: (a) the right to object on any basis permitted by law to the use of any information produced in any subsequent proceeding in this action or any other action; and (b) the right to object on any basis permitted by law to any other discovery request involving or relating to the subject matter of these responses.

15.    Nothing contained herein or provided in response to the Requests consists of, or should be construed as, an admission relating to the accuracy, relevance or existence or

non-existence of any alleged facts or information referenced in the Requests. AT&T's agreement to produce certain types or categories of documents is not an admission that any such documents actually exist or are in its possession. Without in any way waiving or limiting its objections, AT&T will attempt in good faith to provide responses to the Requests to the extent reasonably practicable at this stage of these proceedings and based on information known and reasonably available to AT&T.

16. AT&T objects to each request seeking "any" or "all" documents when all relevant facts can be obtained from fewer than "any" and "all" documents, or when AT&T could not identify "any" and "all" documents pursuant to a reasonable search. Subject to its objections, AT&T will perform a reasonable search for responsive, non-privileged documents from a reasonable set of custodians.

17. AT&T objects to the definition of "AUTHORIZED RETAILER" as overly broad, unduly burdensome, and not proportionate to the needs of this case to the extent it reaches *all* call centers, not merely those that are or can be involved in SIM swaps. AT&T will interpret "AUTHORIZED RETAILER" to refer to a retailer, contractor or third party currently or formerly authorized by AT&T to sell and exchange services and equipment from January 1, 2017 to present, which perform SIM swaps for AT&T customers.

18. AT&T objects to the definition of "RELATE" and "RELATING TO" as vague and ambiguous, and to the extent that the use of such terms, as defined, make any Request overly broad, unduly burdensome, and disproportionate to the needs of the case, and/or impose obligations that go beyond the scope of document discovery contemplated by the Arbitrator's Scheduling and Case Management Order dated August 24, 2020.

19. AT&T objects to the definition of "YOU" and "YOUR" as vague, ambiguous, overly broad, and unduly burdensome to the extent the terms are meant to include AT&T Mobility LLC's "respective parents, subsidiaries or affiliated companies (including AT&T, Inc.), its agents, employees, officers, directors, attorneys, accountants, investigators, and anyone acting or purporting to act on its behalf or under its direction," and "any of YOUR AUTHORIZED RETAILERS." AT&T will construe "YOU" and "YOUR" to refer to

AT&T Mobility LLC. AT&T further objects to the definition of "YOU" and "YOUR" to the extent that Plaintiff purports to use these terms to request materials or information that are outside of AT&T's possession, custody, and control, or to impose obligations that go beyond the scope of document discovery contemplated by the Federal Rules of Civil Procedure.

20. AT&T objects to the definition of the term "SIM SWAP(S)" as vague and ambiguous to the extent it incorporates a concept of "a hacker or another unauthorized individual." AT&T further objects that this term "SIM SWAP(S)" is contrary to the ordinary meaning of the term SIM SWAP, which does not incorporate a concept of authorization. Except where otherwise noted, AT&T will construe requests for information about "SIM SWAP(S)" as limited to information about SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers.

The foregoing General Objections are hereby incorporated into the responses set forth below as though fully stated therein.

## SPECIFIC RESPONSES AND OBJECTIONS TO
## PLAINTIFF'S DISCOVERY REQUESTS

1. **All DOCUMENTS and COMMUNICATIONS RELATING TO the JUNE 11, 2017 SIM SWAP, including, but not limited to, any report of any investigation YOU preformed regarding the JUNE 11, 2017 SIM SWAP, all DOCUMENTS and COMMUNICATIONS RELATING TO the identity and geographic location of the hackers who perpetrated the JUNE 11, 2017 SIM SWAP, all DOCUMENTS and COMMUNICATIONS RELATING TO YOUR personnel or the personnel of an AUTHORIZED RETAILER who were aware of or involved in the JUNE 11, 2017 SIM SWAP, and all DOCUMENTS and COMMUNICATIONS RELATING TO YOUR personnel who were contacted by PLAINTIFF RELATING TO the JUNE 11, 2017 SIM SWAP, including those attending the June 13, 2017 meeting in Puerto Rico referenced in the SAC.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's

response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request on overbreadth grounds in that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T or to documents sufficient to show a relevant fact. AT&T further objects to this Request to the extent it asks AT&T to provide information not within its possession, custody, or control, such as "COMMUNICATIONS RELATING TO . . . the personnel of an AUTHORIZED RETAILER." AT&T further objects to the Request to the extent it seeks all communications "RELATING TO YOUR personnel who were contacted by PLAINTIFF RELATING TO the June 13, 2017 SIM SWAP" as vague and ambiguous as to the scope of communications requested and to the extent that it seeks information outside AT&T's possession, custody, or control. AT&T further objects to this Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents in its possession, custody, or control to the extent they exist and can be identified pursuant to a reasonable search.

Gibson, Dunn & Crutcher LLP

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE, CASE NO. 2:18-cv-06975-ODW-KS

2.    **All DOCUMENTS and COMMUNICATIONS RELATING TO the JANUARY 7, 2018 SIM SWAP, including, but not limited to, any report of any investigation YOU preformed regarding the JANUARY 7, 2018 SIM SWAP, all DOCUMENTS and COMMUNICATIONS RELATING TO the identity and geographic location of the hackers who perpetrated the JANUARY 7, 2018 SIM SWAP, all DOCUMENTS and COMMUNICATIONS RELATING TO YOUR personnel or the personnel of an AUTHORIZED RETAILER who were aware of or involved in the JANUARY 7, 2018 SIM SWAP, and all DOCUMENTS and COMMUNICATIONS RELATING TO YOUR personnel who were contacted by PLAINTIFF RELATING TO the JANUARY 7, 2018 SIM SWAP.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request on overbreadth grounds in that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T or to documents sufficient to show a relevant fact. AT&T further objects to this Request to the extent it asks AT&T to provide information not within its possession, custody, or control, such as "COMMUNICATIONS RELATING TO . . . the personnel of an AUTHORIZED RETAILER." AT&T further objects to the Request to the extent it seeks all communications "RELATING TO YOUR personnel who were contacted by PLAINTIFF RELATING TO the JANUARY 7, 2018 SIM SWAP" as vague and ambiguous as to the scope of communications requested and to the extent that it seeks information outside AT&T's possession, custody, or control. AT&T further objects to this Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent

1  such Request is contrary to, or not allowed by, any law or policy. AT&T objects to the term

2  "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

3       Subject to and without waiving the foregoing General and Specific Objections,

4  AT&T will produce responsive, non-privileged documents in its possession, custody, or

5  control to the extent they exist and can be identified pursuant to a reasonable search.

6       **3.    All DOCUMENTS and COMMUNICATIONS RELATING TO the
          International Mobile Equipment Identity number (IMEI) of any
7          mobile telephone used in either the JUNE 11, 2017 SIM SWAP or the
          JANUARY 7, 2018 SIM SWAP, including the mobile telephone
8          belonging to PLAINTIFF or anyone perpetrating or involved in these
          SIM SWAPS.**

9

10      **RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome,

11  and not proportional to the needs of this case because it is unlimited as to time. AT&T's

12  response and production of documents will therefore be limited to information from

13  January 1, 2017 to the present. AT&T objects to this Request as overly broad, unduly

14  burdensome, and not proportional to the needs of this case to the extent it seeks production

15  of "ALL DOCUMENTS and COMMUNICATIONS RELATING TO" a broad topic,

16  rather than documents sufficient to show a relevant fact. AT&T objects to this Request as

17  overly broad, unduly burdensome, and not proportional to the needs of this case to the

18  extent it seeks information not relevant to the incidents at issue, including data about

19  activities unrelated to Terpin that may involve the device(s) allegedly used in the SIM swaps.

20  This Request could encompass materials that relate solely to other AT&T customers,

21  contain the protected CPNI of other AT&T customers, and concern incidents or

22  occurrences that involve entirely different facts and circumstances than any SIM swap at

23  issue in this case. Such documents have no relevance to or bearing upon the claims or

24  defenses in this case. Moreover, documents pertaining to other customers may contain

25  information that is protected against disclosure by applicable federal and state law and

26  authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222,

27  the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications

28  Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T further objects to this Request to the

extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce documents sufficient to show SIM swaps conducted with the particular IMEI used in the June 11, 2017 SIM swap and the January 7, 2018 SIM swap, redacted to remove personally identifiable information of other customers, to the extent such documents exist within AT&T's possession, custody, or control and can be identified pursuant to a reasonable search.

> ### 4. All DOCUMENTS and COMMUNICATIONS RELATING TO PLAINTIFF including, without limitation, all DOCUMENTS and COMMUNICATIONS RELATING TO the JUNE 11, 2017 SIM SWAP, the JANUARY 7, 2018 SIM SWAP and any other DOCUMENTS RELATING TO PLAINTIFF from 1990 to the present.

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it requests documents spanning a 27 year period before the incident at issue in this case took place, and extends to a time before SIM swaps were technologically possible, and before the SIM card had even been invented. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks production of "ALL DOCUMENTS and COMMUNICATIONS RELATING TO" a broad topic, rather than documents sufficient to show a relevant fact. AT&T further objects to this Request to the extent it asks AT&T to provide information not within its possession, custody, or control. AT&T further objects to this Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other

1   applicable privilege, protection, or immunity from disclosure. AT&T further objects to this

2   Request as overly broad, unduly burdensome, and not proportional to the needs of this case

3   to the extent it seeks information about Terpin that has no connection to the incidents at

4   issue in this case. AT&T objects to this Request to the extent it seeks information provided

5   by AT&T to any government or law enforcement entity to the extent such Request is

6   contrary to, or not allowed by, any law or policy.

7       Subject to and without waiving the foregoing General and Specific Objections,

8   AT&T will produce account notes for Terpin's account and Device Life Cycle tracking

9   documents that AT&T can identify in its possession, custody, or control pursuant to a

10  reasonable search.

11      **5.**      **All DOCUMENTS and COMMUNICATIONS RELATING TO the
            geographic location of PLAINTIFF at the time of JUNE 11, 2017 SIM
12          SWAP or the JANUARY 7, 2018 SIM SWAP.**

13      **RESPONSE**: AT&T objects that the term "geographic location" is vague and

14  ambiguous as to the scope of documents and communications sought. AT&T further

15  objects to this Request on the ground that it seeks "All" documents and communications

16  from unspecified persons and/or entities without limiting them to AT&T or any particular

17  persons within AT&T or to documents sufficient to show a relevant fact. AT&T further

18  objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to

19  the extent it broadly seeks all documents "RELATING TO the geographic location" given

20  the broad definition of RELATE and the ambiguity of the term "geographic location."

21  AT&T objects to this Request to the extent it seeks information provided by AT&T to any

22  government or law enforcement entity to the extent such Request is contrary to, or not

23  allowed by, any law or policy. AT&T further objects to this Request to the extent it seeks

24  materials protected by attorney-client and/or attorney work product privileges, and/or any

25  other applicable privilege, protection, or immunity from disclosure.

26      Subject to and without waiving the foregoing General and Specific Objections,

27  AT&T will produce responsive, non-privileged documents sufficient to show the

28  information in AT&T's possession, custody, or control about the location of Plaintiff's

Gibson, Dunn &
Crutcher LLP

phone at the time of the alleged SIM swaps, to the extent such documents exist and can be located pursuant to a reasonable search of appropriate custodians.

6. **All DOCUMENTS and COMMUNICATIONS RELATING TO any attempted SIM SWAP of PLAINTIFF other than the JUNE 11, 2017 SIM SWAP or JANUARY 7, 2018 SIM SWAP.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that the term "attempted SIM SWAP" is vague and ambiguous as to the scope of communications sought. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T or to documents sufficient to show a relevant fact. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO any attempted SIM SWAP" given the broad definition of RELATE and the ambiguity of the term "attempted SIM SWAP." AT&T further objects to this Request to the extent it asks AT&T to provide information not within its possession, custody, or control, to the extent it seeks to understand the actions of third-party criminals who "attempted" to engage in other SIM swaps. AT&T further objects to this Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce account notes for Terpin's account and Device Life Cycle tracking documents that AT&T can identify in its possession, custody, or control pursuant to a reasonable search.

Gibson, Dunn & Crutcher LLP

7.    **All DOCUMENTS RELATING TO YOUR COMMUNICATIONS with SPRING MOBILE or PRIME COMMUNICATIONS RELATING TO PLAINTIFF including, without limitation, all DOCUMENTS and COMMUNICATIONS RELATING TO the JUNE 11, 2017 SIM SWAP or the JANUARY 7, 2018 SIM SWAP.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that this request is overly broad, unduly burdensome, and seeks information not relevant to the incidents at issue, to the extent it requests all communications between AT&T and Spring Mobile or Prime Communications, including those that have nothing to do with unauthorized SIM swaps or Terpin. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks production of "ALL DOCUMENTS RELATING TO" a broad topic, rather than documents sufficient to show a relevant fact. AT&T also objects to this Request to the extent it seeks communications relating to other AT&T customers, containing the protected CPNI of other AT&T customers, and concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects that such information of third parties is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T further objects that the request seeks materials protected by the privacy right of third party customers. AT&T further objects to this Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects that the request seeks the production of information or material that constitutes confidential, proprietary and/or trade secret information. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Gibson, Dunn & Crutcher LLP

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce its service agreements with Spring Mobile and/or Prime Communications under the protective order in this case, subject to any obligations of confidentiality or non-disclosure.

**8.     All DOCUMENTS RELATING TO Jahmil Smith, including any background checks, information about criminal history, communications to Mr. Smith before or after the JANUARY 7, 2018 SIM SWAP, and any documentation RELATING TO Mr. Smith's involvement in any SIM SWAP.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request to the extent it asks AT&T to provide information not within its possession, custody, or control, such as the knowledge, employment status, or disciplinary history of the representative who implemented the SIM swap at issue, who was not an employee of AT&T, but was affiliated with an authorized retailer. AT&T further objects to this Request to the extent it incorporates a concept of whether a SIM swap is "authorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks production of "ALL DOCUMENTS RELATING TO" a broad topic, rather than documents sufficient to show a relevant fact. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including data about activities involving Mr. Smith that are unrelated to Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case.

Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T further objects to this Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents in its possession, custody, or control to the extent they exist and can be identified pursuant to a reasonable search.

**9.** **All DOCUMENTS and COMMUNICATIONS that are sufficient to identify any alleged SIM SWAP involving any of YOUR CUSTOMERS involving the alleged loss of CRYPTOCURRENCY, including DOCUMENTS RELATING TO YOUR CUSTOMERS, and any reports prepared by YOU relating to such SIM SWAPs, including internal reports and any reports to law enforcement agencies or the FCC.**

**RESPONSE**: AT&T objects to this Request as overly broad as to time period. AT&T's response and production of documents will be limited to information from January 1, 2017, to the present. AT&T objects to this Request to the extent it seeks information outside of AT&T's possession, custody, or control or not ascertainable by any reasonable method without undue burden, including which SIM swaps that have occurred in connection with the telephone numbers of AT&T customers were authorized by those customers and in which ones AT&T customers contend or believe that they have lost cryptocurrency. AT&T further objects to this Request as vague and ambiguous to the extent

1   it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks

2   sufficient knowledge to determine whether most or all SIM swaps that are claimed to have

3   occurred without authorization were in fact authorized by the customer. AT&T objects to

4   this Request to the extent it seeks information regarding the claims and activities of other

5   AT&T customers, containing the protected CPNI of other AT&T customers, and/or

6   concerning incidents or occurrences that have no relevance to or bearing upon the claims

7   or defenses in this case. Because Terpin has alleged that AT&T violated its duties to him

8   and his claims will rise or fall based on the evidence concerning his own interactions with

9   AT&T, information regarding SIM swaps experienced by other customers is not relevant

10  to any issue in this case, is not proportional to the needs of the case, and the burden of

11  identifying, collecting, and producing such information would far outweigh any likely

12  benefit of the disclosure of such information in this matter. AT&T further objects to the

13  extent that the requested information is protected against disclosure by applicable federal

14  and state law and authorities, including by not limited to the Federal Communications Act,

15  47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic

16  Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T further objects that

17  the Request seeks materials protected by the privacy right of third party customers. AT&T

18  further objects to this Request to the extent it seeks materials protected by attorney-client

19  and/or attorney work product privileges, and/or any other applicable privilege, protection,

20  or immunity from disclosure. AT&T further objects to this Request on the ground and to

21  the extent that it seeks information that is already in Terpin's possession and/or available

22  in the public domain. AT&T objects to this Request to the extent it seeks information

23  provided by AT&T to any government or law enforcement entity to the extent such Request

24  is contrary to, or not allowed by, any law or policy. AT&T objects to the terms "YOU" and

25  "YOUR" to the extent they purport to encompass any entity other than AT&T Mobility

26  LLC.

27

28

Gibson, Dunn &
Crutcher LLP

16

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce publicly filed complaints alleging the loss of cryptocurrency in connection with an unauthorized SIM swap.

**10.     All DOCUMENTS and COMMUNICATIONS RELATING TO any training that YOU have provided for YOUR personnel or personnel of AUTHORIZED RETAILERS RELATING TO SIM SWAPS, including training to prevent or hinder SIM SWAPS, training regarding responses by personnel to complaints or inquiries from YOUR CUSTOMERS RELATING TO SIM SWAPS and any guidelines or scripts RELATING TO how YOUR personnel or personnel of AUTHORIZED RETAILERS respond to requests for SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including because it addresses security measures or risks not relevant to any issue in this case. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, as well as seeking information outside of AT&T's possession, custody, or control, including to the extent its overly broad definition of "YOU" purports to ask AT&T about the training of personnel of authorized retailers, including training by those authorized retailers. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T or to documents sufficient to show a relevant fact. AT&T objects to

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE, CASE NO. 2:18-cv-06975-ODW-KS

this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to this Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce AT&T policies referencing SIM changes or training regarding the prevention of unauthorized access to customer accounts, to the extent such documents exist in AT&T's possession, custody, or control and can be located pursuant to a reasonable search of appropriate custodians.

**11.    All DOCUMENTS RELATING TO YOUR knowledge regarding SIM SWAPS that occurred to YOUR CUSTOMERS prior to 2018.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that the term "knowledge" is vague, ambiguous, and unintelligible as to the scope of documents sought. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T or documents sufficient to show a relevant fact. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO YOUR knowledge" given the broad definition of RELATE and the ambiguity of the term "knowledge." AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the

extent it seeks all documents relating to its knowledge, rather than documents sufficient to identify the scope of that knowledge. AT&T objects to this Request to the extent it incorporates an assumption regarding AT&T's "knowledge" without any evidentiary support. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will meet and confer with Terpin regarding whether there is an appropriate scope of this Request.

**12.   All DOCUMENTS and COMMUNICATIONS RELATING TO any analysis performed by YOU RELATING TO the reasons and the manner in which SIM SWAPS occur, including any internal reports prepared by YOU.**

**<u>RESPONSE</u>**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that the terms "analysis" and "internal reports" are vague and ambiguous as to the scope of communications sought. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T or sufficient to show a relevant fact. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING to any analysis" given the broad definition of RELATE and the ambiguity of the term "analysis." AT&T further objects to

this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to the Request to the extent it seeks discovery of the "reasons" that third parties decide to engage in criminal acts, knowledge of which is inherently outside of AT&T's possession, custody, and control. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents discussing unauthorized SIM swaps, to the extent such documents exist in AT&T's possession, custody, or control and can be located pursuant to a reasonable search of appropriate custodians.

**13.**   **All DOCUMENTS and COMMUNICATIONS RELATING TO any analysis performed by YOU RELATING TO the reasons and the manner in which YOUR AUTHORIZED RETAILERS respond to or are responsible for SIM SWAPS, including any internal reports prepared by YOU, and including any analysis RELATING TO changes to the manner in which YOUR AUTHORIZED RETAILERS respond to or are responsible for SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that the terms "analysis" and "internal

reports" are vague and ambiguous as to the scope of documents sought. AT&T further objects that the phrases "the reasons and the manner in which YOUR AUTHORIZED RETAILERS respond to or are responsible for SIM SWAPS" is vague and ambiguous, including to the extent it asks for the "reasons" that retailers respond to SIM swaps or the "manner" in which they are responsible for them. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T or to documents sufficient to show a relevant fact. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents that "RELATE to any analysis" given the broad definition of RELATE and the ambiguity of the term "analysis." AT&T further objects to the Request to the extent it seeks discovery of the "reasons" for the actions of third parties, knowledge of which is inherently outside of AT&T's possession, custody, and control. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the terms "YOU" and "YOUR" to the extent they purport to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents discussing unauthorized SIM SWAPS and AT&T's policies regarding when authorized retailers may perform SIM swaps,

to the extent such documents exist in AT&T's possession, custody, or control and can be located pursuant to a reasonable search of appropriate custodians.

> **14.** **All DOCUMENTS and COMMUNICATIONS RELATING TO claims that YOU have made against any AUTHORIZED RETAILER, including SPRING MOBILE or PRIME COMMUNICATIONS, RELATING TO any SIM SWAP, including any COMMUNICATIONS RELATING TO any reprimand of SPRING MOBILE or PRIME COMMUNICATIONS and any DOCUMENTS RELATING TO any payment by SPRING MOBILE or PRIME COMMUNICATIONS to ANY CUSTOMER RELATING TO any SIM SWAP.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including data about activities involving individuals that are unrelated to Terpin. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T objects to this request to the extent it relies on assumptions unsupported by any evidence. AT&T further objects to this Request

to the extent it asks AT&T to provide information not within its possession, custody, or control, such as "reprimand of" or "any payment by" Spring Mobile or Prime Communications. AT&T objects to the term "reprimand" as vague and ambiguous. AT&T further objects that the request seeks documents protected by attorney-client and/or attorney work product privileges and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T objects to the term "claims" as vague and ambiguous because it is not clear whether it seeks lawsuits, arbitration demands, or some more amorphous and informal term of "claim."

Subject to and without waiving the foregoing General and Specific Objections, AT&T will meet and confer with Terpin regarding whether there is an appropriate scope of this Request.

**15.    All DOCUMENTS RELATING TO payments or bribes received by any of YOUR or YOUR AUTHORIZED RETAILERS' employees, contractors or other personnel to participate in an unauthorized SIM SWAP.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that the phrase "unauthorized SIM swaps" is vague and ambiguous as to whose authorization is at issue or what constitutes authorization. AT&T will construe this phrase to mean SIM swaps that were performed in connection with the telephone numbers of AT&T customers without being authorized by those customers. AT&T further objects that the terms "payments" and "bribes" are vague and ambiguous as to the scope of communications sought. AT&T further objects to this

Gibson, Dunn & Crutcher LLP

Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent that it seeks "All" documents rather than documents sufficient to show a relevant fact. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents that "RELATING TO payments or bribes" given the broad definition of RELATE and the ambiguity of the terms "payments" and "bribes." AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including data about activities involving individuals that are unrelated to Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T further objects to this Request to the extent it asks AT&T to provide information not within its possession, custody, or control, such as "payments or bribes received by any . . . YOUR AUTHORIZED RETAILERS' employees, contractors or other personnel." AT&T further objects that the request seeks documents protected by attorney-client and/or attorney work product privileges and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or

policy. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged documents pertaining to the  SIM swaps on Mr. Terpin's account, to the extent such documents exist within AT&T's possession, custody, or control and can be located by a reasonable search of appropriate custodians.

**16.** **All DOCUMENTS RELATING TO Jarratt White and Robert Jack, including any reports prepared regarding their work for YOUR AUTHORIZED RETAILER. (See Exh. F to SAC, United States v. White.)**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this request as overly broad, unduly burdensome, not proportional to the needs of this case, and not seeking relevant information on the basis that Jack or White did not perform (and are not alleged to have performed) any SIM swaps on Mr. Terpin's account. AT&T further objects that the term "reports" is vague and ambiguous as to the scope of communications sought. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case on the ground that it seeks "All" documents rather than documents sufficient to show a relevant fact. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including data about activities involving individuals that are unrelated to Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing

Gibson, Dunn & Crutcher LLP

upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T objects to this request to the extent it relies on assumptions unsupported by any evidence and contrary to known facts. AT&T further objects to this Request to the extent it asks AT&T to provide information not within its possession, custody, or control, such as "reports prepared regarding their work for YOUR AUTHORIZED RETAILER." AT&T further objects that the request seeks documents protected by attorney-client and/or attorney work product privileges and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Based on the foregoing General and Specific Objections, AT&T will not produce documents responsive to this Request.

**17. All DOCUMENTS RELATING TO any discipline imposed on YOUR contractors or employees or the contractors or employees of YOUR AUTHORIZED RETAILER who participated in a SIM SWAP.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that the term "participated" is vague and ambiguous as to the scope of communications sought. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within

AT&T. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including data about activities involving individuals that are unrelated to Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T objects to this request to the extent it relies on assumptions unsupported by any evidence. AT&T further objects to this Request to the extent it asks AT&T to provide information not within its possession, custody, or control, such as "any discipline imposed on . . . the contractors or employees of YOUR AUTHORIZED RETAILER." AT&T further objects that the request seeks documents protected by attorney-client and/or attorney work product privileges and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T states that its reasonable investigation has not revealed any non-privileged documents responsive to this Request.

> **18.** **All DOCUMENTS RELATING TO any COMMUNICATION to or from Bill O'Hern, David S. Huntley, Johannes Jaskolski, Ed Gillespie, Scott Mair, Rasesh Patel, David Christopher or Robert Arno RELATING TO SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that this Request purports to direct AT&T to search the files of a list of high-level AT&T executives, even though most or all of those executives would not be appropriate custodians for this case. AT&T will conduct a reasonable search of appropriate custodians that would be expected to have reasonable, non-duplicative documents pertaining to the issues in this case. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO" any COMMUNICATION that, in turn "RELAT[ES] TO" SIM swaps given the broad definition of RELATING TO. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to the Request to the extent it seeks materials protected by the privacy rights of third parties. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including unrelated communications with customers that are not associated with Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and may concern incidents or occurrences that involve entirely different facts and circumstances

Gibson, Dunn &
Crutcher LLP

than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents discussing unauthorized SIM SWAPS, to the extent such documents exist in AT&T's possession and can be located pursuant to a reasonable search of appropriate custodians.

**19.    All DOCUMENTS that constitute any video presentations or interviews by any of YOUR officers, managers, directors or employees RELATING TO SIM SWAPS, including any presentations made by Johannes Jaskolski.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue. For example, this Request would encompass materials that relate solely

to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such materials have no relevance to or bearing upon the claims or defenses in this case. Moreover, materials pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T further objects that the Request seeks materials protected by the privacy right of third party customers. AT&T further objects that the Request seeks documents protected by attorney-client and/or attorney work product privileges and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T further objects to this Request as unduly burdensome to the extent it seeks to compel AT&T to search for and locate information that is already available to Terpin publicly.

Subject to and without waiving its General and Specific Objections, AT&T states that, based upon a reasonable search, no responsive documents exist.

**20.    All DOCUMENTS RELATING TO any reports from YOUR senior management including YOUR Chief Security Officer, Chief Privacy Officer, or Chief Compliance Officer to the AT&T, Inc. Board of Directors or any committee of the AT&T, Inc. Board of Directors, including the Audit Committee, RELATING TO SIM SWAPS or security measures to prevent SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that the terms "reports" and "measures" are vague, ambiguous, and unintelligible as to the scope of documents sought. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and

Gibson, Dunn &
Crutcher LLP

ambiguous to the extent it broadly seeks all documents "RELATING TO any reports" given the broad definition of RELATE and the ambiguity of the terms "measures" and "reports." AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks all documents relating to the requested reports, rather than the reports themselves. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T states that its investigation has not located any documents provided to the committee of the AT&T Inc. Board of Directors discussing unauthorized SIM swaps.

**21.   All minutes of YOUR Board of Directors or any committee thereof RELATING TO SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to the term "committee" as vague and ambiguous; AT&T will construe the Request to seek minutes of meetings of committees of the Board of Directors. AT&T objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents

"RELATING TO" unauthorized SIM swaps given the broad definition of RELATING TO. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue. For example, this Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T further objects that the Request seeks materials protected by the privacy rights of third party customers. AT&T further objects that the Request seeks documents protected by attorney-client and/or attorney work product privileges and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T states that its investigation has not located any non-privileged, responsive documents that discuss unauthorized SIM swaps.

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE, CASE NO. 2:18-cv-06975-ODW-KS

22. **All DOCUMENTS RELATING TO any COMMUNICATIONS from YOU to YOUR AUTHORIZED RETAILERS RELATING TO SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that this request is overly broad, unduly burdensome, and seeks information not relevant to the incidents at issue, to the extent it requests all communications between AT&T and Spring Mobile or Prime Communications that talk about unauthorized SIM swaps at all, even if they have nothing to do with Terpin. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T also objects to this Request to the extent it seeks communications relating to other AT&T customers, containing the protected CPNI of other AT&T customers, and concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects that such information of third parties is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T further objects that the request seeks materials protected by the privacy right of third party customers. AT&T further objects that the request seeks the production of information or material that constitutes confidential, proprietary and/or trade secret information. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOU" or "YOUR" to the extent they purport to encompass any entity other than AT&T Mobility LLC.

Gibson, Dunn & Crutcher LLP

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE, CASE NO. 2:18-cv-06975-ODW-KS

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce its service agreement with Spring Mobile and Prime Communications, subject to any obligations of confidentiality or non-disclosure.

**23.   All DOCUMENTS RELATING TO any COMMUNICATIONS from YOU to the FBI, the REACT task force or any law enforcement agency or bureau RELATING TO SIM SWAPS.**

<u>**RESPONSE**</u>: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue that are not associated with Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq*. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates assumptions about AT&T's policies or other matters without any evidentiary support. AT&T further objects to the Request to the extent it seeks materials protected by attorney-

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE, CASE NO. 2:18-cv-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

1   client and/or attorney work product privileges, and/or any other applicable privilege,

2   protection, or immunity from disclosure. AT&T objects to the term "YOU" to the extent

3   it purports to encompass any entity other than AT&T Mobility LLC.

4       Subject to and without waiving the foregoing General and Specific Objections,

5   AT&T will produce documents provided to or received from any law enforcement agency

6   discussing the alleged SIM swaps experienced by Terpin, to the extent such documents exist

7   within AT&T's possession, custody, or control, can be located by a reasonable search of

8   appropriate custodians, and may be disclosed consistent with applicable government or law

9   enforcement laws, policies, or orders.

10
11       **24.**    **All DOCUMENTS RELATING TO any subpoena to YOU from any law enforcement agency, including the FBI, the REACT task force or any other law enforcement agency, RELATING TO SIM SWAPS.**

12   **<u>RESPONSE</u>**: AT&T objects to this Request as overly broad, unduly burdensome,

13   and not proportional to the needs of this case because it is unlimited as to time. AT&T's

14   response and production of documents will therefore be limited to information from

15   January 1, 2017 to the present. AT&T further objects to this Request as vague and

16   ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized,"

17   because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that

18   are claimed to have occurred without authorization were in fact authorized by the customer.

19   AT&T further objects to this Request as overly broad, unduly burdensome, and not

20   proportional to the needs of this case to the extent it seeks information not relevant to the

21   incidents at issue that are not associated with Terpin. This Request would encompass

22   materials that relate solely to other AT&T customers, contain the protected CPNI of other

23   AT&T customers, and concern incidents or occurrences that involve entirely different facts

24   and circumstances than any SIM swap at issue in this case. Such documents have no

25   relevance to or bearing upon the claims or defenses in this case. Moreover, documents

26   pertaining to other customers may contain information that is protected against disclosure

27   by applicable federal and state law and authorities, including by not limited to the Federal

28   Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707,

and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates assumptions about AT&T's policies or other matters without any evidentiary support. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce documents provided to or received from REACT or any other law enforcement agency discussing the alleged SIM swaps experienced by Terpin, to the extent such documents exist within AT&T's possession, custody, or control, can be located by a reasonable search of appropriate custodians, and are not prohibited by disclosure under any government or law enforcement law or policy.

**25.    All DOCUMENTS RELATING TO any COMMUNICATIONS from YOU to any cryptocurrency exchange RELATING TO SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO any COMMUNICATIONS" rather than documents sufficient to show a relevant fact. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the

Gibson, Dunn &
Crutcher LLP

1   needs of this case to the extent it seeks information not relevant to the incidents at issue

2   that are not associated with Terpin. This Request would encompass materials that relate

3   solely to other AT&T customers, contain the protected CPNI of other AT&T customers,

4   and concern incidents or occurrences that involve entirely different facts and circumstances

5   than any SIM swap at issue in this case. Such documents have no relevance to or bearing

6   upon the claims or defenses in this case. Moreover, documents pertaining to other

7   customers may contain information that is protected against disclosure by applicable federal

8   and state law and authorities, including by not limited to the Federal Communications Act,

9   47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic

10  Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T objects to this

11  Request to the extent it seeks information provided by AT&T to any government or law

12  enforcement entity to the extent such Request is contrary to, or not allowed by, any law or

13  policy. AT&T objects to this Request to the extent it incorporates assumptions about

14  AT&T's policies or other matters without any evidentiary support. AT&T further objects

15  to the Request to the extent it seeks materials protected by attorney-client and/or attorney

16  work product privileges, and/or any other applicable privilege, protection, or immunity

17  from disclosure. AT&T objects to the term "YOU" to the extent it purports to encompass

18  any entity other than AT&T Mobility LLC.

19      Subject to and without waiving the foregoing General and Specific Objections,

20  AT&T will produce communications between it and any cryptocurrency exchange

21  discussing the alleged SIM swaps experienced by Terpin, to the extent such documents exist

22  within AT&T's possession, custody, or control and can be located by a reasonable search

23  of appropriate custodians.

24      **26.   All DOCUMENTS RELATING TO any COMMUNICATION
        between YOU and the FCC RELATING TO any SIM SWAP or CPNI**

25      **RELATING TO any SIM SWAP, including any reports made to the
        FCC regarding CPNI as defined in the PRETEXTING ORDER or**

26      **pursuant to the CONSENT DECREE from 2015 to the present.**

27  **RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome,

28

and not proportional to the needs of this case as to time period. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO" the subject communications about SIM swaps, given the broad definition of RELATING TO. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T. AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue. For example, this Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks reports made to the FCC pursuant to the defined "PRETEXTING ORDER" or pursuant to the "CONSENT DECREE." The PRETEXTING ORDER and the CONSENT DECREE do not address reporting of SIM SWAPS specifically. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T further objects that the Request seeks materials protected by the privacy rights of third party customers. AT&T further objects to

the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce communications between it and FCC relating to the SIM swaps experienced by Terpin, to the extent such documents exist within AT&T's possession, custody, or control and can be located by a reasonable search of appropriate custodians.

**27.** **All DOCUMENTS RELATING TO training of YOUR employees or the employees of an AUTHORIZED RETAILER RELATING TO compliance with the CONSENT DECREE.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue to the extent it seeks documents related to the "CONSENT DECREE." The CONSENT DECREE does not address the issue of SIM SWAPS specifically. AT&T objects to this Request to the extent it seeks documents outside of its possession, custody, or control, including documents relating to training performed for the employees of third-party retailers. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case on the ground that it seeks "All" documents and communications from unspecified persons and/or entities rather than documents sufficient to show the identified training. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable

Gibson, Dunn & Crutcher LLP

privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged AT&T policies referencing SIM changes or training regarding the prevention of unauthorized access to customer accounts, to the extent such documents exist in AT&T's possession and can be located pursuant to a reasonable search of appropriate custodians.

**28. All DOCUMENTS that constitute pleadings, discovery responses, or deposition transcripts for any SIM SWAP CASE involving CRYPTOCURRENCY.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects to this Request to the extent it seeks information outside of AT&T's possession, custody, or control. As drafted this Request is not limited to litigation concerning any particular parties. AT&T will interpret this Request to be limited to cases to which AT&T Mobility LLC is a party. AT&T further objects to Terpin's attempt through this Request to incorporate all discovery and pleadings from any other case anywhere in the world into the record of this case. This case should be litigated on the facts relevant to the issues in this case, not by compiling the entire litigation or arbitration records of *other* cases involving *other* customers and *other* facts. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. Because Terpin has alleged that AT&T violated its duties to him and his claims will rise or fall based on the evidence concerning his own interactions with AT&T, information regarding SIM swaps experienced by other customers is not relevant to any issue in this case, is not proportional to the needs of the case, and the burden of identifying, collecting, and producing such information would far outweigh any likely

Gibson, Dunn & Crutcher LLP

benefit of the disclosure of such information in this matter. AT&T further objects to the extent that the requested information is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects to this Request on the ground and to the extent that it seeks information that is already in Terpin's possession and/or available in the public domain. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy.

Subject to and without waiving the foregoing General and Specific Objections, AT&T states that it is currently aware of the following lawsuits of public record that have involved allegations of unauthorized SIM changes by plaintiffs alleging they are customers of AT&T and that they suffered losses of funds in cryptocurrency accounts:

- *Drzal v. Spring Communications Holding, LLC et al.*, No. D-1-GN-19007003 (Travis Co. Ct., Texas)
- *Ross v. AT&T Mobility LLC*, No. 3:19-cv-6669 (N.D. Cal.)
- *Sutton v. AT&T Corporation,* No. 2020-CV-46788 (Coffee Co. Ct., Tennessee)
- *Shapiro v. AT&T Mobility LLC*, No. 2:19-cv-8972 (C.D. Cal.)
- *Williams v. AT&T Mobility LLC*, No. 5:19-cv-0475 (E.D.N.C.)
- *Chen v. AT and T Mobility LLC et al.*, 2:20-cv-07897 (C.D. Cal.)
- *Keele v. AT&T Inc., AT&T Mobility LLC*, No. 2SC-21-0148 (Williamson Co. Justice Court, Texas)
- *Turso v. Prime Communications, Inc., AT&T Wireless Servs.*, No. 1:21-cv-10557-PBS (D. Mass.)

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE, CASE NO. 2:18-cv-06975-ODW-KS

- *Levin v. AT&T Mobility LLC*, No. 1:21-cv-02641 (N.D. Ill.)

- *Hudson v. AT&T Mobility LLC* (S.C. Court of Common Pleas)

**29.** **All DOCUMENTS RELATING TO any civil or criminal complaint against any of YOUR employees or the employees of an AUTHORIZED RETAILER RELATING TO SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T objects to this Request to the extent it seeks information outside of AT&T's possession, custody, or control. As drafted this Request is not limited to litigation concerning any particular parties. AT&T will interpret this Request to be limited to cases to which AT&T Mobility, LLC is a party. AT&T further objects to Terpin's attempt through this Request to incorporate the allegations from every other case about SIM swaps anywhere in the world into the record of this case. This case should be litigated on the facts relevant to the issues in this case, not by compiling the entire litigation or arbitration records of *other* cases involving *other* customers and *other* facts. AT&T objects to this Request to the extent it seeks information regarding the claims and activities of other AT&T customers, containing the protected CPNI of other AT&T customers, and/or concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. Because Terpin has alleged that AT&T violated its duties to him and his claims will rise or fall based on the evidence concerning his own interactions with AT&T, information regarding SIM swaps experienced by other customers is not relevant to any issue in this case, is not proportional to the needs of the case, and the burden of identifying, collecting, and producing such information would far outweigh any likely benefit of the disclosure of such information in this matter. AT&T further objects to the extent that the requested

Gibson, Dunn & Crutcher LLP

information is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T further objects that the Request seeks materials protected by the privacy right of third party customers. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects to this Request on the ground and to the extent that it seeks information that is already in Terpin's possession and/or available in the public domain. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will not produce documents responsive to this Request.

> **30.   All DOCUMENTS and COMMUNICATIONS RELATING TO any security measures that YOU have contemplated or adopted from 2000 to the present RELATING TO SIM SWAPS, including any security measures RELATING TO YOUR AUTHORIZED RETAILERS and any analysis by YOU of the effectiveness of existing or proposed security measures RELATING TO SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case on the ground that it seeks "All" documents and communications relating to a broad topic, rather than documents sufficient to show a relevant fact. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or

all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO" SIM swaps, AUTHORIZED RETAILERS, and security measures given the broad definition of RELATING TO. AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue. AT&T also objects that the Request is overly broad, unduly burdensome, vague and ambiguous as to the terms "contemplated" and "measures." AT&T further objects to the Request to the extent it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents to the extent such documents exist in AT&T's possession, custody, or control and can be located pursuant to a reasonable search of appropriate custodians.

> **31.** **All DOCUMENTS RELATING TO the cost of the security measures that YOU have implemented to prevent SIM SWAPS from 2008 to the present.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case as to time period. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that the terms "cost" and "measures" are vague and ambiguous as to the scope of documents sought. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons

and/or entities without limiting them to AT&T or any particular persons within AT&T. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents that "RELATE to the cost" given the broad definition of RELATE and the ambiguity of the term "measures." AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks all documents relating to costs of security measures, rather than documents sufficient to identify those measures or pertaining to a relevant procedure or process. AT&T also objects to this Request to the extent it seeks documents concerning patents issued to AT&T as overly broad because it seeks irrelevant materials having no bearing on the claims or defenses in this matter. AT&T further objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce non-privileged documents sufficient to show the cost of security measures to address unauthorized SIM swaps, to the extent such documents exist and can be located pursuant to a reasonable search of appropriate custodians.

32. **All DOCUMENTS RELATING TO YOUR COMMUNICATIONS with YOUR CUSTOMERS RELATING TO the risks of SIM SWAPS for YOUR CUSTOMERS who have CRYPTOCURRENCY holdings, including security measures that the CUSTOMERS should consider implementing on their accounts.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T objects to the term "measures" as vague and ambiguous. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case on the ground that it seeks "All" documents relating to a broad topic, rather than documents sufficient to show a disputed fact. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including unrelated communications with customers that are not associated with Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and may concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic

Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates assumptions about AT&T's policies or other matters without any evidentiary support. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive documents from its Cyber Aware Blog addressing SIM swaps.

> **33.** All **DOCUMENTS RELATING TO YOUR COMMUNICATIONS** with **YOUR CUSTOMERS RELATING TO** the security measures that **YOUR CUSTOMERS** should implement or consider implementing on their accounts to prevent **SIM SWAPS**, including, but not limited to, marketing materials or **COMMUNICATIONS RELATING TO** the **EXTRA SECURITY.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to the terms "marketing materials" and "measures" as vague and ambiguous. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case on the ground that it seeks "All" documents relating to a broad topic rather than

Gibson, Dunn & Crutcher LLP

documents sufficient to show a relevant fact. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue, including unrelated communications with customers that are not associated with Terpin. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and may concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T objects to this Request to the extent it incorporates assumptions about AT&T's policies or other matters without any evidentiary support. AT&T further objects to the Request that it seeks materials protected by the privacy rights of third parties. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive documents from its Cyber Aware Blog addressing SIM swaps.

**34.** **All DOCUMENTS RELATING TO YOUR policies and procedures RELATING TO the ability of YOUR employees or contractors or the employees or contractors of YOUR AUTHORIZED RETAILERS to override the requirement that a CUSTOMER with EXTRA SECURITY enter or provide a six digit code to make changes to a wireless account, including swapping the SIM for the account.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's

response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue. AT&T further objects to the Request to the extent it seeks materials protected by the privacy rights of third parties. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case on the ground that it seeks "All" documents relating to a broad topic rather than documents sufficient to show a relevant fact. AT&T objects to the terms "ability" and "override" as vague and ambiguous. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce AT&T policies referencing SIM changes or training regarding the prevention of unauthorized access to customer accounts, to the extent such documents exist in AT&T's possession and can be located pursuant to a reasonable search of appropriate custodians.

**35.** **All DOCUMENTS RELATING TO any procedure that you have considered or implemented from 1990 to the present that would implement a lockout on the SIM of a customer under certain circumstances.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it requests documents extending over 27 years before the incidents at issue in this case took place, and extends to a time before SIM swaps were technologically possible, and before the SIM card had even been invented. AT&T's response and production of documents will therefore be limited to information

from January 1, 2017 to the present. AT&T objects to the terms "lockout" and "certain circumstances" as vague and ambiguous. AT&T objects to this request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks all documents showing any of AT&T's theorized procedures, rather than documents sufficient to identify those procedures. AT&T further objects to the Request as vague and ambiguous and unduly burdensome to the extent it requests that AT&T locate documents addressing procedures that AT&T did not adopt, rather than documents pertaining to a relevant procedure or process. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents that discuss security measures for unauthorized SIM swaps, to the extent such documents exist within AT&T's possession, custody, or control and can be located by a reasonable search of appropriate custodians.

**36.** **All DOCUMENTS RELATING TO YOUR promotion of two-factor authentication (also known as 2FA) as a means of securing YOUR CUSTOMERS' passwords. See, e.g., https://about.att.com/pages/cyberaware/ni/blog/2fa**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from the relevant time period of January 1, 2017 to the present. AT&T objects that the terms "promotion" is vague and ambiguous as to the scope of documents sought. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case on the ground that it seeks "All" documents relating to a broad topic rather than documents sufficient to show a relevant fact. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it

broadly seeks all documents "RELATING TO YOUR promotion" given the broad definition of RELATE and the ambiguity of the term "promotion." AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not addressing SIM swaps and not relevant to the incidents at issue. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects to this Request on the ground and to the extent that it seeks information that is already in Terpin's possession and/or available in the public domain. AT&T objects to this Request to the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents, to the extent such documents exist within AT&T's possession, custody, or control, address the context of SIM swaps, and can be located by a reasonable search of appropriate custodians.

**37.   All DOCUMENTS RELATING TO any analysis of the effectiveness (or lack thereof) of two-factor authentication (also known as 2FA) as a means of securing YOUR CUSTOMERS' accounts or passwords.**

**<u>RESPONSE</u>**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that the terms "analysis" and "effectiveness" are vague and ambiguous as to the scope of documents sought. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO any analysis of the effectiveness" given the broad definition of RELATE

Gibson, Dunn & Crutcher LLP

and the ambiguity of the terms "analysis" and "effectiveness." AT&T also objects that the Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information not relevant to the incidents at issue. AT&T further objects to the Request to the extent it seeks materials protected by the privacy rights of third parties. AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents, to the extent such documents exist within AT&T's possession, custody, or control, address the context of SIM swaps, and can be located by a reasonable search of appropriate custodians.

**38.** **All DOCUMENTS RELATING TO YOUR recommendation of ZENKEY as an "additional authentication measure" to prevent SIM SWAPS, including any analysis regarding the effectiveness of ZENKEY. See https://about.att.com/pages/cyberaware/ni/blog/sim_swap**

<u>**RESPONSE**</u>: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Terpin or any customer at the time of the

alleged SIM swap. AT&T further objects that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks documents relating to uses of ZenKey other than the prevention of unauthorized SIM swaps. AT&T further objects that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case in that ZenKey is not the subject of any allegation in the SAC. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any tangential relevance Terpin could theorize for ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Terpin can obtain any relevant information regarding ZenKey via public information easily accessible to Terpin, including from AT&T's website. AT&T further objects that AT&T's intentions regarding the ZenKey App have no relevance to Terpin's claim that his own SIM swap should have or could have been prevented. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T Will produce responsive, non-privileged documents addressing the use of ZenKey for unauthorized SIM swaps, to the extent such documents exist in AT&T's possession, custody, or control and can be located by a reasonable search of appropriate custodians.

**39.   All DOCUMENTS RELATING TO YOUR investment or financial support of ZENKEY.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from

January 1, 2017 to the present. AT&T further objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Terpin or any customer at the time of the alleged SIM swap. AT&T further objects that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks documents relating to uses of ZenKey other than the prevention of unauthorized SIM swaps. AT&T further objects that its "investment or financial support of ZenKey" is vague, overbroad, and not relevant or proportional to any issue in this case in that ZenKey is not the subject of any allegation in the SAC. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any strained relevance Terpin could theorize for the financial aspects of ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Terpin can obtain any relevant information regarding ZenKey via public information easily accessible to Terpin, including from AT&T's website. AT&T further objects that the financial details of AT&T's connection with ZenKey have no relevance to Terpin's claim that his own SIM swap should have or could have been prevented. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks all documents "relating to" a broad topic rather than documents sufficient to show a relevant fact. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Based on the foregoing objections, AT&T will not produce documents responsive to this Request.

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE, CASE NO. 2:18-cv-06975-ODW-KS

**40.**   **All DOCUMENTS RELATING TO** any participation by **YOUR** officers, managers, directors or employees in **ZENKEY.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that documents regarding ZenKey are not relevant to this litigation because ZenKey was not used by or available to Terpin or any customer at the time of the alleged SIM swap. AT&T further objects that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks documents relating to uses of ZenKey other than the prevention of unauthorized SIM swaps. AT&T further objects that the details of participation by its "officers, managers, directors or employees" in ZenKey is vague, overbroad, and not relevant or proportional to any issue in this case in that ZenKey is not the subject of any allegation in the SAC. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any strained relevance Terpin could theorize for the staffing of ZenKey is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Terpin can obtain any relevant information regarding ZenKey via public information easily accessible to Terpin, including from AT&T's website. AT&T further objects that the details of AT&T's connection with ZenKey have no relevance to Terpin's claim that his own SIM swap should have or could have been prevented. AT&T further objects that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks all documents "relating to" a broad topic rather than documents sufficient to show a relevant fact. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Based on the foregoing objections, AT&T will not produce documents responsive to this Request.

**41.    All DOCUMENTS RELATING TO YOUR participation in "Project Verify" or the Mobile Authentication Task Force. See, e.g., https://www.eweek.com/security/mobile-carriers-join-together-for-project-verify-authentication-effort#:~:text=The%20Mobile%20Authentication%20Taskforce%20was,12%2D14.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that documents regarding ZenKey, a product related to Project Verify and the Mobile Authentication Task Force, are not relevant to this litigation because ZenKey was not used by or available to Terpin or any customer at the time of the alleged SIM swap. AT&T further objects that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks documents relating to uses of ZenKey other than the prevention of unauthorized SIM swaps. AT&T further objects that the details of its participation in the Mobile Authentication Task Force is not relevant or proportional to any issue in this case in that any such participation is not the subject of any allegation in the SAC. AT&T further objects that the Request is unduly burdensome and invasive of confidential, proprietary, trade secret, and/or sensitive financial information of third parties that AT&T is prohibited from disclosing and that has no bearing on this litigation. AT&T further objects that this Request is not proportionate to the needs of this case because any strained relevance Terpin could theorize for probing AT&T's involvement in "Project Verify" or the Mobile Authentication Task Force is outweighed by the burden of navigating these complex confidentiality issues. AT&T further objects that Terpin can obtain any relevant information regarding ZenKey via public information easily accessible to Terpin, including

Gibson, Dunn & Crutcher LLP

from AT&T's website. AT&T further objects that the details of AT&T's connection with ZenKey have no relevance to Terpin's claim that his own SIM swap should have or could have been prevented. AT&T further objects that this Request is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks all documents "relating to" a broad topic rather than documents sufficient to show a relevant fact. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Based on the foregoing objections, AT&T will not produce documents responsive to this Request.

**42.** **All DOCUMENTS RELATING TO YOUR policy of requiring photo identification from customers in YOUR stores or the stores of YOUR AUTHORIZED RETAILERS or other authentication to access or make changes to YOUR CUSTOMERS' wireless accounts.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects to this request as vague and ambiguous with respect to the term "authentication." AT&T will construe this request as seeking documents sufficient to show AT&T's policy and processes for performing a SIM swap as of the dates of the incidents. AT&T further objects that this Request seeks information outside of AT&T's possession, custody, or control to the extent it seeks information regarding the processes employed by authorized retailers and their employees or representatives. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks all documents relating to a broad topic rather than documents sufficient to show a relevant fact. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or

Gibson, Dunn & Crutcher LLP

1   attorney work product privileges, and/or any other applicable privilege, protection, or

2   immunity from disclosure.

3          Subject to and without waiving the foregoing General and Specific Objections,

4   AT&T will produce AT&T policies referencing SIM changes and the prevention of

5   unauthorized access to customer accounts, to the extent such documents exist in AT&T's

6   possession, custody, or control and can be located pursuant to a reasonable search of

7   appropriate custodians.

8          **43.   All DOCUMENTS RELATING TO YOUR decision not to require**
          **sending of text messages to CUSTOMERS to authenticate requests for**
9          **SIM SWAPS.**

10          **RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome,

11   and not proportional to the needs of this case because it is unlimited as to time. AT&T's

12   response and production of documents will therefore be limited to information from

13   January 1, 2017 to the present. AT&T further objects to this Request as vague and

14   ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized,"

15   because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that

16   are claimed to have occurred without authorization were in fact authorized by the customer.

17   AT&T further objects that the term "SIM SWAPS," as defined by the Requests, does not

18   make sense in the context of this Request because AT&T would not have knowledge about

19   when a customer was seeking to authenticate himself or herself in order to perform a "SIM

20   SWAP," as defined by the Requests, since a "SIM SWAP" is defined to be unauthorized.

21   AT&T will construe "SIM SWAP" for purposes of this Request to include SIM swaps

22   requested by customers, regardless of whether those SIM swaps are authorized. AT&T

23   objects to this request as overly broad, unduly burdensome, and not proportional to the

24   needs of this case to the extent it seeks all documents relating to any decision by AT&T,

25   rather than documents sufficient to identify AT&T's decision. AT&T further objects to the

26   Request as vague and ambiguous and unduly burdensome to the extent it requests that

27   AT&T locate documents addressing policies that AT&T allegedly did not adopt, rather than

28   documents pertaining to a relevant procedure or process. AT&T objects to this Request to

the extent it incorporates an assumption about AT&T's policies or other matters without any evidentiary support. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents relating to the authentication it requires before a SIM swap may be performed, to the extent such documents exist within AT&T's possession, custody, or control and can be located by a reasonable search of appropriate custodians.

> **44.** **All DOCUMENTS RELATING TO YOUR tracking of the IMEI number of the phone involved in a SIM SWAP, including any analysis of whether a phone was used in multiple SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects that the terms "tracking" and "analysis" are vague and ambiguous as to the scope of communications sought. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents that "RELATE TO YOUR tracking" given the broad definition of RELATE and the ambiguity of the terms "tracking"

and "analysis." AT&T further objects to the Request to the extent it seeks materials protected by the privacy rights of third parties. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents regarding the SIM swaps allegedly experienced by Terpin, to the extent such documents exist within its possession, custody, or control and can be located by a reasonable search.

**45.    All DOCUMENTS RELATING TO YOUR tracking of the geographic location of a phone involved in a SIM SWAP or the geographic location of YOUR CUSTOMERS, including any analysis of whether a phone was used in multiple SIM SWAPS or whether a phone was not in the same geographic location as YOUR CUSTOMER.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from

January 1, 2017 to the present. AT&T further objects that the terms "tracking" and "analysis" are vague and ambiguous as to the scope of communications sought. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that are claimed to have occurred without authorization were in fact authorized by the customer. AT&T further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case on the ground that it seeks "All" documents relating to a broad topic rather than documents sufficient to show a relevant fact. AT&T further objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents that "RELATE TO YOUR tracking" given the broad definition of RELATE and the ambiguity of the terms "tracking" and "analysis." AT&T further objects to the Request to the extent it seeks materials protected by the privacy rights of third parties. This Request would encompass materials that relate solely to other AT&T customers, contain the protected CPNI of other AT&T customers, and concern incidents or occurrences that involve entirely different facts and circumstances than any SIM swap at issue in this case. Such documents have no relevance to or bearing upon the claims or defenses in this case. Moreover, documents pertaining to other customers may contain information that is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.* AT&T objects to this Request to the extent it seeks information provided by AT&T to any government or law enforcement entity to the extent such Request is contrary to, or not allowed by, any law or policy. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC.

1   Subject to and without waiving the foregoing General and Specific Objections,

2   AT&T will produce responsive, non-privileged documents reflecting location data of

3   Terpin's wireless device on the dates of the SIM swaps, to the extent such documents exist

4   within its possession, custody, or control and can be located by a reasonable search.

5   **46.    All DOCUMENTS RELATING TO the organization of YOUR fraud department, including scheduling and staffing of the fraud department on Saturdays, Sundays and holidays.**

6

7   **RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome,

8   and not proportional to the needs of this case because it is unlimited as to time. AT&T's

9   response and production of documents will therefore be limited to information from

10  January 1, 2017 to the present. AT&T further objects that the terms "organization" and

11  "fraud department" are vague and ambiguous as to the scope of communications sought.

12  AT&T further objects to this Request as overly broad, unduly burdensome, and not

13  proportional to the needs of this case on the ground that it seeks "All" documents relating

14  to the organization of an entire department rather than documents sufficient to show a

15  relevant fact. AT&T further objects that the Request is overly broad, unduly burdensome,

16  and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO

17  the organization of YOUR fraud department" given the broad definition of RELATE and

18  the ambiguity of the terms "organization" and "fraud department." AT&T further objects

19  to the Request to the extent it seeks materials protected by attorney-client and/or attorney

20  work product privileges, and/or any other applicable privilege, protection, or immunity

21  from disclosure. AT&T objects to the term "YOUR" to the extent it purports to encompass

22  any entity other than AT&T Mobility LLC.

23  Subject to and without waiving the foregoing General and Specific Objections,

24  AT&T will meet and confer with Terpin regarding whether there is an appropriate scope

25  of this Request.

26

27

28

Gibson, Dunn & Crutcher LLP

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION, SET ONE, CASE NO. 2:18-cv-06975-ODW-KS

47.  **All DOCUMENTS that constitute any agreement between YOU and SPRING MOBILE or PRIME COMMUNICATIONS, including any master agreements, service agreements, modifications, addenda and statements of work.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it requires AT&T to produce commercially sensitive contracts or agreements that have no bearing on any issue in this case. AT&T reserves the right to redact irrelevant, commercially sensitive portions of any responsive documents, and to comply with any relevant confidentiality or non-disclosure provisions before production of any responsive documents pursuant to the protective order in this case. AT&T objects to the term "YOU" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce its service agreement with Spring Mobile and Prime Communications, subject to any obligations of confidentiality or non-disclosure.

48.  **All DOCUMENTS RELATING TO any COMMUNICATIONS with YOUR AUTHORIZED RETAILERS RELATING TO prevention of SIM SWAPS.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to this Request as vague and ambiguous to the extent it incorporates a concept of whether a SIM swap is "unauthorized," because AT&T lacks sufficient knowledge to determine whether most or all SIM swaps that

Gibson, Dunn & Crutcher LLP

are claimed to have occurred without authorization were in fact authorized by the customer. AT&T objects that this request is overly broad, unduly burdensome, and seeks information not relevant to the incidents at issue, to the extent it requests all communications between AT&T and Spring Mobile or Prime Communications that talk about prevention of SIM swaps at all, even if they have nothing to do with Terpin. AT&T also objects to this Request to the extent it seeks communications relating to other AT&T customers, containing the protected CPNI of other AT&T customers, and concerning incidents or occurrences that have no relevance to or bearing upon the claims or defenses in this case. AT&T further objects that such information of third parties is protected against disclosure by applicable federal and state law and authorities, including by not limited to the Federal Communications Act, 47 U.S.C. § 222, the Stored Communications Act, 18 U.S.C. § 2707, and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 et seq. AT&T further objects that the request seeks materials protected by the privacy right of third party customers. AT&T further objects that the request seeks the production of information or material that constitutes confidential, proprietary and/or trade secret information. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce responsive, non-privileged documents reflecting communications between AT&T and Spring Mobile and Prime Communications, subject to any obligations of confidentiality or non-disclosure, to the extent such documents exist within its possession, custody, or control and can be located by a reasonable search.

**49.    All DOCUMENTS that constitute any version or iteration of YOUR privacy policy from 1990 to the present.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it requests documents extending over

27 years before the incidents at issue in this case took place, and extends to a time before SIM swaps were technologically possible, and before the SIM card had even been invented. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce the version(s) of the privacy policy in effect at the times of the two SIM swaps alleged by Terpin, to the extent those documents can be located by a reasonable search of appropriate custodians.

**50.    All DOCUMENTS RELATING TO the revisions to YOUR privacy policy from 2018 to the present, including DOCUMENTS RELATING TO the differences between YOUR current privacy policy and the privacy policy attached to the SAC.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO the revisions to YOUR privacy policy," given the broad definition of RELATING TO. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce the version(s) of the privacy policy in effect at the times of the two SIM swaps alleged by Terpin, to the extent those documents can be located by a reasonable search of appropriate custodians.

**51.     All DOCUMENTS RELATING TO any version or iteration of YOUR Code of Business Conduct from 1990 to the present.**

**<u>RESPONSE</u>**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it requests documents extending over 27 years before the incidents at issue in this case took place, and extends to a time before SIM swaps were technologically possible, and before the SIM card had even been invented. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO any version or iteration of YOUR Code of Business Conduct," given the broad definition of RELATING TO. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce the version(s) of AT&T's Code of Business Conduct in effect at the times of the two SIM swaps alleged by Terpin, to the extent those documents can be located by a reasonable search of appropriate custodians.

Gibson, Dunn & Crutcher LLP

52.   **All DOCUMENTS RELATING TO any version or iteration of YOUR contract with your customers for mobile services from 1990 to the present.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it requests documents extending over 27 years before the incidents at issue in this case took place, and extends to a time before SIM swaps were technologically possible, and before the SIM card had even been invented. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T objects that the Request is overly broad, unduly burdensome, and vague and ambiguous to the extent it broadly seeks all documents "RELATING TO any version or iteration of YOUR contract with your customers for mobile services," given the broad definition of RELATING TO. AT&T further objects to this Request on the ground that it seeks "All" documents and communications from unspecified persons and/or entities without limiting them to AT&T or any particular persons within AT&T. AT&T objects to the term "YOUR" to the extent it purports to encompass any entity other than AT&T Mobility LLC. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, AT&T will produce the version(s) of AT&T's Wireless Customer Agreement entered with Terpin and in effect at the times of the two SIM swaps alleged by Terpin, to the extent those documents can be located by a reasonable search.

53.   **All DOCUMENTS RELATING TO or that are identified in YOUR RESPONSES to PLAINTIFF'S First Set of Interrogatories.**

**RESPONSE**: AT&T objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it is unlimited as to time. AT&T's response and production of documents will therefore be limited to information from January 1, 2017 to the present. AT&T further objects to the Request to the extent it seeks

Gibson, Dunn & Crutcher LLP

materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure. AT&T further objects to the Request on the grounds that "RELATING TO" is vague and ambiguous, and unintelligible in the context of this Request. AT&T thus interprets this Request as seeking documents that are identified in AT&T's responses to Plaintiff's First Set of Interrogatories. AT&T further objects to the Request to the extent it seeks materials protected by attorney-client and/or attorney work product privileges, and/or any other applicable privilege, protection, or immunity from disclosure.

Subject to and without waiving the foregoing General and Specific Objections, and subject to the ongoing nature of discovery in this action, AT&T agrees to produce non-privileged documents identified in its written responses to Plaintiff's First Set of Interrogatories that are within AT&T's possession, custody, or control, subject to the general and specific objections that AT&T asserted in response to Plaintiff's First Set of Interrogatories and any other restrictions on disclosure that may be applicable to any particular document.

Dated: June 1, 2021                    GIBSON, DUNN & CRUTCHER LLP

                                       By:  _Ashley E. Johnson_____
                                            Marcellus A. McRae
                                            Ashley E. Johnson

                                       Attorneys for Defendant AT&T MOBILITY LLC

# EXHIBIT F

**Greenberg
Glusker**

Timothy J. Toohey

D:  310.201.7450
F:  310.553.0687
TToohey@ggfirm.com
File Number: 83764-00002

September 29, 2021

**Via E-Mail (mmcrae@gibsondunn.com, ajohnson@gibsondunn.com)**

Marcellus McRae
Ashley E. Johnson
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197

      Re:    Meet and confer RE AT&T Discovery Responses - Terpin v. AT&T (Case No.
             2:18-CV-06975-ODW-KS)

Dear Ashley and Marcellus:

      I am writing to further meet and confer regarding the parties' document productions.  To
that end, I wish to set a time for a call to discuss certain outstanding issues as described below.

      First and foremost, a schedule should be set for AT&T's producing further documents
and any necessary privilege logs—both on a rolling basis.  In this connection, we acknowledge
receipt of AT&T's first partial production and wish to discuss when the AT&T production will
be completed so as to allow time for motion practice, including over AT&T's anticipated broad
and unwarranted privilege claims and extensive redaction of documents.  Mr. Terpin is also
prepared to exchange documents responsive to AT&T's requests within a few days, followed by
a privilege log within two weeks.  Given the fact that counsel for both parties have already been
involved in a similar matter regarding AT&T and its response to SIM swaps perpetrated upon its
customers, we see no reason why the discovery process in this matter (including privilege logs)
should not be completed on an expedited basis so as to avoid any last minute productions and
motion practice.

      We note that the first tranche of documents does not include numerous documents that
would have been part of AT&T's initial disclosures, including the account notes on Mr. Terpin's
account, which, of course, are one of the most fundamental documents.  We also see nothing
specific to Mr. Terpin's two unauthorized SIM swaps, including any correspondence with
REACT or other authorities regarding the hacks, or any documents related to any internal
investigation performed by AT&T's AP department, which surely included looking at the
specific SIM swaps that occurred as well as other SIM swaps by those involved, such as Jahmil
Smith of Spring Communications (now Prime), who has been identified as performing the
January 2018 SIM swap.  Related to this, we also do not see anything relating to information
regarding Mr. Smith's other unauthorized SIM swaps or correspondence with Spring regarding
the incidents.  To be clear, we do not believe that any such documents are privileged (and we
need you to promptly log such documents if you are taking that position so that the issue can be
resolved), but, in any event, even if select documents that AT&T may have prepared from its

Marcellus McRae
Ashley Johnson
September 29, 2021
Page 2

databases are subject to any privilege, the underlying factual information, i.e., dates, IMEIs, SIM cards, employees, purported authorizations, location of use, etc. are clearly not privileged and must be produced.

While your August 17 letter indicated AT&T may be willing to meet and confer on various subjects *after* it has produced its documents, in order to facilitate an expedient discovery process, it is essential to address these issues now, particularly since AT&T has produced the first tranche of documents. AT&T's decision to ignore the normal practice of an agreement as to search parameters should not be taken to indicate agreement by us that such a procedure is proper. We expressly reserve all rights, including moving to compel production of AT&T's search parameters at the earliest possible date. For example, it appears that AT&T's production to some extent has followed the same lines (with the same custodians) as AT&T's production in another matter, although there are significant differences between the two matters. Consequently, AT&T's approach is inappropriate because the custodians it has designated may not have knowledge regarding unauthorized SIM swaps in the period prior to 2018, which is of particular relevance in this case.

Thus, while AT&T has identified some individuals who currently oversee the prevention of unauthorized SIM swaps, to the extent AT&T has not included those individuals tasked to do so at the time of and before Mr. Terpin's losses, AT&T's production will be incomplete. We note in this connection that AT&T has been ordered in the *Ross* matter to produce documents as far back as 2016. To the extent that the custodians that you proffer were not involved in issues involving unauthorized SIM swaps prior to 2018 (whether or not the SIM swaps involved cryptocurrency), AT&T has an obligation to do searches for custodians in all relevant departments, including the security, fraud, customer relations and internal investigations or asset protection departments (among others). The parties should therefore meet and confer regarding who AT&T has identified as responsive custodians and what timeframe was used in doing so. This will avoid an unnecessarily piecemeal discovery process punctuated by meet and confer efforts and avoidable motion practice.

Likewise, as noted above, a discussion of the search parameters AT&T is using to locate responsive documents will streamline the discovery process. Despite AT&T's allegations to the contrary, discussing and agreeing to search terms is common practice. Indeed, this was a subject of extensive briefing in the *Williams* matter, which is one of many lawsuits brought against AT&T for unauthorized SIM swaps. If AT&T is as confident in the reasonableness of its search as your August 17 letter suggests, it makes little sense to refuse to share its search parameters, particularly since this would avoid having to have AT&T perform additional services at a later date. We cannot evaluate the reasonableness of AT&T's search – and thus the completeness of its responses – if AT&T withholds the scope and limitations of the search. This is particularly the case because unauthorized SIM swaps occurred prior to Mr. Terpin's first SIM swap in 2017.

In reviewing the documents that have been produced, we note that AT&T has only produced a handful of e-mails and associated documents from 2017 (ATT-TERP 1408-1437). Even without the needed disclosure of the search terms (and transparency regarding the

GreenbergGlusker.com

Marcellus McRae
Ashley Johnson
September 29, 2021
Page 3

custodians whose files were searched), the production of so few documents is patently
inadequate.  Mr. Terpin's first SIM swap occurred in 2017 and it is highly unlikely that his was
the first unauthorized SIM swap of an AT&T customer.  Indeed, unauthorized SIM swaps are
referenced as early as August 14, 2015 in the numerous iterations of MYCSP Article 447997,
which is an AT&T policy to protect customer privacy against various species of fraud.  *See*
ATT-TERP 2006-2119.  These policies refer specifically to SIM changes as a "Hot Fraud Issue"
as early as 2015 which was increasing and also referred to "account takeover" fraud where an
"imposter" engaged in the "unauthorized use of personal data . . . to assume another individual's
identity" resulting in a customer not being able to use their phone.  The small number of e-mails
produced from 2017 has likely resulted from either not searching the right custodians or not
using proper search terms.

        Next, in addition to AT&T's categorical refusal to discuss search terms, it has made
blanket objections to producing documents related to other unauthorized SIM swap litigation and
arbitration proceedings.  These objections are groundless, and in attempting to justify them,
AT&T purposefully misrepresents Mr. Terpin's claims.  This case is about AT&T's systematic
failure to address one of the leading threats to its customers, and the resulting loss of Mr.
Terpin's cryptocurrency because of this failure.  *See, e.g.,* Terpin Second Amended Complaint,
*passim.*  As such, documents related to other SIM swap proceedings are reasonably calculated to
lead to the discovery of admissible evidence regarding AT&T's conscious disregard for the
dangers of SIM swaps that were specially alleged by Mr. Terpin.  The fact that Mr. Terpin's
lawsuit was the first legal claim submitted to AT&T (if, indeed, that is the case) does not change
this.  Mr. Terpin's allegations relate to unauthorized SIM swaps generally—not just to SIM
swaps involving cryptocurrency.  Given the fact that the FTC in June 2016 publicized the
dangers of unauthorized SIM swaps to wireless customers, AT&T was well aware before Mr.
Terpin's first unauthorized SIM swap of the gaping holes and manifest inadequacy of its security
procedures.  AT&T cannot simply ignore these requests.  We are willing to discuss how to
appropriately address any privacy concerns AT&T may have.

        We also completely disagree that "AT&T's January 1, 2017 temporal limitation is
entirely appropriate" as stated in your August 17 letter.  As noted above, AT&T addressed
unauthorized SIM swaps as a "hot fraud issue" as early as 2015 in policies regarding privacy of
customer information.  Moreover, the idea that "foreseeability can be fully addressed by AT&T's
production of documents from the months leading up to the first SIM swap" is easily belied by
the facts.  As I laid out in my previous meet and confer correspondence, the FTC explicitly
identified SIM swaps as one of the leading threats to mobile customers that could result in
financial harm as far back as 2016.  https://www.ftc.gov/news-
events/blogs/techftc/2016/06/your-mobile-phone-account-could-be-hijacked-identity-thief  If
AT&T nonetheless failed to take measures to protect its customers, this too is relevant to the
issues of this case.  To avoid having to bring this matter in front of the magistrate judge, we hope
that a timeframe can be found which is agreeable to both parties.  We note again that the
magistrate judge agreed to widen the chronological scope of the search in the *Ross* matter, where
the complaint alleges a SIM swap that occurred later in 2018—well after both of Mr. Terpin's
SIM swaps.

GreenbergGlusker.com

Marcellus McRae
Ashley Johnson
September 29, 2021
Page 4

In addition, we believe that AT&T's blanket marking of documents as "confidential" is unacceptable.  For example, the current production contains numerous routine documents that do not contain anything that is remotely "confidential" under the existing protective order.  These include, for example, AT&T's privacy policy, publicly available articles from Krebs *On Security* (ATT-TERP 2920-29), and another publicly available article on Mr. Terpin's unauthorized SIM Swap (ATT-TERP 2711).  Moreover, we believe that it is inappropriate for AT&T to mark every internal communication within AT&T as "Confidential" under Section B ("Good Cause") of the Protective Order because these documents do not meet the criteria outlined in that Order.  We therefore wish to discuss narrowing the Confidential designations to an appropriate scope.

Please let us know available times next week that we can schedule a call. We dispute most of the remaining claims and objections AT&T included in its August 17 letter and will address these in turn once we have had the opportunity to review all the documents AT&T produces.

And of course, Mr. Terpin reserves all rights.

Sincerely,

Timothy J. Toohey
Daniel Parino

TJT

cc:  Pierce O'Donnell
     Paul Blechner

GreenbergGlusker.com

# EXHIBIT G

| From: | Parino, Daniel |
|---|---|
| To: | Johnson, Ashley E.; Toohey, Timothy |
| Cc: | Blechner, Paul; McRae, Marcellus |
| Subject: | RE: Terpin v. AT&T--Investigation Documents |
| Date: | Monday, October 25, 2021 3:30:20 PM |

Hi Ashley,

I hope you had a nice weekend.  We understood from our call that you would be providing the privilege log information relating to these investigations so that we could then address specifically the details of AT&T's claims of privilege in their proper context.  While the burden is properly on AT&T as the party asserting the privilege, as Tim noted, internal investigations of the sort that we believe were conducted by AT&T are not by default privileged.  *See e.g.  In re Cap. One Consumer Data Sec. Breach Litig* 2020 WL 2731238, at *3 (E.D. Va. May 26, 2020) ("the fact that there is litigation does not, by itself, cloak materials with work product immunity" or attorney client privilege.), *see also In re Dominion Dental Servs. USA, Inc. Data Breach Litig.,* 429 F. Supp. 3d 190, 193 (E.D. Va. 2019) ("litigants cannot escape their obligations to disclose underlying facts by communicating them to an attorney or having an attorney direct the fact investigation.").  The foregoing is provided without waiver of additional facts or arguments which may be presented because it remains our view that it is difficult to have a concrete discussion and address these issues specifically without having any idea what documents relating to SIM swap-related investigations AT&T is withholding.  Once you provide us with a privilege log for the documents (which you mentioned were not very numerous), we can provide a lengthier response as to whether we agree with AT&T's privilege assertions.

Thanks,

-Daniel

**From:** Johnson, Ashley E. <AJohnson@gibsondunn.com>
**Sent:** Friday, October 22, 2021 10:28 AM
**To:** Parino, Daniel <dparino@greenbergglusker.com>; Toohey, Timothy <ttoohey@greenbergglusker.com>
**Cc:** Blechner, Paul <pblechner@greenbergglusker.com>; McRae, Marcellus <MMcRae@gibsondunn.com>
**Subject:** RE: Terpin v. AT&T--Investigation Documents

Hi Daniel,

I thought that you and Tim were first going to send some authority that you thought supported Terpin's conception of privilege with respect to investigations.  My understanding was I was going to review that, along with the scope of the investigative documents, and that I expected (but did not guarantee) the number of documents involved would be small enough to allow prompt logging.  Do you still plan to send the authority you referenced?

Thanks, and you have a nice weekend too,

Ashley

**Ashley Johnson**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3111 • Fax +1 214.571.2949
AJohnson@gibsondunn.com • www.gibsondunn.com

---

**From:** Parino, Daniel <dparino@greenbergglusker.com>
**Sent:** Friday, October 22, 2021 12:22 PM
**To:** Johnson, Ashley E. <AJohnson@gibsondunn.com>; Toohey, Timothy <ttoohey@greenbergglusker.com>
**Cc:** Blechner, Paul <pblechner@greenbergglusker.com>; McRae, Marcellus <MMcRae@gibsondunn.com>
**Subject:** Terpin v. AT&T--Investigation Documents

[WARNING: External Email]

Hi Ashley,

We discussed during last week's call AT&T's assertion of privilege with respect to documents pertaining to investigations that AT&T may have done in connection with various SIM swaps and you stated that you would send us information such as would be provided in a privilege log to support the assertion of any such privilege.   Can you please advise on the timetable for the receipt of such information so that further meet and confer efforts, or motion practice, if necessary, on this issue can proceed?

Thanks and have a nice weekend,

-Daniel

**Daniel A. Parino**
Attorney at Law
Biography
310.201.7504 Direct
dparino@greenbergglusker.com

**Greenberg Glusker LLP**
2049 Century Park East, Suite 2600
Los Angeles, CA  90067
**GreenbergGlusker.com**

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# EXHIBIT H

| From: | Johnson, Ashley E. |
|---|---|
| To: | Parino, Daniel; Toohey, Timothy |
| Cc: | Blechner, Paul; McRae, Marcellus |
| Subject: | RE: Terpin v. AT&T--Investigation Documents |
| Date: | Tuesday, November 30, 2021 10:10:52 PM |

Daniel –

I have looked into this issue to see if it would be feasible, as we had discussed on our call, to identify, and expedite logging of, documents reflecting an "investigation" conducted by non-lawyers, as to which Terpin may challenge any claim of attorney-client privilege or work product.  Upon further review, AT&T's counsel conducted their own investigation here, which is straightforwardly shielded by attorney-client privilege and work product, and there is no separate investigation directed by non-lawyers or resulting in an investigative report prepared by non-lawyers.  The issue you raised of wishing to examine AT&T's basis for claiming privilege and/or work product over such an investigation therefore is not present in this case.  To the extent AT&T has documents that are responsive and privileged that can be described as part of an "investigation" by counsel or at counsel's direction, and those documents pre-date the demand, AT&T will log those documents in the ordinary course.  But we have not identified a discrete document or set of documents that present the issue of whether an investigation document created by non-lawyers is shielded by attorney-client privilege or work product.

On a separate note, we have identified an additional custodian – Peter Coulter – who may have responsive and non-privileged documents from the earlier part of the relevant time period (e.g., 2016-2018).  We are in the process of processing and reviewing his documents to determine whether such documents exist.

Finally, I will write separately regarding the deficiencies in Mr. Terpin's responses to AT&T's discovery.  However, I did want to raise one broad issue that I noted in reviewing that discovery.  Multiple times, Mr. Terpin minimizes the alleged June 2017 SIM swap as "not part of this lawsuit," as "background," or as something he "is not seek damages relating to."  Quite obviously, Mr. Terpin cannot limit discovery into the alleged June 2017 SIM swap by only claiming damages from the alleged January 2018 SIM swap, including because the June 2017 SIM swap provided notice to Mr. Terpin of the need to maintain adequate security on his accounts.  Please confirm that Mr. Terpin has not limited his responses to AT&T's discovery or withheld responsive information based on any argument that the June 2017 SIM swap is somehow less relevant to this case than the January 2018 SIM swap.

Thanks,
Ashley
**Ashley Johnson**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3111 • Fax +1 214.571.2949

AJohnson@gibsondunn.com • www.gibsondunn.com

---

**From:** Parino, Daniel <dparino@greenbergglusker.com>
**Sent:** Monday, October 25, 2021 5:30 PM
**To:** Johnson, Ashley E. <AJohnson@gibsondunn.com>; Toohey, Timothy <ttoohey@greenbergglusker.com>
**Cc:** Blechner, Paul <pblechner@greenbergglusker.com>; McRae, Marcellus <MMcRae@gibsondunn.com>
**Subject:** RE: Terpin v. AT&T--Investigation Documents

[WARNING: External Email]

Hi Ashley,

I hope you had a nice weekend.  We understood from our call that you would be providing the privilege log information relating to these investigations so that we could then address specifically the details of AT&T's claims of privilege in their proper context.  While the burden is properly on AT&T as the party asserting the privilege, as Tim noted, internal investigations of the sort that we believe were conducted by AT&T are not by default privileged.  *See e.g.  In re Cap. One Consumer Data Sec. Breach Litig*2020 WL 2731238, at *3 (E.D. Va. May 26, 2020) ("the fact that there is litigation does not, by itself, cloak materials with work product immunity" or attorney client privilege.), *see also In re Dominion Dental Servs. USA, Inc. Data Breach Litig.,* 429 F. Supp. 3d 190, 193 (E.D. Va. 2019) ("litigants cannot escape their obligations to disclose underlying facts by communicating them to an attorney or having an attorney direct the fact investigation.").  The foregoing is provided without waiver of additional facts or arguments which may be presented because it remains our view that it is difficult to have a concrete discussion and address these issues specifically without having any idea what documents relating to SIM swap-related investigations AT&T is withholding.  Once you provide us with a privilege log for the documents (which you mentioned were not very numerous), we can provide a lengthier response as to whether we agree with AT&T's privilege assertions.

Thanks,

-Daniel

**Daniel A. Parino**
Attorney at Law
[Biography](Biography)
310.201.7504 Direct
dparino@greenbergglusker.com

**Greenberg Glusker LLP**
2049 Century Park East, Suite 2600

Los Angeles, CA  90067

**GreenbergGlusker.com**

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

---

**From:** Johnson, Ashley E. <AJohnson@gibsondunn.com>
**Sent:** Friday, October 22, 2021 10:28 AM
**To:** Parino, Daniel <dparino@greenbergglusker.com>; Toohey, Timothy <ttoohey@greenbergglusker.com>
**Cc:** Blechner, Paul <pblechner@greenbergglusker.com>; McRae, Marcellus <MMcRae@gibsondunn.com>
**Subject:** RE: Terpin v. AT&T--Investigation Documents

Hi Daniel,

I thought that you and Tim were first going to send some authority that you thought supported Terpin's conception of privilege with respect to investigations.  My understanding was I was going to review that, along with the scope of the investigative documents, and that I expected (but did not guarantee) the number of documents involved would be small enough to allow prompt logging.  Do you still plan to send the authority you referenced?

Thanks, and you have a nice weekend too,

Ashley

**Ashley Johnson**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3111 • Fax +1 214.571.2949
AJohnson@gibsondunn.com • www.gibsondunn.com

---

**From:** Parino, Daniel <dparino@greenbergglusker.com>
**Sent:** Friday, October 22, 2021 12:22 PM
**To:** Johnson, Ashley E. <AJohnson@gibsondunn.com>; Toohey, Timothy <ttoohey@greenbergglusker.com>
**Cc:** Blechner, Paul <pblechner@greenbergglusker.com>; McRae, Marcellus <MMcRae@gibsondunn.com>
**Subject:** Terpin v. AT&T--Investigation Documents

 **[WARNING: External Email]**

Hi Ashley,

We discussed during last week's call AT&T's assertion of privilege with respect to documents pertaining to investigations that AT&T may have done in connection with various SIM swaps and you stated that you would send us information such as would be provided in a privilege log to support the assertion of any such privilege.   Can you please advise on the timetable for the receipt of such information so that further meet and confer efforts, or motion practice, if necessary, on this issue can proceed?

Thanks and have a nice weekend,

-Daniel


**Daniel A. Parino**
Attorney at Law
[Biography](Biography)
310.201.7504 Direct
[dparino@greenbergglusker.com](mailto:dparino@greenbergglusker.com)

**Greenberg Glusker LLP**
2049 Century Park East, Suite 2600
Los Angeles, CA  90067
**[GreenbergGlusker.com](GreenbergGlusker.com)**

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at [https://www.gibsondunn.com/](https://www.gibsondunn.com/) for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at [https://www.gibsondunn.com/](https://www.gibsondunn.com/) for information regarding the firm and/or our privacy policy.

# EXHIBIT I

| From: | Parino, Daniel |
|---|---|
| To: | Johnson, Ashley E.; Toohey, Timothy |
| Cc: | Blechner, Paul; McRae, Marcellus |
| Subject: | RE: Terpin v. AT&T--Investigation Documents |
| Date: | Wednesday, December 8, 2021 2:38:34 PM |

Hi Ashley,

Thank you for your response.  We have not withheld anything regarding Mr. Terpin's June 2017 SIM Swap and have produced all responsive documents we could locate in our production.  I believe there are a number of documents regarding third party SIM swaps that even predate the 2017 SIM Swap.  Given that under the same theory, AT&T had been put on notice of the need to maintain adequate security regarding SIM Swaps on its customer's accounts since at least 2015 (per AT&T's own internal reports), please confirm that AT&T be producing responsive documents from 2015-2018.

This likewise applies to documents concerning other claims apart from Mr. Terpin's brought against AT&T regarding unauthorized SIM Swaps.  As mentioned, AT&T had internally identified Sim Swaps as a danger to its customers as far back as August 2015, yet Mr. Terpin suffered his losses in 2018. Claims brought against AT&T regarding unauthorized Sim Swaps during this time and the actions (or lack thereof) that AT&T took to address these claims are central to this matter.  As you made clear, being put on notice as to the need for adequate security measures is a relevant subject.  Please confirm that AT&T will produce all documents relevant to these requests.

As for investigations into the SIM swap performed on Mr. Terpin's account, you note that "AT&T's counsel conducted their own investigation here, which is straightforwardly shielded by attorney-client privilege and work product".  This statement is overbroad.  An investigation into an incident such as a data breach is only privileged if it would not have been made but for pending litigation.  If normally an investigation into a data breach is within a company's typical course of business, such an investigation is not attorney work product nor covered by attorney client privilege.  "The hiring of outside counsel does not excuse a company from conducting its duties and addressing the issues at hand." *In re Cap. One Consumer Data Sec. Breach Litig.*,  2020 WL 2731238, at *4 (E.D. Va. May 26, 2020).  And "the fact that the investigation was done at the direction of outside counsel and the results were initially provided to outside counsel, does not satisfy the "but for" formulation." *Id.*  "It may well be that counsel will use the results of the [] investigations 'as necessary' in providing legal advice. That does not mean, however, that the primary purpose of [] investigations is legal instead of business." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 666 (D. Or. 2019).

From documents produced in this and in another litigation with which we have familiarity, it is clear that there is an internal compliance and investigation department at AT&T that, as a matter of course, conducts investigations into unauthorized SIM swaps that are brought to AT&T's intention. We are also aware that when an employee of an authorized retailer (such as Prime) is involved in an unauthorized SIM swap and when a SIM swap is reported to the fraud department, investigations into the circumstances of the SIM swap are conducted.  In this case, these investigations undoubtedly occurred not least because Mr. Terpin's wife contacted the fraud department and the

Terpins went into a store in Puerto Rico to find out about the SIM swap.  This was months before AT&T was contacted by counsel for Mr. Terpin.

In addition, the underlying facts in the investigation are not privileged.  Thus AT&T must produce all underlying documents related to the unauthorized SIM swap.  This includes, at a minimum, any analysis of the IMEI number to which Mr. Terpin's SIM was swapped (including any other unauthorized SIM swaps made to that number), any other SIM swaps involving Jahmil Smith over the course of his employment, and documents similar to the Excel spreadsheets produced in the other matter.

While we are prepared to start with analyses generated by AT&T, either generated at the time or now, if you will not provide spreadsheets in a format that we know exists that contains a summary of the underlying information in AT&T's system to show for SIM swaps the customer (including name, phone number and SIM card), customer location, original IMEI, recipient IMEI, date and time of first use, date and time of transaction, employee ID under which the transaction proceeded, explanation for authentication provided by employee, and geographic information about first use, then you must produce the underlying data from which this type of information can be pulled for (a) each SIM swap involving Jahmil Smith during the period from January 1, 2017 to December 31, 2018,  (b) each SIM swap involving the recipient IMEI used in the January 2018 Terpin swap, and (c) each SIM swap involving the same geographic location as the one used in the January 2018 Terpin swap during the period from January 1, 2017 to December 31, 2018.  We would still reserve the right to challenge any privilege assertions that we consider inappropriate, but there can be no privilege objection to the underlying data, so please make it available immediately.

Further, AT&T must promptly provide us with a log of <u>all</u> pre-litigation documents that AT&T is withholding based on privilege so that we can evaluate the circumstances and timing of their creation.  We also need to evaluate your claim that AT&T allegedly has no responsive (non-privileged) documents stemming from an investigation into the hacking of one of its customer's accounts which resulted in the theft of millions of dollars (despite the fact that Ms. Terpin contacted the AT&T fraud department and the Terpins took their complaint directly to AT&T personnel).  Again whether an investigation document was "directed by non-lawyers" or "created by non-lawyers" is not the deciding factor.  Even where there is "no question" that a company will "be facing substantial claims following [a] data breach, …the determinative issue is whether the [investigation or report] <u>would have been prepared in substantially similar form but for the prospect of that litigation</u>."  *In re Cap. One Consumer Data Sec. Breach Litig.*, 2020 WL 2731238, at *4 (E.D. Va. May 26, 2020) (emphasis added).  We again note that neither Robert Arno or Joe Morella, whom we know were both involved in investigating SIM swaps at AT&T, are lawyers; this, in itself, belies an assertion that all investigations were conducted by lawyers.  Again, a privilege log is essential so we can assess whether we need to include this issue in those that we intend to bring to the attention of the Magistrate Judge.

We look forward to receiving Mr. Coulter's documents.  Relatedly, does AT&T intend on producing any further documents apart from those of Mr. Coulter?  Of note, numerous documents responsive to this matter which were produced in the other matter in which we were involved have yet to be produced.

An additional issue that remains outstanding from our last conversation is whether AT&T will agree to come to a mutual agreement on search terms.  Given our other issues on discovery (including incomplete productions and arbitrary time limitations), examination of search terms is necessary.  If we are at an impasse on this issue, it will be included in the matters brought to the attention of the Magistrate Judge.

Thanks,

-Daniel

---

**From:** Johnson, Ashley E. <AJohnson@gibsondunn.com>
**Sent:** Tuesday, November 30, 2021 10:10 PM
**To:** Parino, Daniel <dparino@greenbergglusker.com>; Toohey, Timothy <ttoohey@greenbergglusker.com>
**Cc:** Blechner, Paul <pblechner@greenbergglusker.com>; McRae, Marcellus <MMcRae@gibsondunn.com>
**Subject:** RE: Terpin v. AT&T--Investigation Documents

Daniel –

I have looked into this issue to see if it would be feasible, as we had discussed on our call, to identify, and expedite logging of, documents reflecting an "investigation" conducted by non-lawyers, as to which Terpin may challenge any claim of attorney-client privilege or work product.  Upon further review, AT&T's counsel conducted their own investigation here, which is straightforwardly shielded by attorney-client privilege and work product, and there is no separate investigation directed by non-lawyers or resulting in an investigative report prepared by non-lawyers.  The issue you raised of wishing to examine AT&T's basis for claiming privilege and/or work product over such an investigation therefore is not present in this case.  To the extent AT&T has documents that are responsive and privileged that can be described as part of an "investigation" by counsel or at counsel's direction, and those documents pre-date the demand, AT&T will log those documents in the ordinary course.  But we have not identified a discrete document or set of documents that present the issue of whether an investigation document created by non-lawyers is shielded by attorney-client privilege or work product.

On a separate note, we have identified an additional custodian – Peter Coulter – who may have responsive and non-privileged documents from the earlier part of the relevant time period (e.g., 2016-2018).  We are in the process of processing and reviewing his documents to determine whether such documents exist.

Finally, I will write separately regarding the deficiencies in Mr. Terpin's responses to AT&T's discovery.  However, I did want to raise one broad issue that I noted in reviewing that discovery.  Multiple times, Mr. Terpin minimizes the alleged June 2017 SIM swap as "not part of this lawsuit," as "background," or as something he "is not seek damages relating to."  Quite obviously, Mr. Terpin

cannot limit discovery into the alleged June 2017 SIM swap by only claiming damages from the alleged January 2018 SIM swap, including because the June 2017 SIM swap provided notice to Mr. Terpin of the need to maintain adequate security on his accounts.  Please confirm that Mr. Terpin has not limited his responses to AT&T's discovery or withheld responsive information based on any argument that the June 2017 SIM swap is somehow less relevant to this case than the January 2018 SIM swap.

Thanks,
Ashley
**Ashley Johnson**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3111 • Fax +1 214.571.2949
AJohnson@gibsondunn.com • www.gibsondunn.com

---

**From:** Parino, Daniel <dparino@greenbergglusker.com>
**Sent:** Monday, October 25, 2021 5:30 PM
**To:** Johnson, Ashley E. <AJohnson@gibsondunn.com>; Toohey, Timothy <ttoohey@greenbergglusker.com>
**Cc:** Blechner, Paul <pblechner@greenbergglusker.com>; McRae, Marcellus <MMcRae@gibsondunn.com>
**Subject:** RE: Terpin v. AT&T--Investigation Documents

   **[WARNING: External Email]**

Hi Ashley,

I hope you had a nice weekend.  We understood from our call that you would be providing the privilege log information relating to these investigations so that we could then address specifically the details of AT&T's claims of privilege in their proper context.  While the burden is properly on AT&T as the party asserting the privilege, as Tim noted, internal investigations of the sort that we believe were conducted by AT&T are not by default privileged.  *See e.g.  In re Cap. One Consumer Data Sec. Breach Litig*2020 WL 2731238, at *3 (E.D. Va. May 26, 2020) ("the fact that there is litigation does not, by itself, cloak materials with work product immunity" or attorney client privilege.), *see also In re Dominion Dental Servs. USA, Inc. Data Breach Litig.,* 429 F. Supp. 3d 190, 193 (E.D. Va. 2019) ("litigants cannot escape their obligations to disclose underlying facts by communicating them to an attorney or having an attorney direct the fact investigation.").  The foregoing is provided without waiver of additional facts or arguments which may be presented because it remains our view that it is difficult to have a concrete discussion and address these issues specifically without having any idea what documents relating to SIM swap-related investigations AT&T is withholding.  Once you provide us with a privilege log for the documents (which you mentioned were not very numerous), we can provide a lengthier response as to whether we agree with AT&T's privilege assertions.

Thanks,

-Daniel

**Daniel A. Parino**
Attorney at Law
[Biography](Biography)
310.201.7504 Direct
[dparino@greenbergglusker.com](mailto:dparino@greenbergglusker.com)

**Greenberg Glusker LLP**
2049 Century Park East, Suite 2600
Los Angeles, CA  90067
**[GreenbergGlusker.com](GreenbergGlusker.com)**

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

**From:** Johnson, Ashley E. <[AJohnson@gibsondunn.com](mailto:AJohnson@gibsondunn.com)>
**Sent:** Friday, October 22, 2021 10:28 AM
**To:** Parino, Daniel <[dparino@greenbergglusker.com](mailto:dparino@greenbergglusker.com)>; Toohey, Timothy <[ttoohey@greenbergglusker.com](mailto:ttoohey@greenbergglusker.com)>
**Cc:** Blechner, Paul <[pblechner@greenbergglusker.com](mailto:pblechner@greenbergglusker.com)>; McRae, Marcellus <[MMcRae@gibsondunn.com](mailto:MMcRae@gibsondunn.com)>
**Subject:** RE: Terpin v. AT&T--Investigation Documents

Hi Daniel,

I thought that you and Tim were first going to send some authority that you thought supported Terpin's conception of privilege with respect to investigations.  My understanding was I was going to review that, along with the scope of the investigative documents, and that I expected (but did not guarantee) the number of documents involved would be small enough to allow prompt logging.  Do you still plan to send the authority you referenced?

Thanks, and you have a nice weekend too,

Ashley

**Ashley Johnson**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201
Tel +1 214.698.3111 • Fax +1 214.571.2949
AJohnson@gibsondunn.com • www.gibsondunn.com

---

**From:** Parino, Daniel <dparino@greenbergglusker.com>
**Sent:** Friday, October 22, 2021 12:22 PM
**To:** Johnson, Ashley E. <AJohnson@gibsondunn.com>; Toohey, Timothy <ttoohey@greenbergglusker.com>
**Cc:** Blechner, Paul <pblechner@greenbergglusker.com>; McRae, Marcellus <MMcRae@gibsondunn.com>
**Subject:** Terpin v. AT&T--Investigation Documents

[WARNING: External Email]

Hi Ashley,

We discussed during last week's call AT&T's assertion of privilege with respect to documents pertaining to investigations that AT&T may have done in connection with various SIM swaps and you stated that you would send us information such as would be provided in a privilege log to support the assertion of any such privilege.   Can you please advise on the timetable for the receipt of such information so that further meet and confer efforts, or motion practice, if necessary, on this issue can proceed?

Thanks and have a nice weekend,

-Daniel

**Daniel A. Parino**
Attorney at Law
Biography
310.201.7504 Direct
dparino@greenbergglusker.com

**Greenberg Glusker LLP**
2049 Century Park East, Suite 2600
Los Angeles, CA  90067
**GreenbergGlusker.com**

This message is intended solely for the use of the addressee(s) and is intended to be privileged and confidential within the attorney client privilege. If you have received this message in error, please immediately notify the sender at Greenberg Glusker and delete all copies of this email message along with all attachments. Thank you.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# EXHIBIT J

| Log No. | Email To | Email From | Email CC | Email BCC | Date |
|---|---|---|---|---|---|
| 1 | | | | | 5/16/2017 |
| 2 | GALBRAITH GOOCH, TINA A (Legal) <tg2247@att.com>; COULTER, PETER I <pc2312@att.com>; FLYNN, MICHAEL E <mf1354@att.com>; ROMANO, NENA M <nr1826@att.com>; BECK, ANN A (Legal) <ab7329@att.com> | LE, TONY <dl3006@att.com> | BURMAN, RICH <rb9439@att.com>; SWART, BRYAN N <BS8432@att.com>; ABRAM, LARRY <la8840@att.com> | | 4/26/2017 |
| 3 | | | | | 4/26/2017 |
| 4 | Montgomery, Adam <Adam.Montgomery@fleishman.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; ROMANO, NENA M <nr1826@att.com>; ROSARIO, SUSAN J <sr8645@att.com>; MINAIDES, MICHAEL L (Legal) <mm8806@att.com>; MURPHY, MICK <mm3133@att.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com>; COULTER, PETER I <pc2312@att.com> | HILL, RAY A <rh7889@att.com> | | | 4/12/2016 |
| 5 | | | | | 4/12/2016 |
| 6 | | | | | 4/12/2016 |

| | | | | | |
|---|---|---|---|---|---|
| 7 | Montgomery, Adam <Adam.Montgomery@fleishman.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; ROMANO, NENA M <nr1826@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; FELDSTEIN, DAN <DF0077@att.com>; KOBS, JEFFREY E <jk4097@att.com>; Richter, Marty <Marty.Richter@fleishman.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com>; SAGERSON, ANN N (Legal) <AS088W@att.com> | HILL, RAY A <rh7889@att.com> | | | 6/30/2016 |
| 8 | | | | | 6/30/2016 |
| 9 | LE, TONY <dl3006@att.com>; CHIARAMONTE, MICHAEL A <mc3707@att.com> | PANAGIA, ADAM L <ap2941@att.com> | COULTER, PETER I <pc2312@att.com> | | 12/14/2016 |
| 10 | GALBRAITH GOOCH, TINA A (Legal) <tg2247@att.com> | BURMAN, RICH <rb9439@att.com> | LE, TONY <dl3006@att.com>; ROMANO, NENA M <nr1826@att.com>; COULTER, PETER I <pc2312@att.com>; FLYNN, MICHAEL E <mf1354@att.com>; BECK, ANN A (Legal) <ab7329@att.com>; SWART, BRYAN N <BS8432@att.com>; ABRAM, LARRY <la8840@att.com> | | 4/27/2017 |
| 11 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A <rh7889@att.com> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | | 6/29/2016 |
| 12 | | | | | 6/29/2016 |

| | | | | | |
|---|---|---|---|---|---|
| 13 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A <rh7889@att.com> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | | 6/30/2016 |
| 14 | x | x | | | 6/29/2016 |
| 15 | KLIMACEK, STEVE (Legal) <SK4060@att.com> | COULTER, PETER I </O=sbc/OU=momail/cn=Recipients/cn=pc2312> | VELTZ, THOMAS D (Legal) <tv459f@att.com>; MADER, KENT <kpmader@directv.com>; 'JEFFRIES, KEVIN (jj5306@att.com)' <jj5306@att.com> | | 6/29/2016 |
| 16 | x | x | | | 6/29/2016 |
| 17 | KLIMACEK, STEVE (Legal) <SK4060@att.com> | COULTER, PETER I </O=sbc/OU=momail/cn=Recipients/cn=pc2312> | | | 7/24/2017 |
| 18 | COULTER, PETER I <pc2312@att.com> | EICHLER, GEORGE <ge3143@att.com> | CELIO, MICHIELE <mc4014@att.com> | | 7/24/2017 |
| 19 | | | | | 7/24/2017 |
| 20 | | | | | 7/24/2017 |
| 21 | LE, TONY <dl3006@att.com>; ROMANO, NENA M <nr1826@att.com>; COULTER, PETER I <pc2312@att.com>; FLYNN, MICHAEL E <mfl354@att.com>; BECK, ANN A (Legal) <ab7329@att.com>; SWART, BRYAN N <BS8432@att.com> | GALBRAITH GOOCH, TINA A (Legal) <tg2247@att.com> | BURMAN, RICH <rb9439@att.com>; ABRAM, LARRY <la8840@att.com> | | 4/27/2017 |

| | | | | | |
|---|---|---|---|---|---|
| 22 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A <rh7889@att.com> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | | 6/29/2016 |
| 23 | | | | | 6/29/2016 |
| 24 | Montgomery, Adam <Adam.Montgomery@fleishman.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; ROMANO, NENA M <nr1826@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; FELDSTEIN, DAN <DF0077@att.com>; KOBS, JEFFREY E <jk4097@att.com>; Richter, Marty <Marty.Richter@fleishman.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com>; SAGERSON, ANN N (Legal) <AS088W@att.com> | HILL, RAY A <rh7889@att.com> | | | 7/1/2016 |
| 25 | | | | | 7/1/2016 |
| 26 | LE, TONY <dl3006@att.com>; COULTER, PETER I <pc2312@att.com>; FLYNN, MICHAEL E <mf1354@att.com>; ROMANO, NENA M <nr1826@att.com>; BECK, ANN A (Legal) <ab7329@att.com> | GALBRAITH GOOCH, TINA A (Legal) <tg2247@att.com> | BURMAN, RICH <rb9439@att.com>; SWART, BRYAN N <BS8432@att.com>; ABRAM, LARRY <la8840@att.com> | | 4/26/2017 |
| 27 | KLIMACEK, STEVE (Legal) <SK4060@att.com> | COULTER, PETER I </O=sbc/OU=momail/cn=Recipients/cn=pc2312> | | | 6/30/2016 |

| | | | | | |
|---|---|---|---|---|---|
| 28 | | x | | | 6/30/2016 |
| 29 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A <rh7889@att.com> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | | 7/1/2016 |
| 30 | | x | | | 6/30/2016 |
| 31 | FLEMMING, JACQUELYNE <jw1196@att.com>; TOPONCE, MARK V <mt1581@att.com>; GALBRAITH GOOCH, TINA A (Legal) <tg2247@att.com>; TALBOT, JAMES (Legal) <jt8232@att.com>; BECK, ANN A (Legal) <ab7329@att.com>; SWART, BRYAN N <BS8432@att.com>; COLE, JILL D <jf2345@att.com>; CIESLAK, MATTHEW D <MC5995@att.com> | ROMANO, NENA M <nr1826@att.com> | COULTER, PETER I <pc2312@att.com>; SMITH, GARY E <gs1643@att.com> | | 10/10/2017 |
| 32 | | | | | 10/10/2017 |
| 33 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A <rh7889@att.com> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | | 6/29/2016 |

| | | | | |
|---|---|---|---|---|
| 34 | | | | 6/29/2016 |
| 35 | BECK, ANN A (Legal) <ab7329@att.com> | COULTER, PETER I </O=sbc/OU=momail/cn=Recipients/cn=pc2312> | | 7/24/2017 |
| 36 | | x | | 7/24/2017 |
| 37 | | x | | 7/24/2017 |
| 38 | | x | | 7/24/2017 |
| 39 | BURMAN, RICH <rb9439@att.com>; GALBRAITH GOOCH, TINA A (Legal) <tg2247@att.com> | ROMANO, NENA M <nr1826@att.com> | LE, TONY <dl3006@att.com>; COULTER, PETER I <pc2312@att.com>; FLYNN, MICHAEL E <mfl354@att.com>; BECK, ANN A (Legal) <ab7329@att.com>; SWART, BRYAN N <BS8432@att.com>; ABRAM, LARRY <la8840@att.com> | 4/27/2017 |
| 40 | GALBRAITH GOOCH, TINA A (Legal) <tg2247@att.com>; TALBOT, JAMES (Legal) <jt8232@att.com>; FLEMMING, JACQUELYNE <jw1196@att.com>; COULTER, PETER I <pc2312@att.com>; SMITH, GARY E <gs1643@att.com>; BECK, ANN A (Legal) <ab7329@att.com> | ROMANO, NENA M <nr1826@att.com> | TOPONCE, MARK V <mt1581@att.com>; SWART, BRYAN N <BS8432@att.com>; CIESLAK, MATTHEW D <MC5995@att.com>; COLE, JILL D <jf2345@att.com> | 10/27/2017 |
| 41 | | | | 10/27/2017 |
| 42 | | | | 10/27/2017 |
| 43 | | | | 10/27/2017 |
| 44 | | | | 10/27/2017 |
| 45 | | | | 10/27/2017 |

| | | | | |
|---|---|---|---|---|
| 46 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A <rh7889@att.com> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | 6/29/2016 |
| 47 | | | | 6/29/2016 |
| 48 | GANNON, JONATHAN W (Legal) <jg002g@att.com> | COULTER, PETER I </O=sbc/OU=momail/cn=Recipients/cn =pc2312> | | 1/6/2016 |
| 49 | | | | 1/6/2016 |
| 50 | Montgomery, Adam <Adam.Montgomery@fleishman.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; ROMANO, NENA M <nr1826@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; FELDSTEIN, DAN <DF0077@att.com>; KOBS, JEFFREY E <jk4097@att.com>; Richter, Marty <Marty.Richter@fleishman.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com> | HILL, RAY A <rh7889@att.com> | | 6/29/2016 |
| 51 | | | | 6/29/2016 |

| 52 | GALBRAITH GOOCH, TINA A (Legal) <tg2247@att.com>; COULTER, PETER I <pc2312@att.com>; FLYNN, MICHAEL E <mfl354@att.com>; ROMANO, NENA M <nr1826@att.com>; BECK, ANN A (Legal) <ab7329@att.com> | LE, TONY <dl3006@att.com> | BURMAN, RICH <rb9439@att.com>; SWART, BRYAN N <BS8432@att.com>; ABRAM, LARRY <la8840@att.com> | | 4/26/2017 |
| 53 | KLIMACEK, STEVE (Legal) <SK4060@att.com> | COULTER, PETER I </O=sbc/OU=momail/cn=Recipients/cn=pc2312> | VELTZ, THOMAS D (Legal) <tv459f@att.com>; MADER, KENT <kpmader@directv.com>; 'JEFFRIES, KEVIN (jj5306@att.com)' <jj5306@att.com> | | 6/29/2016 |
| 54 | HILL, RAY A <rh7889@att.com>; Montgomery, Adam <Adam.Montgomery@fleishman.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; ROMANO, NENA M <nr1826@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; FELDSTEIN, DAN <DF0077@att.com>; KOBS, JEFFREY E <jk4097@att.com>; Richter, Marty <Marty.Richter@fleishman.com>; KLIMACEK, STEVE (Legal) <SK4060@att.com>; MATA, JAIME (Legal) <JM5868@att.com> | TURNER, KRISTIN R (Legal) <kt8359@att.com> | | | 6/29/2016 |
| 55 | COULTER, PETER I <pc2312@att.com>; Montgomery, Adam <Adam.Montgomery@fleishman.com>; FELDSTEIN, DAN <DF0077@att.com>; HILL, RAY A <rh7889@att.com> | BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com> | ROMANO, NENA M <nr1826@att.com>; MINAIDES, MICHAEL L (Legal) <mm8806@att.com>; BEST, JOHN C <jb9013@att.com>; MURPHY, MICK <mm3133@att.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com>; KLIMACEK, STEVE (Legal) <SK4060@att.com> | | 4/11/2016 |

| | | | | |
|---|---|---|---|---|
| 56 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn =rh7889> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | 6/30/2016 |
| 57 | | x | | 6/30/2016 |
| 58 | LE, TONY <dl3006@att.com>; MICKLES, DIANE D <dd6570@att.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn =rh7889> | VELTZ, THOMAS D (Legal) <tv459f@att.com> | 6/29/2016 |
| 59 | | | | 6/29/2016 |
| 60 | VELTZ, THOMAS D (Legal) <tv459f@att.com>; SAGERSON, ANN N (Legal) <AS088W@att.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn =rh7889> | | 6/29/2016 |
| 61 | | x | | 6/29/2016 |
| 62 | HILL, RAY A <rh7889@att.com> | COLLINS, MARK S <MC6582@att.com> | SCHANZ, STEVEN <ss354w@att.com>; OSTAPOWER, TERESA L <to6542@att.com>; PARISIAN, PAM <pp7875@att.com>; HAIRSTON, DENO <bh7011@att.com>; HAYMONS, MATTHEW T <MH4705@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | 7/27/2016 |
| 63 | | | | 7/27/2016 |

| 64 | WESTON, LYSHA N (Legal) <lw3898@att.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn=rh7889> | TURNER, KRISTIN R (Legal) <kt8359@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; KLIMACEK, STEVE (Legal) <SK4060@att.com>; MCKINNEY, ADAM E (Legal) <am5493@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; MATA, JAIME (Legal) <JM5868@att.com>; LE, TONY <dl3006@att.com> | | 7/1/2016 |
| 65 | | x | | | 7/1/2016 |
| 66 | COLLINS, MARK S <MC6582@att.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn=rh7889> | YUNG-ENG, REBECCA <ry2571@att.com>; SCHANZ, STEVEN <ss354w@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com> | | 7/27/2016 |
| 67 | HILL, RAY A <rh7889@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; ROMANO, NENA M <nr1826@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; FELDSTEIN, DAN <DF0077@att.com>; KOBS, JEFFREY E <jk4097@att.com>; Richter, Marty <Marty.Richter@fleishman.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com>; SAGERSON, ANN N (Legal) <AS088W@att.com>; KLIMACEK, STEVE (Legal) <SK4060@att.com>; mediaissues <DL-mediaissues@att.com> | Montgomery, Adam <Adam.Montgomery@fleishman.com> | | | 6/30/2016 |
| 68 | | x | | | 6/30/2016 |

| | | | | |
|---|---|---|---|---|
| 69 | 'Montgomery, Adam' <Adam.Montgomery@fleishman.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; ROMANO, NENA M <nr1826@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; FELDSTEIN, DAN <DF0077@att.com>; KOBS, JEFFREY E <jk4097@att.com>; 'Richter, Marty' <Marty.Richter@fleishman.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com>; SAGERSON, ANN N (Legal) <AS088W@att.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn=rh7889> | | 6/30/2016 |
| 70 | | x | | | 6/30/2016 |
| 71 | HILL, RAY A <rh7889@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; ROMANO, NENA M <nr1826@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; FELDSTEIN, DAN <DF0077@att.com>; KOBS, JEFFREY E <jk4097@att.com>; Richter, Marty <Marty.Richter@fleishman.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com> | Montgomery, Adam <Adam.Montgomery@fleishman.com> | | 6/29/2016 |
| 72 | | x | | | 6/29/2016 |

| | | | | | |
|---|---|---|---|---|---|
| 73 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn =rh7889> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | | 6/29/2016 |
| 74 | | x | | | 6/29/2016 |
| 75 | BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; Montgomery, Adam <Adam.Montgomery@fleishman.com>; FELDSTEIN, DAN <DF0077@att.com>; HILL, RAY A <rh7889@att.com> | COULTER, PETER I <pc2312@att.com> | ROMANO, NENA M <nr1826@att.com>; MINAIDES, MICHAEL L (Legal) <mm8806@att.com>; BEST, JOHN C <jb9013@att.com>; MURPHY, MICK <mm3133@att.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com>; KLIMACEK, STEVE (Legal) <SK4060@att.com> | | 4/11/2016 |
| 76 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn =rh7889> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | | 6/29/2016 |
| 77 | | x | | | 6/29/2016 |
| 78 | LEWIS, JEFFREY E <jl2845@att.com>; SMITH, GARY E <gs1643@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com> | ROMANO, NENA M <nr1826@att.com> | HILL, RAY A <rh7889@att.com> | | 6/29/2016 |
| 79 | | | | | 6/29/2016 |

| 80 | COLLINS, MARK S <MC6582@att.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn=rh7889> | VELTZ, THOMAS D (Legal) <tv459f@att.com> | | 6/29/2016 |
|---|---|---|---|---|---|
| 81 | | | | | 6/29/2016 |
| 82 | | | | | 6/29/2016 |
| 83 | MAIRS, KEVIN <km0109@att.com>; COLLINS, MARK S <MC6582@att.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; adam.montgomery@fleishman.com <adam.montgomery@fleishman.com>; CAMPER, NATE <nc4197@att.com>; ROMANO, NENA M <nr1826@att.com>; SCHANZ, STEVEN <sdschanz@directv.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn=rh7889> | CHIARAMONTE, MICHAEL A <mc3707@att.com>; LE, TONY <dl3006@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; WESTON, LYSHA N (Legal) <lw3898@att.com>; RODRIGUEZ, SUSAN (Legal) <sr4896@att.com>; YUNG-ENG, REBECCA <ry2571@att.com> | | 7/1/2016 |
| 84 | | | | | 7/1/2016 |
| 85 | HILL, RAY A <rh7889@att.com> | BARRERA WAGGONER, ANA C <ab8965@att.com> | VELTZ, THOMAS D (Legal) <tv459f@att.com> | | 6/29/2016 |
| 86 | | | | | 6/29/2016 |
| 87 | 'Montgomery, Adam' <Adam.Montgomery@fleishman.com>; COULTER, PETER I <pc2312@att.com>; BARRERA WAGGONER, ANA C <ab8965@att.com>; ROMANO, NENA M <nr1826@att.com>; BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; VELTZ, THOMAS D (Legal) <tv459f@att.com>; FELDSTEIN, DAN <DF0077@att.com>; KOBS, JEFFREY E <jk4097@att.com>; 'Richter, Marty' <Marty.Richter@fleishman.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com> | HILL, RAY A </O=sbc/OU=momail/cn=Recipients/cn=rh7889> | | | 6/29/2016 |

| | | | | |
|---|---|---|---|---|
| 88 | | | | 6/29/2016 |
| 89 | BURCHETT-WILLIAMS, ALTRESHA (Legal) <ab493b@att.com>; Montgomery, Adam <Adam.Montgomery@fleishman.com>; FELDSTEIN, DAN <DF0077@att.com>; HILL, RAY A <rh7889@att.com> | COULTER, PETER I <pc2312@att.com> | ROMANO, NENA M <nr1826@att.com>; MINAIDES, MICHAEL L (Legal) <mm8806@att.com>; BEST, JOHN C <jb9013@att.com>; MURPHY, MICK <mm3133@att.com>; TURNER, KRISTIN R (Legal) <kt8359@att.com>; KLIMACEK, STEVE (Legal) <SK4060@att.com> | | 4/11/2016 |
| 90 | HILL, RAY A <rh7889@att.com> | BARRERA WAGGONER, ANA C <ab8965@att.com> | | | 7/1/2016 |
| 91 | | | | | 7/1/2016 |
| 92 | HILL, RAY A <rh7889@att.com> | BARRERA WAGGONER, ANA C <ab8965@att.com> | | | 7/1/2016 |
| 93 | | | | | 7/1/2016 |
| 94 | CHIARAMONTE, MICHAEL A <mc3707@att.com>; COULTER, PETER I <pc2312@att.com>; HILL, RAY A <rh7889@att.com> | LE, TONY <dl3006@att.com> | VELTZ, THOMAS D (Legal) <tv459f@att.com> | | 6/29/2016 |
| 95 | | | | | 6/29/2016 |

| Privilege Designation | Privilege Type | Privilege Description |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum from counsel, providing legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email prepared at the request of counsel in anticipation of, or in response to, litigation regarding current or pending litigation |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email reflecting or discussing a request to counsel regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, requesting legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email attached to email from counsel containing  information gathered at the request of counsel, regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Non-responsive attachment to email to counsel, providing information to facilitate the provision of legal advice regarding fraud investigation. |
| Privileged - Withhold | Attorney Client Communication | Non-responsive attachment to email to counsel, providing information to facilitate the provision of legal advice regarding fraud investigation. |
| Privileged - Withhold | Attorney Client Communication | Email from counsel, requesting information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email from counsel, requesting information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, requesting legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email attached to email from counsel containing  information gathered at the request of counsel, regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Non-responsive attachment to email to counsel, providing information to facilitate the provision of legal advice regarding fraud investigation. |
| Privileged - Withhold | Attorney Client Communication | Non-responsive attachment to email to counsel, providing information to facilitate the provision of legal advice regarding fraud investigation. |
| Privileged - Withhold | Attorney Client Communication | Email to counsel, requesting legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Attachment to email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email to counsel, requesting information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email from counsel, requesting information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) reflecting or discussing the legal advice of counsel regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Email and attachment(s) reflecting or discussing the legal advice of counsel regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| | | |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) to counsel, providing information to facilitate the provision of legal advice regarding public communications |

| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
|---|---|---|
| Privileged - Withhold | Attorney Client Communication | Email to counsel, providing information to facilitate the provision of legal advice regarding response to allegation(s) of SIM swap fraud |
| Privileged - Withhold | Attorney Client Communication | Email thread involving counsel, and email implementing revisions to memorandum providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email thread involving counsel, and email implementing revisions to memorandum providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication | Email and attachment(s) from counsel, requesting information to facilitate the provision of legal advice regarding public communications |
| Privileged - Withhold | Attorney Client Communication; Attorney Work Product | Memorandum attached to email to counsel, providing information to facilitate the provision of legal advice regarding public communications |

# EXHIBIT K



Timothy J. Toohey

D:  310.201.7450
F:  310.553.0687
TToohey@ggfirm.com
File Number: 83764-00002

May 11, 2022

**Via E-Mail (mmcrae@gibsondunn.com, ajohnson@gibsondunn.com)**

Ashley E. Johnson
Marcellus McRae
Jeremy Ochsenbein
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197

       Re:    Meet and confer RE AT&T Privilege Log-- Terpin v. AT&T (Case No. 2:18-CV-06975-ODW-KS)

Dear Ashley:

      We are writing regarding the manifest inadequacy and incompleteness of the privilege log that AT&T finally produced (after months of discussions among the parties) on May 9, 2022. Although you have been aware since last July that we contested AT&T's claims for privilege for its investigations of Mr. Terpin's January 2018 unauthorized SIM swap and that we were specifically seeking a privilege log that would include all of those documents so we could assess the adequacy of AT&T's privilege claims, AT&T has refused to log any documents after 2017, including any documents relating to any internal communications from 2018 forward that are responsive to our document requests for which AT&T claims privilege.

      We are writing to demand that you produce a complete privilege log, including a log listing all communications relating to the internal investigation that AT&T claims are privileged and all other responsive documents for which you claim privilege as soon as is possible.  We ask that you confirm by Friday (a) that you will provide a privilege log that supplements with listing all withheld documents not exchanged exclusively with outside counsel; (b) a proposed date by which service of the log will occur; and (c) the number of additional documents that will be logged, which will provide us the basis for us to assess the reasonableness of the proposed date of production.  Prompt attention to these matters is necessary so that we can promptly meet and confer before bringing this to the attention of the Magistrate Judge.  Moreover, as noted below, AT&T's continued failure to produce a complete privilege log may constitute waiver of its claims of privilege and is sanctionable under Rule 37(b)(2) of the Federal Rules of Civil Procedure.

      There was no agreement by us that documents relating to AT&T's internal investigations and other internal communications that AT&T claims are privileged did not have to be logged on a privilege log.  To the contrary, Mr. Terpin's document requests asked (as is required by Rule 26(b)(5)) that all responsive documents that AT&T claims are privileged be listed on a privilege log.  Moreover, we made it abundantly clear in several discussions since last July that we

Marcellus McRae
Ashley Johnson
May 11, 2022
Page 2

specifically needed to have all documents relating to internal investigations of the unauthorized SIM swap listed on the log so that we could assess and potentially challenge what we believe may be overbroad and inadequate claims of privilege.   The only omissions from the privilege log to which we are amenable are for communications that were solely between an AT&T client representative (such as Ms. Okcu) and outside litigation counsel that occurred after Mr. Terpin's demand letter to AT&T on March 19, 2018, assuming that this exception also pertains to Mr. Terpin's communications with his outside counsel.  This agreement would not pertain to communications copied to third parties or to AT&T personnel other than client representatives.

Production of the information typically contained in a privilege log is required by the Federal Rules of Civil Procedure.  Rule 26(b)(5) provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

AT&T also undoubtedly has the burden of proof regarding its assertions of privilege. *See In re Grand Jury Investigation*  974 F.2d 1068, 1070 (9th Cir. 1992).  To meet this burden AT&T must make a *prima facie* showing that the privilege protects the information that it intends to withhold. *Id.* at 1070-1071.  A privilege log identifying documents for which privilege is claimed and providing basic information about the documents is a first step in this process. *Teradata Corp. v. SAP SE*, No. 18-cv-03670-WHO (EDL) (N.D.Cal. Sep. 9, 2019)) 2019 U.S. Dist. LEXIS 232053, at *75.  The purpose of a privilege log is "to help courts and litigants determine the sufficiency of the claimed privilege." *Christensen v. Goodman Distrib., Inc.*, No. 2:18-cv-02776-MCE-KJN) 2020 U.S. Dist. LEXIS 126467 (E.D.Cal. July 17, 2020), at *9-10; *see also Waymo LLC v. Uber Techs., Inc.*  319 F.R.D. 284, 288 (N.D.Cal. 2017).  ("The purpose of a privilege log in our federal system is to list the materials withheld under any claim of privilege and to specify certain time-honored particulars as to each item withheld. This is the first step in the process of adjudicating a claim of privilege") (emphasis added).

Mere assertion of the privilege claim in document objections or (in this case, a cover e-mail asserting that documents will not be logged after a certain date) does not provide the information required by Rule 26(b)(5).  *See Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist Court for the Dist. Of Mont.*, 408 F.2d 1142, 1147 (9th Cir. 2005) ("a general, boilerplate assertion of an evidentiary privilege in response to a discovery request does not satisfy the demands of Rule 26(b)(5) and Rule 34, read together, and is not a proper assertion of the privilege").  Indeed the failure, as here, of a party to provide proper notice of the basis of a privilege under Rule 26(b)(5) may lead to a finding that the privilege has been waived and subject the party to discovery sanctions.  *Id.* (withholding materials without satisfying Rule 26(b)(5) subjects a party to sanctions under Rule 37(b)(2) "'and may be viewed as a waiver of the privilege or protection.'" (quoting advisory committee comments to the amendments to Rule 26).  *See also Stagger v. Experian Information Solutions, Inc.*, 2021 WL 5299791, *5 (N.D. Ill. 2021) (boilerplate general privilege objections are the same as "no objection at all," are not the

GreenbergGlusker.com

Marcellus McRae
Ashley Johnson
May 11, 2022
Page 3

equivalent of a privilege log and may constitute a "waiver of the privilege as to the unlogged documents").

Although the production of a complete privilege log is an <u>initial</u> requirement for AT&T in the process of establishing its claims of privilege, it does not in and of itself meet AT&T's burden of proof of establishing that the documents are privileged. *United States v. Lonich* (N.D.Cal. May 2, 2016, No. 14-cr-00139-SI-1) 2016 U.S. Dist. LEXIS 58829, at *8. Even after it provides a complete privilege log, AT&T still has the burden of proof in substantiating its claim of privilege when challenged by Mr. Terpin.

In this case, AT&T has not even satisfied the "first step" in the process for meeting its burden of proof because it has arbitrarily omitted from the log documents after 2017, including documents relating to its vaunted (and allegedly privileged) internal investigations of the January 7, 2018 unauthorized SIM swap.  The failure to list those documents is particularly egregious because AT&T knew that we had specifically requested a log of those documents so that we could evaluate what we suspect are overbroad or unfounded privilege claims.  Obviously, we cannot simply "take AT&T's word" for its assertions of privilege at this point after we have been disputing its privilege assertions for months.  We must have a means of evaluating those claims of privilege in the context of who initiated the communications, to whom the communications were copied, when the communications were made, and other basic facts that are typically included on the privilege log.

Even more seriously, by not providing a privilege log, AT&T has waived its privilege as to the documents that it has refused to log.  We therefore reserve our right to move to compel the production of the withheld documents that have not been logged and are not exclusively with litigation counsel from 2018 onwards on the grounds that AT&T has failed to satisfy its burden and has waived privilege.

We request that you promptly provide a response to this letter, including the materials requested above, by this coming Friday.  We further reserve our right to seek sanctions against AT&T for its abuse of the discovery process and to compel production of any unlisted documents for any continued failure to produce an adequate and complete privilege log.

Sincerely,

Timothy J. Toohey
Paul Blechner

TJT

GreenbergGlusker.com