MARCELLUS A. MCRAE, SBN 140308
  mmcrae@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

ASHLEY E. JOHNSON, admitted *pro hac vice*
  ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Dallas, TX  75201
Telephone:  214.698.3100
Facsimile:  214.571.2949

Attorneys for Defendant
AT&T Mobility LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TERPIN,<br><br>              Plaintiff,<br><br>       v.<br><br>AT&T MOBILITY LLC; and DOES 1-25,<br><br>              Defendants. | Case No. 2:18-cv-06975-ODW-KS<br><br>**DEFENDANT AT&T MOBILITY LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br>[F.R.C.P. 56]<br><br>**<u>REDACTED VERSION OF DOCUMENT FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED JANUARY 9, 2023</u>**<br><br>[*Separate Statement of Uncontroverted Facts and Conclusions of Law, Declaration of Jeremy S. Ochsenbein, Declaration of Carl Brian Rexroad, Declaration of Joseph Morella, [Proposed] Order, and [Proposed] Judgment lodged concurrently herewith*]<br><br>Hearing Date:  February 27, 2023<br>Time: 1:30 p.m.<br>Pretrial Conference:  April 10, 2023<br>Trial: May 2, 2023<br>Judge: Hon. Otis D. Wright II |

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 1:30 p.m. on February 27, 2023, before the Honorable Otis D. Wright II, United States District Court Judge, in Courtroom 5D, at 350 West 1st Street, 5th Floor, Los Angeles, California 90012, Defendant AT&T Mobility LLC ("AT&T" or "Defendant") will and hereby does move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment as to all claims asserted in Plaintiff Michael Terpin's Second Amended Complaint. This Motion is made on the following grounds:

(1)  Terpin's negligence, negligent supervision and training, and negligent hiring claims are barred by the economic loss doctrine as clarified by the California Supreme Court in *Sheen v. Wells Fargo, N.A.*, 12 Cal.5th 905, 923 (2022);

(2)  Terpin's claim under the Federal Communication Act fails because Terpin has failed to establish that AT&T disclosed any personal confidential information addressed by 47 U.S.C. § 222(a) and (c) or that an individual accessed such information without the authority to do so, *see Van Buren v. United States*, 141 S. Ct. 1648, 1652 (2021);

(3)  Terpin cannot establish his breach of contract claims because the damages sought are not recoverable as consequential damages under California law and are barred by the explicit language of the parties' agreement;

(4)  The chain of causation between AT&T's purported conduct and Terpin's loss of cryptocurrency is too attenuated for AT&T's purported conduct to be a proximate cause of that loss as a matter of law; and

(5)  Terpin's declaratory relief claim is moot.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities that follows, the Separate Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Jeremy S. Ochsenbein in Support of AT&T's

Motion for Summary Judgment, the Declaration of Joseph Morella in Support of AT&T's Motion for Summary Judgment, the Declaration of Carl Brian Rexroad in Support of AT&T's Motion for Summary Judgment, all pleadings and records on file in this action, and any other arguments and evidence presented to this Court at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place via Zoom on October 24, 2022.

Dated: December 22, 2022                    Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Jeremy S. Ochsenbein*
    Jeremy S. Ochsenbein

Attorney for Defendant
AT&T MOBILITY LLC

# <u>TABLE OF CONTENTS</u>

Page

I. INTRODUCTION ................................................................................. 1

II. FACTUAL BACKGROUND ................................................................ 3

   A. SIMs and "SIM Swaps" ............................................................ 3

   B. Cryptocurrency ........................................................................... 3

   C. AT&T's Relationship with Terpin Prior to January 7, 2018 ..... 3

   D. The Relevant Agreements and Policies ..................................... 4

      1. Wireless Customer Agreement ....................................... 4

      2. AT&T's Privacy Policy .................................................. 4

   E. Terpin's Causation Theory for the January 7, 2018 Incident ... 5

   F. Terpin's Litigation Against the Alleged Perpetrators ............... 7

   G. Pinsky Testifies Regarding the Thefts ...................................... 7

   H. Terpin's Claims Against AT&T ................................................. 8

III. LEGAL STANDARD .......................................................................... 9

IV. ARGUMENT ....................................................................................... 9

   A. Terpin's Negligence Claims Are Barred by the Economic Loss Rule as Recently Clarified by the California Supreme Court ... 9

   B. Terpin Cannot Establish a Violation of the Federal Communications Act ............................................................... 11

      1. No CPNI Was Disclosed to Any Third Party .............. 11

      2. No Violation of the FCA Occurs When Authorized Individuals Access an Account for an Improper Purpose ... 12

   C. Terpin Cannot Recover Damages Under a Breach of Contract Theory ...................................................................................... 14

   D. Terpin Cannot Establish Proximate Causation Under Any Theory of Liability ................................................................... 15

   E. Terpin's Declaratory Relief Claim Should Be Dismissed ...... 20

V. CONCLUSION .................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Alexander v. Comm. Hosp. of Long Beach*,
  46 Cal. App. 5th 238 (2020) ...................................................................... 6

*Alfasigma USA, Inc. v. First Databank, Inc.*,
  2002 WL 899848 (N.D. Cal. Mar. 28, 2022) .......................................... 19

*Allen v. Wright*,
  468 U.S. 737 (1984) .................................................................................. 19

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................................... 15

*Biakanja v. Irving*,
  49 Cal. 2d 647 (1958) ................................................................................ 9

*Bordon v. Horwitz*,
  2012 WL 6618196 (C.D. Cal. Dec. 19, 2012) ........................................ 21

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.*,
  226 Cal. App. 3d 442 (1990) ................................................................... 14

*Call One, Inc. v. Anzine*,
  2018 WL 2735089 (N.D. Ill. Jun. 7, 2018) ............................................. 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................... 9

*City and County of San Francisco v. Purdue Pharma L.P.*,
  491 F. Supp. 3d 610 (N.D. Cal. 2020) ..................................................... 17

*City of Oakland v. Wells Fargo & Co.*,
  14 F.4th 1030 (9th Cir. 2021) .................................................................. 17

*Copenbarger v. Morris Cerullo World Evangelism*,
  29 Cal.App.5th 1 (2018) .......................................................................... 14

*Darnaa, LLC v. Google, Inc.*,
  236 F. Supp. 3d 1116 (N.D. Cal. 2017) ................................................... 15

*Erlich v. Menezes*,
  21 Cal.4th 543 (1999) .............................................................................. 10

*Fields v. Twitter, Inc.*,
  881 F.3d 739 (9th Cir. 2018) ................................................................... 17

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
  209 Cal.App.4th 1118 (2012) .................................................................. 15

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**

*(continued)*

Page(s)

*Hemi Group, LLC v. City of New York, N.Y.,*
559 U.S. 1 (2010).................................................................17, 18, 19

*Holmes v. Securities Investor Protection Corp.,*
503 U.S. 258 (1992).............................................................16, 17, 18

*ICG Commc'ns. Inc. v. Allegiance Telecom,*
211 F.R.D. 610 (N.D. Cal. 2002) ..........................................17

*J'Aire Corp. v. Gregory,*
24 Cal. 3d 799 (1979) ...........................................................9

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified School Dist.,*
34 Cal.4th 960 (2004) ...........................................................2, 14

*Lewis v. YouTube LLC,*
244 Cal.App.4th 118 (2015) .................................................15

*Lexmark Intern. v. Static Control Components, Inc.,*
572 U.S. 118 (2014)..............................................................16, 19

*Maupin v. Widling,*
192 Cal.App.3d 568 (1987) ..................................................16

*Modisette v. Apple Inc.,*
30 Cal.App.5th 136 (2018) ...................................................18, 19

*Moore v. Centrelake Med. Group, Inc.,*
83 Cal.App.5th 515 (2022) ...................................................10

*Novak v. Continental Tire N. Am.,*
22 Cal.App.5th 189 (2018) ...................................................17

*Paroline v. U.S.,*
577 U.S. 434 (2014)..............................................................2, 17

*S. California Painters & Allied Trads, Dist. Council No. 36 v. Rodin & Co.,*
558 F.3d 1028 (9th Cir. 2009) ..............................................20

*Scott v. Pasadena Unified School Dist.,*
306 F.3d 646 (9th Cir. 2002) ................................................20

*Sheen v. Wells Fargo, N.A.,*
12 Cal.5th 905 (2022)...........................................................1, 9, 10

*Shih v. Starbucks Corp.,*
53 Cal. App. 5th 1063 (2020) ...............................................19, 20

*State Dept. of State Hosps. v. Superior Ct.,*
61 Cal.4th 339 (2015)...........................................................16

Gibson, Dunn & Crutcher LLP

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Steinle v. United States,*
   17 F.4th 819 (2021) ................................................................................ 19

*U.S. Ecology, Inc. v. State of Calif.,*
   129 Cal.App.4th 887 (2005) ................................................................. 16

*U.S. West, Inc. v. F.C.C.,*
   182 F.3d 1224 (10th Cir. 1999) ........................................................... 12

*United States Parole Comm'n v. Geraghty,*
   445 U.S. 388 (1980) ............................................................................. 20

*Van Buren v. United States,*
   141 S. Ct. 1648 (2021) .................................................................... 12, 13

*Vasilenko v. Grace Family Church,*
   3 Cal.5th 1077 (2017) .......................................................................... 16

*Wawanesa Mutual Ins. Co. v. Matlock,*
   60 Cal.App.4th 583 (1997) ............................................................. 2, 17

**Statutes**

18 U.S.C. § 1030(a)(2) ................................................................................ 13

47 U.S.C. § 206 ............................................................................................. 8

47 U.S.C. § 222 ............................................................................................. 8

47 U.S.C. § 222(a) ................................................................................. 11, 12

47 U.S.C. § 222(c)(1) ................................................................................. 11

47 U.S.C. § 222(h)(1) ..................................................................... 3, 11, 12

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................... 9

**Regulations**

47 C.F.R. § 0.1 *et seq.* ................................................................................ 12

47 C.F.R. § 64.2011(e) ............................................................................... 13

## I.    INTRODUCTION

Plaintiff Michael Terpin asks this Court to impose an affirmative duty on AT&T Mobility LLC ("AT&T") to protect everything a customer links to his phone number from third-party theft for the same cost of its basic telephone service, and notwithstanding AT&T's inability to know the existence of, or to safeguard against unauthorized access to, these other linked accounts. Such a duty appears to be unprecedented under the laws of any jurisdiction in the United States. A SIM swap does not automatically lead to a loss of cryptocurrency—it only provides access to a phone number on a going-forward basis. Additional steps must be taken to access accounts holding the access credentials for cryptocurrency and then steal the cryptocurrency. And a theft can only occur in this remote electronic way when the cryptocurrency owner makes his phone number a means of accessing where the cryptocurrency access credentials are stored. Here, the chain of events Terpin recounts to explain the theft of his cryptocurrency can only charitably be described as a Rube Goldberg-esque series of happenstances. None of Terpin's claims has any legal merit.

- ***First***, Terpin cannot recover the claimed damages under his various negligence theories as a matter of law. The California Supreme Court recently held in *Sheen v. Wells Fargo, N.A.*, 12 Cal.5th 905 (2022), that, under the economic loss doctrine, tort claims "are ***barred*** when they arise from" a contractual relationship, *id.* at 923 (emphasis added), which Terpin's claims plainly do.

- ***Second***, Terpin cannot recover damages based on purported violations of Section 222 of the Federal Communications Act ("FCA"). Section 222, which applies to "customer proprietary network information" or "CPNI"—i.e., "information that relates to the quality, technical configuration, type, destination, location, and amount of use of a telecommunications service . . . that is made available to the carrier solely by virtue of the carrier-customer relationship" as well as "information contained in the bills pertaining to

telephone exchange service or telephone toll service" other than subscriber list information. 47 U.S.C.§ 222(h)(1). A SIM swap does not disclose any such information, it merely transfers a phone number from one SIM to another. A telephone number is not CPNI, and Terpin's phone number was publicly available prior to the thefts.

- ***Third***, Terpin cannot recover these damages through a breach of contract claim. While AT&T disputes *any* breach occurred, even if one *had*, the damages Terpin claims are barred by both California law and the terms of the Wireless Customer Agreement ("WCA"). A party can only recover consequential damages if the "circumstances from which they arise were actually communicated to or known by the breaching party" or "were [a] matter of which the breaching party should have been aware at the time [of] contracting." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified School Dist.*, 34 Cal.4th 960, 968–69 (2004). Terpin ***never*** informed AT&T of his cryptocurrency holdings. And Terpin's alleged damages are precluded by the explicit terms of the WCA.

- ***Finally***, the attenuated and fortuitous connection between the damages claimed and AT&T's conduct precludes a finding of proximate cause as a matter of law. *Paroline v. U.S.*, 577 U.S. 434, 445 (2014) (proximate cause "serves, *inter alia*, to preclude liability in situations where the causal link between the conduct and result is so attenuated that the consequence is more aptly described as mere fortuity."); *Wawanesa Mutual Ins. Co. v. Matlock*, 60 Cal.App.4th 583, 588 (1997) (rejecting proximate cause based on a "Rube Goldbergesque system of fortuitous linkages").

As such, Terpin cannot recover damages from AT&T for the theft of cryptocurrency here. And given that he is not entitled to these damages as a matter of law, Terpin's declaratory relief claim is moot. Accordingly, summary judgment should be granted in AT&T's favor.

## II.    FACTUAL BACKGROUND

### A.    SIMs and "SIM Swaps"

A SIM (subscriber identity module) is an integrated circuit microchip in a mobile device that enables a device to authenticate to a wireless network. AT&T's Statement of Uncontroverted Facts and Conclusions of Law ("UF") No. 1. A SIM enables a mobile device to be associated with a specific phone number and customer account. UF 2. The wireless network uses the SIM identification information to associate the device with a phone number to help route communications, as well as associating the service with a customer account. UF 2.

When a "SIM swap" occurs, the phone number becomes associated with a different SIM. UF 3. Any information contained on the previous SIM is not transferred to the new SIM. UF 3.

### B.    Cryptocurrency

A cryptocurrency wallet is an application that holds the private keys that are necessary to access or transact cryptocurrency. UF 4. Wallets do not physically hold cryptocurrency, but rather the means to engage in transactions. UF 5. Wallets—including the wallets for the three coins at issue here—can only be accessed when the user inputs the appropriate access credentials (e.g., a seed phrase, password, or passphrase). UF 6. The protection of those access credentials is the responsibility of the holder of cryptocurrency. Declaration of Jeremy S. Ochsenbein ("Ochsenbein Decl."), Ex. A at 123:2–7, 127:5–15.

### C.    AT&T's Relationship with Terpin Prior to January 7, 2018

Terpin claims he has used his 310 phone number since approximately 1996. UF 9. Terpin alleges that in 2011 he transferred the AT&T wireless account for that number from his wife to himself. Dkt. 42, ¶ 112. Prior to January 7, 2018, AT&T was not aware that Terpin possessed cryptocurrency or had connected the 310 number to his cryptocurrency. UF 11. However, Terpin has acknowledged that the 310 number had been published online prior to that date. UF 12.

**D.     The Relevant Agreements and Policies**

**1.     Wireless Customer Agreement**

Like all AT&T customers, Terpin's relationship with AT&T is governed by AT&T's WCA. UF 14. The WCA also incorporates other AT&T policies and terms, including AT&T's Privacy Policy. UF 14. Under the WCA, the customer pays a monthly charge for the Services described in the Customer Services Summary. Ochsenbein Decl., Ex. C, § 1.1. Additionally, Sections 5 and 6 of the WCA describe the voice and data services provided by AT&T. *Id.*, §§ 5–6.

The WCA identifies various limitations on service and liability. *Id.*, § 4. Among these limitations is the following limitation of liability set forth in section 4.1:

> Unless prohibited by law, AT&T isn't liable for any indirect special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, Services, Software, or Devices provided by or through AT&T, including loss of business or goodwill, revenue or profits, or claims of personal injuries.

UF 16.

**2.     AT&T's Privacy Policy**

AT&T's Privacy Policy is incorporated in the WCA. The Privacy Policy applies to a customer's "use of all products, services and websites offered by AT&T and [its] AT&T affiliates" and covers AT&T's "practices regarding the information [it] collect[s] about [its] customers and users." Ochsenbein Ex. D at 1, 4. The Privacy Policy expressly acknowledges that "no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." *Id.* at 12. Further, the Privacy Policy specifically defines CPNI as follows:

> "CPNI" is information about your phone service from us. Your phone service could be a cell phone or any sort of home or business phone. The "information" is things like what kind of services you have, how you use them, or billing information. **(Your telephone number, name and address are not considered CPNI.)**

Gibson, Dunn & Crutcher LLP

1   UF 17 (emphasis added).[1]

2   **E.     Terpin's Causation Theory for the January 7, 2018 Incident**

3   ███████████████████████████████████████████████████████

4   ███████████████████████████████████████████████████████

5   ████  UF 8. ████████████████████████████████████████████

6   ███████████████████████  UF 18. ██████████████████████████

7   ███████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████

9   ██████████████████████████  UF 19. Terpin has not claimed his wallets could be

10  accessed directly through a phone number.

11  ███████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████

13  ██████████████████████████████████████████  UF 20.

14  ████████████████████████████████████  UF 22. Terpin never

15  mentioned this practice in contemporaneous emails, including to law enforcement

16  authorities. Ochsenbein Decl., Exs. F & G.

17  ███████████████████████████████████████████████████████

18  ████████████████████████████████████████████████  UF

19  23. ████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████

21  ████████  UF 24. ████████████████████████████████████████

22  ███████████████████████████████████████████████████████

23  ████████  Ochsenbein Decl., Ex. A at 67:25–69:9. ██████████

24  

25  

26  [1]   Terpin has also claimed that AT&T breached a promise contained in its Code of Business Conduct.
27  Dkt. 42, ¶ 208. All of Terpin's breach of contract claims fail for the reasons discussed below as
     Terpin cannot recover the damages he seeks under any breach of contract theory.

28  

Gibson, Dunn &
Crutcher LLP



*Id.*

On January 7, 2018, Terpin claims an employee at an AT&T retail store,[2] after being bribed by the thieves, completed an unauthorized SIM swap that provided the thieves with access to the 310 number. Dkt. 42, ¶¶ 8, 11, 12. UF 31; Ochsenbein Decl., Ex. B [Supp. Resp. to Interrogatory No. 5]. UF 27. AT&T never knew, or had any way to know, about any such association in the first place. UF 28. UF 30. UF 31, 32. UF 32. UF 24. Terpin claims the perpetrators then accessed and transferred the Three Coins to accounts they possessed. Dkt. 42, ¶ 96.

---

[2]   Spring Communications, not AT&T, operated the retail store and hired the employee. Declaration of Joseph Morella, ¶ 4. AT&T is not responsible for the actions of Spring Communications, *Alexander v. Comm. Hosp. of Long Beach*, 46 Cal.App.5th 238, 253 (2020), but such a finding is not necessary to grant this motion.

Terpin claims the value of the assets stolen was approximately $24 million at the time of the theft, ███████████████████████████ Ochsenbein Decl., Ex. A at 347:1–7; *id.*, Ex. B [Resp. to Interrogatory No. 6]. Prior to January 7, 2018 AT&T was unaware of: (i) Terpin's cryptocurrency holdings, UF 11; (ii) any potential linkage between the 310 number and his access credentials, UF 11, 28; (iii) ████████ ███████████████████████████████████████████ ███████████████████ Ochsenbein Decl., Ex. A at 235:1–237:13; and (iv) ███████ ███████████████████ UF 22, 29.

## F.    Terpin's Litigation Against the Alleged Perpetrators

Terpin sued Nicholas Truglia and Ellis Pinsky—two of the individuals who he claims were behind the theft of his cryptocurrency—for damages. On April 30, 2019, a California court awarded Terpin an over-$75 million default judgment, including nearly $22 million in compensatory damages, against Truglia. Ochsenbein Decl., Ex. H. Truglia also was sentenced to 18 months in prison and ordered to pay over $20 million in restitution relating to the theft of Terpin's cryptocurrency on December 1, 2022. *Id.*, Ex. I. On October 14, 2022, in litigation Terpin brought against Pinsky, the parties filed a request for a stipulated judgment, with Pinsky agreeing to a judgment in the amount of $22 million—with the understanding that Pinsky could reduce that judgment by cooperating in this litigation. *Id.*, Ex. J.

## G.    Pinsky Testifies Regarding the Thefts

Pinsky was deposed on November 18, 2022. Pinsky testified that he and his cohorts knew Terpin's phone number "prior to the SIM swap." UF 13. Pinsky stated that the only thing they obtained from AT&T by virtue of the SIM swap was access to Terpin's phone number "[o]n a going-forward basis"—i.e., the ability to "receive calls [and] text messages." UF 35. AT&T did not provide any information about who Terpin was calling in the past or where those calls were made. UF 35. Pinsky confirmed that a SIM swap alone would not result in any loss of cryptocurrency unless the access credentials were saved in an Internet-accessible location. UF 37. Pinsky also testified

that a potential thief cannot "ascertain cryptocurrency just by conducting a SIM swap," but that "additional steps"—namely, "gain[ing] access to an account where the wallet credentials were stored"—are required to gain access to cryptocurrency. UF 38. Terpin had not secured certain corporate Gmail accounts with 2FA because "it became cumbersome." UF 42. Pinsky indicated that he was aware that Terpin's Gmail accounts were unprotected by 2FA prior to the SIM swap. UF 40. Nevertheless, Pinsky stated there was a "hope, but not [an] expectation," that SIM-swapping Terpin's phone would result in a successful theft; he "went in with an understanding that [he] might get nothing out of it." Ochsenbein Decl., Ex. K at 283:5–17.

Indeed, Pinsky initially believed the effort was "going to be a dud" because they did not immediately find any access credentials stored directly in Terpin's Gmail accounts. Ochsenbein Decl., Ex. K at 250:1–14. However, Pinsky found an email address referenced in one of Terpin's Gmail accounts that enabled him to access Terpin's Microsoft account. UF 43. When Pinsky then examined Terpin's Microsoft account, he found a "text" document with a filename that "gave of some sort of feeling that there were passwords or keys in it," such as "Passwords," "Keys," or a reference to "some sort of credentials." Ochsenbein Decl., Ex. K at 243:9–21. Pinsky stated that the file contained access credentials for 10–12 cryptocurrency wallets, including for the Three Coins. *Id.* at 246:19–247:3.

## H.    Terpin's Claims Against AT&T

Terpin initially filed suit against AT&T on August 15, 2018 asserting 16 separate causes of action and seeking $24 million in compensatory damages plus $216 million in punitive damages. Dkt. 1. Following AT&T's motions to dismiss, Terpin's remaining claims are for declaratory relief, violation of the FCA (47 U.S.C. §§ 206, 222), negligence, negligent supervision and training, negligent hiring, and breach of contract. Dkt. 29, 37, 49. The Court dismissed Terpin's punitive damages claims without prejudice for failure to "successfully allege malice." Dkt. 49 at 13. This Motion addresses Terpin's remaining claims.

### III.   LEGAL STANDARD

A party may move for summary judgment identifying "the part of each claim or defense [] on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not produce evidence "negating the opponent's claim," but need only show an absence of admissible evidence supporting an essential element of the claim. *Id.* at 323.

### IV.   ARGUMENT

**A.     Terpin's Negligence Claims Are Barred by the Economic Loss Rule as Recently Clarified by the California Supreme Court**

None of Terpin's negligence-based claims against AT&T are cognizable as a matter of law. This Court previously held that "Terpin ha[d] adequately pleaded a 'special relationship' with AT&T," and that such a relationship precluded application of the economic loss doctrine under California law, relying on *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979). Dkt. 37 at 7–9. But the California Supreme Court's recent decision in *Sheen v. Wells Fargo, N.A.*, 12 Cal.5th 905 (2022)—decided after the resolution of the motion to dismiss in this case—clarified that the "special relationship" test set forth in *J'Aire* and its predecessor *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958) "does not displace the contractual economic loss rule when that rule squarely applies." 12 Cal.5th at 937, 940. The court held that "*Biakanja* does not apply when the plaintiff and defendant are in contractual privity for purposes of the suit at hand." *Id*. at 937. Indeed, even when a negligence claim does not stem directly "from the breach of an obligation provided for in the contract," the "special relationship" test "cannot be coherently applied" to establish an exception to the economic loss doctrine where, as here, the plaintiff and defendant are in contractual privity. *Id.* at 941.

Gibson, Dunn &
Crutcher LLP

Further, the *Sheen* court clarified that tort claims are "***barred*** [by the economic loss rule] when they arise from—or are not independent of—the parties' underlying contracts." 12 Cal.5th at 923 (emphasis added); *Moore v. Centrelake Med. Group, Inc.*, 83 Cal.App.5th 515 (2022). Thus, when there is a contractual relationship with the alleged tortfeasor, a party cannot recover tort damages unless "the duty that gives rise to tort liability is either ***completely independent*** of the contract or arises from conduct which is both intentional and intended to harm." *Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999) (emphasis added). Where this test is not met, the "special relationship" exception to the economic loss rule no longer exists under California law. *Sheen*, 12 Cal.5th at 937.

Here, Terpin's tort claims "arise from" a quintessentially contractual relationship, *Sheen*, 12 Cal.5th at 923, involving the "provision of mobile telephone services" under the terms of AT&T's WCA, UF 14, 15. Terpin claims to have first entered into a contractual relationship with AT&T in approximately 1996, UF 9, and had entered into the operative agreement with AT&T by at least 2011, UF 10. In fact, Terpin's "special relationship" argument is premised on the assertion that he "undoubtedly had a contract for services with AT&T where he and AT&T were in contractual privity." Dkt. 42, ¶ 104. And AT&T's alleged conduct—negligently providing third parties access to Terpin's telephone number—is clearly related to the parties' contractual relationship. *See, e.g.*, Dkt. 42, ¶¶ 12, 76, 95, 96. Put simply, Terpin's claims arise from the performance of the parties' contractual relationship. Indeed, unlike the plaintiff in *Sheen*, Terpin has asserted breach of contract claims addressing the very conduct underlying his tort claims.

Accordingly, because they "arise from" and are not "independent of" the parties' contractual relationship—and because *Sheen* clarified that a "special relationship" cannot exist where the parties are in privity—Terpin's negligence-based claims are barred by the economic loss rule.

**B.     Terpin Cannot Establish a Violation of the Federal Communications Act**

    **1.     No CPNI Was Disclosed to Any Third Party**

Terpin likewise cannot establish a violation of section 222 of the FCA. At the pleading stage, when allegations must be construed in Terpin's favor, the Court found Terpin had "sufficiently alleged that AT&T permitted unauthorized access to his proprietary information, specifically his account information and private communications." Dkt. 29 at 10. The landscape has now changed: ███████ Pinsky testified that the only thing transferred via the SIM swap was access to Terpin's phone number "on a going-forward basis." UF 34, 35. With this clarification, the Court can move beyond mere allegations about missing "proprietary information" to the application of both section 222 and the WCA, which indisputably show that no information protected under section 222 was improperly disclosed by AT&T.

Here, there is no evidence the alleged SIM swap led to disclosure of any information protected by section 222. In its preamble, section 222 sets forth "a duty to protect ***the confidentiality*** of proprietary information" of customers. 47 U.S.C. § 222(a) (emphasis added). Thereafter, the statute establishes specific limitations on the disclosure of certain types of customer information, including "individually identifiable customer proprietary network information [CPNI]" that a provider has "receive[d] or obtain[ed] . . . by virtue of its provision of a telecommunications service." 47 U.S.C. § 222(c)(1). CPNI is defined as:

> (A) information that relates to the quantity, technical configuration, type, destination, location and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, as that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and
>
> (B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier[.]

*Id.*, § 222(h)(1).

████████████████████████████████████████████████████████

███████████████████████████████ UF 34. Pinsky also confirmed that he and his fellow perpetrators only obtained access to Terpin's phone number "[o]n a going-forward

basis"—and not any information regarding "who Terpin was calling in the past or where he was calling from." UF 35. Notably, "the statutory definition of CPNI makes no mention of account telephone numbers." *Call One, Inc. v. Anzine*, 2018 WL 2735089, at *9 n.9 (N.D. Ill. Jun. 7, 2018). A telephone number provides no information about the "quantity, technical configuration, type, destination, location and amount of use"; nor is it information "made available to the carrier by the customer." 47 U.S.C. § 222(h)(1); *U.S. West, Inc. v. F.C.C.*, 182 F.3d 1224, 1235 (10th Cir. 1999) ("CPNI includes information that is extremely personal to customers" such as "to whom, where, and when a customer places a call," and "the types of service offerings to which the customer subscribes."). Thus, even if a SIM swap disclosed a customer's phone number, it would not violate section 222(c).

Section 222(a) also refers to confidential "proprietary information"—a term that this Court previously recognized is not defined by the statute. 47 U.S.C. § 222(a); Dkt. 29 at 9. Nor is it defined by the FCC's regulations. *See generally* 47 C.F.R. § 0.1 *et seq.* To the extent the term applies to something other than CPNI, there is no reason to understand that term to include a phone number or access to a phone number. Indeed, when Terpin entered into the WCA, he specifically agreed to its terms of the Privacy Policy *excluding* phone numbers from the definition of CPNI. UF 14, 17.

Regardless, both sections 222(a) and (c) apply only if information is confidential, but Terpin's 310 number was publicly available on the Internet, including due to actions taken by Terpin himself. UF 12. And Pinsky confirmed he knew Terpin's phone number "prior to the SIM swap." UF 13. Accordingly, there can be no violation of section 222.

### 2.   No Violation of the FCA Occurs When Authorized Individuals Access an Account for an Improper Purpose

Because no CPNI is disclosed to a third party through a SIM swap, Terpin's FCA claim depends on ascribing liability to AT&T for a nonemployee having allegedly accessed Terpin's CPNI while performing the SIM swap. But in *Van Buren v. United States*, 141 S. Ct. 1648, 1652 (2021), the Supreme Court held that the "exceeds

authorized access" clause of the Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030(a)(2), "covers those who obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend"; but it "does not cover" those who "have improper motives for obtaining information that is otherwise available to them." *Id.* The material provisions of the CFAA and regulations implementing the FCA are virtually identical. *Compare* CFAA, 18 U.S.C. § 1030(a)(2) ("Whoever intentionally accesses a computer ***without authorization or exceeds authorized access***, and thereby obtains…[certain protected info]"), *with* 47 C.F.R. § 64.2011(e) ("As used in this section, a 'breach' [of FCA § 222] has occurred when a person, ***without authorization or exceeding authorization***, has intentionally gained access to, used, or disclosed CPNI."). *Van Buren* is thus persuasive authority on the FCA's construction.

In *Van Buren*, the Court noted that in construing the CFAA's prohibitions, the "interplay between the 'without authorization' and 'exceeds authorized access' clauses of subsection (a)(2) is particularly probative." 141 S. Ct. at 1658. That is, the "without authorization" clause protects "computers themselves by targeting so-called outside hackers—those who access a computer without any permission at all." *Id.* The "exceeds authorized access" clause should be construed similarly, to target those who "enter[] an area of the computer to which [their] authorization does not extend." *Id.* Individuals who enter an area that they are permitted to access, but for an improper purpose, are thus outside the CFAA's scope.

The same analysis should apply to the FCA and its implementing regulations. To be consistent with its plain language and *Van Buren*, the FCA's scope must be limited to when covered information is accessed by individuals who are not permitted to access AT&T customer accounts for any reason. *Van Buren*, 141 S. Ct. at 1658. Here, no one other than Jahmil Smith is alleged to have accessed Terpin's account in connection with the January SIM swap (and there is no evidence that even Smith saw Terpin's CPNI). Because Smith had the authority to access customer accounts in the course of his regular

business, his purported improper use is not within the scope of the FCA.

## C.  Terpin Cannot Recover Damages Under a Breach of Contract Theory

Terpin seeks to transform a standard contract for wireless telephone service into an uber-insurance policy to protect $24 million in cryptocurrency assets about which AT&T had no knowledge, Ochsenbein Decl., Ex. A at 347:1–7—for the same price as any other AT&T customer. But these claims cannot be supported under California contract law. Nor are they supported by the plain terms of the WCA.

AT&T disputes that any breach of contract occurred whatsoever. But for purposes of this motion, AT&T's focus is different: even if Terpin *could* prove a breach, the damages he seeks are barred by both California law and the terms of the WCA. "An element of a breach of contract cause of action is damages proximately caused by the defendant's breach." *Copenbarger v. Morris Cerullo World Evangelism*, 29 Cal.App.5th 1, 9 (2018). Generally, "damages may not exceed the benefit which [the plaintiff] would have received had the promisor performed." *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 468 (1990). "Contractual damages are of two types—general damages (sometimes called direct damages) and special damages (sometimes called consequential damages)." *Lewis Jorge Constr. Mgmt.*, 34 Cal.4th at 968. Terpin's claimed damages are the latter as they do not "flow directly and necessarily from a breach of contract." *Id.*

"[I]f special circumstances caused some unusual injury, special damages are not recoverable therefor unless the circumstances were known or should have been known to the breaching party at the time he entered into the contract." *Brandon & Tibbs*, 226 Cal.App.3d at 456. "Parties may voluntarily assume the risk of liability for unusual losses, but to do so they must be told, at the time the contract is made, of any special harm likely to result from a breach." *Lewis Jorge Constr. Mgmt.*, 34 Cal.4th at 970. Here, AT&T was not aware of any potential loss from cryptocurrency theft at the time its relationship with Terpin began in 1996, when he took over the contract from his wife in 2011. UF 9, 10, 11. Indeed, Terpin did not even begin investing in cryptocurrency

until 2013, UF 7, and never disclosed those investments to AT&T, UF 11. ██████

███████████████████████████████████████████████████████ UF 25, 33,

it cannot have known those applications were malfunctioning. ████████████

██████████████████████████████████████████████████████████

█████████████████████████ UF 20, 22. Accordingly, Terpin cannot recover damages

for his stolen cryptocurrency under California law.

Nor can he recover these damages under the terms of the parties' agreement. The WCA specifically excludes the recovery of:

> any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, Services, Software, or Devices provided by or through AT&T, including loss of business or goodwill, revenue or profits, or claims of personal injuries.

UF 16.

Limitation-of-liability clauses "have long been recognized [as] valid in California." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App.4th 1118, 1126 (2012) (enforcing clause precluding liability for "INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES…"); *Lewis v. YouTube LLC*, 244 Cal.App.4th 118, 124–126 (2015) (upholding demurrer based on limited liability clause); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037–38 (N.D. Cal. 2019) (dismissing contract claims based on limited liability clause); *Darnaa, LLC v. Google, Inc.*, 236 F. Supp. 3d 1116, 1125 (N.D. Cal. 2017) ("[N]o district court has precluded application of a limitation-of-liability to a general contract claim based on [Civil Code] Section 1668"). Because the language in the WCA is consistent with the clauses in these cases, it is enforceable and bars Terpin's claimed damages.

## D.  Terpin Cannot Establish Proximate Causation Under Any Theory of Liability

Because Terpin cannot prove any of his surviving damages claims (*supra*, § IV.A-C), AT&T is entitled to summary judgment. But AT&T is also entitled to summary judgment on *all* of those damages claims—negligence, FCA, and breach of contract—

for the independent reason that Terpin cannot prove AT&T's conduct was the proximate cause of his claimed harm. *U.S. Ecology, Inc. v. State of Calif.*, 129 Cal.App.4th 887, 909 (2005) (damages for contract claims must be proximately caused by defendant's breach); *Lexmark Intern. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) (common law causation principles apply to federal statutory claims). While the Court previously held that "Terpin had adequately pled proximate cause," Dkt. 37 at 5, discovery has confirmed that Terpin's causation theory is too attenuated to establish proximate causation.

"[T]he existence and extent of a defendant's liability is a question of law and social policy" and therefore a matter for the court. *Maupin v. Widling*, 192 Cal.App.3d 568, 573 (1987). Proximate cause is a generic label for "the judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) (concept "reflects ideas of what justice demands, or of what is administratively possible and convenient"). In particular, proximate causation reflects the understanding that even where defendant's conduct is an "actual cause" of the harm, "the defendant will nevertheless be absolved because of the manner in which the injury occurred," i.e., "where it would be considered unjust to hold him or her legally responsible." *State Dept. of State Hosps. v. Superior Ct.*, 61 Cal.4th 339, 353 (2015). Thus, under common law, the proximate cause analysis considers "the particular context in which an act or injury occurred." *Vasilenko v. Grace Family Church*, 3 Cal.5th 1077, 1084 (2017). Likewise, the proximate cause analysis for federal statutory claims "is controlled by the nature of the statutory cause of action" and precludes recovery "for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark*, 572 U.S. at 133 (analysis considers "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits"). Section 222 "was principally intended to protect consumer's privacy interests," not to make telecommunications companies the insurers of anything linked to a phone number that

Gibson, Dunn & Crutcher LLP

might be stolen by criminals. *ICG Commc'ns. Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 612 (N.D. Cal. 2002).

Proximate cause "serves, *inter alia*, to preclude liability in situations where the causal link between the conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline*, 577 U.S. at 445; *Novak v. Continental Tire N. Am.*, 22 Cal.App.5th 189, 197–98 (2018) (recognizing liability claims premised on "an unlikely series of events" have been denied on proximate cause grounds). "[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Holmes*, 503 U.S. at 269. Under the common law, courts regularly refuse to extend proximate cause to scenarios—such as here—that involve a "Rube Goldbergesque system of fortuitous linkages." *Wawanesa,* 60 Cal.App.4th at 588; *City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 659 (N.D. Cal. 2020) (finding absence of proximate cause based on attenuation "[e]ven if it was foreseeable in some sense"). Accordingly, it is the "general tendency of the law, in regard to damages at least" to not extend proximate causation in statutory claims "beyond the first step" in the chain of causation. *Holmes*, 503 U.S. at 271–72 (claims under the Clayton Act); *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 10 (2010) (RICO); *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1035 (9th Cir. 2021) (FHA claims); *Fields v. Twitter, Inc.*, 881 F.3d 739, 745–46 (9th Cir. 2018) (Anti-Terrorism Act).

The SIM swap here did not—by itself—enable the perpetrators to access Terpin's cryptocurrency accounts. UF 36, 37, 38. Rather, additional steps were taken to access the location where Terpin had placed his access credentials. UF 38. And even then, Terpin's cryptocurrency accounts were only accessible because his credentials had been saved in an online location. UF 8, 37. Thus, the damages here are at least seven steps into the chain of causation, which involves:

(1) the alleged bribe of the employee of an AT&T contractor, Dkt. 42, ¶ 8;

(2) a criminal conspiracy involving a "gang" of individuals, *id.*;

(3) Terpin's decision to not secure certain Gmail accounts with 2FA because "it became cumbersome," UF 42—information Pinsky was aware of prior to the SIM swap, UF 40;

(4) Terpin's failure to properly secure his Microsoft account by using a ████████████████████████████ non-SMS 2FA, which enabled the perpetrators to access Terpin's Microsoft account using information obtained from one of Terpin's Gmail accounts, UF 30, 31, 42;

(5) ██████████████████████████████████████████████████ ████████████████ UF 24, 31, 32;

(6) ██████████████████████████████████████████████████ ████████████████████████████████████████████ UF 20, 21; and

(7) ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████ UF 26.

The proximate cause analysis does not apply to any "link that is 'too remote,' 'purely contingent,' or indirec[t]." *Hemi Group*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 271, 274); *Modisette v. Apple Inc.*, 30 Cal.App.5th 136, 154 (2018) (rejecting proximate cause where defendant's conduct was "too remotely connected with Plaintiffs' injuries to constitute their legal cause"). Here, any linkage between the SIM swap and Terpin's damages (assuming the truth of this unlikely series of events) is contingent on the access credentials being saved online, as ████████████████ Pinsky confirms. UF 8, 37. If the perpetrators had not known of Terpin's "active involvement in cryptocurrency" and made the independent decision to attempt to steal cryptocurrency by bribing a retail employee, UF 41, Dkt. 42, ¶ 8, there likewise would have been no damages. ██████████████████████████████████████████████████ ██████████████████████████████████████████████████

█████████ UF 19, 36. ████████████████████████████

███████████████████████████████████████ UF 24, these thefts would not have been possible. ███████████████████████████

█████████████████████ UF 30. ███████████████████

███████████████████████████████████ UF 27, there would be no damages. Put simply, any liability on the part of AT&T is "purely contingent" on these numerous events that are independent of and totally beyond AT&T's control. *Hemi Group*, 559 U.S. at 9. Indeed, Pinsky testified that "less than 5 percent" of SIM swaps that he was involved in for the purpose of "obtaining cryptocurrency were successful." UF 39.

Beyond these happenstances, Terpin's chain of causation includes the independent actions of various third parties—including himself. *Allen v. Wright*, 468 U.S. 737, 759 (1984), *abrogated on other grounds by Lexmark*, 468 U.S. at 128 (rejecting causal chain involving "numerous third parties" making "independent decisions"). In *Steinle v. United States*, 17 F.4th 819 (2021), the Ninth Circuit upheld summary judgment based on claims brought under the Federal Tort Claims Act where "[s]everal events—many of which remain unknown—intervened" between the defendant's conduct and the plaintiff's injury. *Id.* at 822. Specifically, the court noted the "criminal and negligent actions of at least two other people" precluded a finding of proximate cause. *Id.* at 824; *Hemi Group*, 559 U.S. at 14 (rejecting proximate cause where the "theory of liability rests on the independent actions of third and even fourth parties"); *Alfasigma USA, Inc. v. First Databank, Inc.*, 2002 WL 899848, at *9 (N.D. Cal. Mar. 28, 2022) (dismissing claims where the causal chain included "several intervening steps—and third-party decisions—that may have caused Plaintiff's alleged injury").

California courts have likewise rejected proximate cause based on attenuated causal chains. In *Shih v. Starbucks Corp.*, 53 Cal.App.5th 1063 (2020), the court upheld summary judgment where plaintiff alleged she spilled a "boiling hot" beverage on herself because Starbucks failed to place a sleeve around the cup. *Id.* at 1065. Plaintiff

claimed she subsequently (1) removed the lid, (2) attempted to take a sip by pushing her chair, and (3) grabbed the table to steady herself, which caused the drink to spill. *Id.* at 1065. The court held that while the absence of a cup sleeve may have set the chain of causation in motion, the subsequent series of events—including plaintiff's "unorthodox drinking maneuver"—were "too remote from the alleged defects in the cup" to prove proximate causation. *Id.* at 1070–71. Similarly, in *Modisette v. Apple Inc.*, 30 Cal.App.5th 136 (2018), the court found that the "tenuous connection" between the defendant's conduct and the plaintiff's injury "bars a finding of proximate causation." *Id.* at 152 (upholding phone manufacturer's demurrer in car accident case where driver was using phone while driving).

The chain of causation alleged here is even more attenuated than in *Steinle, Shih*, and *Modisette.* Accordingly, Terpin cannot establish proximate causation for his statutory, tort, and contract claims as a matter of law.

## E.   Terpin's Declaratory Relief Claim Should Be Dismissed

Because Terpin's claims for damages fail as a matter of law, the Court should dismiss his claim for declaratory relief—which seeks a declaration that the WCA is "unenforceable as unconscionable and against public policy" or alternatively that certain provisions of the agreement are unenforceable, Dkt. 42, ¶ 132—on the grounds of mootness. "Federal courts are courts of limited jurisdiction that have not been vested with unlimited open-ending lawmaking powers." *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 654 (9th Cir. 2002). Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). When the circumstances "that prevailed at the beginning of litigation" have changed in a way to "forestall[] any occasion for meaningful relief," a declaratory relief claim is moot. *S. California Painters & Allied Trads, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1035 (9th Cir. 2009). Terpin's claims fail because the limitation of liability is enforceable, which moots

Gibson, Dunn &
Crutcher LLP

the remaining clauses about which Terpin seeks a declaration, meaning that there is "no practical consequence" to determining the enforceability of the relevant provisions. *Bordon v. Horwitz*, 2012 WL 6618196, at *2 (C.D. Cal. Dec. 19, 2012) (dismissing declaratory relief claim as to enforceability of an agreement because plaintiff's claims were dismissed on other grounds). Thus, Terpin's declaratory relief claim should be dismissed as moot.

## V.    CONCLUSION

For the foregoing reasons, AT&T's Motion should be granted, Terpin's claims should be dismissed, and the Court should enter judgment in favor of AT&T.


Respectfully submitted,


Dated: December 22, 2022          GIBSON, DUNN & CRUTCHER LLP


                                  By:   */s/ Jeremy S. Ochsenbein*
                                        Jeremy S. Ochsenbein

                                  Attorney for Defendant
                                  AT&T MOBILITY LLC

1

## **Local Rule 11-6.2 Certificate of Compliance**

2    The undersigned, counsel of record for AT&T, certifies that this brief contains

3 6935 words, which complies with the word limit of L.R. 11-6.1.

4

5 Dated: December 22, 2022        GIBSON, DUNN & CRUTCHER LLP

6

7        By:  */s/ Jeremy S. Ochsenbein*
             Jeremy S. Ochsenbein

8

9        Attorney for Defendant
         AT&T MOBILITY LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28