# EXHIBIT A

PIERCE O'DONNELL (SBN 081298)
PODonnell@ggfirm.com
TIMOTHY J. TOOHEY (SBN 140117)
TToohey@ggfirm.com
PAUL A. BLECHNER (SBN 159514)
PBlechner@ggfirm.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiff
MICHAEL TERPIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |
|---|---|
| MICHAEL TERPIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC; and<br>DOES 1-25,<br><br>　　　　Defendants. | Case No. 2:18-cv-06975-ODW-KS<br><br>[*Assigned to The Hon. Otis D. Wright II*]<br><br>**OPPOSITION OF PLAINTIFF MICHAEL TERPIN TO MOTION OF AT&T MOBILITY FOR SUMMARY JUDGMENT**<br><br>Hearing Date: February 27, 2023<br>Time: 1:30 p.m.<br>Trial: May 2, 2023 |

*GREENBERG GLUSKER FIELDS CLAMAN*
*& MACHTINGER LLP*
*2049 Century Park East, Suite 2600*
*Los Angeles, California 90067*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................. 1

II.     STATEMENT OF FACTS ............................................................... 3

        A.      The June 2017 SIM Swap ..................................................... 3

        B.      Harm to AT&T Customers from Increased SIM Swap Activity
                Was Foreseeable ................................................................... 4

        C.      ███████████████████████████ ............................ 7

        D.      The January SIM Swap ......................................................... 8

III.    LEGAL STANDARD ...................................................................... 9

IV.     ARGUMENT ................................................................................. 10

        A.      The Economic Loss Doctrine Does Not Bar Terpin's Negligence
                Claims .................................................................................. 10

        B.      The January SIM Swap Establishes A Valid Claim Under the
                FCA ...................................................................................... 12

                1.      The January SIM Swap Violated 47 U.S.C ................ 12

                2.      "Exceeds Authorized Access" in the FCA does not have
                        the same meaning as it does in the CFAA .................. 14

        C.      Terpin's Breach of Contract Damages Are Proper and AT&T
                Cannot Exculpate Itself from Its Gross Negligence and Statutory
                Violations ............................................................................ 16

        D.      Terpin Can Establish Proximate Cause .............................. 18

V.      CONCLUSION ............................................................................. 23

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

83764-00002/4690244.3

# TABLE OF AUTHORITIES

**Page**

CASES

*Biakanja v. Irving*,
    49 Cal.2d 647 (1958) .......................................................................................... 10

*California v. Superior Court*,
    150 Cal.App.3d 848 (1984)............................................................................... 20

*Circuit City Stores, Inc. v. Adams*,
    279 F.3d 889 (9th Cir. 2002)......................................................................... 3, 11

*Desrosiers v. Flight Int'l*,
    156 F.3d 952 (9th Cir. 1988) ........................................................................... 18

*Dutch Enterprises, Inc. v. Consolidated Freightways*,
    1993 WL 266702 (N.D.Cal. 1993).................................................................. 17

*Food Safety Net Services v. Eco Safe Systems USA, Inc.*,
    209 Cal.App.4th 1118 (2012) ............................................................................ 3

*Fraser v. Mint Mobile, LLC*,
    2022 WL 1240864 (N.D.Cal. 2022)................................................................. 22

*Greene v. Sprint Communications Co.*,
    340 F.2d 1047 (9th Cir. 2003) ......................................................................... 14

*In the Matter of Cox Communications, Inc.*,
    30 FCC Rcd. 12302 (2015) .............................................................................. 13

*J'Aire Corp. v. Gregory*,
    24 Cal.3d 799 (1979) ....................................................................................... 10

*Kumaraperu v. Feldsted*,
    237 Cal.App.4th 60 (2015) .............................................................................. 18

*Li v. Yellow Cab Co.*,
    13 Cal.3d 804 (1975) ....................................................................................... 23

*Matysik v. County of Santa Clara*,
    2018 WL 72724 (N.D.Cal. 2018) ................................................................. 3, 19

*Modisette v. Apple Inc.*,
    30 Cal.App.5th 136 (2018) .............................................................................. 22

*Moore v. Centrelake Med. Group. Inc.*,
    83 Cal.App.5th 515 (2022) .............................................................................. 12

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

83764-00002/4690244.3

# TABLE OF AUTHORITIES
(continued)

**Page**

*Osborn v. Irwin Memorial Blood Bank*,
    supra, 5 Cal.App.4th 234 (1992) ............................................................. 18

*Paige v. New Haven Unified School Dist.*,
    2010 WL 5396062 (N.D.Cal. 2010) ....................................................... 19

*Sheen v. Wells Fargo, N.A.*,
    12 Cal.5th 905 (2022) ................................................... 2, 10, 11, 12

*Shih v. Starbucks Corp.*,
    53 Cal.App.5th 1063 (2020) ............................................................. 20, 21

*Steinle v. United States*,
    17 F.4th 819 (9th Cir. 2021) ........................................................... 21

*Sun-Maid Raisin Growers v. Victor Packing Co.*,
    146 Cal.App.3d 787 (1983) ............................................................... 17

*U.S. West, Inc. v. FCC*,
    183 F.3d 1224 (10th Cir. 1999) ......................................................... 14

*Van Buren v. United States*,
    141 S.Ct. 1648 (2021) ..................................................................... 15

*Wawanesa Mut. Ins. Co. v. Matlock*,
    60 Cal.App.4th 583 (1997) ............................................................. 20, 21

*Whiteway v. FedEx Kinko's Office and Print Services*,
    319 Fed. Appx. 688 (9th Cir. 2009) ..................................................... 9, 10

*Williams v. Fremont Corners, Inc.*,
    37 Cal.App.5th 654 (2019) ............................................................... 19

**STATUTES**

47 U.S.C. § 222 ....................................................................... passim

47 U.S.C. § 222(a) .............................................................. 12, 13, 14

47 U.S.C. § 222(h)(1) ..................................................................... 13

Computer Fraud and Abuse Act 18 U.S.C. § 1030 *et seq.* .......................... 15

Federal Communications Act ............................................................ passim

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

iii

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

1

# TABLE OF AUTHORITIES
(continued)

**Page**

2

3

4

**OTHER AUTHORITIES**

5

47 CFR § 64.2001 *et seq.* ............................................................................................ 11

6

1 Witkin, *Summary of Cal. Law* (11th ed. 2022), Contracts, § 679 ............................... 17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

iv

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## I.    INTRODUCTION

Defendant AT&T Mobility, LLC's ("AT&T") motion for summary judgment (the "Motion") should be denied due to the massive number of disputed material facts. In many ways, this motion is a thinly disguised rehash of AT&T's prior unsuccessful motions to dismiss predicated on mischaracterizations of controlling law. As demonstrated below, it should meet the same fate.

AT&T's top executives recognize that customers count on AT&T and promised: "[t]hat we will follow not only the letter of the law, but the spirit of the law" and "will always take responsibility." PF-23.[1] AT&T has failed to follow the letter of the law, and its contentious and technical defenses make a mockery of any attempt to follow the spirit of the law.

As a common carrier, AT&T is entrusted under the Federal Communications Act ("FCA") with the duty of protecting its customers' personal communications. *See* 47 U.S.C. § 222. Yet, AT&T allowed an authorized retailer employee ████ ████████████████████████████████████████████████████ to bypass AT&T's own security procedures, including the "extra security" that AT&T had urged Plaintiff Michael Terpin ("Terpin") to put on his account to prevent unauthorized SIM swaps. That unauthorized SIM swap resulted in Terpin's loss of almost $24 million in cryptocurrency.

AT&T seeks to revive in this motion (the "Motion") many of the arguments denied in its motions to dismiss this case. AT&T ignores the mountain of evidence that it knew that unauthorized SIM swaps were exposing customer's personal communications and causing financial losses to its customers. AT&T also engages in a classic "blame the victim" defense, seeking to turn Plaintiff's alleged comparative fault into a complete defense, while brazenly defending AT&T's gross negligence ████████████████████████████████████████████

---

[1] The format "PF-##" refers to the additional "Plaintiff's Facts", as numbered, in Section II of Plaintiff's Statement of Genuine Disputes of Material Facts.

1

1 ████████████████████████████████████████████

2 ████████████████████

3        The facts presented by Terpin and the proper inferences drawn from them,

4 prevent entry of summary judgment in this case.

5        *First*, the economic loss doctrine (rejected by the Court in AT&T's second

6 motion to dismiss) is inapplicable here.  AT&T's reliance on *Sheen v. Wells Fargo,*

7 *N.A.*, 12 Cal.5th 905 (2022) ("*Sheen*"), is misplaced.  As reinforced by *Sheen*, the

8 economic loss doctrine does not apply where a duty arises outside the bounds of the

9 negotiated contract.  Here, AT&T had duties to protect customers' communications

10 and implement an information security program under (a) the FCA and other

11 statutory law and (b) a 2015 Consent Decree from the Federal Communications

12 Commission (FCC).  These duties arise separately from the contract of adhesion

13 (also known as the wireless customer agreement ("WCA")) between Terpin and

14 AT&T.

15        *Second*, in another argument rejected previously by the Court, Terpin has

16 demonstrated valid FCA claims.  AT&T exposed Terpin's personal and proprietary

17 information by turning over control of the phone to unauthorized third parties,

18 allowing them to receive password reset messages while controlling Terpin's phone

19 number, to use Terpin's phone as a means of authentication to impersonate him,

20 and to access files in his online accounts.  As the FCC has recognized, not only

21 does the FCA protect more than technical aspects of Customer Proprietary

22 Information ("CPNI"), but an unauthorized SIM swap allows the perpetrator to gain

23 control (and misuse) a customer's CPNI.

24        AT&T's alternate reliance on a criminal federal statute with a different

25 purpose (i.e., the Computer Fraud and Abuse Act (CFAA)) is frivolous and

26 unsupported by any authority.  AT&T's proffered interpretation of Section 222

27 would unjustifiably exempt AT&T from liability where AT&T had notice that an

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

1  employee had previously accessed customer accounts and had failed to prevent
2  repeat occurrences of such misconduct.

3      *Third*, Terpin's contract claims are viable.  AT&T cannot insulate itself
4  through a limitation of liability clause resulting from "unequal bargaining power or
5  [that is] contrary to public policy."  *Food Safety Net Services v. Eco Safe Systems*
6  *USA, Inc.*, 209 Cal.App.4th 1118, 1126 (2012).  The WCA is a classic contract of
7  adhesion that attempts to exculpate AT&T from almost all liability.  *Circuit City*
8  *Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (contract of adhesion is
9  "standard form contract, drafted by the party with superior bargaining power which
10 relegates to the other party the option of either adhering to its terms without
11 modification or rejecting the contract entirely").  Separate from the WCA, AT&T
12 promised Terpin "extra security" after his first unauthorized SIM swap in June
13 2017 to protect him against a reoccurrence.  Such breached promises outside the
14 WCA (consistent with its security and privacy commitments) are not subject to any
15 purported limitation of liability.

16     *Finally*, AT&T has concocted a spurious version of the events leading to the
17 January 2018 theft that misleadingly omits AT&T's role and ignores the
18 foreseeability of what occurred.  The theft immediately after the January 7, 2018
19 unauthorized SIM swap was not remote or attenuated, but rather
20 ████████████████████████████████████████████████ Material
21 facts regarding the foreseeability of Terpin's injury render causation inappropriate
22 for summary judgment in AT&T's favor.  *See Matysik v. County of Santa Clara*,
23 2018 WL 72724 *14 (N.D.Cal. 2018) ("'if reasonable persons could differ over the
24 question of foreseeability, … the question should be left to the jury'").

25 **II.    STATEMENT OF FACTS**

26      A.    The June 2017 SIM Swap

27      On June 11, 2017, Terpin suffered an unauthorized SIM swap on his account
28 ("June 2017 SIM Swap").  *See* PF-26-28.  ████████████████████████████

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

PF-27.

PF-29-30,32-33.

PF-33-44.

PF-35.

PF-36-37.

PF-38,40.  Terpin believed AT&T's promises that his account would be protected against future unauthorized SIM swaps because of the "extra security" and Terpin remained an AT&T customer. PF-39,41-43.  AT&T's promise was standard practice and consistent with AT&T's September 27, 2017 Cyber Aware blog post to customers ("Cyber Aware Blog") that the best way to protect themselves against unauthorized SIM swaps was placing "extra security" on their accounts. PF-44.

B.    Harm to AT&T Customers from Increased SIM Swap Activity Was Foreseeable.

AT&T did not disclose to Terpin when making the June 2017 assurances or in its September 27, 2017 customer notice that the added "extra security" was an ineffective security measure,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

1

2

3

4    PF-46-47.

5

6    PF-48.

7

8

9    PF-49. *See also* PF-62-64.

10

11

12

13    PF-65-68.

14

15

16

17    PF-70.

18        Well before the January 2018 SIM Swap, AT&T knew or should have known

19    that unauthorized SIM swaps were targeting cryptocurrency holders because such

20    thefts were irreversible.  Indeed, AT&T was obligated to track such emerging fraud

21    by a 2015 Consent Decree with the FCC, which required AT&T to pay a $25

22    million fine and implement an "Information Security Program" to both "identify

23    and respond to emerging risks or threats" to its customers' privacy.  PF-8-14.

24    2

25    PF-87.

26    PF-88.

27

28    PF-90-92.    PF-92.

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

83764-00002/4690244.3

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    AT&T also must have known that regulatory agencies had warned against

2    unauthorized SIM swaps (GDMP-50-52) and that a December 12, 2016 *Forbes*

3    article highlighted that SIM swaps led to thefts of cryptocurrency from customers

4    and that "telcos" were being blamed for not safekeeping their customers' telephone

5    numbers. PF-53-56. *See also* August 21, 2017 *New York Times* and September 28,

6    2017 jdsupra.com articles, highlighting thefts of cryptocurrency through SIM

7    swaps, including those involving AT&T. PF-57-60.

8

9                                PF-61.

10    On September 27, 2017, AT&T's Cyber Aware Blog warned its customers

11    about what they should know about "SIM Swap Scams." PF-73. The article

12    detailed how a "thief" will convince a service provider to replace a victim's SIM

13    which will have the effect of "the mobile network . . . sending calls and texts to the

14    new SIM card—which is really the thief's phone," after which the victim's phone is

15    deactivated and "the thief may be able to gain access to your financial or social

16    media accounts." PF-74-75. The article warned that this "could happen to

17    anyone." PF-76. AT&T's chief recommendation to customers was to add "extra

18    security" to their accounts—a PIN that the customer must provide "before any

19    significant changes can be made." PF-77.

20    The problem of unauthorized SIM swaps

21            was exacerbated both by the proliferation of personal information to the

22    dark web (such as SSNs) caused by the 2017 Equifax breach (which could be used

23    by perpetrators of fraud) and the rise of cryptocurrency. PF-72,78-81. Indeed, in

24    2017, cryptocurrency had "joined the global financial system" and had a market

25    capitalization of $100.1 billion dollars. PF-80-81. And, consistent with what

26    AT&T was seeing and what was being publicly reported,

27

28                                                    PF-82-85.

6

C. ████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

█████████████ PF-93-118.

████████████████████████████████████

█████████████ PF-94.

████████████████████████████ PF-

95. ██████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████ PF99-107.

████████████████████████████ PF-105. ███

██████████████████████████ PF-108-111.

████████████████████████████████████

██████████████████████████ PF-98,106-107.

████████████████████████████████████

████████████████████████████████████

███████████████ PF-113-115.

████████████████████ a Norwich Police

Department report reveals that Smith reported a robbery in the AT&T branded store

when he was working alone on January 1, 2018, with the Spring regional manager

detailing the cash and inventory losses.  PF-119-127.  On the same day, that

manager told police that he believed Smith was involved and the robbery was an

"inside job."  PF-124.  The detectives also questioned Smith's truthfulness, and

Smith subsequently acknowledged his involvement, was arrested and charged, and

made restitution payments to AT&T in 2021.  PF-127-130.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

7

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

83764-00002/4690244.3

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1

2

3

4   PF-116-118.

5

6

7

8

9   PF-132-133,114-115.

10   D.    The January SIM Swap

11

12   PF-134-140,154-158.

13   PF-136.

14

15

16

17

18

19   PF-137-139.

20

21   PF-140-141,153,159.

22   After the SIM swap, Terpin's wife, Maxine Hopkinson, attempted repeatedly

23   to get AT&T to reverse the SIM swap and transfer the number back to Terpin's

24   device.  She was transferred to AT&T's fraud department, which twice did not pick

25   up her calls.  PF-142-145.  Incredibly, even though Terpin's account was

26   previously noted for fraud and Ms. Hopkinson complained about "fraud issues,"

27   PF-143-150, AT&T never investigated the January 2018 SIM Swap.  PF-151-152.

28

8

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

PF-168.

PF-162-166.

PF-153.

PF-154-172.

PF-156-158.

PF-159-160.

PF-161-163.

PF-164.

PF-165-166.

PF-167.

## III.    LEGAL STANDARD

"To succeed on a motion for summary judgment, the movant must first demonstrate 'that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Whiteway v. FedEx Kinko's Office and Print Services*, 319 Fed. Appx. 688 (9th Cir. 2009), *quoting* Fed.R.Civ.P. 56(c).  To defeat a showing by the movant, "the nonmovant must go beyond the pleadings to designate specific facts showing a genuine issue for

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

1  trial." *Id.* "An issue is genuine 'if the evidence is such that a reasonable jury could

2  return a verdict for the non-moving party.'" *Id.,* quoting *Anderson v. Liberty*

3  *Lobby, Inc.,* 477 U.S. 242, 248 (1986). "In conducting the summary judgment

4  analysis, all justifiable inferences are to be drawn in the non-moving party's favor."

5  *Id, citing Anderson* at 255.

6  **IV.   ARGUMENT**

7      A.   <u>The Economic Loss Doctrine Does Not Bar Terpin's Negligence</u>

8  <u>Claims</u>.

9      The Court previously rejected AT&T's attempt to raise the economic loss

10  doctrine to dismiss Terpin's complaint, finding that Terpin adequately alleged a

11  "special relationship" under *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979)

12  and *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958). *See* Dkt. 37 at 9.

13      AT&T's renewed economic loss doctrine argument seeks to dismiss Terpin's

14  negligence claims (Claims 3-5) based on the recently decided California Supreme

15  Court case of *Sheen*. AT&T's reliance on *Sheen* erroneously focuses solely on the

16  "privity" issue *without recognizing AT&T's non-contractual duties*. However,

17  *Sheen* was limited to situations where "the litigants are in contractual privity ***and***

18  the plaintiff's claim is not 'independent of the contract arising from principles of

19  tort law.'" 12 Cal.5th at 942 (emphasis added).

20      The *Sheen* case involved a borrower's negligence claim alleging a "special

21  relationship" with a lender in the context of a loan modification application. The

22  California Supreme Court expressly concluded that there were no state or federal

23  statutory or regulatory duties at issue. *Id.* at 921.

24      By contrast, AT&T has a statutory obligation under the FCA to preserve the

25  privacy of customers' calls. *See* 47 U.S.C. § 222 and discussion re FCA, *infra*.

26  AT&T also had an obligation under a 2015 consent decree (under which AT&T

27  was fined $25 million) to implement an information security program, including

28

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT`

83764-00002/4690244.3

monitoring for emerging threats to customers' personal and proprietary information.  *See* GDFM-8,10.

Unlike *Sheen*, where the plaintiff could "not identify any statute or regulation that requires Wells Fargo to treat his modification applications with due care," 12 Cal.5th at 920, Terpin *has identified statutory authority, regulations and orders* requiring AT&T, as a common carrier, to protect the privacy of his communications and guard against emerging threats, such as unauthorized SIM swaps leading to customers' financial losses.  *See, e.g.*, 47 U.S.C. § 222 (duty of common carrier to protect privacy); 47 CFR § 64.2001 *et seq.* (FCC CPNI Rules); 2015 Consent Decree at ¶¶ 18(b)-(c).  Moreover, this statutory and regulatory authority, and the FCC Consent Decree, are all directly on point (unlike in *Sheen* where the court found there was nothing in the "extensive body of state and federal legislation and regulations that address mortgage servicing" or in common law that created a duty of the lender to the borrower regarding loan modifications).  12 Cal.5th at 921-22.

AT&T's economic loss doctrine argument alternatively fails because:

- Unlike *Sheen*, which involved a commercially negotiated loan contract between the parties, the WCA is a classic contract of adhesion and Terpin had no opportunity to negotiate its terms.  *Id.* at 922-24.  *See, e.g., Circuit City Stores, Inc.*, 279 F.3d at 893 (contract of adhesion not subject to negotiation by customer).

- Where *Sheen* asserted a "duty that is contrary to the rights and obligations clearly expressed in the loan contract," AT&T's duty to protect the privacy of Terpin's communications is complementary to the WCA.[3] AT&T's privacy policy is incorporated by reference into the WCA and states that AT&T has "implemented technology and security features and

---

[3] While AT&T's duties under the WCA to Terpin and all of its customers are complementary to the duties under the FCA and the Consent Order, AT&T is not, by contract, able to modify is statutory and other legal duties.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

11

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT`

strict policy guidelines to safeguard the privacy of [customers'] Personal Information." *See* Exh. 18.

- *Sheen* also recognized another applicable exception to the economic loss rule for consumer contracts for professional services where professionals agree to undertake careful efforts to render services. In such cases, "'most clients do not know enough to protect themselves by inspecting the professional's work or by other independent means.'" 12 Cal.5th at 933 (quoting *Restatement 3d. Torts*, Liability for Economic Harm sec. 4, com. A., p. 22). A consumer of mobile telephone services similarly does not have the technical expertise regarding security and authentication procedures to know how to protect herself from security and privacy.[4]

B.    The January SIM Swap Establishes A Valid Claim Under the FCA.

1.    The January SIM Swap Violated 47 U.S.C. § 222(a).

AT&T misconstrues Terpin's FCA claim by arguing that there was no exposure of CPNI through the January 2018 SIM swap, even though the perpetrators gained complete control over Terpin's phone, communications, and account. AT&T's argument is not only factually inaccurate (the perpetrators of the SIM swap indeed gained control of Terpin's CPNI and other private and proprietary information), but also fundamentally misconstrues Terpin's claim which is much broader and relates to the exposure of personal and proprietary information, in addition to CPNI.

CPNI is only a subset of information protected by Section 222 of the FCA, which also imposes a duty to protect the "confidentiality of proprietary information." *See* 47 U.S.C. § 222(a);

---

[4] *Moore v. Centrelake Med. Group. Inc.*, 83 Cal.App.5th 515 (2022), which AT&T cites, is equally unpersuasive. In *Moore*, the court affirmed dismissal under the economic loss rule because, unlike here, plaintiff "failed to show their claim is independent of their contracts and could show no separate duty."

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT`

1   https://www.fcc.gov/enforcement/areas/privacy ("Section 222 restricts carriers' use

2   and disclosure of their customers' (and certain other entities') "proprietary"

3   information and requires that telecommunications carriers protect the

4   confidentiality of that information.")  CPNI is defined as the "quantity, *technical*

5   *configuration*, type, *destination, location* and amount of use of a

6   telecommunications service subscribed to by any customer of a telecommunications

7   carrier and that is made available solely by virtue of the carrier-customer

8   relationship."  47 U.S.C. § 222(h)(1) (emphasis added).

9        AT&T's argument that no one gained access to Terpin's CPNI exalts form

10  over substance and is contrary to the FCC's interpretation of what happens in an

11  unauthorized SIM swap.  Through the actions of Smith, ██████████████████

12  ████████████████████████████████████████████████████████████

13  the perpetrators of the unauthorized SIM swap were able to take over Terpin's

14  telephone number through a SIM swap (*i.e.,* the "technical configuration" of his

15  account) and access communications (such as password reset messages) that were

16  meant for Terpin's phone (*i.e.,* both "destination" and "location" information).  *See*

17  PF-159-160,163,171-172.   It is difficult to imagine a more egregious violation of

18  the privacy of a customer's private and proprietary communications than turning

19  over a customer's entire phone to unauthorized parties who are able (i) to intercept

20  the private calls and messages meant for the customer and (ii) to use the phone

21  account as a means of authentication to impersonate the customer.

22        The FCC has made clear that Section 222 protects not only the technical

23  aspects of CPNI (such as call details), but also proprietary and private customer

24  information.  *See In the Matter of Cox Communications, Inc.,* 30 FCC Rcd. 12302,

25  12307 (2015) (Section 222(a) [applies] to customer 'proprietary information' *that*

26  *does not fit within the statutory definition of CPNI*") (emphasis added).  The FCC's

27  authoritative interpretation of the FCA is entitled to deference because "the FCC is

28  the agency that is primarily responsible for the interpretation and implementation of

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

13

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

the Telecommunications Act and its own regulations." *Greene v. Sprint Communications Co.*, 340 F.2d 1047, 1052 (9th Cir. 2003).

Moreover, the FCC in 2021 in proposing amendments to its regulations to better guard against SIM swaps did so on the basis that SIM swaps violate Section 222(a) and the regulations pertaining to that provision. *See* PF-15-18 (Notice of Proposed Rulemaking ("NPR")). In the NPR, the FCC proceeded under its authority under Section 222 to provide regulations to prevent unauthorized SIM swaps to "protect the confidentiality of proprietary information of and relating to customers". PF-16. In describing the mechanics of unauthorized SIM swaps, the FCC also adopts what Terpin believes is the correct view that "the bad actor [perpetrating a SIM swap] gains access to all of the information associated with the customer's account, including CPNI, and gains control over the customer's phone number and receives both text messages and phone calls intended for the victim" thus violating section 222 of the FCA. PF-17 (emphasis added).

Disputed issues of fact prevent summary judgment for AT&T on this claim. The confidential proprietary and personal information accessed from Terpin includes classic CPNI such as Terpin's SIM number, real-time confirmations of the receipt of messages, the contents of messages and highly proprietary information about his online accounts and cryptocurrency accounts. *See also U.S. West, Inc. v. FCC*, 183 F.3d 1224, 1235 (10th Cir. 1999) (information protected by Section 222 is "extremely personal" to customers).

2. "Exceeds Authorized Access" in the FCA does not have the same meaning as it does in the CFAA.

AT&T next asserts the patently faulty argument that it did not violate the FCA because the term "exceeds authorized access" in the FCC regulations pertaining to Section 222 should have the same meaning as the same phrase in the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030 *et seq.* as interpreted by the Supreme Court in *Van Buren v. United States* to not criminalize "a

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

14

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT`

1    breathtaking amount of commonplace computer activity." 141 S.Ct. 1648, 1652,

2    1661 (2021).  This frivolous argument ignores that the FCA and CFAA are entirely

3    different statutes with different purposes and that the term "authorized" in the FCA

4    regulations has an entirely different meaning and applies to an entirely different set

5    of individuals than the CFAA.

6         Although it may make sense (as the *Van Buren* Court held) to restrict the

7    criminal penalties imposed by the CFAA to hackers (as opposed (for example) to

8    employees exceeding their authorized access to computer services), the provisions

9    relating to the regulation of common carriers under the FCA, including section 222,

10   are not a criminal statute that implicates ordinary computer users, but rather a

11   regulation applying only to "common carriers," such as AT&T.  Moreover, the

12   exemption that AT&T asks this Court to write into the statute would effectively

13   immunize AT&T from liability for failing to protect the private communications of

14   its customers by limiting the FCA in a way that is contrary to the FCC's own

15   regulations and orders.  It makes even less sense that any such exemption would

16   have *no* limitations and thereby permit carriers, like AT&T, to claim absolute

17   immunity notwithstanding the carrier's *notice* of prior occasions where employees

18   acting within the AT&T system—such as Smith—had previously improperly

19   accessed accounts and AT&T knew that it had corrupt employees who were

20   bypassing proper authentication.  There is no policy reason to allow AT&T to gut

21   Section 222 through such a convoluted argument.

22        C.    Terpin's Breach of Contract Damages Are Proper and AT&T Cannot

23   Exculpate Itself from Its Gross Negligence and Statutory Violations.

24        Terpin's breach of contract claim encompasses not only the WCA contract of

25   adhesion, but also AT&T's promise to provide Terpin with "extra security" to

26   prevent ███████████████████████████████████████████████████████████

27   ███████████████████    Terpin's damages here were foreseeable both as the breach of

28   AT&T's promises regarding security in the WCA, and the promises that it made to

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

15

1  Terpin (and other potential victims of an unauthorized SIM swaps) regarding extra

2  security.

3      Although AT&T cites *Lewis Jorge Constr. Mgmt.*, 34 Cal.4th 960 (2004)

4  regarding contract damages, it omits pertinent language.  "Unlike general damages,

5  special damages are those losses that do not arise directly and inevitably from any

6  similar breach of any similar agreement. Instead, they are secondary or derivative

7  losses arising from circumstances that are particular to the contract or to the parties.

8  Special damages are recoverable if the special or particular circumstances from

9  which they arise were actually communicated to or known by the breaching party (a

10  subjective test) *or were matters of which the breaching party should have been*

11  *aware at the time of contracting (an objective test).*"  34 Cal.4th at 968-69 (citations

12  omitted) (emphasis added).

13      AT&T's obligations under the WCA are ongoing and evolve as facts and

14  circumstances change.  AT&T cannot legitimately claim that it had no obligation to

15  adjust its security to address emerging threats, particularly when the 2015 Consent

16  Decree requires that it does so. ████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  ██████████████████████████████  *See* PF-73-77.  More

20  specifically, after Terpin's first unauthorized SIM swap in June 2017 ████████

21  ████████████████████████████  Terpin was promised and received extra

22  security from AT&T, ████████████████████████████

23  ████████████████████████████████

24  ████████████  PF-33-37.

25      More generally, the breaching party (AT&T) "should have been aware" at

26  the time that it promised Terpin extra security (i.e., June 2017) and certainly by the

27  time it breached its agreement to provide extra security that investors in

28  cryptocurrency were suffering financial losses.  The failure to implement proper

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

security with such knowledge constitutes gross negligence and misrepresentation to its customers. *See, supra*, section II.B.

The foreseeability of damages is a fact intensive inquiry. *Dutch Enterprises, Inc. v. Consolidated Freightways*, 1993 WL 266702 *2 (N.D.Cal. 1993); *Sun-Maid Raisin Growers v. Victor Packing Co.*, 146 Cal.App.3d 787, 790 (1983) (foreseeability of damages question for the trier of fact). In this case, AT&T argues that it was not foreseeable in 1996 that Terpin would invest in cryptocurrency (which hadn't been invented yet). But the WCA is not a "one and done" agreement, but instead imposes ongoing responsibilities on AT&T as circumstances change. AT&T's promises regarding security were not locked into place in 1996 like an insect caught in a piece of amber. As it recognized in its September 27, 2017 *Cyber Aware Blog* recommending "extra security" to guard against SIM swaps, AT&T's overarching obligations to preserve privacy and security were not limited to what it knew about Terpin in 1996 before the smartphone was even invented.

AT&T's limitation of liability clause also cannot be used to exculpate itself from gross negligence or statutory violations, including those under the FCA. *See* 1 Witkin, *Summary of Cal. Law* (11th ed. 2022), Contracts, § 679, ("[t]he present view is that a contract exempting from liability for ordinary negligence is valid where no public interest in involved and no statute expressly prohibits it… But there can be no exemption from liability for intentional wrong, gross negligence, or violation of law") (*citing Haliday v. Greene*, 244 Cal.App.3d 482, 488 (1966)). In any event, the only exculpatory provision at issue is in the WCA and AT&T, as alleged above, engaged in gross negligence and misrepresentations to its customers, particularly regarding the protection afforded by extra security against unauthorized SIM swaps. There was no limitation of liability provision regarding the provision of AT&T's extra security.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

17

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT`

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    This argument fails for the reasons stated herein, and it clearly cannot be

2    reconciled with the promises of AT&T's highest-ranking executives that AT&T

3    will follow the spirit of the law and always take responsibility.

4        D.    <u>Terpin Can Establish Proximate Cause</u>.

5    Proximate cause and causation in fact are generally questions "of fact for the

6    jury." *Desrosiers v. Flight Int'l*, 156 F.3d 952, 956 (9th Cir. 1988).  The trier of

7    fact must determine whether the defendant has a duty to the plaintiff and whether

8    the harm that occurred to the plaintiff was foreseeable.  *See Kumaraperu v.*

9    *Feldsted*, 237 Cal.App.4th 60, 69 (2015), citing *Cabral v. Ralphs Grocery Co.* 51

10   Cal.4th 764, 772, 779 (2011) ("the question of 'the closeness of the connection

11   between the defendant's conduct and the injury suffered' [citation] is strongly

12   related to the question of foreseeability itself." . . . . The court's task is to "evaluate

13   more generally whether the category of negligent conduct at issue is sufficiently

14   likely to result in the kind of harm experienced that liability may appropriately be

15   imposed.")

16   The jury's evaluation of causation is thus "a matter of probability and

17   common sense." *Osborn v. Irwin Memorial Blood Bank*, supra, 5 Cal.App.4th 234,

18   253 (1992).  "If, as a matter of ordinary experience, a particular act or omission

19   might be expected to produce a particular result, and if that result has in fact

20   followed, the conclusion may be justified that the causal relation exists. In drawing

21   that conclusion, the triers of fact are permitted to draw upon ordinary human

22   experience as to the probabilities of the case." *Kumaraperu*, 237 Cal.App.4th at 69,

23   citing Rest.2d Torts, § 433B, com. b, p. 443.  Moreover, foreseeability is not based

24   on the plaintiff's specific injury (theft of cryptocurrency) bur rather on the general

25   character of the event or harm (financial losses from unauthorized SIM swaps).

26   *Williams v. Fremont Corners, Inc.*, 37 Cal.App.5th 654, 671 (2019).

27   AT&T ignores these fundamental principles of law.

28

18

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

1    The facts showing foreseeability are set forth in Section II.B. ███████

2    ████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████

4    AT&T knew—or should have known—that cryptocurrency had experienced

5    significant growth during 2017 and there are multiple public reports of SIM swaps

6    leading to crypto losses by mid-2017. Because AT&T was required under the 2015

7    Consent Decree to monitor emerging threats to its customers' privacy, AT&T

8    should be charged to have known about emerging threats described in the

9    widespread publicity regarding unauthorized SIM swaps involving cryptocurrency,

10   including in prominent articles from 2016-2017 in *Forbes*, the *New York Times* and

11   elsewhere.

12       There is nothing attenuated or remote about the cryptocurrency theft that

13   followed the January 7, 2018 Terpin SIM Swap—what happened is precisely what

14   Pinsky set out to do when he offered Smith the bribe to process this SIM swap on

15   AT&T's system and what AT&T itself predicted could happen to customers on

16   September 27, 2017. Grounded as this issue is in the fact intensive issue of the

17   foreseeability of harm, the issue of proximate causation is particularly inappropriate

18   for granting summary judgment in AT&T's favor. See *Matysik*, 2018 WL 72724 at

19   *14 ("'if reasonable persons could differ over the question of foreseeability,

20   summary judgment is inappropriate and the question should be left to the jury'");

21   *see also Paige v. New Haven Unified School Dist.*, 2010 WL 5396062 *5 (N.D.Cal.

22   2010), *citing Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal.3d 508, 520

23   (1978).

24       For purposes of defeating summary judgment, Terpin has shown a "natural

25   and continuous sequence" of plausible events connecting the hackers' access to his

26   phone number through the January 7, 2018 SIM Swap to the theft of his

27   cryptocurrency. *California v. Superior Court*, 150 Cal.App.3d 848, 857 (1984).

28   Given the substantial evidence that substantiates the Complaint's allegations on

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

19

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1  these issues, it is unclear why AT&T would even attempt to raise this issue in the

2  Motion, particularly where the Court previously rejected AT&T's causation

3  argument. *See* Dkt. 37 at 5-7.

4      The cases cited by AT&T are readily distinguished and do not require a

5  different result on facts that present such a straightforward case of foreseeability.

6  Unlike the instant facts, where the theft of cryptocurrency after the SIM swap was

7  not only foreseeable,

8      PF-155,83-85, each of the cases relied on by AT&T involve factual

9  scenarios where the injury that followed the incident in question was either not

10  foreseeable at all, or at least not within the scope of the risk created by the

11  wrongdoing at issue.

12      In *Shih v. Starbucks Corp.*, 53 Cal.App.5th 1063 (2020), the plaintiff "spilled

13  her drink because after she walked to the table with the two hot drinks in her hands,

14  put her drink down, and removed the lid, she bent over the table, pushed out her

15  chair, lost her balance, grabbed the table to avoid falling, and knocked her drink off

16  the table." *Id.* at 1070.  While the court concluded that losing one's balance while

17  seated or rising from the table may be foreseeable, it was not "within the scope of

18  the risk" created by the decision to serve a hot beverage without a protective sleeve.

19  *Id.*  As the court explained, the failure to use the protective sleeve did not increase

20  the risk of the customer losing her balance.  *Id.*  Here, by contrast, AT&T's failures

21  increased the foreseeable risks to Terpin.

22      In *Wawanesa Mut. Ins. Co. v. Matlock*, 60 Cal.App.4th 583 (1997), the court

23  specifically found a lack of foreseeability when the purchase of cigarettes for a

24  minor led to the teasing of youngsters in the proximity of someone smoking that

25  allegedly caused the youngsters walking on telephone poles to get off those poles

26  and in the process bump into the person holding a cigarette, who then dropped the

27  cigarette which landed in an inaccessible and unrecoverable space between two

28  poles, which then resulted in a fire.  *Id.* at 588-89.  The court appropriately labeled

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

this unforeseeable string of events as the "Rube Goldbergesque system of fortuitous linkages." *Id.* at 588.

And, in *Steinle v. United States*, 17 F.4th 819 (9th Cir. 2021), the court used that same description in a case where a loaded pistol was left in a vehicle, a person broke into the locked vehicle and stole a seemingly innocuous backpack, the person found a pistol in that backpack, removed the pistol from the holster and wrapped it in a cloth before abandoning or losing it a half mile away, where another person then found the pistol four days later and fired it, apparently aimlessly, and a bullet then ricocheted off the ground and struck the victim. *Id.* at 822-23.

*Shih*, *Wawanesa,* and *Steinle* are based on the absence of foreseeability and resulted from fact patterns that resulted in harm that the courts determined would never have been predicted (and *Wawanesa* and *Steinle* involved third parties who had no relationship with the plaintiff). By contrast, the harm suffered by Terpin was the very financial harm that AT&T itself found was foreseeable (*see* September 27, 2017 Cyber Aware Blog) and that was described in numerous articles describing cryptocurrency theft from unauthorized SIM swaps. While AT&T seeks to dress up what occurred between the SIM swap and the theft to make it appear more complicated, what happened following the January 2018 SIM Swap ████

███████████████████████████████████████████████████████

████████████████████████████████████████████████ PF-61.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ PF-155.

This sequence of events was direct, natural and continuous—not a series of fortuitous linkages. *See, e.g., Fraser v. Mint Mobile, LLC*, 2022 WL 1240864 (N.D.Cal. 2022) (the allegations of proximate cause—in a SIM swap case resulting in the draining of cryptocurrency just one hour, eleven minutes after the SIM swap—"are sufficiently direct and not comparable to the 'Rube Goldbergesque

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

83764-00002/4690244.3

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1  system of fortuitous linkages' where California courts have held proximate cause

2  lacking as a matter of law").[5]

3          Moreover, in all of these cases, the facts that made the resulting harm too

4  attenuated all involved *subsequent/intervening* actions occurring *after* the

5  defendant's conduct.  Here, by contrast, the extended attack that AT&T directs at

6  Terpin's security practices

7

8  already occurred *before* the January 2018 SIM Swap.  AT&T cites no actions taken

9  by Terpin *after* the January 2018 SIM Swap that it contends contributed to the theft.

10  Indeed, the only *actions* that occurred *after* the January 2018 SIM Swap were

11

12

13

14                                                                                [6]

15

16



17  [5]  *Modisette v. Apple Inc.*, 30 Cal.App.5th 136 (2018), likewise involved a plaintiff
    with no connection to the defendant, Apple.  Guided in part on policy
18  considerations about the potential limits on of liability to third parties, the court
    found that Apple had no duty to those third parties.  By contrast, AT&T clearly
19  owed duties to Terpin to protect his account by requiring reasonable authentication
    procedures to protect his communications and identifying and investigating bad
20  actor employees such as Smith.  Similarly, the *Modisette* court concluded that the
    driver, not Apple, was the cause of the injury, and that a reasonable person would
21  not consider Apple a cause of the accident.  *Id.*  In contrast, the actions of those
    who caused Terpin harm were foreseeable, as shown in AT&T's September 27,
22  2017 Cyber Aware Blog referencing precisely such actions by a "thief"

23  (*See also* Order on Motion to Dismiss, Dkt. 37 at 5-7).

24

25  [6]  While AT&T may attempt to base a comparative fault defense on Terpin's
    security practices, AT&T cannot circumvent long settled California law that
26  contributory fault is not a complete bar to plaintiff's recovery, *Li v. Yellow Cab Co.*,
    13 Cal.3d 804 (1975).  Should his security practices be raised as part of a
27  comparative fault defense, Terpin has every expectation that the jury will find
    AT&T primarily, if not entirely, responsible for the resulting injury.

28

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

1  **V.    CONCLUSION**

2         For the reasons set forth above, the Court should deny AT&T's motion for

3  summary judgment.

4  Dated: February 6, 2023

5

6  By:  _____

7         PIERCE O'DONNELL (SBN 081298)
       TIMOTHY J. TOOHEY (SBN
       140117)

8         PAUL BLECHNER (159514)
       Attorneys for Plaintiff Michael Terpin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

23

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`

**LOCAL RULE 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiff Michael Terpin, certifies that this brief contains 6,613 words, which complies with the word limit of L.R. 11-6.1

Dated: February 6, 2023

By: /s/ Timothy J. Toohey
PIERCE O'DONNELL (SBN 081298)
TIMOTHY J. TOOHEY (SBN 140117)
PAUL BLECHNER (159514)
Attorneys for Plaintiff Michael Terpin

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

24

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT`