MARCELLUS A. MCRAE, SBN 140308
  mmcrae@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

ASHLEY E. JOHNSON, admitted *pro hac vice*
  ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Dallas, TX  75201
Telephone: 214.698.3100
Facsimile: 214.571.2949

Attorneys for Defendant
AT&T Mobility LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TERPIN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AT&T MOBILITY LLC and DOES 1-25,<br><br>　　　　　Defendants. | Case No. 2:18-cv-06975-ODW-KS<br><br>**DEFENDANT AT&T MOBILITY LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br>[F.R.C.P. 56]<br><br>[*Response to Plaintiff's Additional Facts and Evidentiary Objections lodged concurrently herewith*]<br><br>Hearing Date: February 27, 2023<br>Time: 1:30 p.m.<br>Pretrial Conference: April 10, 2023<br>Trial: May 2, 2023<br>Judge: Hon. Otis D. Wright II |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. GENERAL RESPONSE TO TERPIN'S ADDITIONAL FACTS ..................... 1

III. ARGUMENT .................................................................................................. 2

    A. The Economic Loss Rule Bars Terpin's Negligence Claims .................... 2

    B. Terpin Has Failed to Establish a Triable Issue as to His Federal Communications Act Claim ..................................................................... 4

    C. Terpin Cannot Recover Consequential Damages under a Breach of Contract Theory ....................................................................................... 6

    D. Terpin Cannot Establish Proximate Causation as a Matter of Law .......... 8

    E. Terpin's Declaratory Relief Claim Is Moot ............................................ 10

IV. CONCLUSION ............................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Wright*,
   468 U.S. 737 (1984) .................................................................................................. 9

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..................................................................... 7

*Bhan v. NME Hosps., Inc.*,
   929 F.2d 1404 (9th Cir. 1991) ................................................................................... 2

*Bily v. Arthur Young & Co.*,
   3 Cal.4th 370 (1992) .................................................................................................. 8

*Call One, Inc. v. Anzine*,
   2018 WL 2735089 (N.D. Ill. Jun. 7, 2018) ............................................................... 4

*Copenbarger v. Morris Cerullo World Evangelism*,
   29 Cal.App.5th 1 (2018) ............................................................................................ 6

*Darnaa, LLC v. Google, Inc.*,
   236 F. Supp. 3d 1116 (N.D. Cal. 2017) ..................................................................... 8

*Elden v. Sheldon*
   46 Cal.3d 267 (1988) ................................................................................................. 8

*Erlich v. Menezes*,
   21 Cal.4th 543 (1999) ................................................................................................ 3

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
   209 Cal.App.4th 1118 (2012) .................................................................................... 7

*In re Ford Motor Co. DPS6 Powershift Transmission Products Liab. Litig.*,
   483 F. Supp. 3d 838 (C.D. Cal. 2020) ....................................................................... 3

*Fraser v. Mint Mobile, LLC*,
   2022 WL 1240864 (N.D. Cal. Apr. 27, 2022) ......................................................... 10

*Hemi Group, LLC v. City of New York, N. Y.*,
   559 U.S. 1 (2012) ................................................................................................ 9, 10

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992) ............................................................................................ 9, 10

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified School Dist.*,
   34 Cal.4th 960 (2004) ................................................................................................ 6

*Lewis v. YouTube LLC*,
   244 Cal.App.4th 118 (2015) ...................................................................................... 7

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Lexmark Intern. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .................................................................................... 9

*Maupin v. Widling*,
   192 Cal.App.3d 568 (1987) ......................................................................... 8

*Modisette v. Apple Inc.*,
   30 Cal.App.5th 136 (2018) ........................................................................ 10

*Moore v. Centrelake Med. Grp., Inc.*,
   83 Cal.App.5th 515 (2022) .......................................................................... 3

*Nat'l Steel Corp. v. Golden Eagle Ins. Co.*,
   121 F.3d 496 (9th Cir. 1997) ....................................................................... 5

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
   6 Cal.3d 176 (1971) ..................................................................................... 3

*Novak v. Continental Tire N. Am.*,
   22 Cal.App.5th 189 (2018) .......................................................................... 9

*Paroline v. U.S.*,
   572 U.S. 434 (2014) ..................................................................................... 9

*Sheen v. Wells Fargo, N.A.*,
   12 Cal.5th 905 (2022) ............................................................................. 2, 3

*Shih v. Starbucks Corp.*,
   53 Cal.App.5th 1063 (2020) ................................................................. 9, 10

*Steinle v. United States*,
   17 F.4th 819 (2021) ..................................................................................... 9

*Trishan Air, Inc. v. Federal Ins. Co.*,
   635 F.3d 422 (9th Cir. 2011) ....................................................................... 7

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021) ................................................................................. 5

*Vasilenko v. Grace Family Church*,
   3 Cal.5th 1077 (2017) .................................................................................. 9

*Wawanesa Mutual Ins. Co. v. Matlock*,
   60 Cal.App.4th 583 (1997) ...................................................................... 8, 9

**Statutes**

47 U.S.C. § 222 .................................................................................................. 3, 4

**Regulations**

47 C.F.R. § 64.2011(e) ........................................................................................... 5

## I. INTRODUCTION

Summary judgment should be granted in AT&T's favor because Terpin's Opposition fails to establish a triable issue of fact regarding the defects set forth in AT&T Mobility, LLC's ("AT&T") Motion for Summary Judgment (the "Motion"). Specifically, Terpin fails to:

- Provide any legal authority for why the economic loss doctrine, as recently clarified by the California Supreme Court, does not bar his negligence-based claims;
- Identify any evidence demonstrating that material subject to section 222 of the Federal Communications Act ("FCA") was released by AT&T to third parties;
- Present evidence that AT&T agreed to assume the risk of Terpin's cryptocurrency losses in contradiction to the express terms of the Wireless Customer Agreement ("WCA");
- Provide legal authority for a finding of proximate cause considering the attenuated and random series of events separating AT&T's conduct and Terpin's damages; or
- Address AT&T's showing that his declaratory relief claim is moot.

Because Terpin has failed to "produce specific evidence, through affidavits or admissible discovery material" showing a dispute of material fact, *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), the Motion should be granted and judgment entered in AT&T's favor.

## II. GENERAL RESPONSE TO TERPIN'S ADDITIONAL FACTS

Terpin has submitted **49 exhibits and 172 additional "facts."** As this Court has made clear, "identifying additional facts in opposition to [a] motion without a reasonable basis for believing that the additional facts will materially affect the outcome of the motion" is sanctionable under Rule 11. Dkt. 53 at 7. By AT&T's count, Terpin cites only 24 additional facts in the argument section of his Opposition (some of which are

legal conclusions disguised as facts), apparently recognizing the irrelevance of the remaining 148 facts.[1] This conspicuous disparity raises concerns that Terpin's additional facts flout the Court's guidance.

### III.   ARGUMENT

#### A.   The Economic Loss Rule Bars Terpin's Negligence Claims

As the California Supreme Court recently clarified, tort claims are "barred [by the economic loss rule] when they arise from—or are not independent of—the parties' underlying contracts." *Sheen v. Wells Fargo, N.A.*, 12 Cal.5th 905, 923 (2022). There is no dispute that—at the time of the theft—Terpin and AT&T had a contractual relationship involving the "provision of mobile telephone services." UF 10, 14, 15. Nor is there a dispute that Terpin's negligence claims are premised on conduct related to that contractual relationship. *See, e.g.*, Dkt. 42, ¶¶ 12, 76, 95, 96. Put simply, Terpin's negligence-based claims "arise from" and "are not independent of" his contractual relationship with AT&T. *Sheen*, 12 Cal.5th at 923.

This Court—prior to *Sheen*—permitted Terpin's negligence-based claims to proceed on the ground "Terpin ha[d] adequately pleaded a 'special relationship' with AT&T," precluding application of the economic loss doctrine. Dkt. 37 at 7–9. But *Sheen* held that the special relationship test only applies "when the parties to a proceeding are contractual strangers." *Id.* at 941. This is true even when the negligence claim does not stem directly "from a breach of an obligation provided for in the contract." *Id.*

Apparently recognizing this unequivocal language, Terpin abandons his "special relationship" argument, claiming instead that the economic loss doctrine does not apply due to AT&T's statutory obligation to preserve customer privacy. Dkt. 186-7 at 10. The FCA does establish certain duties on the part of telecommunications carriers such as AT&T, but those duties are not "***completely independent*** of the contract." *See Erlich v.*

---

[1] For example, the 2015 consent decree (Exh. 43) involved entirely different circumstances and did not involve SIM swaps or cryptocurrency theft.

*Menezes*, 21 Cal.4th 543, 552 (1999). To the contrary, the plain language of section 222 of the FCA applies only to information received by telecommunications carriers about their customers—i.e., information received through a contractual relationship. 47 U.S.C. § 222. Moreover, Congress's enactment of section 222, combined with 47 U.S.C. § 207's right to sue, creates a federal cause of action; Terpin provides no basis to infer the economic loss rule does not apply due to a federal cause of action.

Regardless, "the economic loss rule turns not on what claims a plaintiff alleges, but rather on the harm caused (whether it is purely economic) and on the nature of the conduct that caused it, and more particularly on whether that conduct overlaps with a contractual obligation or is independent of it." *In re Ford Motor Co. DPS6 Powershift Transmission Products Liab. Litig.*, 483 F. Supp. 3d 838, 849 (C.D. Cal. 2020). In *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal.App.5th 515, 536 (2022), a negligence claim for economic damages arising out of a contractual relationship that was premised in part on alleged HIPAA violations was precluded under *Sheen*, with the court holding that "appellants have failed to show that their claim is independent of their contracts with [defendant]."[2]

Terpin also argues that *Sheen* does not apply because "the WCA is a classic contract of adhesion." Dkt. 186-7 at 11. But nothing in *Sheen* supports such a limitation. Instead, *Sheen* broadly explains that the Court has "***never***" employed the special relationship exception "to impose a tort duty on a contracting party to avoid negligently causing monetary harm to another party to that contract"—***regardless*** of the type of contract. 12 Cal.5th at 938 (emphasis added). This is because the exception "cannot be coherently applied" in that context. *Id*. at 941.

Finally, Terpin asserts—without support—that AT&T provides "professional services" to its customers and should be held to a professional standard of care.

---

[2] Terpin "quotes" *Moore* as being based both on the lack of independence from the contractual relationship ***and*** the failure to show a separate duty. Dkt. 186-7 at 12 n.4. Based on AT&T's review, the "quoted" language appears nowhere in the opinion.

Dkt. 186-7 at 12. But Terpin offers no authority whatsoever to characterize supposedly inadequate account security as "professional malpractice." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 188 (1971). Such a broad interpretation of the special relationship exception would reach any circumstance where a customer has less "technical expertise" than a service provider—swallowing the economic loss rule.

## B. Terpin Has Failed to Establish a Triable Issue as to His Federal Communications Act Claim

Section 222 of the FCA applies to a communication carrier's failure to protect the "confidentiality" of customer information it obtains. 47 U.S.C. § 222. Section 222(c)(1) establishes specific limitations on the disclosure of certain types of customer information, including "individually identifiable customer proprietary network information [CPNI]" that a provider has "receive[d] or obtain[ed] … by virtue of its provision of a telecommunications service." Pinsky testified that the only thing transferred via the SIM swap was access to Terpin's phone number "on a going-forward basis." UF 35. But Terpin's phone number was not confidential information obtained by the SIM swap; his number was already available on the Internet by virtue of his own actions. UF 12. In any event, a phone number is not CPNI—under either section 222 or the WCA. *Call One, Inc. v. Anzine*, 2018 WL 2735089, at \*9 n.9 (N.D. Ill. Jun. 7, 2018); UF 17.

Terpin argues that section 222 also generally protects "proprietary and private customer information." Dkt. 186-7 at 13. But as this Court previously recognized, the statute does not define what constitutes "proprietary information." Dkt. 29 at 9. Terpin suggests—relying on ***proposed*** (and as-yet unadopted) FCC rulemaking—that section 222 protects any information that can be attained by gaining control of the customer's phone number. Dkt. 186-7 at 14. The proposed rulemaking does not support this view, but, in fact, acknowledges that section 222 only applies to "sensitive customer information to which a telecommunications carrier ***has access***." Dkt. 186-5, Ex. 48, ¶ 3 (emphasis added). Terpin fails to present any evidence: (i) of any actual

"communications (such as password reset messages) that were meant for Terpin's phone"[3] and intercepted by the thieves or (ii) that AT&T had access to any such communications. Dkt. 186-7 at 13. Password resets initiated by someone other than Terpin are not Terpin's confidential communications, let alone confidential information to which AT&T has access. The undisputed facts are that once the SIM swap occurs, the thief has no access to prior communications associated with that phone number, and all subsequent communications using that number are generated and received by the thief unless and until the customer regains control over that number. UF 3, 35. There is no support—even in the FCC's proposed rulemaking—for extending section 222 liability to anything and everything that can be intercepted when a third party takes control over a phone number.

Terpin asserts—without any supporting evidence—that Jahmil Smith "saw details of Terpin's account" while processing the SIM swap. Dkt. 186-7 at 13. Such "[c]onclusory allegations …, without factual support, are insufficient to defeat summary judgment." *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997). Fact discovery is complete, yet there is no evidence showing that Smith saw information covered by section 222, let alone that he disclosed that information to anyone.

But even if Smith accessed confidential information while performing the SIM swap, there would be no liability. A breach under section 222 occurs "when a person ***without authorization or exceeding authorization***, has intentionally gained access to, used, or disclosed CPNI." 47 C.F.R. § 64.2011(e) (emphasis added). In *Van Buren v. United States*, 141 S. Ct. 1648, 1662 (2021), the Supreme Court held that the similar phrase "exceeds authorized access" in the CFAA's prohibition on accessing a computer "without authorization or exceeds authorized access" addresses situations in which a person accesses material "that are off limits to him," not when he obtains information

---

[3] A SIM swap only provides access to a phone number, not a phone. UF 2, 3.

that he is authorized to access "for an improper purpose." *Id.* There is no evidence that Smith accessed any information that he was not authorized to access. AF 90. Instead, Terpin's claim is that Smith was bribed to conduct a SIM swap, AF 172, and thus used his authorization for an improper purpose. Accordingly, no liability can attach to AT&T.

Terpin argues—without citing authority—that applying *Van Buren* would "gut Section 222." Dkt. 186-7 at 15. It would not. A person who was not permitted to access customer accounts for any purpose could violate the statute, as could Smith if he were to access a type of customer information he is never entitled to see. Consistent with the *Van Buren* Court's holding as to the Computer Fraud and Abuse Act, section 222 protects against situations where someone obtains information they are not authorized to access and then discloses that information.

### C. Terpin Cannot Recover Consequential Damages under a Breach of Contract Theory

For his contract claim, Terpin must establish "damages proximately caused by the defendant's breach." *Copenbarger v. Morris Cerullo World Evangelism*, 29 Cal.App.5th 1, 9 (2018). Consequential damages are only available for breach of contract if a party "voluntarily assumes the risk of liability" for those losses "at the time the contract is made." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified School Dist.*, 34 Cal.4th 960, 970 (2004). There is no dispute that Terpin entered into his wireless contract with AT&T by at least 2011. UF 10. Because Terpin did not begin investing in cryptocurrency until 2013, UF 7, AT&T could not have been aware of a risk of cryptocurrency losses when the parties entered a contractual relationship, let alone "voluntarily assume[d] the risk of liability" for those losses. *See Lewis Jorge Constr*, 34 Cal.4th at 970.

Terpin asserts—without support—that "AT&T's obligations are ongoing and evolve as facts and circumstances change." Dkt. 186-7 at 16. Based on these "evolving" obligations, Terpin implies that AT&T subsequently assumed the risk of cryptocurrency losses—even though the WCA itself contains an explicit provision excluding recovery of consequential damages. UF 16. Despite his sworn deposition testimony that AT&T

had no knowledge of a link between his phone number and cryptocurrency accounts prior to the theft, Ochsenbein Decl., Ex. A at 310:5–9, 311:11–15, Terpin now claims he "informed AT&T" he experienced a cryptocurrency loss "in June 2017." Resp. to UF 11. But whether this information was first relayed to AT&T in June 2017 or January 2018 is irrelevant. Both dates are long after the parties entered into the WCA. UF 10. AT&T's changes in security to respond to new threats do not rewrite the WCA, and, in particular, do not change what liabilities AT&T had (or, more appropriately, had not) assumed. Further, Terpin provides no support for his claim that a written contract with an integration clause, Dkt. 167-1, Ex. C, can be materially changed because he obtained "extra security" from an AT&T store clerk. Nor are these allegations of an oral modification to the WCA set forth in Terpin's SAC. Dkt. 42 at ¶¶ 205–11. Because Terpin's "complaint did not raise this claim, it [is] not properly before" this Court. *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011).

The understanding that AT&T did not assume the risk of Terpin's cryptocurrency losses is further confirmed by the plain language of the WCA, which specifically excludes recover of "any indirect, special, punitive, incidental or consequential losses or damages." UF 16. These types of clauses—including nearly identical clauses in form contracts—"have long been recognized [as] valid in California." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App.4th 1118, 1126 (2012); *Lewis v. YouTube LLC*, 244 Cal.App.4th 118, 124–26 (2015); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037–38 (N.D. Cal. 2019). Indeed, one court found that "no district court has precluded application of a limitation-of-liability to a general contract claim based on [Civil Code] Section 1668." *Darnaa, LLC v. Google, Inc.*, 236 F. Supp. 3d 1116, 1125 (N.D. Cal. 2017).

Making no effort to distinguish these cases, Terpin argues that the limitation-of-liability "cannot be used [by AT&T] to exculpate itself from gross negligence or statutory violations." Dkt. 186-7 at 15. This is a classic strawman. AT&T has not (in this

1  Motion) argued that this clause bars anything beyond the recovery of consequential
2  damages from a **breach of contract** claim.

3  In short, both the undisputed facts and the plain enforceable language of the
4  WCA's limitation-of-liability clause establish that Terpin cannot recover for
5  cryptocurrency losses under a breach of contract theory, requiring his claim to be
6  dismissed.

### D. Terpin Cannot Establish Proximate Causation as a Matter of Law

Each of Terpin's remaining damages claims also should be dismissed for the independent reason that Terpin has failed to establish proximate causation as a matter of law.

Terpin argues that proximate causation is a question of fact turning on the foreseeability of harm. Dkt. 186-7 at 18. But "[t]he rule in negligence law is that the harm must be sufficiently likely to arise from a given act before it may be foreseeable in a legal sense." *Wawanesa Mutual Ins. Co. v. Matlock*, 60 Cal.App.4th 583, 588 (1997). Regardless, the law recognizes that liability must be limited "at some point" by public policy considerations "no matter how foreseeable the risk." *Elden v. Sheldon*, 46 Cal.3d 267, 274 (1988); *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 398 (1992) ("Even when foreseeability was present, we have on several recent occasions declined [on policy grounds] to allow recovery on a negligence theory…."). Courts determine, as a matter of law and policy, "the existence and extent of a defendant's liability." *Maupin v. Widling*, 192 Cal.App.3d 568, 573 (1987). Proximate cause encompasses "the judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). That evaluation turns on "the particular context in which an act or injury occurred." *Vasilenko v. Grace Family Church*, 3 Cal.5th 1077, 1084 (2017); *Lexmark Intern. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) (analysis considers "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits").

Even if a SIM swap—and certain losses resulting therefrom—were foreseeable, liability depends on "the course of events" being "a foreseeable result" of the SIM swap. *Shih v. Starbucks Corp.*, 53 Cal.App.5th 1063, 1070 (2020). Here, the linkage between AT&T's conduct and Terpin's loss "is so attenuated" that there is no proximate causation. *See Paroline v. U.S.*, 572 U.S. 434, 445 (2014); *Novak v. Continental Tire N. Am.*, 22 Cal.App.5th 189, 197–98 (2018) (recognizing liability claims premised on "an unlikely series of events" have been denied on proximate cause grounds). For both common law and statutory claims, proximate causation does not extend to "fortuitous linkages" that go "beyond the first step" in the chain of causation. *Wawanesa*, 60 Cal.App.4th at 588; *Holmes*, 503 U.S. at 271–72.

Put another way, proximate cause does not apply to any "link that is 'too remote,' 'purely contingent,' or indirec[t]." *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (quoting *Holmes*, 503 U.S. at 271, 274). As Pinsky testified, "less than 5 percent" of his SIM swaps resulted in cryptocurrency theft as "additional steps" are required to gain access to the target's accounts. UF 38, 39. Here, there is no dispute that the link between the SIM swap and Terpin's damages was "purely contingent" on at least seven additional events that were outside of AT&T's knowledge and control. *See* Mot. at 17–18. Whether these seven additional events were set into motion before to the SIM swap is irrelevant; their impacts unfolded after the SIM swap.

Federal courts reject proximate causation for statutory claims when the chain of causation includes independent actions of others. *See Allen v. Wright*, 468 U.S. 737, 759 (1984); *Steinle v. United States*, 17 F.4th 819, 822 (2021); *Hemi Group*, 559 U.S. at 14. California courts have likewise rejected proximate cause based on attenuated causal chains. *Shih*, 53 Cal.App.5th at 1070–71; *Modisette v. Apple Inc.*, 30 Cal.App.5th 136, 152 (2018). Terpin's assertion that *Shih* and *Modisette* were "based on an absence of foreseeability," Dkt. 186-7 at 21, is demonstrably false. *Shih*, 53 Cal.App.5th at 1070 ("Although it is foreseeable that a customer could lose his or her balance … such an event is not within the scope of the risk …."); *Modisette*, 30 Cal.App.5th at 155 ("We

do not conclude here that Wilhelm's use of the iPhone while driving was unforeseeable.").

Terpin suggests that *Fraser v. Mint Mobile, LLC*, 2022 WL 1240864 (N.D. Cal. Apr. 27, 2022) establishes that the sequence of events leading to his cryptocurrency loss was "not a series of fortuitous linkages." Dkt. 186-7 at 21. It does not. The *Fraser* decision involved a motion to dismiss and was premised on a finding that the "allegations of proximate cause" were "sufficiently direct." 2022 WL 124064, at *3. And those allegations involved not just a SIM swap, but a "large-scale data breach" that disclosed customers' "names, addresses, email addresses, phone numbers, account numbers, and passwords," which in combination with the SIM swap "provided the criminals with ***all the information and access*** required to hack into and drain [plaintiff's cryptocurrency] account." *Id.* at *1, *2 (emphasis added). The evidence does not support such a finding here because "additional steps"—and a series of events beyond AT&T's control—were required beyond the SIM swap to "gain access to [Terpin's] cryptocurrency." UF 38; Mot. at 17–18.

### E. Terpin's Declaratory Relief Claim is Moot

Terpin does not address AT&T's argument that his declaratory relief claim is moot.

## IV. CONCLUSION

For the foregoing reasons, the Court should enter judgment in favor of AT&T.

|   |   |   |
|---|---|---|
| 1 | Respectfully submitted, | |
| 3 | Dated: February 13, 2023 | GIBSON, DUNN & CRUTCHER LLP |
| 5 | | By: */s/ Jeremy S. Ochsenbein* |
| 6 | | Jeremy S. Ochsenbein |
| 7 | | Attorney for Defendant AT&T MOBILITY LLC |

**Local Rule 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for AT&T, certifies that this brief contains 3270 words, which complies with the word limit set forth by Judge Wright's rules.

Dated: February 13, 2023

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jeremy S. Ochsenbein*
Jeremy S. Ochsenbein

Attorney for Defendant
AT&T MOBILITY LLC

106115498.7