1  MARCELLUS A. MCRAE, SBN 140308
     mmcrae@gibsondunn.com
2  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
3  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
4  Facsimile:   213.229.7520

5  ASHLEY E. JOHNSON, admitted *pro hac vice*
     ajohnson@gibsondunn.com
6  GIBSON, DUNN & CRUTCHER LLP
   2001 Ross Avenue
7  Dallas, TX  75201
   Telephone:  214.698.3100
8  Facsimile:  214.571.2949

9  Attorneys for Defendant
   AT&T Mobility LLC

10

11                    UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13  MICHAEL TERPIN,                      Case No. 2:18-cv-06975-ODW-KS

14            Plaintiff,                 **DEFENDANT AT&T MOBILITY
                                         LLC'S RESPONSE TO PLAINTIFF'S
15       v.                              ADDITIONAL FACTS IN SUPPORT
                                         OF PLAINTIFF'S OPPOSITION TO
16  AT&T MOBILITY LLC; and DOES 1-       SUMMARY JUDGMENT**
    25,
17                                       **REDACTED PORTIONS FILED
            Defendants.                  UNDER SEAL PURSUANT TO THE
18                                       COURT'S FEBRUARY 24, 2023
                                         ORDER [DKT 218]**
19
                                         [*Reply ISO Motion for Summary Judgment
20                                       and Evidentiary Objection to Plaintiff's
                                         Additional Facts lodged concurrently
21                                       herewith*]

22
                                         Hearing Date:  February 27, 2023
23
                                         Time: 1:30 p.m.
24
                                         Pretrial Conference:  April 10, 2023
25
                                         Trial: May 2, 2023
26
                                         Judge: Hon. Otis D. Wright II
27

28

Gibson, Dunn &
Crutcher LLP

                                       1
DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Pursuant to Federal Rule of Civil Procedure 56, Local Rules 56-1 and 56-2, and the Scheduling Order for this case (Dkt. 53), Defendant AT&T Mobility LLC ("AT&T") hereby submits the following response to the additional facts set forth in Plaintiff Michael Terpin's Statement of Genuine Disputes of Material Facts (and Conclusions of Law) in Opposition to AT&T's Motion for Summary Judgment (Dkt. 186-6).

## I.   RESPONSE TO ADDITIONAL PLAINTIFF'S FACTS

AT&T's responses are based on the current record before the Court, including all materials submitted in support of and opposition to AT&T's Motion for Summary Judgment. By responding that a purported fact is "undisputed," it is solely for purposes of this Motion and AT&T does not agree or suggest that the fact is true or accurate, but only that AT&T is not offering evidence at this time to establish a dispute, including, but not limited to, because the purported fact is not material to the present Motion. *See Chaudhry v. Angell*, 2021 WL 4461667, at *47 (E.D. Cal. Sept. 29, 2021) (undisputed facts for purposes of summary judgment are not binding at trial); Comments to Fed. R. Civ. P. 56 (indicating that care should be given to "not interfere with a party's ability to accept a fact for purposes of the motion only"); *cf. Myers v. Trendwest Resorts, Inc.,* 178 Cal. App. 4th 735 (2009) (holding there is "no merit" to the contention that "statement of undisputed facts made for purposes of summary judgment constituted judicial admission of facts contained therein," and noting that the court would not "undermine the value of this procedural vehicle . . . by holding that the separate statements of undisputed fact can haunt unsuccessful movants if the case goes to trial."). There are also numerous instances in Plaintiff's Additional Facts where the purported fact is that a given document contains, or that a witness made, a particular statement. In any such instance where AT&T responds that the purported fact is "undisputed," AT&T does not agree or suggest that the statement asserted is true or accurate (as this would be beyond the purported fact itself), but only that AT&T is not offering evidence at this time to

Gibson, Dunn &
Crutcher LLP

dispute that the statement was made, including, but not limited to because the making of the purported statement is not material to the present Motion. AT&T reserves all rights to present evidence that disputes, contradicts or otherwise challenges Plaintiff's additional facts at trial (should it be necessary). AT&T likewise does not concede that any particular "undisputed" fact is material to the resolution of its Motion.

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 1. | As a "common carrier," AT&T was obligated under the Federal Communications Act to protect the private communications of its customers and pledged to do so in its communications to its customers. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *See* additional Plaintiff's Facts numbered 2-18. |
| 2. | Section 222 of the Federal Communications Act (FCA) (47 U.S.C. § 222) ("Section 222") states that telecommunications carriers have a duty to protect the confidentiality of customer proprietary information. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** 47 U.S.C. § 222; Exh[1]. 45 (*In the Matter of the Implementation of the Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network* Information *and Other Customer* |

---

[1] All Exhibits ("Exh." or "Exhs.") referenced hereto are attached to the declaration of Timothy J. Toohey ("Toohey Decl.") submitted herewith.

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | *Information,* FCC 07-22, April 2, 2007, CC Docket No. 96-115 ("Pretexting Order")) n. 6. |
| 3. | The FCC states that Section 222 "calibrates the protection of such information from disclosure based on the sensitivity of the information" and this applies to the customers of common carriers. | Disputed. Legal conclusion (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts.<br><br>**Plaintiff's Evidence**<br>*Id.*, p. 4. |
| 4. | Section 222(a) of the FCA requires AT&T to protect "the confidentiality of proprietary information" which is broader that technical information regarding telephone usage. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts.<br><br>**Plaintiff's Evidence**<br>47 U.S.C. § 222(a); Exh. 46<br>*https://www.fcc.gov/enforcement/areas/privacy* ("Section 222 restricts carriers' use and disclosure of their customers' (and certain other entities') "proprietary" information and requires that telecommunications carriers protect the confidentiality of that information.") |
| 5. | The customer "proprietary information" protected by Section 222 includes information that does not fall | Disputed. Legal conclusion (FRE 401, 402, 701, 702). *See* AT&T's |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
|  | within the statutory definition of CPNI. | Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *See* Exh. 47 (*In the Matter of Cox Communications, Inc.*, 30 FCC Rcd. 12302, 12307 (2015) (Consent Decree at Section II ¶ 4).) (The FCC "has interpreted Section 222(a) as applying to customer 'proprietary information' *that does not fit within the statutory definition of CPNI*") (emphasis added). |
| 6. | Among the information protection by Section 222 is Customer Proprietary Network Information ("CPNI") which is information that relates to the quantity, technical configuration, type, destination, location and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship." | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** 47 U.S.C. § 222(h)(1). |
| 7. | Among the protections that have been required by the Federal Communications Commission (FCC) | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). |

4

Gibson, Dunn & Crutcher LLP

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | for protecting customer privacy is to "appropriately authenticate both new and existing customers seeking access to CPNI online" and at a carrier's retail location. | Exh. 45 -  Relevance (FRE 402), Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 45, Pretexting Order, ¶¶ 21, 23. |
| 8. | In 2015, the FCC fined AT&T $25 million for failing to protect almost 280,000 customers' proprietary information, including sensitive personal information such as customers' names and at least the last four digits of the social security numbers, as well as CPNI. | Disputed. The AT&T Consent Decree contains no conclusive finding that AT&T failed to protect proprietary information or CPNI. Rather, it states that the FCC and AT&T entered "this Consent Decree for the purpose of terminating the Enforcement Bureau's investigation into whether AT&T violated Sections 201(b) and 222." Exh. 43 at 0415. Exh. 43 – Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 43, 30 FCC Rcd 2808 *In the Matter of AT&T Services Inc.* (attached as Exhibit A to the SAC) ("AT&T Consent Decree"). |
| 9. | The AT&T Consent Decree arose out of AT&T's personnel having disclosed | Disputed. The AT&T Consent Decree contains no conclusive finding that |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
|  | CPNI and other information in several data breaches. | AT&T personnel "disclosed CPNI and other information." Rather, it states that the FCC and AT&T entered "this Consent Decree for the purpose of terminating the Enforcement Bureau's investigation into whether AT&T violated Sections 201(b) and 222." Exh. 43 at 0415. Exh. 43 – Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.* at ¶ 8. |
| 10. | The AT&T Consent Decree required AT&T to "have in place and thereafter maintain an information security program ("Information Security Program") reasonably designed to protect CPNI and Personal Information [of customers] from unauthorized access, use, or disclosure by Covered Employees [i.e., AT&T employees with responsibilities including access to customer Personal Information and CPNI] and Covered Vendor Employees [i.e., employees of vendors | Disputed. Exh. 43 – Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.* at ¶ 18(b). |

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | with access to customer Personal Information and CPNI]." | |
| 11. | AT&T's "Information Security Program" required AT&T to monitor vendors' compliance in protecting customers' Personal Information and CPNI. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). Exh. 43 – Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.* |
| 12. | The FCC required in the Consent Decree that AT&T's Information Security Program "identify and respond to emerging risks or threats, and to comply with the requirements of Section 222 of the Act, the CPNI Rules, and this Consent Decree." | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). Exh. 43 – Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.* ¶ 18(c). |
| 13. | The FCC required that AT&T as part of its Information Security Program establish a Compliance Training Program in compliance with Section 222 of the Act, the CPNI Rules, and the Operating Procedures. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). The cited evidence states that "AT&T shall establish and implement a Compliance Training Program **on** compliance with Section 222, the CPNI Rules, and the Operating Procedures" and makes no reference to AT&T's Information Security Program. Exh. 43 ¶ 18(g) (emphasis added). |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | Exh. 43 – Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.* ¶ 18(g). |
| 14. | The FCC required AT&T to have an Information Security Program in place under ¶18(b)-(c) for seven years from 2015, thus the Information Security Program was supposed to have been in effect in 2017 and 2018. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). Exh. 43 – Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.* ¶ 22. |
| 15. | In 2021, the FCC proposed amendments to its regulations to better guard against unauthorized SIM swaps. | Undisputed. |
| 16. | In the NPR, the FCC stated that it was proceeding under its authority under Section 222 to propose regulations to prevent unauthorized SIM swaps to "protect the confidentiality of proprietary information of and relating to customers." | Undisputed. |
| 17. | In the NPR, the FCC also states that "the bad actor [perpetrating a SIM swap] gains access to all of the | Disputed in part. The quoted material appears in paragraph 5 of Exhibit 48, but does not state it is a violation of |

8

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | information associated with the customer's account, <u>including CPNI</u>, and gains control over the customer's phone number and receives both text messages and phone calls intended for the victim" thus violating section 222 of the FCA. | section 222, and which is not a fact, but a legal conclusion and improper opinion (FRE 401, 402, 701, 702). Exh. 48 – Legal conclusion (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exhibit 48 (Notice of Proposed Rulemaking, *In the Matter of Protecting Consumers from SIM Swap and Port-Out Fraud*, WC Docket No. 21-341 (September 30, 2021) *https://www.fcc.gov/document/fccprop oses- rules-prevent-simswapping- and-port-out-fraud* ("NPR") ¶ 5 (emphasis added). |
| 18. | The CPNI turned over in a SIM swap could include the "location" information of communications (such as SMS password reset messages), "destination" information (because SMS password reset messages were sent to a different destination under the control of the perpetrator of the SIM | Disputed. "When a 'SIM swap' occurs, the phone number becomes associated with a different SIM. Any information contained on the previous SIM is not transferred to the new SIM." UF 3.  Nor does it state that CPNI could be turned over in a SIM swap. The characterization of what is |

9

Gibson, Dunn & Crutcher LLP

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | swap) and the SIM itself (which relates to the "technical configuration" of the phone because it provides the link between a phone and mobility services). | CPNI is a legal conclusion (FRE 401, 402, 701, 702) and lacks foundation (FRE 602).  NPR (Exh. 18) – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts.<br><br>**Plaintiff's Evidence**<br>47 U.S.C. § 222(h)(1) and NPR. |
| 19. | In its May 2, 2017 Privacy Policy and in its Code of Business Conduct ("COBC") AT&T promised its customers that it would protect their privacy and the confidentiality of their communications in conformity with its "legal obligations." | Disputed. The quoted material does not appear in AT&T's May 2, 2017 Privacy Policy. Exh. 18. To the contrary, AT&T's Privacy Policy states: "Although we strive to keep your Personal Information secure, no security measures are perfect, and we cannot guarantee that your Personal Information will never be disclosed in a manner inconsistent with this Policy (for example, as the result of unauthorized acts by third parties that violate the law or this Policy)." Dkt. 18 at 0195. Further, AT&T's COBC is not in the record; Exh. 44 is AT&T's Wireless Customer Agreement ("WCA"). |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | The assertion that the Privacy Policy or COBC documents "promised" anything is a legal conclusion and improper opinion. (FRE 401, 402 701, 702). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *See* additional Plaintiff's Facts numbered 20-25. |
| 20. | Among the "legal obligations" that AT&T had in 2017 and 2018 was ensuring that it had an Information Security Program in place that complied with the AT&T Consent Decree, including a program "to identify and respond to emerging risks or threats, and to comply with the requirements of Section 222 of the Act, the CPNI Rules, and this Consent Decree". | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702). Exh. 43 – Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 43 (AT&T Consent Decree) ¶¶ 18(b)-(c) and ¶ 22. |
| 21. | Before January 7, 2018, in a privacy policy effective May 2, 2017, AT&T stated that "all of our employees are subject to the AT&T Code of Business Conduct (COBC) and certain state- | Undisputed. |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | mandated codes of conduct.  Under the COBC, all employees must follow the laws, rules, regulations, court and/or administrative orders that apply to our business—including, specifically, the legal requirements and company policies surrounding the privacy of communications and the security and privacy of your records.  We take this seriously,  and any of our employees who fail to meet the standards we've set in the COBC are subject to disciplinary action.  That includes dismissal." | |
| 22. | Among the commitments that AT&T made to its customers in its May 2, 2017 Privacy Policy was that it required "caller/online authentication before providing Account Information so that only you or someone who knows your Account Information will be able to access or change the information." | Disputed in part. The quoted material appears in the Privacy Policy. However, the assertion that the quoted material is a "commitment" is a legal conclusion and improper opinion. (FRE 401, 402, 701, 702). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. |
| 23. | In the AT&T COBC, Mr. Randall Stephenson (AT&T's former chairman and chief executive) and David Hunter | Disputed. AT&T's chief compliance officer is David Huntley, not Hunter. Dkt. 42-1, Exh C. Further, AT&T's |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | (AT&T's chief compliance officer) recognized that "[o]ur customers count on us" and promised "[t]hat we will follow not only the letter of the law, but the spirit of the law" and "that we will always take responsibility." | COBC is not in attached to the Toohey Declaration; Exh. 44 is AT&T's WCA. Exh. 41 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence**: Exh. 44 (AT&T COBC, attached as Exhibit C to SAC); Exh. 41 (Supplemental Response of Michael Terpin to Interrogatory No. 18 (outlining promises or representations in the AT&T Privacy Policy and COBC that Mr. Terpin contends were false).) |
| 24. | In its COBC, AT&T promised that AT&T will "protect the privacy of our customers' communications" because "[n]ot only do our customers demand this, but the law requires it. Maintaining the confidentiality of communications is, and always has been, a crucial part of our business." | Disputed in part. AT&T's COBC is not in the record; Exh. 44 is AT&T's WCA. "Promised" is a legal conclusion and improper opinion. (FRE 401, 402, 701, 702). Exh. 41 – Hearsay (FRE 802); Legal conclusion/improper opinion (FRE 401/402 701, 702); Argument (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | **Plaintiff's Evidence**<br><br>Exh. 44 (AT&T COBC); Exh. 41 (Supplemental Response of Michael Terpin to Interrogatory No. 18 (outlining promises or representations in the AT&T Privacy Policy and COBC that Mr. Terpin contends were false).) |
| 25. | In its COBC, AT&T promised that "[a]ny inappropriate use of confidential customers information violates our customers' trust and may also violate a law or regulation. Preserving our customers' trust by safeguarding their private data is essential to our reputation." | Disputed in part. AT&T's COBC is not in the record; Exh. 44 is AT&T's WCA. "Promised" is a legal conclusion and improper opinion (FRE 401, 402, 701, 702). Exh. 41 – Hearsay (FRE 802); Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Argument (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts.<br><br>**Plaintiff's Evidence**<br><br>Exh. 44 (AT&T COBC); Exh. 41 (Supplemental Response of Michael Terpin to Interrogatory No. 18 (outlining promises or representations in the AT&T Privacy Policy and |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | COBC that Mr. Terpin contends were false).) |
| 26. | Mr. Terpin suffered an unauthorized SIM swap on his AT&T account on June 11, 2017. | Undisputed. |
| 27. | ███████████████████ ███████████████████ ███████████████████ ███████████████████ ███████████████████ ███████████████████ █████████████. | Disputed in part. ███████████ ███████████████ ████████████████ ████████████ ████████████████ ████████████████ ██████████████ ███████████<br><br>Exh. 21 - Hearsay. (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts.<br><br>**Plaintiff's Evidence**<br>███████████████ ███████████████ ███████████ |
| 28. | ███████████████ ███████████████ | Disputed. ███████████ ███████████████ |

---

[2] All Bates Numbers with the prefix "ATT-TERP" are documents produced in discovery by AT&T in this litigation and are abbreviated to the last four of five numbers after the prefix.

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| |  | [redacted]. Exh. 21 at 3757. **Plaintiff's Evidence** |
| 29. | | Undisputed. |
| 30. | Due to the unauthorized SIM swap of his AT&T account on June 11, 2017 (and also a T-Mobile account), Mr. Terpin's Skype account was hacked through a password change and Mr. Terpin lost half a bitcoin from an Uphold account. | Disputed. Exh. 41 – Hearsay (FRE 801); Lacks foundation (FRE 602); Legal conclusion/improper Opinion (FRE 401, 402, 701, 702); Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 41 (Michael Terpin Supplemental Responses to AT&T interrogatories Nos. 3, 5). |
| 31. | | Disputed. Exh. 41 – Hearsay (FRE 801, 802); Lack of foundation (FRE 602); Legal conclusion/improper opinion (FRE 401, 402, 701, 702). |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ███ | *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** ████████████████ █████████ |
| 32. | On June 13, 2017, Terpin went into an AT&T store in Puerto Rico, which validated him with a scan of his driver's license and reversed the June 11, 2017 unauthorized SIM swap. | Disputed. Exh 41 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 41 (Michael Terpin Supplemental Responses to AT&T interrogatories Nos. 3, 5); Exh. 21 at 3754 (Account Notes). |
| 33. | At the AT&T store on June 13, 2017, Mr. Terpin informed AT&T that he had loss cryptocurrency in the June 11, 2017 unauthorized SIM swap. | Disputed. The evidence in the record indicates that Terpin did not inform AT&T of his cryptocurrency holdings prior to January 7, 2018. Ochsenbein Decl., Ex. A at 310:5-9 ("Q. Would you agree with me that AT&T had no idea what accounts -- what cryptocurrency or other financial accounts you had linked to a phone number that was an AT&T phone |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | number? A. Me specifically, no."); Morella Decl., ¶ 3. Exh 41 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 41 (Terpin Supplemental Response to Interrogatory No. 15). |
| 34. | At the June 13, 2017 meeting with AT&T, AT&T provided Mr. Terpin with the "celebrity" or "extra" security upgrade from standard for-digit PIN in the form of a six-digit PIN, which he was told by the AT&T clerk could not be changed by anyone other than Mr. Terpin. | Disputed. Exh 41 – Hearsay (FRE 801, 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.* |
| 35. | Mr. Terpin was told that the six- digit code (█████████████ ██████████████████████ ████████████████████ ███████ and which would only be known to Mr. Terpin would prevent unauthorized SIM swaps by requiring Mr. Terpin to identify himself by providing the code before any account | Disputed. Exh 41 – Hearsay (FRE 801, 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.* |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | changes, including swapping his SIM card to another phone. | |
| 36. | ██████████████ ████████████████ ██████████████ ██████████████ ████████████ | Undisputed. |
| 37. | A prominent "Special Instruction" (also known as a "hot note") was also entered on Mr. Terpin's account on June 13, 2017 (and was supposedly displayed in red on each page of the notes visible to all AT&T account representatives) ████████████ ██████████████ ████████████████ ██████████████ ████████████ ██████████████ ██████████████ ██████████████ ████████████ | Undisputed. |
| 38. | ██████████████ ████████████ ██████████ ██████████████ | Undisputed. |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | "███████████████████<br>███████████████<br>██████ | |
| 39. | ██████████████████<br>████████████████<br>████████████████<br>████████████ | Undisputed. |
| 40. | █████████████<br>█████████████<br>██████████████████<br>████████████████<br>██████████<br>███████████████<br>████████████████<br>███████████████<br>█████████████ | Undisputed. |
| 41. | Terpin believed AT&T's promises to him in June 2017 that the privacy and communications were secured and that "AT&T would not turn over his phone or all his communications to an unauthorized third party through facilitating a SIM swap" because after his June 2017 SIM swap AT&T representatives had told him that his account could be secured by implementing a six-digit code known only to himself on his AT&T account. | Disputed. Exh 41 – Hearsay (FRE 801, 802); Legal conclusion/improper opinion (FRE 410, 402, 701, 702); Argument (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 41 (Terpin Supplemental Response to Interrogatory No. 18); Terpin Decl. ¶¶ 2-3. |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 42. | Based on AT&T's representations regarding the "celebrity" or "extra" security on his account protecting him against future unauthorized SIM swaps, Mr. Terpin remained an AT&T customer rather than switching to another carrier. | Disputed in part. Argument (FRE 401, 402). Terpin Decl. ¶¶ 2-3 – Argument (FRE 401, 402); Legal conclusion/improper opinion (401, 402, 701, 702); Hearsay (FRE 801, 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Terpin Decl. ¶¶ 2-3; Exh. 21 (Account Notes) at 3751 (Mr. Terpin told AT&T he was not "switching" carriers). |
| 43. | AT&T never told Mr. Terpin that the "celebrity" or "extra" security that AT&T was providing could be bypassed by the last four numbers of a social security number without his being present and providing his security PIN. | Disputed. Terpin Decl. ¶ 4 – Lacks foundation (FRE 602); Hearsay (FRE 801, 802); Relevance (FRE 401, 402). **Plaintiff's Evidence** Terpin Decl. ¶ 4. |
| 44. | Consistent with and echoing the statements made by AT&T to Mr. Terpin in June 2017, on September 27, 2017, AT&T warned its customers on its website in a "Cyber Aware" blog against unauthorized SIM swaps | Disputed in part. AT&T disputes the assertions regarding statements purportedly made in the June 2017 discussion for the reasons it is disputed in PFs 42 and 43. Hearsay |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
|  | causing financial harm and recommended they adopt the "extra security" protection that they had provided to Mr. Terpin. | (FRE 801, 802); Lack of foundation (FRE 602). **Plaintiff's Evidence** Exh. 7 (Dep. Exh. 25) ("What You Need to Know about SIM Swap Scans" by Brian Rexroad, AT&T ("Cyber Aware blog"), p. 2988). |
| 45. | ███████████████ | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Relevance (FRE 401, 402); Lacks foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** ███████████ ██████ |
| 46. | ██████████████ | Undisputed. |
| 47. | ███████████ | Disputed in part. ██████████ |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP



| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | ▮▮▮▮▮ | ▮▮▮▮▮ Exh. 9 (Dep. Exh. 27) (January 21, 2016 e-mail from Bob Diana to Peter Coulter *et al.*) **Plaintiff's Evidence** ▮▮▮▮▮ |
| 48. | ▮▮▮▮▮ | Disputed in part. The quoted material "fraud noting" does not appear in the cited evidence. Nor is the conclusion linking the failure to review prior notations and the bypassing of extra security passwords found in the document. **Plaintiff's Evidence** ▮▮▮▮▮ |
| 49. | ▮▮▮▮▮ | Disputed in part. ▮▮▮▮▮ **Plaintiff's Evidence** |

Gibson, Dunn & Crutcher LLP

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
|     | ███████████████ | ████████████████████ |
|     | ██████████████ | ██████████████████ |
|     | ███████████████ | ██████████████████ |
|     | ████████████████ | ████████████████ |
|     |                 | ██████████████████████ |
|     |                 | ███ |
| 50. | Before January 7, 2018, Federal and state regulators had warned consumers about unauthorized SIM swaps leading to adverse financial consequences. | Undisputed. |
| 51. | AT&T knew or should have known before June 7, 2016 that the New York Department of State, Division of Consumer Protection, had warned AT&T wireless customers of a SIM card swapping scam that tricked customers into providing the last four of SSN so that an "impersonator" could engage in a SIM swap. | Disputed. Legal conclusion/improper opinion (FRE 401. 402, 701, 702); Lacks foundation (FRE 602); Argument (FRE 401, 402). Exh. 10 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 10 (Dep. Exh. 28) ("AT&T SIM-card Switch Scam") from New York State Division of Consumer Protection. |
| 52. | AT&T knew or should have known that the Federal Trade Commission in a blog posting by the FTC Chief Technologist on June 7, 2016 warned | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Lacks foundation (FRE 602); Argument (FRE 401, 402). Exh. 8 – |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
| | consumers that their "phones could be hijacked by an identity theft" to steal financial assets. | Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. <br><br> **Plaintiff's Evidence** <br> Exh. 8 (Dep. Exh. 26) (June 7, 2016 FTC blog posting, "Your mobile phone account could be hijacked by an identity theft"); Exh. 10 (Dep. Exh. 28) ("AT&T SIM-card Switch Scam") |
| 53. | Prior to January 7, 2018, AT&T knew or should have known of widely distributed articles in major publications, including *Forbes* and the *New York Times*, that publicized the increasing use of unauthorized SIM swaps to steal cryptocurrency. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Lacks foundation (FRE 602); Argument (FRE 401, 402). <br> Exh. 11 – Hearsay (FRE 802). <br> Exh. 12 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. <br> **Plaintiff's Evidence** <br> Exh. 12 (Dep. Exh. 43), L. Shin, *"Hackers Have Stolen Millions of Dollars in Bitcoin—Using Only Phone Numbers",* Forbes, December 12, 2016; Exh. 11 (Dep. Exh. 40), N. Popper "Identity Thieves Hijack Cellphone Accounts to Go After |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | Virtual Currency", *New York Times*, August 21, 2017. |
| 54. | AT&T knew or should have known of a December 12, 2016 article in *Forbes* titled "Hackers have stolen millions of dollars in Bitcoin— Using only phone numbers" that there was a "spate of recent hackings of high-profile cryptocurrency industry players . . . who have had their phone numbers hijacked, some of whom have also suffered financial losses, several of whom have been threatened or ransomed, and one of whom was put in physical danger." | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Lacks foundation (FRE 602); Argument (FRE 401, 402).  Exh. 12 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. <br> **Plaintiff's Evidence** <br> Exh. 12 (Dep. Exh. 43), L. Shin, *"Hackers Have Stolen Millions of Dollars in Bitcoin—Using Only Phone Numbers",* Forbes, December 12, 2016 |
| 55. | AT&T knew or should have known of the warning in the December 12, 2016 *Forbes* article that the "phone number is key" to unauthorized SIM swaps involving cryptocurrency because it can be used to reset passwords and obtain access to information." | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Lacks foundation (FRE 602); Argument (FRE 401, 402). Exh. 12 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. <br> **Plaintiff's Evidence** <br> Exh. 12 (Dep. Exh. 43), L. Shin, *"Hackers Have Stolen Millions of Dollars in Bitcoin—Using Only Phone* |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | *Numbers"*, Forbes, December 12, 2016 |
| 56. | AT&T knew or should have known of the observation of the CEO of the US-based cryptocurrency exchange Kraken (Jesse Powell) who stated in the *Forbes* article that he "blames the telcos for not safekeeping phone numbers even though they are a linchpin in security for some many services." Mr. Powell stated that "'[t]he [telecom] companies don't treat your phone number like a bank account, but it should be treated like your bank. If you show up without your pin code or your ID, they shouldn't help you,' he says. 'But they prioritized convenience above else.'" | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Lacks foundation (FRE 602); Argument (FRE 401, 402). Exh. 12 – Hearsay (FRE 802); Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Lacks foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 12 (Dep. Exh. 43), L. Shin, *"Hackers Have Stolen Millions of Dollars in Bitcoin—Using Only Phone Numbers"*, Forbes, December 12, 2016 |
| 57. | An August 21, 2017 article in the *New York Times,* titled "Identity Thieves Hijack Cellphone Accounts to Go After Virtual Currency," specifically referenced AT&T and noted that the number of unauthorized SIM swaps had increased since the *Forbes* article, | Disputed. Exh. 11 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 11 (Dep. Exh. 40), N. Popper "Identity Thieves Hijack Cellphone Accounts to Go After Virtual |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | as had the amount of financial losses to investors in cryptocurrency. | Currency", *New York Times*, August 21, 2017. |
| 58. | An August 21, 2017 *New York Times* article warned that "even sophisticated programmers and security experts" were vulnerable to unauthorized SIM swaps that robbed the victims of cryptocurrency. | Undisputed. |
| 59. | An August 21, 2017 *New York Times* article stated that "[t]he vulnerability of phone numbers is the unintended consequence of a broad push in the security industry to institute a practice, known as two-factor authentication, that is supposed to help make accounts more secure." | Undisputed. |
| 60. | On September 28, 2017, an article entitled "SIM Swap Scams Targeting Cryptocurrency Investors" was published at https://www.jdsupra.com/legalne ws/sim-swap-scams-targeting-cryptocurrency-34128/.  The article states in the opening paragraph that "Telecommunications providers such as Verizon, AT&T, T- Mobile, and | Disputed. Exh. 36 – Hearsay (FRE 802); Lack of foundation (FRE 602). **Plaintiff's Evidence** Exh. 36 (Dep. Exh. 161) (September 28, 2017 article "SIM Swap Scams Targeting Cryptocurrency Investors"). |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | Spring have been aware for over ten years that unauthorized third parties regularly attempt to obtain access to customer subscriber accounts to gain control over a customer's SIM card" and continues in a subsequent section that "the most recent of these scams targets cryptocurrency investors, such as those who invest in Bitcoin or Ethereum." | |
| 61. | ███████████████████████ | Undisputed. |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 62. | By at least the fall of 2017 in an alert distributed to its employees ("CSP Alert"), AT&T also recognized that proper authentication of customers was essential to determining whether it was dealing with a genuine customer. For example, in August 2017, AT&T issued an alert in its "MyCSP" portal to its agents regarding "Fraud and Social Engineering" that stressed the importance of authenticating accounts to prevent unauthorized SIM swaps. The article stressed AT&T's "long-standing policy of protecting customer privacy" including personal information and CPNI. | Undisputed. |
| 63. | In its August 16, 2017 MyCSP Alert, AT&T alerted its employees regarding fraud for customer imposters and stated that "currently, fraudsters focus on SIM changes" which involve account takeovers through the "unauthorized use of personal data (e.g., name, address and SSN) . . . to assume another individual's identity." | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | The result of such fraud changes was that a "customer cannot use their phone." | |
| 64. | ███████████ | Undisputed. |
| 65. | ███████████ | Undisputed. |
| 66. | ███████████ | Undisputed. |
| 67. | ███████████ | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP



| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | ▮▮▮▮ | |
| 68. | ▮▮▮▮ | Disputed in part. The cited evidence does not support the assertion that "▮▮▮▮ ▮▮▮ Exh. 13, Exh. 15. **Plaintiff's Evidence** ▮▮▮▮ |
| 69. | ▮▮▮▮ | Undisputed. |
| 70. | ▮▮▮▮ | Disputed in part. The cited evidence does not support the assertion that "▮▮▮ |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS



| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | ███████████████ | ██████████ |
| | ███████████ | ████████████████ |
| | ███████████████ | ████████████████ |
| | ████████████ | Exh. 34. |
| | █████████████████ | **Plaintiff's Evidence** |
| | █████████ | ████████████████ |
| | | ████████████████ |
| | | █████████████ |
| 71. | ████████████████ | Undisputed. |
| | ████████████ | |
| | ███████████████ | |
| | ███████████████ | |
| | █████████████████ | |
| | ██████████████ | |
| | ███████████████ | |
| | ████████████████ | |
| | ██████████████ | |
| | ████████████ | |
| 72. | ████████████ | Undisputed. |
| | ███████████████ | |
| | ██████████████ | |
| | ██████████ | |
| 73. | On September 27, 2017 AT&T issued a warning to its customers on its website's Cyber Aware Blog titled "What You Need to Know About SIM | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | Swap Scams. The warning noted that "thieves . . . target a person with valuable on line accounts" including "a financial account with a lot of money or a social media account with a large following." | |
| 74. | AT&T's September 27, 2017 Cyber Aware Blog warned AT&T customers that once a "thief" gathers information about a customer, he will attempt a "SIM swap." It also warned customer that the thief will convince your mobile service provider to replace the SIM card in your phone with one in his possession. If successful, "the mobile network will start sending calls and texts to the new SIM card—which is really the thief's phone." | Undisputed. |
| 75. | AT&T's September 27, 2017 Cyber Aware Blog warned customers that once a thief had engaged in a SIM swap that "[t]his will deactivate your phone, and the thief will starting getting your calls and texts on his device, including authentication texts, one-time PINS or phone responses. | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | This means the thief may be able to gain access to your financial or social media accounts." | |
| 76. | In its September 27, 2017 Cyber Aware Blog AT&T warned its customers that although SIM swaps "tend to target high-profile individuals" they "could happen to anyone." | Undisputed. |
| 77. | In its September 27, 2017 Cyber Aware Blog in the section titled "What can you do?", AT&T's first recommendation to prevent unauthorized SIM swaps was that a customer "add 'extra security' measures to your AT&T Wireless accounts" which was a "unique passcode" that would be required "before any significant changes can be made…" | Undisputed. |
| 78. | By October 2017, AT&T recognized that the fraud problem was being exacerbated by the Equifax data breach in 2017 that led to counterfeit IDs being a "top fraud challenge" for both new and existing customers. | Undisputed. |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 79. | Cryptocurrency experienced substantial increase in value in 2017 and had increasingly become part of the global financial system. | Disputed in part. The cited material does not support the assertion that cryptocurrency "had increasingly become part of the global financial system."<br>**Plaintiff's Evidence**<br>*See* additional Plaintiff's Facts numbered 80-85. |
| 80. | In 2017, commentators proclaimed that 2017 was the year in which cryptocurrency had "joined the global financial system" with Bitcoin ("BTC") going from a dollar value of $960 to $10,000 by November 2017. | Disputed. Exh. 48 – Hearsay (FRE 802). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts.<br>**Plaintiff's Evidence**<br>Exh. 48<br>(https://www.theverge.com/2017/11/29/16711304/bitcoin-price-10000-cryptocurrency-regulation-finance) |
| 81. | The market capitalization of BTC reached $100.1 billion dollars on October 21, 2017. | Undisputed. |
| 82. | Ellis Pinsky, who ultimately processed the January 7, 2018 Terpin SIM Swap, became aware of SIM Swapping for cryptocurrency thefts around July 2017. He had numerous conversations with persons about the subject, | Disputed in part. AT&T does not dispute that Pinsky provided this testimony.<br>Exh. 6 at 66:23-67:3– Hearsay (FRE 802). *See* AT&T's Evidentiary |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | including at least four persons—whom he identified as Colton, Wimblo, Jordy, and McKain—had said that they had done an AT&T SIM swap that led to a cryptocurrency theft in 2017. | Objections to Plaintiff's Additional Facts. <br> **Plaintiff's Evidence** <br> Exh. 6 (Deposition of Ellis Pinsky ("Pinsky Dep.")) at 66:23-67:3: "Q. Okay. So at least McKain, Colton, Winblo and Jordy had said that they had done an AT&T SIM swap that had led to a cryptocurrency theft in 2017? A. They said it a little more informally, but yes." |
| 83. | During the second half of 2017, SIM swapping for the purpose of accessing and stealing cryptocurrency had become the primary reason that Pinsky was involved in SIM swapping. | Undisputed. |
| 84. | Many other people online with whom Pinsky shared and received information about SIM swapping had similarly become more focused during the second half of 2017 on SIM swapping for the purpose of stealing cryptocurrency. | Disputed. The cited material supports that Pinsky agrees with this statement, not that the statement is accurate. (Pinsky Dep.) at 80:16-23 – Hearsay (FRE 802); Lack of foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. <br> **Plaintiff's Evidence** |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | Exh. 6 (Pinsky Dep.) at 80:16-23: "Q. Okay. Would you agree that during 2017, and particularly in the second half of 2017, SIM swapping for the purpose of accessing and stealing cryptocurrency had become the focus of many of the other people online with whom you shared and received information about SIM swapping? A. Yes." |
| 85. | Prior to the Terpin SIM Swap, Pinsky admitted to being personally involved in less than five SIM swaps during 2017 that had resulted in cryptocurrency theft, with the largest of these prior cryptocurrency thefts being in low six figures (split between them). | Undisputed. |
| 86. | AT&T knew or should have known that the employee of its authorized retailer Spring Communications ("Spring"), Jahmil Smith ("Smith"), who effected the January 7, 2018 unauthorized SIM swap of Mr. Terpin's accounts had in December 2017 engaged in other unauthorized | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Lacks foundation (FRE 602); Argument (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | SIM swaps of the accounts of AT&T customers, yet AT&T did nothing to discipline (or have disciplined) Smith, discontinue his employment or access to AT&T systems, or otherwise prevent Smith from conducting the January 7, 2018 unauthorized SIM swap of Mr. Terpin's account. | *See* additional Plaintiff's Facts numbered 87-95. |
| 87. | AT&T has agreements with third parties called authorized retailers ("ARs") who are vendors with exclusive agreements to sell and service AT&T services and equipment to customers. | Undisputed. |
| 88. | Spring Communications ("Spring") and Prime Communications ("Prime") were two of AT&T's ARs in early 2018. | Undisputed. |
| 89. | Smith, whose ATT UID (identification number) was "jx853v" was an employee of an AR (Spring), as can be seen by the Account Notes' reference to "EXCL-MBI." | Undisputed. |
| 90. | Employees of ARs have access to and can make account notes for customers | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
|  | for AT&T customers on the AT&T "OPUS" customer care system. | |
| 91. | Stores operated by ARs use AT&T logos, sell only AT&T products, and are (even to AT&T employees) often indistinguishable from AT&T owned and operated stores. | Undisputed. |
| 92. | Employees of ARs are supposed to follow the same procedures as AT&T employees in authenticating customers and those procedures are distributed to them. | Undisputed. |
| 93. | Further foreshadowing what would occur to Terpin on January 7, 2018, Smith, an employee of an AT&T authorized retailer at an AT&T branded store in Norwich, Connecticut, conducted two unauthorized SIM swaps on December 9, 2017 (the "Prior Smith SIM Swaps"). | Disputed in part on the grounds that the purported fact that Smith's December SIM swaps foreshadowed the January 7, 2018 SIM Swap is a legal conclusion/improper opinion (FRE 401, 402, 701, 702) and argument (FRE 401, FRE 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 32 (Dep. Exh. 146); Exh. 5 (Deposition of AT&T Mobility (30(b)(6)) on select issues with Designee Joseph Morella |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | ("AT&T/Morella Dep.")) 100:20-101:1:<br><br>"Q. Is it -- is it correct that you are of the view today that these are two - - these were two unauthorized SIM swaps processed by Jahmil Smith? MS. JOHNSON: Object to the form. Outside the scope. THE WITNESS: It is my opinion that they were unauthorized, yes." |
| 94. | █████████████████████████<br>████████████████<br>█████████████████████████<br>███████████████████<br>████████████████<br>███████████████████<br>█████████ | Undisputed. |
| 95. | Joseph Morella–one of the Assistant Vice President of the Asset Protection division and the lead investigator on the Terpin SIM Swaps–stated that he did not know customer care's policies and procedures for referring calls to GFMO or asset protection but "if a customer claimed that there was activity on their account that they | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | didn't do, [he] would anticipate that it would have went to fraud or to asset protection." | |
| 96. | AT&T learned about the Prior Smith SIM Swaps shortly after they occurred and either did not have or did not follow reasonable policies and practices both as to its own investigation of such matters and as to communicating with its ARs to ensure their proper investigation of such matters. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Lack of foundation (FRE 602); Argument (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *See* additional Plaintiff's Facts numbered 99-118. |
| 97. | By virtue of the decision that AT&T allowed the customer care representative to make, AT&T conducted no investigation of its own and did not share information with Spring about the Prior Smith SIM Swaps that only AT&T (and not Spring) had. Neither AT&T nor Spring conducted an investigation of Smith's involvement in the Prior Smith SIM Swaps prior to the January 7, 2018 Terpin SIM Swap. | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); Argument (FRE 401,402); Lack of foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *See* additional Plaintiff's Facts numbered 99-118. |
| 98. | Had AT&T performed proper procedures for monitoring and | Disputed. Legal conclusion/improper opinion (FRE 401, 402, 701, 702); |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | investigating the Prior Smith SIM Swaps and reviewed basic information about the Prior Smith SIM Swaps that were readily available, it would not have allowed Smith to continue to work. | Lacks Foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *See* additional Plaintiff's Facts numbered 99-118. |
| 99. | The customer calls about the Prior Smith SIM Swaps came to AT&T customer service. | Disputed in part. The cited material does not establish whether the calls were made to an AT&T call center or to a call centers operated by contractors. Exh. 5 (AT&T/Morella Dep.) 94:12-25. **Plaintiff's Evidence** Exh. 5 (AT&T/Morella Dep.) 94:12-25: "Q.  In Paragraph 6 of your declaration you state that, 'In the case of both of the SIM changes that appear on Exhibit B,' which is Exhibit 146, 'the customer reported inability to use his or her phone, and the issue was treated as a technical problem.'' Do you see that?  A.  I do.  Q.  What is the basis of that statement?  A.  When you review notes on those customer accounts, the customer just called in to |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | customer service, claimed that they didn't have service any longer, and they were treated as technical issues by our customer service department, requiring them to go to a store and get a new SIM card." |
| 100. | In one of the Prior Smith SIM Swaps ("Customer A"), the customer reported that the customer's service had been disrupted and the customer care representative coded it as a technical issue and directed the customer to proceed to a store to purchase a new SIM card to fix the issue. | Disputed in part. Testimony is not clear which, if either, customer (Customer A or B) was told to go to an AT&T store. Exh. 5 (AT&T/Morella Dep.) 94:12-97:13. **Plaintiff's Evidence** Exh. 5 (AT&T/Morella Dep.) 95:16-20: "Q. For the -- okay. So one customer, though, had indicated that no longer had service and there is a reference to a technical issue, and that customer was told to go to a store to get service reinstated? A. Right. He needed to get a new SIM card." |
| 101. | In the other of the Prior Smith SIM Swaps ("Customer B"), the customer did mention something about fraud occurring to them and the customer | Undisputed. |

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | was told to contact to contact law enforcement and possibly the fraud department. | |
| 102. | While Customer B referenced fraud when speaking to customer service, customers (such as Customer A) often only knew when they called in or went to a store that their phone had stopped working and did not know why. | Disputed. Exh. 5 (AT&T/Morella Dep.) 102:12-103:4 – Speculation (FRE 401, 402); Lack of foundation (FRE 602); Improper opinion (FRE 701, 702); Relevance (FRE 401, 402). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 5 (AT&T/Morella Dep.) 102:12-103:4: "Q. Would you agree that customers who have been SIM swapped often call customer service or go to a retail store and all they know is that their phone is not working? MS. JOHNSON: Object to the form and outside the scope. THE WITNESS: I would agree, and especially during this time I would agree that, yes, customers just knew that their phones stopped working and, you know, would either reach out to customer service or go into a store but not know |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | why. BY MR. BLECHNER: Q. And that the customer wouldn't know that a SIM swap had occurred or even know what a SIM swap is; right? MS. JOHNSON: Object to the form and outside the scope. THE WITNESS: Correct." |
| 103. | Even if the customer only reported that service was not working, AT&T had access to the customer's account notes that (like Mr. Terpin's account notes) would reflect that a recent SIM swap had occurred on the account. But if the representatives did not look back at the customer notes or did not understand them, the customer care representative did not always forward these potential fraud incidents to asset protection. | Disputed in part. The cited evidence does not support the assertion that "the customer care representative did not always forward these potential fraud incidents to asset protection."  Exh. 5 at 102:12-103:4; 176:17-177:8 – Speculation (FRE 401, 402); Improper hypothetical (FRE 402, FRE 403); Lack of Foundation (FRE 602).   *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 5 (AT&T/Morella Dep.) 102:12-103:4; 176:17-177:8: "Q. Would you agree that customers who have been SIM swapped often call customer service or go to a retail store and all they know is that their |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | phone is not working? MS. JOHNSON: Object to the form and outside the scope. THE WITNESS: I would agree, and especially during this time I would agree that, yes, customers just knew that their phones stopped working and, you know, would either reach out to customer service or go into a store but not know why. BY MR. BLECHNER: Q. And that the customer wouldn't know that a SIM swap had occurred or even know what a SIM swap is; right? MS. JOHNSON: Object to the form and outside the scope. THE WITNESS: Correct."<br><br>"But I would think if it was identified now, that they absolutely would be referring that over to asset protection or GFMO for further handling. BY MR. BLECHNER:<br><br>Q. And if I'm understanding your response, I mean to some extent you are -- you're excusing -- you're excusing the non-referral because of a |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | lack of understanding, perhaps, of the significance of the unauthorized SIM swap at the time. Is that -- is that fair? MS. JOHNSON: Object to the form and outside the scope. THE WITNESS: Yes. I am saying that -- that the reps, if they didn't look back and didn't have knowledge that this was something that could be customer impacting and not a technical issue, would have forwarded it to asset protection had they known." |
| 104. | Neither of the two Prior Smith SIM Swaps were referred to the fraud department by customer care representatives or otherwise. | Undisputed. |
| 105. | AT&T did not investigate the Prior Smith SIM Swaps. | Undisputed. |
| 106. | Looking at the Prior Smith SIM Swaps, Mr. Morella testified that he would have wanted them to be referred to GFMO or asset protection for investigation. | Disputed. Exh. 5 at 108:8-15 – Improper hypothetical (FRE 401, 402, 403); Lack of Foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 5 (AT&T/Morella Dep.) 108:8-15: |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | "Q. Looking at these two SIM swaps with the information that you have now, would you have wanted these two SIM swaps to have been referred and to have been investigated by GFMO or asset protection? MS. JOHNSON: Object to the form and outside the scope. THE WITNESS: Yes. Absolutely. I would have wanted it to be referred to us." |
| 107. | Mr. Morella testified that had it be [sic] referred and be [sic] been investigated, AT&T "wouldn't have allowed [Smith's] access to [AT&T's] system to remain. | Disputed. The witness states that it is possible that AT&T would have realized the SIM swap was unauthorized had there been an investigation, but if it had been determined to be unauthorized Smith would not have been able to have access.<br><br>Exh. 5 at 108:17-109:25 – Speculation (FRE 401, 402, 403); Lack of Foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts.<br><br>**Plaintiff's Evidence**<br><br>Exh. 5 (AT&T/Morella Dep.) 108:17-109:25: |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|--------------------|-----------------|
| | | "Q. And is it your view that if it had been referred and asset protection had done an investigation, that these would have been identified in December 2017 as unauthorized SIM swaps by Jahmil Smith? MS. JOHNSON: Object to the form. Calls for speculation. Outside the scope. THE WITNESS: It is -- it is possible because we may have had video which may have identified what occurred. BY MR. BLECHNER: Q. And that was my next question. I mean would you have expected if this had been referred and asset protection was conducting an investigation, that Spring would have been notified about these two SIM swaps? MS. JOHNSON: Object to the form, calls for speculation, and outside the scope. THE WITNESS: If we received the case, it would be our normal, standard practice to reach out to the AR where the activity occurred. So, yes, I believe they would have been notified. BY MR. BLECHNER: Q. Were there |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | policies in place at the time with -- with respect to whether AT&T would have allowed Jahmil Smith to continue to have access to AT&T's system until AT&T got a proper explanation for what occurred here? MS. JOHNSON: Object to the form and outside the scope. THE WITNESS: At that time, I can't answer what they would have done. Certainly, once it was investigated, we wouldn't have allowed access to our systems to remain." |
| 108. | AT&T did not inform Spring, the authorized retailed who AT&T has said Smith worked for, about either of the Prior Smith SIM Swaps. | Undisputed. |
| 109. | AT&T is not aware of Spring having any information about those two Prior SIM Swaps being unauthorized. | Undisputed. |
| 110. | Neither Spring nor its acquirer Prime were aware of the two Prior Smith SIM Swaps or of Smith being involved in any prior unauthorized SIM swaps until asked questions about | Disputed on the grounds that the cited material does not support the purported fact. Exh. 4 at 140:18-141:23 – Lack of foundation (FRE 602); Relevance (FRE 401, 402) |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | them during a February 2023 deposition | *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 4 (Deposition of Prime Communications (30(b)(6) with Designee Amy Milberger ("Prime/Milberger Dep.")) v.1 140:18-141:23: "Q. And are you aware of anything between December 9 of 2017 and January 7 of 2018 where AT&T informed Spring about these two SIM swaps that had been reversed by Jahmil Smith? A. I am not aware. Q. To your knowledge, Spring -- and then Spring acquired by Prime had never learned anything about these December 9, 2017 SIM swaps being potentially unauthorized SIM swaps until today; is that correct? MR. OCHSENBEIN: Lacks foundation. THE WITNESS: I've not seen this document before. BY MR. BLECHNER: Q. Okay. So you've not seen this document before today; correct? A. Correct. That I remember. |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | Q. And to your knowledge, has anybody else at Prime ever seen this document? A. Not to my knowledge. MR. OCHSENBEIN: Objection. Speculation. BY MR. BLECHNER: Q. To your knowledge, Spring -- let me strike that. To your knowledge, neither Spring nor Prime had learned anything about the possibility of these December 9, 2017 SIM swaps by Jahmil Smith being unauthorized SIM swaps prior to today; correct? MR. OCHSENBEIN: Object to form. Lacks foundation. Calls for speculation. THE WITNESS: I do not have any knowledge of it before." |
| 111. | There is no evidence of Spring conducting any investigation of the two Prior SIM Swaps. | Disputed. The cited material indicates that the witness did remember seeing such evidence, not that such evidence does not exist. Exh. 4 at 143:2-5. **Plaintiff's Evidence** Exh. 4 (Prime/Milberger Dep. v.1) 143:2-5: "Q. And you have seen no investigation of these two SIM swaps that occurred on December 9, 2017; |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | correct? A. Not that I can remember, no." |
| 112. | AT&T was never provided in December 2017 (or at any other time) with any explanation that exonerated Jahmil Smith from his involvement with either of the Prior Smith SIM Swaps. | Disputed. Given the double negatives, it is not clear that the cited testimony supports the fact. Because it was outside of the scope of Mr. Morella's designation, the cited testimony does not support that "AT&T was never provided" an explanation. Exh. 5 at 110:2-13 – Lack of foundation (FRE 602). **Plaintiff's Evidence** Exh. 5 (AT&T/Morella Dep.) 110: 2-13: "Q. This is perhaps self-explanatory because there were no communications with Spring at the time, but is it correct that AT&T was not provided, in December of 2017, with any explanation that exonerated Jahmil Smith from his involvement with either of these two SIM swaps that are shown in Exhibit 146? MS. JOHNSON: Object to the form and outside the scope. THE WITNESS: |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | No. BY MR. BLECHNER: Q. And your answer was 'no'? A. No." |
| 113. | There is no evidence of Jahmil Smith being reprimanded in any manner for the Prior Smith SIM Swaps | Disputed. The cited material does not support the purported fact. Exh. 4 at 147:3-9 – Lack of foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 4 (Prime/Milberger Dep. v.1) 147:3-9: "Q. Is it correct that Jahmil Smith was never reprimanded for either/or both of these December 2017 SIM swaps that are shown in Exhibit 170? MR. OCHSENBEIN: Lacks foundation. Calls for speculation. THE WITNESS: I have no knowledge if he was on Spring's side." *See also* additional Plaintiff's Facts numbered 114. |
| 114. | In fact, Smith continued to process SIM swaps in the days that followed and was permitted to work in the AT&T branded store by himself | Disputed. ███████████████ ███████████████████ ███████████████████ ███████████████████ ████████████ |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | without any other employees or supervisors present with him | **Plaintiff's Evidence**<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>████████████<br>██████<br>Exh. 4 (Prime/Milberger Dep. v.1) 161:19-162:3:<br>"Q. If you look at Page 2, the list goes chronologically. After December 9 of 2017, Jahmil Smith processed at least 10 more SIM swaps during the rest of December of 2017 as shown by this. Okay? A. Yes. Q. And then after the Terpin SIM swap on January 7 of 2018, there's at least -- at least six, if not more SIM swaps that are shown that continue through January 16 of 2018. Do you see that? A. Okay."<br>See also additional Plaintiff's Facts numbered 115, 122. |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 115. | Smith was working alone in the store when he processed the January 7, 2018 Terpin SIM Swap. | Undisputed. |
| 116. | AT&T's 30(b)(6) designee Joseph Morella testified that he was not aware of any written policies as of January 7, 2018 relating to AT&T and Spring communicating with one another about potentially unauthorized SIM swaps. | Disputed in part. The testimony was outside Mr. Morella's scope as a 30(b)(6) witness. **Plaintiff's Evidence** Exh. 5 (AT&T/Morella Dep.) 49:4-13: "Q.  All right.  So setting aside this E-mail from Mr. McCreary, were there any written policies that would have been in effect at the time of -- of the January 7, 2018 SIM swap relating to AT&T and Spring communicating with one another about potentially unauthorized SIM swaps?  MS. JOHNSON:  Object to the form and outside the scope.  THE WITNESS: Not to my recollection other than that, no." |
| 117. | An AT&T 30(b)(6) witness, Joseph Morella, testified that he was not aware of any obligation on the part of Spring to inform AT&T if it was | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | contacted by authorities in connection with an unauthorized SIM swap. | |
| 118. | In addition to not informing Spring about the Prior Smith SIM Swaps (PF-108), AT&T did not inform Spring that Jahmil Smith had been involved in the Terpin SIM Swap prior to the end of Smith's employment in late January of 2017. Indeed, prior to March 2018 (after receiving Mr. Terpin's demand letter and by which time Jahmil Smith was no longer working for Spring) AT&T had no communications with Spring/Prime regarding Jahmil Smith. | Undisputed.[3] |
| 119. | Jahmil Smith, identified as Reporting Party #1 (RP#1) reported that the AT&T branded store where he worked in Norwich had been robbed on January 1, 2018 at a time when Smith was the only employee in the store. Smith ultimately [was] arrested [sic], charged, and paid restitution. | Undisputed. |

_____

[3] AT&T assumes that the intent of both the PF and the underlying supporting evidence was to indicate that Smith's employment ended in January 2018 and that the reference to 2017 was in error.

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 120. | An employee in the Norwich AT&T branded store, identified as RP#1, reported to Norwich police that he had just been robbed at the store on January 1, 2018. | Undisputed. |
| 121. | The detective reported that the employee, identified as RP#1, consented to a DNA Buccal Swab. (20274) | Undisputed. |
| 122. | Detective Besse reported that a DNA Buccal Swab had been collected from Jahmil Smith. | Undisputed. |
| 123. | The report identifies Smith by name and summarizes a sworn written statement in which Smith detailed he spoken with a best friend about setting up a robbery at the AT&T store and he told his friend working alone and opening the store on January 1, 2018, which is when the robbery incident was reported. | Undisputed. |
| 124. | A Spring regional manager also provided information to the police, including access to video footage (20276), a detailed inventory of the cash and equipment stolen (20277- | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | 78), and informed the Norwich Police Department that he believed the reporting party (Smith) was involved and that the robbery was an "inside job." (20278) | |
| 125. | Prime Communications acquired Spring in January 2019. | Undisputed. |
| 126. | Prime is aware of no facts refuting that Norwich Police officers accurately reported the information provided to them [by] the reporting party (Smith) or the regional manager (unidentified). | Disputed. Cited material does not support the purported fact. Exh. 4 at 197:2-17 – Lack of foundation (FRE 602). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts.<br><br>**Plaintiff's Evidence**<br>Exh. 4 (Prime/Milberger Dep. v.2) 197:2-17:<br><br>"Q. Do you have any information that would suggest that the officers and the detectives who took this report did not accurately take down the information that they were provided?  MR. DUFFY: Objection. Asked and answered. MR. OCHSENBEIN: Lacks foundation. Asked and answered. THE WITNESS: I personally do not have any information.  BY MR. |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | BLECHNER:  Q. That would suggest that the officers did not accurately take down the information provided to them? MR. DUFFY: Asked and answered. THE WITNESS: I would not have any information because I was not part of the investigation." |
| 127. | The detectives, based on their review of the video footage, Smith's 911 call, and other facts questioned Smith's truthfulness. | Undisputed. |
| 128. | Smith was arrested. | Undisputed. |
| 129. | Smith was charged with larceny, falsely reporting an incident, and misuse of the 911 system. | Undisputed. |
| 130. | AT&T received a restitution payment from Smith. | Undisputed. |
| 131. | There is no record of Spring reporting this robbery incident and Smith's perceived involvement in it to AT&T prior to the Terpin SIM Swap on January 7, 2018 or at any time during January or February of 2018. | Undisputed. |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 132. | Despite the Prior Smith SIM Swaps (that AT&T knew about but Spring apparently did not) and the January 1, 2018 robbery incident (that Spring knew about but AT&T apparently did not), AT&T allowed Smith to continue to access its OPUS computer system to process SIM swaps. | Disputed in part.  The cited evidence does not support any assertion that AT&T knew or suspected that the two incidents were the result of unauthorized SIM swaps. Additional Plaintiff's Facts numbered 114. **Plaintiff's Evidence** *See* additional Plaintiff's Facts numbered 114. |
| 133. | Despite the Prior Smith SIM Swaps and the January 1, 2018 robbery incident, Spring allowed Smith to continue to work in its AT&T branded store without any restrictions, including occasions where he was the only employee in the store. | Disputed in part. The cited material does not establish that Smith was permitted to work, "without any restrictions" or that Spring had any knowledge about the Prior Smith SIM Swaps prior to January 7, 2018. PF 114. **Plaintiff's Evidence** *See* additional Plaintiff's Facts numbered 114. |
| 134. | On January 7, 2018, Smith, who was employed at an AT&T AR branded store in Norwich, Connecticut conducted an unauthorized SIM swap of Terpin's telephone without Mr. Terpin being present. | Disputed in part.  The cited evidence does not support that a SIM swap "of Terpin's telephone" occurred, as opposed to his telephone number.  *See* UF 3. **Plaintiff's Evidence** *See* additional Plaintiff's Facts |

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | numbered 135-155. |
| 135. | The January 7, 2018 SIM swap was conducted by Smith, who was employed by AT&T's authorized retailer Spring and whose ATT UID was jx853v | Undisputed. |
| 136. | Smith used the AT&T OPUS system to conduct the SIM swap, which is the same system that is used by AT&T employees and requires AR employees to use the same authentication procedures as those required for AT&T employees. | Undisputed. |
| 137. | ██████████████████ ████████████████ ██████████████ ████████████████ ███████████████ ██████ | Undisputed. |
| 138. | ████████████████ ███████████████ ██████████████ ██████████████ ██████ | Undisputed. |
| 139. | Mr. Terpin was in fact not in the AT&T AR store in Norwich, | Undisputed. |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | Connecticut but was at home in Las Vegas, Nevada on January 7, 2018. | |
| 140. | ██████████████████████ ███████ for Mr. Terpin's SIM was transferred to a new IMEI (i.e., a new phone identifier) by Smith, who manually entered the IMEI for the phone into the Account Notes. | Disputed in part. ████████ ████████████████████████ ████████████████████. Exh. 21 (Dep. Exh. 87) (Account Notes at 3733); Exh. 2 (AT&T/Hill Dep.) 169:22-170:21. **Plaintiff's Evidence** Exh. 21 (Dep. Exh. 87) (Account Notes at 3733); Exh. 2 (AT&T/Hill Dep.) 169:22-170:21: "Q. If you go to the prior page, to 3733, do you see the entry for January 7, 2018 at 13: 34, 'Change equipment' grant and it indicates it was done through OPUS. Do you see that entry? A. Yes. Q. It indicates -- the entry states that the IMEI has been changed by M06341. Do you know, is that an AT&T UID? A. That's what they call a mech ID, so that's actually like a user ID of OPUS with that retail connection as it's connecting to Telegence through the API. Q. So that's really an ID from the system as |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | opposed to sort of an individual human? A. Correct. Q. And when it says the IMEI has been changed by M06341, is this, to your understanding, some sort of an automatic process that occurs when that new phone is turned on, or does something have to be input by an agent representative to do this? MS. JOHNSON: Objection. Form and outside the scope. THE WITNESS: I'm interpreting this as the rep is the one that entered that value in." For Pinsky's involvement *see* facts numbered 157-174, *infra*. |
| 141. | ████████████████████ | Undisputed. |
| 142. | Mr. Terpin's wife, Maxine Hopkinson, attempted to contact AT&T on two occasions on January 7, 2018 to have his number transferred back to a | Disputed in part. The cited evidence does not establish that AT&T delayed in transferring Terpin's number back to a device under his control. Nor does |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | device under his control. AT&T delayed in doing this which provided additional time for the hackers to access the account. | it establish that such a delay provided additional time for hackers to access the account, which is an improper opinion (FRE 701, 702) and lacks foundation (FRE 602). Exh. 21 (Account Notes at 3733); Exh. 33 (Dep. Exh. 152, tab 1); Exh. 22 (Dep. Exh. 91) (pages 19847, and 19920-19925) (call detail for January 7, 2018-January 8, 2018); Exh. 3 at 98:3-20, 99:10-104:15, 104:13-106:07. *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** *Id.*; Exh. 3 (Hopkinson Dep.) 98:3-20, 99:10-104:15, 104:13-106:07: "Q. Were you with Mr. Terpin when he realized that the January 7th, 2018 SIM swap had occurred? A. Yes, I was. Q. Okay. And where were you when you realized that the January 7th, 2018 SIM swap had occurred? A. We were in our home in Las Vegas preparing for a coin agenda event that we were throwing. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
| | | Q. And how did you realize that another SIM swap had occurred? A. I was in my office upstairs. Michael was downstairs. He called to me. He said that he thinks we're being SIM swapped again and -- because the email -- an email got changed, password. He got a notification. We immediately went to the phones to check every phone to see if we had signal. I found the BlackBerry did not have signal. I immediately called AT&T."<br><br>"Q. Okay. And I understand from some of the discovery in this case that you were then the one that called AT&T after the January 2018 SIM swap; is that right? A. Yes, I was. Q. And what was the reason that you made that phone call as compared to Mr. Terpin? A. Well, my phone was still alive, and I made the phone call because Michael was working on trying to make sure he could see what was going on. These things happen very quickly and so, you know, it |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
|     |                     | takes, you know -- we got through to AT&T. They promised they were going to shut the phone down. I told them that time was of the essence, they needed to immediately shut the phone down. I gave them the security code. And in the meantime, Michael was watching to see the activity, to see what was going on. It happened very, very quickly. And in the meantime that I was on hold with AT&T waiting for them, they told me they had shut it down, and then they transferred me to the fraud department, and it was Sunday so the fraud department never picked up. But I spent -- your records will show how long it was, but it seemed like an eternity waiting for the fraud department to pick up, and they never did. And the one thing we wanted to keep checking was, was the phone ringing or was it going directly to voicemail because it had been disconnected. And the phone continued to ring, so we knew it was still connected, and we knew as long |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
|     |                     | as that SIM was still active, that the hackers had access to get access to whatever they were going to do. So -- Q. Okay. So you concluded that the phone was still connected based on the fact that it continued to ring rather than going to voicemail? A. Correct. And we -- I eventually ended up calling AT&T again and, again, they told me -- this time, they said that it had not been disconnected. They were going to disconnect it this time, the second time around, and for sure it was going to be disconnected. And then they put me over to fraud and, again, fraud did not pick up after however long it was that I waited. Again, it seemed like an eternity because we knew they were doing something. We didn't know what. Q. And so did Mr. Terpin ordinarily have voicemail set up on that 310 number? A. I'm sorry. I didn't hear you. Q. Yeah. Did Mr. Terpin ordinarily have voicemail set up on the 310 number |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
|     |                     | that would answer a call that came in? A. Yes. Uh-huh. Q. And -- but when you called the number, you didn't ever get his voicemail? A. It was ringing. It did not go to voicemail. It didn't shut down. It was ringing. So it was still alive. When it was shut down, it went directly to his voicemail. It didn't ring. Q. Do you know why it didn't eventually go to voicemail after several rings when you're saying it was still alive? A. I don't know the mechanics behind how cell phones operate, but I know as long as they are ringing and they're not going to voicemail or going to a prerecorded message thing 'this line has been disconnected' or something, I pretty much can assume it's still alive. Q. And how do you know that, that you can assume it is still alive if you don't -- if it keeps ringing and doesn't go to voicemail? A. Well, when I called back the second time, the second rep indicated |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
|  |  | that it had not been disconnected yet. Q. Yeah. I'm just trying to understand how you -- like as you say, when it kept ringing, you knew it hadn't been disconnected, so I'm just trying to understand how you knew that continuing to ring and never getting voicemail was a sign that it was not disconnected. A. Well, keep in mind that I'm not a phone company employee. I'm not sure how cell phones should act under this scenario. But I'm assuming if that cell phone has been disconnected that when I dial the number, it is going to say, 'I'm sorry, you've received a disconnected number,' or something to that effect. Q. Okay. So you just assumed that that's what would happen, you would get this recorded message if it had actually been disconnected? A. Correct. And indeed, when I called the second time, after waiting for the fraud department thinking that it had been disconnected at that point, because the first rep told me it had |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
| | | been disconnected, I assumed that it would be disconnected. And when I called and I heard the ringing, it prompted me to call AT&T a second time. And, again, that second rep confirmed the phone had not been disconnected. And, again, that second rep put me through to the fraud department, which appeared to be nonexistent on a Sunday which, oddly enough, seems to be the day that these hackers like to work on because of that reason. Q. How do you know that hackers prefer to work on Sunday because fraud departments are supposedly not open? A. Well, it happened to us twice on Sundays, and fraud departments did not pick up. Q. Okay. So you're drawing the conclusion from the fact that you experienced two SIM swaps on Sundays that SIM swaps are more likely to occur on Sundays? A. Correct. And I -- you know, it could be supposition. You could have millions of people working in the |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
| | | fraud department. They just didn't answer the phone when I called them on both occasions on a Sunday. Q. Okay. So you said first -- you called AT&T twice. So in the first phone call, what did you say to AT&T? Well, let me -- let me rephrase that question. So you told me that on June 7th, 2018, you called a number that you understood to be AT&T two times; correct? A. Correct. |
| | | Q. Okay. I want to talk about the first call first. The first call that you made on January 7th, 2018, in response to the SIM swap, what did you say to the representative that answered the phone? A. I said, 'I believe I might have a problem with my SIM being swapped out of my phone, and I need you to check and see what kind of a phone it's on.' In this case, the phone that it was supposed to be on was a BlackBerry. The rep confirmed that the phone had been moved to an iPhone. I knew at that time it had been hacked. And I knew this because of |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
|     |                     | the email that was already happening. So I knew the crime was in process. Q. And what do you mean when you say 'the email was already happening'? A. I knew when I got an email changing the password, an email from Google saying, 'Your password has been changed,' and we haven't changed the password, we get that email out of the blue, and we have a phone that's not working, we know something's wrong. So I called AT&T and I said, 'What kind of phone is that SIM on?' They said, 'An iPhone.' I said, 'That's not the kind of phone it should be on. Please disconnect it immediately.' Q. And so when you're talking about getting an email from Google, is that the same email you referenced Mr. Terpin getting earlier, or this is a separate email that you got from Google that said that your password on Google had been changed? A. No. This was the first indication that we were being hacked. Q. Okay. And what other -- were there other |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | accounts besides Google that you became aware had been accessed or had their passwords changed as part of the January 2018 SIM swap? A. There may have been. Q. Can you identify any of those? A. I think there was some social media accounts. I'm speculating because I don't know what all was hacked. Q. But is there -- A. I know there were multiple things going on very quick, in very quick succession." |
| 143. | Ms. Hopkinson told AT&T on January 7, 2018 that Mr. Terpin had been SIM swapped and asked to be transferred to the fraud department, which did not pick up either of her calls. | Disputed in part. ███████████ ██████████████████ ████████████████████ ██████████████████ █████████████████ ██████████████████████ ██████ <br><br> **Plaintiff's Evidence** <br> Exh. 3 (Hopkinson Dep.) 103:8-104:5, 108:4-12; 108:20-109:12, 110:5-17: |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | "Q.  And so that transfer was made or they transferred you to something, and the phone rang but no one answered?  A.  Correct.  Q.  Okay. And so then at some point, I guess, did you hang up?  A.  At some point, I needed to hang up because I wanted to make sure the phone had actually been disconnected." "Q.  Okay.  A.  So we knew that it was still alive.  Q.  And so then -- go ahead.  A.  That prompted me to make a second call to AT&T.  Q.  Okay. And so what do you recall saying on the second call that you made on January 7th, 2018?  A.  I think I started out with the same exact thing that I started out with the first call, and this was when I was able to verify that the phone had not been disconnected, it was still live.  And again, the gentleman told me he was going to disconnect it and, again, he transferred me to the fraud department and, again, they never picked up.  Q.  And did you say to him that you had already been |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
|     |                     | transferred to the fraud department and that they had not picked up?  A.  Oh, yeah.  I did." |
|     |                     | "Q.  Is that it basically?  A.  No.  No.  I was able to get hold of the representatives fairly quickly.  Q.  Okay.  A.  It was after the representatives were done with me, they would say, 'Oh, you have to talk to fraud.'  Q.  I understand.  A.  They partly inferred that it was only fraud who could actually shut down the phone or something, but fraud never picked up.  So if there were people working in the fraud department that day, I certainly never talked to them." |
| 144. | ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████ | Disputed in part.  ████████ ████████████████████████ ████████████████████████ ████████████████████ **Plaintiff's Evidence** ████████████████████████ ████████ |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP



| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 145. | ▮▮▮▮▮▮▮▮ | Disputed in part. ▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮ **Plaintiff's Evidence** ▮▮▮▮▮ ▮ |
| 146. | On both occasions when Ms. Hopkinson called, the account representative transferred her to the fraud department, which did not pick up her call. | Disputed in part. ▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮ **Plaintiff's Evidence** Exh. 3 (Hopkinson Dep.) 108:20-109:12, 110:5-17: "Q.  Okay.  A.  So we knew that it was still alive.  Q.  And so then -- go ahead.  A.  That prompted me to make a second call to AT&T.  Q.  Okay.  And so what do you recall saying on the second call that you made on January 7th, 2018?  A.  I think I started out with the same exact thing that I started out with the first call, and |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | this was when I was able to verify that the phone had not been disconnected, it was still live. And again, the gentleman told me he was going to disconnect it and, again, he transferred me to the fraud department and, again, they never picked up. Q. And did you say to him that you had already been transferred to the fraud department and that they had not picked up? A. Oh, yeah. I did."<br><br>"Q. Is that it basically? A. No. No. I was able to get hold of the representatives fairly quickly. Q. Okay. A. It was after the representatives were done with me, they would say, 'Oh, you have to talk to fraud.' Q. I understand. A. They partly inferred that it was only fraud who could actually shut down the phone or something, but fraud never picked up. So if there were people working in the fraud department that day, I certainly never talked to them." |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 147. | On both occasions when Ms. Hopkinson called AT&T, she was asked for and provided the six digit "extra" security code for the account. | Undisputed. |
| 148. | ████████████ ██████████ ██████████████ ████████████ ███████████████ ████████████ ██ | Undisputed. |
| 149. | ████████████ ██████████ ████████████ ██████████████ █████████████ █ | Disputed in part. ██████████████ ███████████████ ████████████ ███████████ **Plaintiff's Evidence** ███████████████ ██ |
| 150. | ███████████ ████████████ ████████████ ██████████ ████████████ ████████████ ████████████ ████████████ | Disputed in part. ███████████████ ██████████████ ███████████████ ██████████████ ██████████████ ███████████████ ████████████ **Plaintiff's Evidence** |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
|  | ███████████████ ██████████████ ████████████████ █████ | ████████████████ ████ |
| 151. | AT&T never performed an internal investigation on the January 7, 2018 unauthorized SIM swap until after it received a draft complaint from Mr. Terpin's counsel in March 20, 2018. | Undisputed. |
| 152. | AT&T's asset protection department never performed any investigation of the January 7, 2018 unauthorized SIM swap of Mr. Terpin's account until after AT&T received a draft complaint from Mr. Terpin's counsel. | Undisputed. |
| 153. | ███████████████ ███████████████ ██████████████ ████████████ █████████████ ████████████ ████████████████ ██████ | Disputed in part. ███████ ███████████████ ███████████████ ████████████████ ███████████. *See* Exh. 22 (Exh. 91) at 19922. **Plaintiff's Evidence** ████████████████ |
| 154. | The January 7, 2018 unauthorized SIM swap on Mr. Terpin was orchestrated by Ellis Pinsky, who | Disputed in part. Pinksy testified that he was able to access Mr. Terpin's Microsoft account as a result of |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | testified as to how the SIM swap was conducted and how he was only able to gain access to Mr. Terpin's cryptocurrency through the SIM swap. | finding an e-mail address associated with the Microsoft account while searching Mr. Terpin's Gmail accounts, that its key that access credential be saved in an "Internet accessible" location, and that "additional steps" are required beyond a SIM swap to access cryptocurrency. UF 37, 38, 42 (and supporting evidence). **Plaintiff's Evidence** *See* additional Plaintiff's Facts numbered 155-172. |
| 155. | Pinsky had contacted a source, Smith, to SIM swap Terpin's AT&T phone. Pinsky did so with the hope that the SIM swap would result in getting cryptocurrency. | Undisputed. |
| 156. | Pinsky testified that he considered contacting Smith to be a critical step in the theft from Terpin. | Undisputed. |
| 157. | Jahmil Smith agreed to do the SIM swap for Mr. Pinsky and was going to receive a payment between $100 and $500 for doing that. | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 158. | Following Smith's agreement to perform the SIM swap, Mr. Terpin's phone was SIM swapped to another person, known to Pinsky as "Cold", as requested by Mr. Pinsky. | Disputed in part. A SIM swap does not transfer the physical phone, but rather causes a phone number to be associated with a different SIM. Rexroad Decl., ¶ 4. **Plaintiff's Evidence** Exh. 6 (Pinsky Dep.) 21:21-22:7: "Q. And was Mr. Terpin's phone SIM swapped to you following those communications with Jahmil Smith? MR. OCHSENBEIN: Objection to form. A. It was not SIM swapped to me, it was SIM swapped to someone I was working with, but for all intents and purposes, yes. Q. Okay. So the phone was SIM swapped to another person to whom you had requested it be directed? A. The phone number, yes." |
| 159. | Once the SIM swap had been processed, "Cold", referred to as the "holder," (i.e., the holder of the phone into which Mr. Terpin's SIM had been swapped) had access to the text messages and calls that were going to Mr. Terpin's account and this was | Disputed in part. ███████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████. Exh. 22 at 19920-22. **Plaintiff's Evidence** |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | valuable to Pinsky as they "were trying to reset Mr. Terpin's email accounts, and [they] needed access to Mr. Terpin's phone number to do that." | Exh. 6 (Pinsky Dep.) 22:25-24:4: "Q.  So what was Andre's job in connection with what you were doing on January 7th?  A.  He was what's known as a holder.  He had a burner phone that Mr. Terpin's phone number would be poured into.  Q.  Did his job entail -- well, let me ask this:  Did you understand that by virtue of the SIM swap that he would have text messages or calls that were going to Mr. Terpin's account going to his burner phone?  A.  If by 'him' you mean Cold, then yes.  Q.  Okay.  And did Cold's job as the holder include then relaying that information from any messages that he received or intercepted to you?  A.  Yes.  Q.  And, you know, at a high level what were you doing, or what was happening next that made him having the burner phone with the ability to intercept those messages of value to you?  MR. OCHSENBEIN:  Objection to form. A.  We were trying to reset Mr. Terpin's e-mail accounts, and we |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | needed access to Mr. Terpin's phone number to do that and – yeah." |
| 160. | By clicking on "forgot password" on various of Mr. Terpin's accounts, Mr. Pinsky could elect to have a text message with a security code sent to his holder (Cold) which he could use to reset passwords and gain access to the email account. | Disputed. The cited evidence discusses only "the Gmail account." Exh. 6 (Pinsky Dep.) 24:25-25:10. **Plaintiff's Evidence** Exh. 6 (Pinsky Dep.) 24:25-25:10: "Q. And then you -- what would you do to do this reset? A. You would enter the Gmail account, press 'forgot password' and one of the options would be to confirm that you are the person trying to reset the password. One of the options would be to receive a text message with a security code, and once you receive and enter that security code, which is normally a five-digit number, you could then reset the password." |
| 161. | Mr. Pinsky, working with his holder, used the SIM swap to attempt to access Mr. Terpin's email accounts, cryptocurrency accounts, and online file storage accounts. | Undisputed. |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|------------------|
| 162. | Mr. Terpin eventually found something that he needed in order to access Mr. Terpin's cryptocurrency accounts, which was a file posted on the cloud on Microsoft One Drive that was found in the trash. | Undisputed.[4] |
| 163. | Mr. Pinsky by virtue of password resets using the SIM swapped phone accessed Mr. Terpin's Microsoft and Google accounts. Mr. Pinsky also tried to access document applications such as Dropbox and cryptocurrency wallets such as Bittrex. | Disputed in part. Access to the Microsoft and Google accounts was not solely "by virtue" of the SIM swapped phone. Pinksy testified that he was able to access Mr. Terpin's Microsoft account as a result of finding an e-mail address associated with the Microsoft account while searching Mr. Terpin's Gmail accounts, that its key that access credential be saved in an "Internet accessible" location, and that "additional steps" are required beyond a SIM swap to access cryptocurrency. UF 37, 38, 42 (and supporting evidence). |

---

[4] AT&T assumes that there is a typographical error and the fact is intended to state "Mr. Pinsky eventually found . . . ."

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 164. | Using information from the file that Mr. Pinsky found in the Microsoft One Drive trash, Mr. Pinsky was able to access certain cryptocurrency wallets and to steal cryptocurrency from Mr. Terpin that Mr. Pinsky valued as worth roughly $24 million at the time. | Disputed in part. Exh. 6 at 18:8-15 – Lack foundation (FRE 602). |
| 165. | Mr. Pinsky stated that he would not have been able to get the information that he needed to access Mr. Terpin's accounts if he did not, through the holder, have control over Mr. Terpin's phone account by virtue of the January 7, 2018 SIM swap because he otherwise did not have access to the accounts, which was why he was doing the Terpin SIM swap in the first place. | Disputed in part. The access was not solely as a result of the SIM swap. Pinsky testified that he was able to access Mr. Terpin's Microsoft account as a result of finding an e-mail address associated with the Microsoft account while searching Mr. Terpin's Gmail accounts, that its key that access credential be saved in an "Internet accessible" location, and that "additional steps" are required beyond a SIM swap to access cryptocurrency. UF 37, 38, 42 (and supporting evidence). **Plaintiff's Evidence** Exh. 6 (Pinsky Dep.) 27:13-28:4; 122:21-123:1: |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | "Q. In your opinion and in your experience, would you have been able to get the information that you needed to access Mr. Terpin's accounts if you did not, through the holder, have control over Mr. Terpin's phone account by virtue of the Terpin SIM swap? MR. OCHSENBEIN: Objection to the extent it calls for an opinion. A. No. Q. You, in fact, didn't have access to these accounts, and that was part of the reason you were doing the Terpin SIM swap in the first place, right? MR. OCHSENBEIN: Objection, leading. A. Correct." "Q. And without the Terpin SIM swap you would never have received the information that the holder intercepted from the messages that were sent to Mr. Terpin, right? A. Correct." |
| 166. | Without the SIM swap, Mr. Pinsky stated that he did not have a way to get | Disputed in part. The access was not solely the result of the SIM swap. Pinksy also testified that he was able |

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
| | into Mr. Terpin's online Microsoft OneDrive account. | to access Mr. Terpin's Microsoft account as a result of finding an e-mail address associated with the Microsoft account while searching Mr. Terpin's Gmail accounts, that its key that access credential be saved in an "Internet accessible" location, and that "additional steps" are required beyond a SIM swap to access cryptocurrency. UF 37, 38, 42 (and supporting evidence).<br><br>**Plaintiff's Evidence**<br>Exh. 6 (Pinsky Dep.) 121:2-10; 122:2-8:<br>"Q.  Okay.  And so, again, without the SIM swap you didn't have a way to get into the Microsoft One account, right? A.  In that situation, from what I can recall, yes.  Q.  Just so the record is clear, the yes is that you did not have a way to get in; is that right?  A. Correct."<br><br>"Q.  Would you agree that it is correct that the reason that the Terpin SIM |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
|  |  | swap was critical and key is because having control of Mr. Terpin's phone account is what allowed you to reset the passwords for certain accounts? A. Yes." |
| 167. | In the case of the January 7, 2018 SIM swap, Mr. Pinsky testified that it was one of the longer searches in which he had been involved (noting that he had had occasions where he found what he needed to steal cryptocurrency within minutes of conducting a SIM swap). | Undisputed. |
| 168. | The password reset of Terpin's Microsoft account used to access that account did not occur until roughly 30 minutes after the Terpin SIM Swap and the first cryptocurrency transfer occurred within 90 minutes after the Terpin SIM swap | Undisputed. |
| 169. | Pinsky stated that he would not have gotten into the Microsoft online account had the Terpin SIM swap been reversed in 25 minutes. | Disputed. Lacks Foundation (FRE 602), Hypothetical, Speculation (FRE 401, 402, 403). *See* AT&T's Evidentiary Objections to Plaintiff's Additional Facts. **Plaintiff's Evidence** Exh. 6 (Pinsky Dep.) 132:13-17: |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
|  |  | "Q. Okay. So if the Terpin SIM swap had been reversed within 20 to 25 minutes after it initially occurred, would you have been able to get into the Microsoft account? A. No." See additional Plaintiff's Facts numbered 168. |
| 170. | ████████████████ ████████████████ ████████████ | ████████████████ ████████████████ ████████████ ████████████ ████████████████ ████████). **Plaintiff's Evidence** ████████████████ ████ |
| 171. | As a result of the January 7, 2018 SIM swap, control of Terpin's mobile telephone was turned over to the perpetrators of the SIM swap, including Pinsky. | Disputed in part. The cited evidence does not support that a SIM swap occurred "of Terpin's telephone," as opposed to his telephone number. *See* UF 3. **Plaintiff's Evidence** Exh. 6 (Pinsky Dep.) 21:21-22:7; 25:20-26:3: |

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| 172. | Due to the actions of Smith, who had been paid by the lead hacker to process the SIM swap for the perpetrators, the perpetrators gained access to Terpin's mobile account, including the ability to receive text messages sent to Terpin's telephone number regarding reset messages for key online accounts. | Disputed as the assertion is a legal conclusion/improper opinion (FRE 401, 402, 701, 702); Argument (FRE 401, 402).<br><br>**Plaintiff's Evidence**<br>Exh. 6 (Pinsky Dep.) 63:12-24; 23:19-24:15; 27:13-22:<br>"Q. Was there discussion in any of the conversations that you were having with these unidentified people in the summer of 2017 about how people were specifically getting to the cryptocurrency after the SIM swap had occurred? A. People would use the fact that they controlled the victim or the individual's phone number to get into their online accounts where hopefully they were storing sensitive phrases that controlled their cryptocurrency, so that could be used to access their cryptocurrency."<br>"Q. And, you know, at a high level what were you doing, or what was happening next that made him having the burner phone with the ability to intercept those messages of value to |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn & Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|-----|---------------------|-----------------|
|     |                     | you? MR. OCHSENBEIN: Objection to form. A. We were trying to reset Mr. Terpin's e-mail accounts, and we needed access to Mr. Terpin's phone number to do that and -- yeah. Q. Well, so can you explain to me how it would work that you would, by having his phone number, gain access to an e-mail account? A. Sure, Paul. For Mr. Terpin's e-mail you'd do a password reset, and a security code would go to the phone number, and if you receive that security code and you enter the security code on the password reset, you could then reset the e-mail's password and gain access to the e-mail." |
|     |                     | "Q. In your opinion and in your experience, would you have been able to get the information that you needed to access Mr. Terpin's accounts if you did not, through the holder, have control over Mr. Terpin's phone account by virtue of the Terpin SIM swap? MR. OCHSENBEIN: Objection |

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP

| PF# | Uncontroverted Fact | AT&T's Response |
|---|---|---|
| | | to the extent it calls for an opinion. A. No." Exh. 22 (Exh. 91) at 19922 Account Detail. |

Dated: February 13, 2023

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jeremy S. Ochsenbein*
Jeremy S. Ochsenbein

Attorney for Defendant
AT&T MOBILITY LLC

DEFENDANT AT&T MOBILITY LLC'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT
CASE NO. 2:18-CV-06975-ODW-KS

Gibson, Dunn &
Crutcher LLP